IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The United States of America | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07-181 |
| | ) | Hon. Emmit G. Sullivan |
| v. | ) | Next Scheduled Court Date: |
| | ) | September 7, 2007 |
| Zhenli Ye Gon | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR EXCLUSION OF TIME**

COMES NOW, Defendant Zhenli Ye Gon ("Defendant"), by and through undersigned counsel, and opposes the Government's Motion for Enlargement of Time to essentially, waive Defendant's right to a Speedy Trial. The motion should be denied as it is nothing more than a request for a judicially approved fishing-expedition and only serves to deny Defendant's right to a Speedy Trial.

The motion should be denied for any number of reasons. First, contrary to the Government, this is *not* a "complicated" case. The defendant has been accused of conspiring to distribute methamphetamine into America. His role was simple; he allegedly supplied pseudoephedrine to clandestine meth labs knowing the product was heading to the American market. Second, the Government has had *at least five months* to review, (not to secure) all the evidence they need to convict the defendant based on the indictment. The reason is that on March 15, 2007 the Mexican Government raided and seized a gigantic amount of evidence from Defendant's company (Unimed Pharmaceutical), factory and home. The instant motion fails to even address why the Government has yet to tap into that pool of evidence seized in Mexico.

That should be the first question this Court asks of the Government at the September 7th hearing. Third, the evidence that was seized in Mexico five months ago was comprehensive in nature. A bullet point breakdown of exactly all of the evidence that was contained in Unimed's warehouse and factory as of March 2007 should be just a phone call or plane ride away to the U.S. Government. See attached hereto Defendant's Exhibit A listing all the evidence seized in the warehouse.

Fourth, and equally compelling, this case is a politically motivated criminal prosecution brought before this Court under the guise of "the biggest drug bust of the 21st Century" as a courtesy to the Mexican Government. As the Government knows, (1) there is no link between Mr. Ye Gon and any illegal drug brought into either Mexico or the United States; (2) there is no link between Mr. Ye Gon and the sale of illegal drugs to any unknown or "clandestine" meth manufacturer; (3) there is no link between Mr. Ye Gon, an unknown meth manufacturer, and the importation of *any* controlled substance into the United States; and (4) the Mexican Government has destroyed all the evidence concerning the issue of pseudoephedrine, i.e., it destroyed the 19.975 tons of chemical agents from which "tainted" samples were taken.

Given these serious deficiencies in the Government's case, they move this Court for a year extension to essentially globetrot for evidence. Even more amazingly, they seek pretrial detention while they fish for evidence. As detailed infra, Mr. Ye Gon respectfully asks this Court to deny the Government's motion. A proposed Order to this effect is attached hereto.

**I.    THE GOVERNMENT DOES NOT PRESENT A MERITORIOUS "ENDS OF JUSTICE" ANALYSIS, AS SUCH, ITS MOTION FOR A CONTINUANCE SHOULD BE DENIED.**

The law does not state that a defendant, charged with an offense and who pleads not guilty has a date set for trial "usually within seventy days." Govt.'s Mot. at 3, p. 5. The law

states clearly, "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense ***shall*** commence within seventy days from the filing date…" 18 U.S.C. § 3161(c)(1) (emphasis added); see also Zedner v. U.S., 126 S. Ct. 1976, 1989 (2006) (noting "[t]he relevant provisions of the Act are unequivocal. If a defendant pleads not guilty, the trial "*shall* commence" within 70 days 'from the filing date (and making public) of the information or indictment' or from the defendant's initial appearance, whichever is later.")

Furthermore, "the ends of justice" are *not* served by granting the Government's motion as it hardly presents arguments and facts that outweigh both (1) the best interests of the public, and (2) Mr. Ye Gon's interests. Congress expressly intended that the "ends-of-justice" exception be used rarely and only in narrow circumstances:

> "The history of speedy trial legislation has shown that both the defense and the prosecution rely upon delay as a tactic in the trial of criminal cases. However, from the defendant's point of view, delay is not synonymous with due process. A defendant who is required to wait long periods to be tried suffers from a magnitude of disabilities which in no way contribute to his well being. If he is incarcerated awaiting trial, unnecessary delay in the commencement of the trial could result in irreparable injury to an innocent individual. To one who is ultimately found guilty of a criminal offense, the time spent in detention may represent added time to his ultimate sentence and further retard the rehabilitative process."

See U.S. v. Theron, 782 F.2d 1510, 1513 (10th Cir. 1986) (quoting H.R. Rep. No. 1508, 97d Cong., 2d Sess. 4, reprinted in 1974 U.S. Code Cong. & Ad. News, 7041, 7407-08). Here, Mr. Ye Gon, who has been held detained without bond, has not and will not waive his right to a Speedy Trial as he maintains his innocence and is prepared to go to trial and prove his innocence. As such, "his desire and his position as a defendant who is not out on bail must weigh strongly in

3

favor of applying the seventy-day limitation of the Act" (Theron, 782 F.2d at 1513) notwithstanding the Government's desire for this Court to hold otherwise.

### A. This Case Is Not Unusual Or Complex And No Novel Issues Of Fact Or Law Are At Issue.

As noted above, this case is not unusual or complex. What is more, the Government's two count[1] indictment against Mr. Ye Gon does not contain any novel issues of fact or law. The Government states that this case, however, is complex for four reasons. Each of their reasons, however, does not carry sufficient weight to warrant the relief requested, i.e., a one year fishing expedition for discovery.

As to the Government's first and second reasons this case is "complex" it proffers that international travel is necessary to secure pertinent evidence. Govt. Mot. at 4. However, as noted above, all of the evidence the Government needs to prepare for trial is located at the Defendant's Unimed factory located in Mexico City. Defendant's Exhibit A outlines most of what the factory contains in terms of documentation. This incredible amount of material is easily accessible since the Mexican Government seized these materials in their March 15, 2007 raid of the factory.

As to the Government's third reason this case is "complex" they present an argument that is two fold: First they suggest this case involves the extra territorial application of U.S., China, and Mexican law and second, they submit this case *may* present novel questions of fact or law. Govt. Mot. at 4. As to their first point, this is a difficult argument to address because the Government does not specify how the extra territorial application will apply or how it comes into play. The court should, at a minimum, secure specificity concerning this argument of "extra territorial application of U.S. law." As to their second point, the Court should reject the

---

[1] With the second count merely pertaining to forfeiture.

4

Government's speculation that this case *may* present novel questions of fact or law into consideration. Mere speculation should not carry weight, of any kind, in an "ends of justice" analysis.

Finally, as to the Government's fourth reason why this case is "complex," the Government states much of the documentary evidence in this case is in Spanish, Korean, or Chinese. This proffer is incorrect. Defendant submits that much of the documentation in his warehouse is actually in English.[2] Until such time that Agent Chavez or some other Special Agent comes forward with specific assertions that they have inspected the warehouse and seen for themselves that evidentiary documents are substantially in Chinese, Korean, or Spanish, the Court should reject this argument as also being speculative. Had the Government actually reviewed the documents it has had access to for the past five months, it would know that the documents are in English or at least a substantial part thereof.

As the caselaw makes clear, while complexity of case is permissible factor under the Speedy Trial Act, "mere conclusion that case is complex is insufficient." U.S. v. Perez-Reveles, 715 F.2d 1348 (9th Cir. 1983). This Court should reject the Government's conclusory and speculative argument. This essentially one-count criminal case does not involve any complexity evidence wise. The gist of the Government's indictment is that the Defendant knowingly manufactured pseudoephedrine with a view towards shipping it to clandestine meth labs located somewhere on the boarder of Mexico and the U.S.

This is not complex even according to the Government's own cases. For example, in U.S. v. Brooks, et al., that complex case consisted of a conspiracy of 9 people, four counts involving various members of conspiracy, and when not all the defendants had secured counsel. 697 F.2d 517 (3d Cir. 1982). This scenario is hardly the case at hand. With respect to their case

---

[2] See Defendants Exhibit B.

5

U.S. v. Strong, 608 F. Supp. 188 (E.D.Pa. 1985), the Government was granted time because the case involved evidence that was based in Hong Kong and Singapore. The same reasoning was the basis for their other case cited, U.S. v. Kamer, 781 F.2d 1380 (9th Cir. 1986), where the Government needed to secure documents "overseas," needed to be translated and because many foreign witnesses were involved. Again, as per the Defendant's Proffer attached hereto as Exhibit A, most if not all the documents the Government needs are (1) in Mexican Government Custody; and (2) are in English. As proof of these contentions the Defendant produces Exhibit B which represents only one of the many documents that were seized from the Unimed factory. Exhibit B is a contract between Unimed and a Chinese supplier located in China. As the Court may review, the document has both English and Chinese versions, is located not in China but may be found in Mexico as part of the Government's seizure from the factory.

When cases that are truly "complex" are considered against the instant case, it is clear that an ends-of-justice analysis is not satisfied with respect to the Government's motion. See U.S. v. Reavis, 48 F.3d 763, (4th Cir. 1995), cert den. (1995) (finding a continuance was warranted when the case involved 6 defendants, 8 attorneys, 33 count indictment, and possibility of prosecution under seldom-used federal death penalty statute.)

In sum, while the Defendant has to admit that the issue of complexity has to be addressed in the context of the Government's motion, the Government has an obligation to come forward with specific averments, especially made by Agent Chavez who is the lead investigator in this case. Instead, they have given this Court a generalized overview and speculation of the complexity issue which is not enough to satisfy an "ends-of-justice" analysis. "Complexity of case does not automatically justify "ends-of-justice" continuance under 18 U.S.C. § 3161(h)(8)(A)." Theron, 782 F.2d at 1513.

**B.     The Government Has Not Presented Any Evidence, Much Less A Preponderance Of Evidence, That An Official Request To Mexico, China, Germany, El Salvador, Italy, Or Switzerland Has Been Made For Evidence.**

The law on this issue is thankfully clear. Under § 3161(h)(9), "any period of delay, not to exceed one year, ordered by a district court upon an application fo a party and a finding by a preponderance of the evidence that an official request, as defined in § 3292 of this title has been made for evidence of any such offense and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country."

Nowhere in the Government's motion do they submit that they have made any kind of "official request" for evidence in a foreign country. The Government merely states that it "moves this Court for a continuance based on the government's request for evidence located in foreign countries including China, Germany, Mexico and elsewhere." To state the obvious, where is the evidence (by a preponderance) of this "request"? Defendant would submit that no request has been made and that this is evidenced by the fact that for five months the Government could have but did not request from Mexico, the records and documents it seized during their raid on Mr. Ye Gon's house, factory, and company. Defendant further submits this is not the first time the Government has been disingenuous in its proffers. For example, in his affidavit, S.A. Chavez conveniently left out the fact that DEA agents visited China and one of the defendant's Chinese suppliers for at least a week in March of this year. An obvious reason for this omission is that the DEA agents could not find any incriminating evidence against the defendant.

Because the Government produced no evidence (by a preponderance) as the statute requires, no continuance under § 3161(h)(9) should be granted.

When determining whether to grant the Government's motion for a continuance, the Defendant asks this Court to take into consideration the fact that potential defense witness are being killed, tortured, and/or otherwise silenced. Delay has already and will continue to prejudice the defendant herein. For example, attached hereto as Exhibit C, the Defendant provides this Court with an article from the associated press titled "2 Federal Agents Gunned Down in Mexico." The fact that two federal agents who took part in the raid that discovered $205 million in cash from the Defendant's home were found "beaten and shot to death in southern Mexico" on or about August 2, 2007, raises an inference that they may have known something, adverse to the Mexican government and helpful to the Defendant. When lives are in danger and potentially exonerating evidence of and concerning the Defendant is in jeopardy, any delay would be prejudicial to the Defendant.

In terms of injuries suffered by the Defendant, one of the consequences of the raid on the Unimed factory is that the new facility with state of the art assembly lines will not open and this results in a substantial and irreparable financial harm. Unimed would have had a 45% market share when the factory opened and started producing cold remedies and decongestion tablets.

**II.   THE GOVERNMENT HAS NOT BEEN DILIGENT IN THEIR EFFORTS TO EXAMINE OBVIOUS EVIDENCE THE MEXICAN GOVERNMENT SEIZED FROM THE RAID OF MR. YE GON'S COMPANY, FACTORY AND HOME.**

The law is clear, "[n]o continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or *lack of diligent preparation* or failure to obtain available witnesses on the part of the attorney for the Government" § 3161(8)(C) (emphasis added).

To reiterate, the Government has been sitting very specific and readily available evidence in Mexico for over 5 months. Had the Government asked Mexico for any of the documents it

8

seized in their raid it would have discovered that (1) the amount of evidence is substantial; (2) the evidence includes documents the Government seems to think are only available in China and Korea; and (3) the evidence is in English.

Clearly, the Government has not been diligent in their efforts to secure evidence and they should not be rewarded by any continuance from this Court. By virtue of the statute, this Court need not even conduct an ends-of-justice analysis as pursuant to sub-§ (C), "no continuance under subparagraph (A) shall be granted … [for] lack of diligent preparation." § 3161(8)(C).

### III.   THERE EXISTS OTHER ADEQUATE BASES FOR DENYING RELIEF UNDER THE CIRCUMSTANCES AT BAR.

The Sixth Amendment of the Constitution ensures that defendants in criminal prosecutions "shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. The Supreme Court acknowledged that the right to a speedy trial is as "fundamental" as any of the Sixth Amendment rights extended to criminal defendants, Klopfer v. North Carolina, 386 U.S. 213, 223 (1967), the Court has also found the right to be "generically different." Barker v. Wingo, 407 U.S. 514, 519 (1972). The Speedy Trial Act also provides the courts with a clear standard by codifying time limits that can only be extended in accordance with the Act.

#### A.   70-day Period Will Be Sufficient for the Government to Prepare For Trial

The Mexican Government has custody of all critical evidence of this instant case, including on-the-scene investigation in Mexico. They also have minutes of interviewing of key witnesses in Inner Mongolia, China, and its FC's forensic examination reports, according to Officer Eduardo Chavez's Affidavit. It appears that the Government has intentionally and deliberately concealed all these critical items when it sought a grand jury indictment.

Defendant contends that any undue delay beyond such a 70-day period will violate his due process rights. The Speedy Trial Act requires that criminal defendants be brought to trial within 70 days of being charged; otherwise the accused is entitled to a mandatory dismissal of the charges.

Further concealed from this court and the grand jury, is the well documented fraud committed by the original source of the Mexican Customs Forensic Lab.  This apparent government practice of fraud by contaminating the samples through harsh treatment before testing were caught by Dr. LaVerne L. Brown:

> "Conclusions made in the Chemical Forensics documents indicated that the white powder substance from Unimed Pharmaceutical was determined to be a mixture containing acetamide.  In the documents, acetamide was described as a substance that was considered by the General Health Law to be neither a narcotic drug nor a precursor to such illicit drugs.
>
> However, a report from Customs Administrator suggests that the white powder substance confiscated from Unimed Pharmaceutical did not contain acetamide, but instead SOLELY of substance characterized as a derivative of the alleged controlled contraband. These conclusions were determined only after exposing the sample to harsh chemical conditions and heat.  Clearly the two reports are contradictory."
>
> Dr. Brown's Expert opinion further points out: ""… it is my professional opinion that preferred methods of characterization involve procedures that do not alter the chemical make-up of the sample under investigation."

See Dr. LaVerne L. Brown's Expert Opinion, attached hereto as Exhibit D.

The procedures in obtaining forensic testing results conducted by National Forensic Laboratory under the Mexican Attorney General's Office did not show its better respect of the generally observed clandestine guideline of the forensic chemical laboratories of the world, its finding of unclear ratio of "pseudoephedrine" was also obtained after its pre-treatment of sample by using the alkaline extraction from the questioned samples.

When Special Agent Eduardo Chavez knowingly chose to adopt his own word "converts" to substitute the statutory term "detectable" he has elevated that unconstitutionally vague statute as of 21 U.S.C. 359/360 into the height of its extremity. Nitrogen based chemical fertilizer can be *converted* into powerful explosive TNT if such chemical fertilizer is treated by adding Nitric Acid into it before being tested; If such "conversion" theory shall be adopted in drug related cases, then all law abiding citizens in the area of chemical fertilizer industry, laundry powder industry, and the industry of nitric acid supply can be simply charged for being terrorist bomb makers. The U.S. prosecutors overzealous efforts will re-write the substantive U.S. Drug law and such executive encroachment into the legislative province will further threaten civil liberties in the wake of this instant case.

**B.     Foreign Country Discovery.**

The government's third ground for tolling of time based upon foreign country discovery is weak. This is not a new case whose criminal investigation just started yesterday. There is evidence and information that shows US DEA officials in Mexico participated in the criminal investigation from the first day Mexican authorities started their search and seizure actions against the Defendant and his family in March 2007. We also know that critical exculpatory evidence in favor of the Defendant was intentionally concealed from the Grand Jury while seeking an indictment against Defendant Ye Gon. That same critical exculpatory evidence was never presented to Magistrate Facciola when the Government was seeking an arrest warrant. That evidence was that one or more U.S. DEA agents probably accompanied by Mexican DEA agents, spent a week with the Chinese bases supplier in Inner Mongolia. That DEA team learned that chemical agents were shipped, not pseudoephedrine and that when the sealed container left

11

Inner Mongolia it was only chemical agents, not Pseudoephedrine.  Thus, a request for delay based upon a discovery process into such a foreign country as China is unnecessary.

The other foreign countries such as Germany and Switzerland are not even remotely relevant to this instant case concerning the sole count specified in the Indictment – shipping Pseudoephedrine to meth labs located on the US / Mexican boarder.  Moreover, there were references in Officer K. Hooten's affidavit suggesting that what he alleged were six pieces of tablet making machines imported from these foreign countries, each worth "$160,000.00," would have been ordered solely for the purpose of clandestine manufacturing of Methamphetamine.  This contradicts the Government's prosecution theory, i.e., Defendant was not manufacturing Meth, he was allegedly making Pseudophedrine which he would then ship to meth labs on the US / Mexican boarder knowing that the drug was headed for America.  Apart from that crucial distinction, the truth is that the Defendant had set up 22 state of the art assembly lines of pharmaceutical machines using cutting edge technology from those foreign countries.  Purchasing cutting edge technology is not a crime as this Court is certainly aware of no matter how much the machines cost.  The inference Mr. Hooten's affidavit makes is that U.S. authorities have a reasonable suspicion that such reputable and long standing European suppliers are part of the International Drug Cartel just like the Defendant.  Investigating such European manufactures on a suspicion that they are part of an international drug cartel certainly cannot be the reason for delay of a speedy trial herein.

## IV.   CONCLUSION

Based upon the foregoing, the Defendant respectfully requests this Court deny the Government's motion.

Respectfully Submitted,

12

/s/ Ning Ye, Esq._____
Ning Ye, Esq., MD BAR Number: 26804
Rockville, MD
(301) 217-0600
ynyale@aol.com
*Counsel for Defendant Ye Gon*

/s/_Martin F. McMahon, Esq.
Martin McMahon, Esq., D.C. Bar Number: 196642
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

/s/_Lisa D. Angelo, Esq.
Lisa D. Angelo, Esq., D.C. Bar Number: 491206
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
langelo@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

## CERTIFICATE OF SERVICE

On this 24th day of August, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Paul Laymon, Esq.
U.S. Dept. of Justice
1400 New York Avenue, NW
Bond Bldg. 8th Fl
Washington, DC 20530

/s/_Martin F. McMahon, Esq.
Martin McMahon, Esq., D.C. Bar Number: 196642
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com

*Counsel for Defendant Ye Gon*

# DEFENDANT'S PROFFER

List of Documents that were contained in Unimed's warehouse:

- Purchase Contracts of chemicals which do not involve any controlled substance, psychotropic or narcotic, or precursor chemicals;
- Corresponding Bills of Lading
- Corresponding Packing Lists
- Government Export Clearance Documents on the Exporter, China side;
- Cargo Commodity Inspection Report by Bureau of Industry and Commerce on China side;
- Exporter's Cargo Insurance Documents;
- Comprehensive Government Chemical Forensic Testing Reports;
- Forensic Laboratory's Testing Equipments Calibration Records;
- Forensic Laboratory Log book records, including, but not limited to, operating laboratory technicians' original records;
- Complete Biography of Participating Forensic Chemists and Lab Technicians;
- Chemical charts of the sample tested on molecular and nuclear level;
- Uncontaminated samples of Mexican Government alleged "Pseudoephedrine";
- Financial Ledgers;
- Defendant Ye Gon's Pseudoephedrine related complete Log Book under the supervision of the Mexican Department of Health;
- Itemized Government Official Permits in relation to Pseudoephedrine importation quota; and other specific requirements;
- Correspondence with Mexico's Health Department
- Various Import Documentation including importing and distributing licenses from the Mexican Government
- Bank Records including Checking Accounts
- Documents pertaining to the Construction of the new Factory[1]
- Records concerning Inventory of all the Pharmaceuticals Shipping Documents;
- Customs Clearance Documents with Customs Administration at both Airports and Seaports on Mexico side;
- Audio/Video Tape, recordings, transcripts of the recording facilities originally equipped in my Residence, Office, Factory and Warehouse.
- Blueprints of the state of the art facility.

---

[1] Also at the Unimed factory were various contracts and correspondences concerning the purchase and importation of many machines and instruments that were purchased from Germany, U.S., Italy and Switzerland manufacturers for the new factory and company located in Tolucca, Mexico.


EXHIBIT NO. A

# 赤峰艾克制药科技股份有限公司
## CHIFENG ARKER PHARMACEUTICAL TECHNOLOGY CO., LTD.

地址：中国内蒙古赤峰市红山区清河路北段 邮政编码 P.C.: 024001
Add.: North Qinghe road, Hongshan District, Chifeng, Inner Mongolia 024001, CHINA
电话 Tel.: 86 476 8243939    传真 Fax: 86 476 8243477
E-mail: arker@263.net    Web.: http://www.arker.com.cn

Exhibit #5

Exhibit #1

售 货 合 同
SALES CONTRACT

编号 NO.: 06AK0062
日期 DATE: OCT. 18, 2006
签约地 SIGNED AT: CHIFENG, CHINA

买方 Buyer(s): Unimed Pharmaceutical S.A. de C.V.
地址 Add.: Morelos No.24 Col. Centro 06040 Mexico D.F.
兹确认售予你方下列货品，其成交条款如下：
We hereby confirm having sold to you the following goods on terms and conditions as specified bellow:

| (1)货物名称 Name | 1-(N-甲基-乙酰氨基)乙基-苯甲醇 HYDROXY BENZYL-N-METHYL ACETETHAMTNE |
|---|---|
| (2)数量 Quantity | 19,797KG |
| (3)单价 Unit price | USD35.00/KG CIF MEXICO CITY |
| (4)金额 Amount | USD692,895.00 SAY U.S. DOLLARS SIX HUNDRED NINETY TWO THOUSAND AND EIGHT HUNDRED NINETY FIVE ONLY |

(5)包装：25 公斤/纸板桶
Packing: IN 25KG NET FIBRE DRUMS
(7)装运港及目的港：由天津港海运至墨西哥城
Loading port: FROM TIANJIN SEAPORT TO MEXICO CITY BY SEA
(9)保险：由卖方办理
Insurance: TO BE INSURANCED BY SELLER
(10)付款条件：预付
Terms of payment: ⊙T/T IN ADVANCE

(6)质量标准：内控标准
Specification: IN HOUSE SPECIFICATION
(8)装运期：2006 年 10 月 30 日前
Time of shipment: BEFORE OCT. 30, 2006

如果买方不能按此付款条件执行，售方有权不经通知取消本合同书，或接受买方对本合约未执行的全部或部分，或对因此遭受的损失提出索赔。
If the buyer(s) fails to fulfill this term of payment, the seller(s) reserves the right to rescind this Sales Contract without further notice or to accept whole or any part of this Sales Contract non-fulfilled by the buyer(s) or to lodge a claim for direct losses sustained.

(11)品质/数量异议：如果买方提出索赔，凡属品质异议须于货到目的口岸之日起 30 天内提出，凡属数量异议须于货到目的口岸之日起 15 天内提出，对所装货所提任何异议属于保险公司，轮船公司及其他有关运输机构或邮递机构所负责者，售方不负任何责任。
Quality/Quantity discrepancy: In case of quality discrepancy, claim should be filed by the buyer(s) within 30 days after the arrival of the goods at port of destination, while for quantity discrepancy, claim should be filed by the buyer(s) within 15 days after the arrival of the goods at port of destination. It is understood that the seller(s) shall not be liable for any discrepancy of the goods shipped due to cause for which the Insurance Company, Shipping Company and other transportation organization / or Post Office are liable.

(12)本合同内所述全部或部分商品，如因人力不可抗拒原因，以至不能履约或延迟交货，售方概不负责。
The seller(s) shall not be held liable for failure or delay in delivery of the entire lot or a potion of the goods under this Sales Contract in consequence of any Force Majeure incident

(13)买方于收到本售货合同后请立即回签一份，如买方对本合同有异议，应于收到后五天内提出，否则认为买方已同意接受本合同所规定的各项条款。
The buyer(s) is requested to sign and return one copy of this Sales Contract immediately after receipt of the same. Objection, if any, should be raised by the buyer(s) within 5 days after the receipt of this Sales Contract, in the absence of which it is understood the buyer(s) has accepted the terms and conditions of the Sales Contract.

(14)仲裁：凡因执行本合同所发生的或与本合同有关的一切争议，应由双方通过友好协商解决。如果协商不能解决，应提交中国国际经济贸易仲裁委员会，根据该会的仲裁规则进行仲裁。仲裁裁决是终局的，对双方都有约束力。
Arbitration: All disputes arising from the execution of, or in connection with this contract, shall be settled amicably through friendly negotiation. In case no settlement can be reached through negotiation, the case shall then be submitted to China International Economic And Trade Arbitration Commission in Beijing, for arbitration in accordance with its provisional rules of procedure. The arbitral award is final and binding upon both parties.

卖方 The Seller(s):

赤峰艾克制药科技股份有限公司
CHIFENG ARKER PHARMACEUTICAL
TECHNOLOGY CO., LTD.

Sales Manager:

General Manger:

买 方 The Buyer(s):

UNIMED PHARMACEUTICAL S.A. DE C.V.

Signature:

EXHIBIT
NO. B

E-Mail | Comments | E-Mail Newsletters | RSS

ADVERTISEMENT

Associated Press  Associated Press

# 2 Federal Agents Gunned Down in Mexico

Associated Press 08.02.07, 12:26 AM ET

**Popular Videos**
- Adventurer: Peter Buffett
- Inside the Chrysler Sebring Convertible
- America's Next Hip Hop Star
- StreetTalk: Dollar Dividends Strike A Balance
- Notes On The News: Post Euphoria Panic

**Most Popular Stories**
- Best Vacations For Thrill-Seekers
- Top Trips For Singles
- Stunning Solar-Powered Homes
- Meanest Presidential Candidates
- How Big Brands Get Hijacked Online

MEXICO CITY -Two federal agents who took part in a raid that discovered $205 million in cash in a Mexico City mansion were found beaten and shot to death in southern Mexico, authorities said Wednesday.

The bodies of Josue Hernandez, 32, and Anibal Sanchez, 30, both agents with Mexico's Federal Agency of Investigation, were found Tuesday in Guerrero state, where they were gathering intelligence on drug traffickers, the Public Safety Department said in a news release.

Both officers took part in the seizure of more than 19 tons of a chemical intended for methamphetamine cartels in Mexico. They were also in the team of agents who raided Ye Gon's mansion where authorities in March found more than $205 million in cash hidden in closets, the news release said.

The seizures led to last month's arrest of Chinese-Mexican businessman Zhenli Ye Gon by U.S. Drug Enforcement Administration agents in a suburban Washington restaurant.

He is accused in the United States and Mexico of supplying pseudoephedrine to Mexican cartels who then used the drug to make methamphetamine.

Ye Gon has said the chemicals imported by his company, Unimed Pharm Chem de Mexico SA, were legitimate and intended for cold medicines. Ye Gon's lawyers said he has nothing to do with illegal drugs.

The Mexican agents were assigned to high-risk tasks and were "outstanding" members of the federal police, the department said.

Guerrero, which includes the resorts cities of Zihuatanejo and Acapulco, has suffered from a wave of violence including decapitations, shootings and grenade explosions that authorities attribute to warring drug-trafficking gangs.

Copyright 2007 Associated Press. All rights reserved. This material may not be published broadcast, rewritten, or redistributed

end ad

Find Free Wi-Fi Hotspots

**News by E-mail** Get stories by E-Mail on this topic FREE

Topics
- [ ] AP General
- [ ] Latin America and Caribbean

Become a member FREE     Already a Member? **Log In**

Enter E-Mail Address         Select Your Title

Receive Special Offers? ✓

FAQ | Terms, Conditions and Notices | Privacy Policy

**Also available:** E-Mail Newsletters

**More On This Topic**
E-Mail Newsletters: Sign Up Now To Stay Informed On A Range Of Topics
Attaché: Customize Forbes.com Now To Track This Author And Industry

**Article Controls**

E-Mail | Comments | E-Mail Newsletters

del.icio.us | Digg It! | My Yahoo! | Share | RSS

**Related Sections**
Home > News & Analysis

ADVERTISEMENT


EXHIBIT NO. C

# HOWARD
# UNIVERSITY

College of Pharmacy, Nursing and
Allied Health Sciences
School of Pharmacy

Ning Ye, Esq.
Attorney at Law
Washington, DC Office
1150 Connecticut Ave. #900, NW
Washington, DC 20036

July 13, 2007

Dear Attorney Ning Ye:

As an addendum to my previous review of the documents involving the analysis of the white powder substance confiscated from UNIMED Pharmaceutical, additional observations are noted.

- Conclusions made in the Chemical Forensics documents indicated that the white powder substance confiscated from UNIMED Pharmaceutical was determined to be a mixture containing acetamide. In the documents, acetamide was described as a substance that was considered by the General Health Law to be neither a narcotic drug nor a precursor to such illicit drugs.

- However, a report from the Customs Administrator suggests that the white powder substance confiscated from UNIMED Pharmaceutical did not contain acetamide, but instead consisted SOLELY of a substance characterized as a derivative of the alleged controlled contraband. These



EXHIBIT
NO. D

2300 4th Street, NW
Washington, DC 20059

Telephone 202 806 6530
Facsimile 202 806 4636
www.howard.edu

conclusions were determined only after exposing the sample to harsh chemical conditions and heat.

Clearly the two reports are contradictory; thus serious inaccuracies in the documented analysis of the white powder substance are exposed. Given the stated inaccuracies, the methods for characterization should be further scrutinized. For example, it is my professional opinion that preferred methods of characterization involve procedures that do not alter the chemical make-up of the sample under investigation. Yet, the analysis of the white powder substance as documented in the Customs Administrator report appears to be based on results obtained AFTER the sample was exposed to chlorohydric acid and heat. Since there is no other evidence in the Customs Administrator report to support the true identity of the white powder BEFORE exposure to the harsh chemical environment, the report is deemed scientifically unreliable.

Sincerely,

*[signature: LaVerne L. Brown]*

LaVerne L. Brown, Ph.D.
Assistant Professor
Howard University
Department of Pharmaceutical Sciences

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                              |   |                        |
|------------------------------|---|------------------------|
| The United States of America | ) |                        |
|                              | ) |                        |
| Plaintiff                    | ) | File: 07-181           |
|                              | ) | Hon. Emmit G. Sullivan |
| v.                           | ) |                        |
|                              | ) |                        |
| Zhenli Ye Gon                | ) |                        |
|                              | ) |                        |
| Defendant                    | ) |                        |
|                              | ) |                        |

**ORDER**

Upon consideration of the Government's Motion Under The Speedy Trial Act To Exclude Time Given The Complex Nature of the Case and Exclude Time to Obtain Evidence From Foreign Country, and the Defendant's opposition thereto, it is this _____ day of _____, 2007 hereby

**ORDERED** that the Government's Motion is **DENIED**.

_____
Hon. Emmit G. Sullivan
United States District Judge