IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The United States of America | ) |
| | ) |
| Plaintiff | ) File: 07-181 |
| | ) The Hon. Sullivan |
| – against – | ) |
| | ) |
| Zhenli Ye Gon | ) |
| Defendant | ) |

**DEFENDANT'S OPPOSITION TO THE PART OF GOVERNMENT'S INTRODUCTION OF EXPERT TESTIMONY CONCERNING THE FORENSIC EXAMINATION "RESIDUES" COLLECTED ON APRIL 26, 2007**

Defendant hereby respectfully opposes the Government's intent to introduce expert testimony at trial concerning the expert's forensic examinations concerning the specific part of such expert testimony for its obvious violation of Federal Rules of Evidence Rule 402, and Rule 702(2) and (3), if such expert testimony is concerning the so-called "residues collected from the Defendant's laboratory on April 26, 2007 or later.

1. **The Evidence Concerning Residues Grossly Violates the Rule of "Relevance" under Rule 401/402**

Federal Rule of Evidence provides that evidence presented for trial must be relevant evidence. Irrelevant evidence is inadmissible. The U.S.-Mexico joint operation intercepted, confiscated 19.797 metric tons of what both governments alleged "pseudoephedrine" at the Mexican Seaport of Lazaro Cardenas, Michoacan on December 5, 2006. The alleged 19.8 tons of "pseudoephedrine", or "ephedrine", or "ephedrine derivative", was lying in Mexican Infantry Battalion under the Attorney General's order, until May 29, 2007, when, apparently under the U.S. government's permission, these allegedly "precursor chemicals" were ordered eliminated. Assuming these chemicals had not been "consumed" by the Mexican Army Garrison, the U.S. government has more

1

than sufficient time and access to collect samples from such a large quantities of cargos. It appears unreasonable, irrational, and strange that the U.S. Government while leaving the tons and tons of bulk "pseudo-ephedrine" untouched, while sneaking into the sealed place to collect handful of particles of so-called residues of pseudoephedrine from corner after corner for forensic examination.

U.S. Government is supposed to know, that the Defendant used to be a licensed, legitimate pseudoephedrine importer and distributor during the period from 2002 through the end of 2004. Government is also supposed to know that the Defendant is a legitimate, authorized distributor and reseller of the remaining pseudoephedrine inventory under those 2002-2004 import licenses after the end of 2004. What does matter if once a legitimate pseudoephedrine merchant left tiny "residues" from what he was legally permitted to do on bulky scale during the period from 2002 through out 2004. It does not make any sense to present certain pieces of legitimate residue before this Honorable Court for the purpose to prove an alleged "illegitimate drug trafficking", a purely politicized bubbles which has long been collapsed evidence wise.

The Government's such sneaky action is also seen irrational, illogical, and laughable. The U.S. Government also alleged that the Defendant "illegally imported" approximately 60 metric tons of "pseudoephedrine" in addition to, and prior to, that seized 19.8 metric tons of the chemicals under the same "mislabeled" label. Also according to DEA Official's K. Hooton's Affidavit, the joint investigation by U.S. DEA and the Mexican law enforcement had started as earlier as March 2006, these 60 additional metric tons of "precursor drugs" was stored just under the eyelid of both

Mexican and U.S. Government.  Assuming U.S. Government's testimony were true, U.S. Forensic team or DEA team can easily take samples from all such bulky inventory, they don't have to bother to sneak around to take particle after particle of "pseudoephedrine residues" from all corners which could be the footage under the 2002-2004 out-of-date lease?  While the U.S. government has left the 2006-2007 freshly imported, bulky stock of "illicit drug" untouched, but busy with collecting old particles that could have been 2-3 years of old.  Therefore, to introduce such evidence, the U.S. Government's has failed to establish the relevance between a 2007 fresh case, and possibly 2003/2004 old "residue", while leaving December 2006 bulky inventory to be eliminated using the hands of Mexican authorities?

It is apparent that the Government has failed to establish that the relevance between the "pseudoephedrine residue" found at places of a once licensed "pseudoephedrine" importer and distributor and the charge of his "illegal transacting methamphetamine" or its misxture into the United States.  For the obvious reason, Defendant's opposition will be withdrawn if the U.s. Government once again, changes its version of its story, alleging that the "residue" they found and tested is "Methamphetamine" or safrole" or "MDMA", instead of pseudoephedrine.  Then, it has its bite.  Otherwise, for obvious reason, such an introduction of intentionally confusing and misleading evidence should be suppressed.

2. **The Evidence Concerning Residues Grossly Violates the Public Policy under Rule 403; Such an Evidence was Collected by apparently violation of Rule 702 (2) and (3).**

While walking away from the large stock of tons and tons of "incalputory" evidence of alleged "precursor drugs", the government's intent to introduce such a

3

"residue related" evidence has apparently violated the Rule 403, even though such a expert testimony on "residue" could be "relevant".

> "Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence" (Rule 403).

Government's efforts to introduce wasteful and misleading expert testimony concerning its groundbreaking finding of "pseudoephedrine" from the place of once-legitimate pseudoephedrine merchant, is designed in bad faith, to shift the enter of gravity, whether the freshly imported chemical products outside the duration of its legitimate license period, according to its strict chemical identification and characterization, is "psuedoephedrine" or its derivative? One must understand, that Officer Eduardo Chavez's funny calculation of the quantity of this Defendant's transaction of "convertible Methamphetamine", i.e., 38,000 killograms of meth, is not reduced from the "residues", neither was it reduced from his 2002-2004 lawful transaction, it was computed from the metric tonnage of what he was accused for being imported from China on December 5, 2006, and shortly before. But when the question comes to ascertain the scientific nature of these imports, the government jumped away from all these imports, but sneaked into "residues" of unknown age.  While busily jumping from one point to another, the government just carefully avoid to jump into one narrow spot: the truth.

4

To allow such suspicious, prejudicial evidence, presented in apparent bad faith, will seriously confuse the issue, and mislead both the jury and the court, hence it will severely prejudice this Defendant's vital penal interests: his innocence as is.

### 3. The Evidence Concerning Residues Grossly Violates the Rule 702 (2) and (3).

Federal Rules of Evidence Rule 702(2) provides that the expert testimony must be the "product of reliable principles and methods", while Rule 702(3) further specifies the expert witness "has applied the principles and methods reliably to the fact of the case."

The U.S. Government employed forensic expert(s) had no reason to have waited 6 full weeks after March 15, 2006 search of the Defendant's place, and went to the Place which had been searched, sealed, guarded, controlled, and manipulated by the infamously corruptive, fraudulent Mexican Carderone Regime before they woke up to rush to the scene for collecting "residues".  Such a misconduct of apparently undue delay has violated the clandestine forensic laboratory guideline as of what reliable principles mean.  While the Government's Forensic Experts' suspicious choice of staying away from the large bulk of tons and tons of existing "pseudoephedrine" inventory for sample-taking purpose has apparently rendered its methods "unreliable".

Consequently, such an expert evidence in violation of Rule 702 (2) and (3) should be excludable, and thus be suppressed.

### 4. The Government Proposed Expert "Explanation" on "Conversion of Pseudoephedrine"/"Ephedrine" into "Methamphetamine" Should be Barred for Grossly Violation of the Rule of "Relevance" under Rule 401; for Being Confusing, Misleading, Wasteful and Hence Prejudicial per Rule 403

5

In absence of any single piece of probative evidence incriminating the defendant's involvement in "meths" activities at anywhere, much less in the United States, Defendant also opposes the proposed DEA Forensic Chemists' testimony "regarding the process to obtain methamphetamine from pseudoephedrine" or ephedrine". This sort of "Expert Explanation of conversion" process is totally detached from the merits, if any, of this instant case, therefore, it is completely irrelevant.

In the forensic chemistry community, conversion of psuedoephedrine into Methamphetamine, is a common knowledge. Unfortunately, such a common knowledge is irrelevant to this instant case, because the Government has not found, certainly will not be able to find in any visible future, find any single piece of evidence to prove that this Defendant has ever involved in any single particle of meth trafficking, trade, manufacture, any transaction you name it. Neither be it able to properly, and ethically find any evidence in substantiate the bubble: Defendant transacts illegal precursor drugs of any kind. Under such circumstances, a forensic explanation concerning how can pseudoephedrine be converted into methamphetamine, is the same thing like on how can a bag of laundry powder be "converted into" terrorist explosive "TNT" (by adding nitric acid) to laypersons. Such "expert forensic explanation" will have only one wrongful impact: confuse the issues and mislead the jury.

Based on the foregoing, Defendant respectfully opposes the Government's introduction of its forensic expert testimony concerning the above-referenced issues.

In the foregoing light, the Government's Introduction of such prejudicial, and irrelevant expert testimony must be suppressed. Wherefore, Defendant respectfully prays that such wrongfully prepared expert witnesses in bad faith be excluded once and ever.

Respectfully submitted by:

/s/ Ning Ye,  Esq  Esq.____
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4334
ynyale@aol.com

*Counsel for Defendant Ye Gon*

**CERTIFICATE OF SERVICE**

On this 17th day of September, 2007, I electronically filed the foregoing Opposiotion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Paul Laymon, Esq.
U.S. Dept. of Justice
1400 New York Avenue, NW
Bond Bldg. 8th Fl
Washington, DC 20530


/s/ Ning Ye, Esq Esq.
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4334
ynyale@aol.com

*Counsel for Defendant Ye Gon*