**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| The United States of America | ) |
| | ) |
| Plaintiff | ) File: 07-181 |
| | ) The Hon. Emmit Sullivan |
| against – | ) Oral argument prayed |
| | ) |
| Zhenli Ye Gon | ) |
| | ) |
| Defendant | ) |

# DEFENDANT RULE 12 MOTION TO DISMISS THE INDICTMENT HENCE TO DISMISS THE CASE FOR ITS ENTIRETY *WITH PREJUDICE*

## Table of Contents:

Defendant's Rule 12 Motion to Dismiss                                    1.

Table of Contents                                                        1

Table of Authorities                                                     2

Memorandum of points and authorities in support of defendant's motion    5
to dismiss the indictment with prejudice

I. Introduction                                                          15

II. Procedure posture                                                    24

III. ARGUMENT                                                            25

1.     INDICTMENT IS FATALLY DEFFICIENT ON ITS SURFACE:
       GOVERNMENT 'S FAILURE TO PROVIDE ADEQUATE NOTICE
       OF THE CRIME CHARGED                                              25

2..    FATAL DEFFICIENCY IN CONSPIRACY CHARGE                            30

3..    VINDICTIVE PROSECUTION IN VIOLATION OF DUE PROCESS                33

4.     THE INDICTMENT SHOULD BE DISMISSED FOR PROSECUTORS'
       INTENTIONAL CONCEALMENT OF EXCULPATORY EVIDENCE
       AS TO GRAND JURY                                                  37

5.    DISMISSAL OF THE INDICTMENT IS APPROPRIATE GIVEN
      TO GOVERNMENT'S FAILURE TO RESPECT THE GRAND
      JURY AS AN INDEPENDENT LEGAL BODY                           44


5.        DISMISSAL OF THE INDICTMENT IS APPROPRIATE GIVEN
          TO THE GOVERNMENT'S EGRGIOUS OMMISSION ALLOWING
          THE MEXICAN AUTHORITIES TO DESTROY THE PHYSICAL
          EVIDENCE OF ITS FRAUD: THE 19 METRIC TONS OF
          CHEMICALS IN QUESTION                                   47

6.  DISMISSAL OF THE INDICTMENT IS APPROPRIATE GIVEN TO THE
    GOVERNMENT'S MOST RECENT IMPLICIT  ADMISSION OF THE TOTAL
    COLLAPSE OF CHARGING "EVIDENCE", WHICH APPEARS OF WILLFUL
    "FRAUD"  FROM MEXICAN GOVERNMENT, IN SUPPORT OF FRIVOLOUS
    CHARGE.                                                       49

IV. CONCLUSION                                                    52


Certificate of Service                                           53

## Table of Authorities:

United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976).     18

*United States v. Boone*, 951 F.2d 1526, 1542 (9th Cir. 1991);     26

*United States v. Buckner*, 610 F.2d 570, 573 (9th Cir. 1979) 455 U.S. 961 (1980)  26

*United States v. Giese*, 597 F.2d 1170, 1177 (9th Cir. 1979).     26

United States v. Pickett, 353 F.3d 62, 67 (D.C. Cir. 2004).     26

*Jones V. United States, 526 US 227 (1999)*     27

*U.S. V. Miller 471 US 130, 134, 135 (1985)*     27

*Johnson V. U.S. 613 A2d, 1381, 1384 (DC Cir. 1992)*     27
*Clemons V. U.S. 400 A2d, 305-306 (DC 1979)*     28
*Patterson v. U. S. 575 A2d, 305, 306 (DC 1990)*     28

*United States v. Olderbak*, 961 F.2d 756, 760 (8th Cir. 1992)     27-28

*United States v. United States Sav. & Loan*, 9 F.R.D. 450, 452 (D.D.C. 1949)     31

United States v. McBride, 498 F.2d 683, 685 (D.C. Cir. 1974);     31

U.S. v. Russell, 269  U.S. at 763-64     31

Jones v. United States, 526 US 227 (1999)     31

Hamling v. United States, 418 U.S. 87,  116 (1974);     31

United States v. Conlon, 628 F.2d 150, 155 (D.C. Cir. 1980)     31

U.S. v. Threadgill, 172 F.3d at 366     31

Cochran and Sayre v. United States, 157 U.S. 286, 290     32

Rosen v. United States,161 U.S. 29, 34     32

Hagner v. United States, 285 U.S. 427, 431     32

Potter v. United States 155 U.S. 438     32

Bartell v. United States 227U.S. 427                                              32

Berger v. United States, 295 U.S. 78,82                                          32

United States v. Debrow, 346 U.S. 374, 377, 378                                  32

United States v. Montelongo, 420 F.3d 1169, 1173 (10th Cir. 2005).              33

Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)                                 33

United States v. Meyer 810 F.2d, 1242, 1245 (DC Cir. 1987)                       36

Moran v. V. Burbine 475 US 412 (1982)                                            37

North Carolina v. Pearce, 395 U.S. 711, 724 (1969)                              37

Alabama v. Smith, 490 U.S. 794 (1989)                                            37

United States v. Jackson, 390 U.S. 570, 581(1968))                              37

Guam v. Fegurgur, 800 F.2d 1470, 1473 (9th Cir.1986).                           37

Blackledge v. Perry, 417 U.S. 21, 28 (1974);                                     38

United States v. Groves, 571 F.2d 450, 454 n.1 (9th Cir. 1978)                  38

United States v. DeMarco, 550 F.2d 1224, 1227 (9th Cir. 1977)                   38

United States v. Ruesga-Martinez, 534 F.2d 1367, 1369 (9th Cir. 1976)          38

United States v. Shaw, 655 F.2d 168, 171 (9th Cir. 1981)                        38

United States v. Groves, 571 F.2d at  453                                        38

United States v. Spiesz, 689 F.2d 1326, 1328 (9th Cir. 1982)                    38

United States v. Burt, 619 F.2d 531, 536 (9th Cir. 1980)                        38

United States v. Johnson, 171 F.3d 139, 140 (2d Cir. 1999) (per curium)        38

Brooks v. United States, 450 U.S. 927 (1981)                                     39

City of Houston v. Hill, 482 U.S. 451, 462-63 (1987)                            39

U.S. v. DeMarco, 550 F.2d at 1227                                                40

United States v. Groves, 571 F.2d at 453

37Brady v. Maryland 373 US 87                                              42

United States v. Nance, 533 F.2d 699, 701 (D.C. Cir. 1976).               42


U.S. v. Short and Green, 777 F. Supp. 40, 1991, U.S. Dist. Lexis 16380   42

U.S. v. Reid 911 F.2d 1456 (10th Cir. 1990)                              44

Nogan v. United States, 712 F2d 757, 759 (2nd Cir. 1983)                 45

U.S. v. Taylor 487 U.S. at 338-39                                        46

United States v. Doran, 882 F.2d 1511, 1517 (10th Cir. 1989)            50

United States v. Vaughn, 370 F.3d 1049 (10th Cir. 2004).                50

Zedner v. United States, 126 S.Ct. 1976, 1984-85 (2006)                 51

United States v. MacDonald, 456 U.S. 1, 8 (1982).                       52

**U.S. Constitution, Federal Statute Cited**:

U.S. Constitution: Amendment V. and VI;

Rules of Federal Criminal Procedures: Rule 12

18 USC 3161; 18 USC 3288;

Other Authorities and Cross-References:

ABA Standards, Section 3.6(b) (2nd ed. 1980)

U.S. Attorney's Manual, Section 9-11, 334

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| The United States of America | ) |
| | ) |
| Plaintiff | ) File: 07-181 |
| | ) The Hon. Emmit G. Sullivan |
| against – | ) Oral argument prayed |
| | ) |
| Zhenli Ye Gon | ) |
| | ) |
| Defendant | ) |

**DEFENDANT RULE 12 MOTION TO DISMISS THE INDICTMENT HENCE TO
DISMISS THE CASE FOR ITS ENTIRETY *WITH PREJUDICE***

Defendant Zhenli Ye Gon, by and through undersigned counsels, respectfully moves

pursuant to Federal Rule of Criminal Procedure 12(b)(3) of the Federal Rules of Criminal

Procedures, for an order to dismiss Count One, the sole count of criminal charge brought

in the indictment.

Defendant respectfully moves that the Grand Jury Indictment charging the defendant

for Conspiracy in drug trafficking in violation of  21 USC. §959, 21 USC. §960, 21 USC.

§963,  and 18 U.S.C. §2,  together with the whole case for its entirety, with prejudice,

without reference to geographic territorial restriction, be dismissed.  The fatally flawed

Grand Jury Indictment, henceforth the entire case for its totality,  must be dismissed with

prejudice:

a.  ***Prosecutorial dilatory, neglectful conducts in bad faith as prejudicial to***
   ***Defendant;***

b.   ***Failure to provide the Defendant with adequate notice of the crime charged;***

c.  ***Vindictive prosecution in gross violation of due process against Defendant;***

d.   ***Willful concealment of exculpatory evidence having caused prejudicial consequence to Defendant***

e.   ***Complete and total failure to plead a sufficient cause of action*** and for such other reckless, fatal, and incurable deficiencies.

The Motion to dismiss is based upon the following findings of legal,  factual and evidentiary grounds:

1.   The Prosecutors knew and should have known that based upon the evidence and information, including such exculpatory evidence and information they have either received from the Government of Mexico, the place of origin of the alleged offense, or the Government of the People's Republic of China, an integral part of the chain of custody of alleged "criminal evidence" and the starting point of the alleged "drug cartel", it has been crystal clear that there is no such a thing as alleged "illicit drug trafficking" in this instant case.  This well established factual truth has been further fortified by partial revelation of the truth, certain critical exculpatory evidence as the "party's admission", the Forensic Laboratory Testing Report conducted by the National Forensic Laboratory under the Attorney General's Office of the Republic of Mexico, in connection to Defendant's presentation of such voluminous documentary evidence as Purchasing Contracts, Bills of Lading, Cargo Packing lists.  Such an exculpatory evidence was willfully concealed to the Grand Jury on July 26, 2007, the processing has precluded the defendant's presence though he is available for testimony before grand jury.

2.    The Prosecutors knew and should have known that exculpatory evidence did exist when the Government interviewed and interrogated these key witnesses in China, specifically, in Chifeng Arker Pharmaceutical Technology Co. Ltd, (hereinafter referred to as "Chifeng Arker") situated in Inner Mongolia, the People's Republic of China during the later of March, 2007. Based upon the the best information, all witnesses interviewed by the USDOJ's fact-finders dispatched there, denied that Chifeng Arker, the only and sole supplier of chemical agents in dispute to Defendant and his Mexico based enterprise, namely, Unimed, had ever sold, supplied, packed, shipped, insured, cleared with export controls, with ***anything other than* what had been provided and specified under the Sales/Purchase contracts** concluded between Defendant Zhenli Ye Gon and Chifeng Arker, ***through out the entire period outside the timeframe of the Defendant's Pseudoephedrine importation license.*** However, allegedly for such bad faith to merely patronize an incurably corrupted foreign power's politicized agenda in color of law, the prosecutors willfully concealed such exculpatory evidence before the Grand Jury.

3.    The Prosecutors have completely ***failed to provide the Defendant with adequate notice of the crime charged*** .  Though both the Indictment and Officer Chavez' Affidavit in Support of the Indictment involved mere speculative and conclusive remarks concerning the Defendant's alleged conspiracy in knowingly aiding and abetting manufacturing and distributing 500 grams of more Methamphetamine "into the United States", all charging documents, except for DEA Officer K. Hooton's most misleading, least

credible Affidavit issued on March 22, 2007, has certain evasive remarks.) has completely failed to present with minimum degree of certainty: co-conspirator(s), principal criminal(s) having been aided and abetted by this defendant, any visible, invisible but realistically imaginable U.S. links. The government's actions and omissions are a typical case of the failure to provide adequate notice of the crime charged, a ground for dismissal. ***As matter of factual impossibility, the fact that the sole supplier of the chemical substance now in dispute is an integral part of the government of the People's Republic of China itself is an exculpatory evidence, even though this factor is by no means a mere element to be considered in light of common sense.***

4.    Document and information, particularly, DEA Officer K. Hooton's Affidavit of March 22, 2007, demonstrates that the U.S. Government has been jointly working with, highly likely commanding and bossing, the law enforcement of Mexican Republic since March 2006 in the joint case investigation in this instant criminal investigation, nevertheless, it allowed, or take no efforts to prevent, or even likely to urge, the office of the Attorney General of Mexico to destroy the most important and concrete evidence, say, the entire shipment of 19.8 metric tons of what Mexican Government alleged "pure" or "partially" psuedo-ephedrine" in self-contradictory, self-destructive, multiple government version of chemical agents attributed to defendant allegedly "criminal liability" based upon the governments' tainted forensic examinations.   The Prosecutor's intentional or reckless misconduct leading to the destruction of evidence is a proven neglectful and dilatable conduct most likely stemming out of its bad

faith to cover up the ultimate truth of this instant case before this Honorable Court;

5.    Apparently for the purpose of misleading the Court and public opinion, confusing the jury, paving its way to gain undue prosecutorial advantage, the prosecutors in this instant case, wrongfully accused this Defendant for excessive gambling, and alleged "net loss" of "102 million U.S. dollars in Casino at Las Vegas, Nevada; the Government also accused this Defendant for his efforts to import "Hydroxyl Benzyl-N-Menthyl Acetamide", Government also accused this Defendant's efforts to build the Latin America's largest pharmaceutical conglomerate by importing great number of assembly lines from Germany and other countries, Government also mistakenly accused this Defendant for his wife's alleged "conviction" and "several years prison term"; Most importantly, the root cause that triggers all these unsupported "illegal drug allegations" is stemming from the government's information concerning this Defendant's custody of approximately 210 Million U.S. dollars.  All these have formed the solid basis for vindictive prosecution in gross violation of this Defendant's due process rights, rendering this case dismissible with prejudice, per se.

6.    The indictment, particularly the principal case investigator, Special Agent Eduardo Chavez's Affidavit Statement, referred to importation, manufacture and distribution of Methamephetamine for more than ten times, however, the indictment has completely failed to present any single evidence which may

even remotely link the defendant to any meth related activities, neither in the
United States, nor in the state of Mexico, or anywhere else;

7.  The Indictment failed to present any credible evidence to prove  that the
Defendant had imported pseudoephedrine into the United States, while it is not
even sufficient to prove that the chemical agents imported by Defendant's
company, Unimed, and seized by Mexican Customs, ended up in 82nd Infantry
Battalion is not what Defendant claimed legitimate chemical agents, but
"pseudoephedrine" or "N-Acetylpseudoephedrine".  To prove such fact only
requests U.S. Forensic Laboratory Testing Report upon untainted samples, the
Indictment and its only Supportive Affidavit Statement issued by Officer
Chavez mentioned his conversation with USDEA's FC, (Forensic chemists),
however, for unknown reason, the government has so far failed to provide any
such forensic chemist report in substantiate the government's allegation on
"pseudo-ephedrine".   An alleged "impression" from un-recorded conversation
may not be a credible evidence to prove such a serious drug charge.  On the
other hand, the  Government does have Mexican FC's forensic examination
reports, the government is apparently reluctant to build its charge upon such
Mexican FC reports because these "Made in Mexico" products are either
having birth mark of fraud and perjury, or conclusively exculpatory, the
Government of the United States in this instant case refused to jump into the
truth;

8.  The indictment charges Defendant to "aid" and "abet" manufacture of
methamephetamine. The Indictment has gone so far that it has even given the

quantity of the meth manufactured under the aiding and abetting by this Defendant: 35,658 kilograms.  However, the same indictment has left such logically following questions completely unanswered: **Who are the persons being aided and abetted?** Where is the meth manufacturing location? Where are these meth manufacturing equipments? Facilities? Who is (are) the buyer(s)? U.S. DEA Officer Hooten, in his affidavit issued on March 22, 2007 has mentioned Meth manufacturing machineries, allegedly seized by Mexican AFI, concerning its production capacity: "millions of tablets every day", "frequently used by the operator of clandestine laboratories to produce large quantities of tablets containing 3.4-methylenedioxymethamphetamine…" However, neither indictment, nor Affidavit in support of the indictment, did mention Officer Hooten's earlier version of "meth mass production equipments".   In the racing of wild speculations, Officer Eduardo Chavez's Affidavit acclaimed the Mexican authorities' seizure of two lager clandestine meth labs in the West Hemisphere (Guadalajara and Jalisco, Mexico) in January and December 2006 respectively, we did not see any linkage that was sketched by the Government to implicate this defendant's involvement.  Much less has the government provided any information concerning alleged "meth manufacturing" in the United states.

9.     Officer Eduardo Chavez also admitted that on April 26, 2007, he and other USDEA officers re-searched Defendant Ye Gon's manufacturing plant in Mexico, and collected *samples of chemical residue*, "including samples which tested positive for the presence of ephedrine".  Government has failed to

mention that the Defendant was legitimately allowed to leave "residue" of pseudo-ephedrine in his warehouse, laboratory or his factory. Because he was a licensed importer and distributor during the period from 2002 through end of 2004.  He is also a legally authorized distributor until 2006, theotically including this very moment, of all remaining pseudoephedrine inventory under the 2002-2004 government issued import permit, so long as all regulations are strictly observed, while no bad faith or mans rea is involved. Therefore, any peudoephedrine/ephedrine left-over from what had been imported during the licensed importation-distribution periods is legally allowed to dispose under the COFEPRIS supervision, and recorded by the log book. Such exculpatory factors were intentionally concealed from the Grand Jury;

10.    Officer Eduardo Chavez's Affidavit made an allegation concerning a hand-note referring to "Flour" and "book" signed by an "Amigo, and addressed to "Zhenlin" ("Zhenli"?).   Government has failed to disclose to either the Grand Jury or to this Honorable Court that "new" handwritten Note is actually "hand-written Note" number II.   From Affidavit Statement issued by USDEA Officer K. Hooten on March 22, 2007 asserted his finding of a "hand-written note listed 20 metric tons of Safrole", "used in clandestine manufacturing of MDMA, a schedule II controlled substance", was found in Defendant's Mexican Residence, "in addition to cash and firearms".   For better record purpose, we call it "handnote number 1".  Defendant Ye Gon was confused that he has never involved in any single particle of Safrole through out his life time thus far. While Mexican Authorities also denied its involvement in finding of

such Safrole-MDMA "handwritten recipe". (See K. Hooten's Affidavit

Statement, page 6 and page 9, as Exhibit #1)  That handwritten note number I

no longer appears in government's charging documents.  However, its

transfigured replica, now, a so-called "AMIGOS message", as handwritten note

number II,  takes the original place of its predecessor. (See U.S. SA Eduardo

Chavez: Affidavit in Support of Indictment, page 6,  Exhibit #2)  The "Flour-

book" Amigor Message has failed since its foundational requirements of Fed.

R. Evid. 801(d)(2)(E) were not met and the documents were not relevant to the

charged conspiracy.

11.    The Indictment charges that Defendant's drug trafficking activities has started

since the year of 1999.  there is completely no evidence in support such an

allegation.  Moreover, for this critical part, the Indictment appears

contradictory to the fact presentation by Officer Eduardo Chavez' Affidavit, the

sole document in support of the Indictment.

12.    The Indictment was not properly signed by foreperson. This misconduct

represents a serious government irregularity.  But most importantly, such Grand

Jury Indictment obtained by the Government through such means at the back of

the Defendant as discussed supra is apparently the government's bad faith

efforts to circumvent all constitutional safeguard as what due process

commands, and also circumventing such criminal procedural safeguards as

probable cause hearings, in order to obtain undue prosecutorial advantage, by

tramping upon, and complete disregard the defendant's constitutional rights,

civil rights, and minimum decency of criminal procedures in a civilized judicial

system under the constitutional democracy.

Based upon the foregoing, this Grand Jury Indictment should be dismissed for its fatal

deficiency committed in bad faith.  There is no sheer evidence in substantiate the

Government's probable cause to prove make any person believe that Defendant has

committed offences under 21USC 959,960, 963 and 18USC 2.  The undeniable truth is

that this is a frivolous criminal case but the one of  political tenet.  The U.S. Government

is under the great pressure for patronizing a corrupted regime which is the ultimate source

of all frivolous charges supported by nothing but fraudulently made-up "evidence", an

evidence of government sponsored fraud and perjury.

With the collapse of evidence in charging drug related offense failed, the

government's derivative allegation for money forfeiture, without even bothering to

conduct a forensic auditing, which shall become legally enforceable upon the charge of

principal offenses.  While evidence in support of principal charges fails, forfeiture actions

shall fall unsupported.  Defendant respectfully moves for dismissal of the forfeiture

section of the Indictment based upon same legal, factual and evidentiary basis, provided

such a motion shall not construed to be prejudicial to Defendant's any other pretrial

efforts to claim his legal title to his legitimate property unlawfully seized and forfeited by

the Government of the United States under within the same scheme of frivolous charges

originated from the State of Mexico.

Wherefore, Defendant respectfully moves that the entire case together with the grand

jury indictment be dismissed with prejudice,   A Memorandum of Points and Authorities

in Support of the Defendant's Motion to Dismiss is hereby respectfully attached to this

Motion.  A Memorandum of Points and Authorities in Support of Motion is also

respectfully submitted.

A pretrial hearing and oral argument upon this motion held by this Honorable

Court is also respectfully prayed.  Concerning the Defendant's present situation as being

held for pretrial detention without bail, he respectfully pray that such oral argument

session concerning this motion is held as expeditiously as possible.

Respectfully submitted:

Ning Ye, Esq. (DC Bar Number MD26804)
Counsel for the Defendant
DC Office:
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036
Telephone: (202) 862-4334

Email: ynyale@aol.com

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT WITH PREJUDICE

### I. INTRODUCTION.

Defendant Zhenli Ye Gon was arrested on July 23, 2007, without being shown of any arrest warrant.   The sole count Indictment, unsigned, whose issuing date is not clear, charges the Defendant, for the related parts, the following offenses:  "From in or about 1999, the exact date being unknown to the Grand Jury, and continuing thereafter up to and including the date of filing of this Indictment, in the countries of Mexico, El Salvador, the United states, and elsewhere, the defendant, Zhenli Ye Gon, and other known and unknown to the Grand Jury, did unlawfully, knowingly, and intentionally combine, conspire, confederate and agree with each other and with other co-conspirators *unknown* to the Grand Jury…to aid and abet in manufacture of 500 grams or more of mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance into the United States…", in violation of 21 U.S.C. §§ 959 and 960, 963 and 18 U.S.C. § 2; (Please see Grand Jury Indictment, pp 1-2)

The Indictment fatally fails to plead the essential elements of Federal drug offense of manufacturing of methamphetamine in and out of the United States, it fails to plead the offense of "conspiracy" by failure to bring any co-conspirator(s),  it also fails to plead the aiding and abetting offense, instead incanting the statute by rote without any articulation of a legal or factual basis for the charge: a complete absence of any credible evidence of any probative value of any kind in substantiating its charge except for mere speculations. Moreover, it has completely violated the "constitutional disclosure requirement" in the landmark case as Brady v. Maryland 373 US 87 when it is found that the Prosecutor in this case intentionally concealed critical  exculpatory evidence in favor of Defendant, including, but may not be limited to,  the DEA officials criminal investigation conducted in Inner Mongolia, China during the last week of March, 2007.  Not a single word has

ever been mentioned either in Grand Jury Indictment or in the principal investigator, the SA Eduardo Chavez's Affidavit, the lone document in support of the Indictment Petition. With all these violations for the records, the proper result is dismissal. United States v. Nance, 533 F.2d 699, 701 (D.C. Cir. 1976).

There is fatal deficiency in violation of Rule 12(b) in the undated Grand Jury Indictment and the sole evidence in support of the Indictment, namely, the Affidavit Statement submitted in support of the government's petition for grand jury indictment by SA Eduardo Chavez.

There is a complete absence of any incriminating evidence demonstrating that the defendant has ever involved in any criminal activities involving manufacture, distribution of methamphetamine in the United States.   There is no evidence demonstrating that the defendant has ever involved in any criminal activities involving manufacture, distribution of methamphetamine in the State of Mexico or anywhere else.  There are several pieces of "evidence" attempting to prove that the Defendant has committed such offense as of "crime against public health" by "illegally importing Psuedoephedrine into the State of Mexico".  Such "evidence" was turned out either to be of fraud, or simply exculpatory. On June 25, 2007, Mr. Eduardo Medina-Mora, the Attorney General ordered the destruction of all 19 tons of what he alleged "pseudoephedrine" being entrusted to 82nd Mexican Army Infantry Battalion in Mexico.    This case, from its original place, the state of Mexico, appears a frivolous one.  All supporting evidence, if any, has been totally collapsed on Mexican side, due to its widely infected epidemic of government sponsored fraud.  Under the growing political pressure, the U.S. Government takes the case and

initiated the criminal prosecution against the Defendant in the U.S. District Court for the District of Columbia.

The Defendant did not involve in any illegal importation, or any other transaction of either Methamehpetamine (meth), MDMA, or controlled substance or precursor chemicals, or any "mixture containing detectable amount of controlled substance" or "precursor chemicals" in the United States, neither has he involved in any such offenses in Mexico or anywhere else. .

Defendant Zhenli Ye Gon is a naturalized Mexican citizen of ethnic Chinese origin,. Defendant Ye Gon is also father of three U.S. born minor children. Defendant is a law abiding, successful business entrepreneur, engaging in variety of legitimate business activities.  One of several of his solely owned business entities is Unimed Pharmaceutical Corporation, now destroyed by the police forces of Mexico, a pharmaceutical conglomerate which imported 22 state of art assembly lines using the world's most advanced cutting-edge technology from Germany, Italy Switzerland and the United States.  That flag ship in the entire Latin America's fleet of pharmaceutical industry has the projected production capacity taking at least 10% share of annual production of  pharmaceuticals for the entire nation of Mexico.   It is designed to produce antibiotics, birth control medicine, cardiovascular related medicine, cold medicines, solid and liquid, medicine in oncology, and hospital IV bags, etc.  The plant together with a residential compounds designed for employees' dormitory, was situated in the suburb of Mexican City, adjacent to Marriott Hotel, a transparent, publicly

accessible group of building compounds, with no divisions of army to protect its normal, legitimate business operation.

During the period from mid 2002 through the end of 2004, Defendant was lawfully transacted, imported and distributed "pseudo ephedrine" in Mexico, with the government permit, issued by the Federal Department of Public Health.  Defendant, with the permit, under the quota assigned upon each permit, issued by the Department of Public Health, and under the strict supervision of Mexican Federal Commission for Protection Against Sanitary Risks, was engaging in importing and distribution of pseudoephedrine, a controlled substance.  Unimed's normal business operation in relation to Pseudoephedrine was undertaken under the government permit, the quantity of importation had never exceeded the government assigned quota, all the buyers are Mexican Government designated buyer, the sale price, was normal market price for legitimate pharmaceutical wholesale price.  All these transactions were recorded with COFEPRIS controlled log book, and it would also be required to report to the United Nations.  During that period, specifically in 2003, Defendant contracted with Chifeng Arker Pharmaceutical Technology Corporation for the latter to help build one *polytechnic laboratory*, incomplete upon defendant's order, within the Unimed pharmaceutical giant complex.  It was originally designed to introduce Chifeng Arker's cutting-edge know-how in numerous synthesis technology.  For the reason unknown to Chifeng Arker, Defendant Ye Gon had stopped all plans in relation to pseudoephedriene before his Pseudoephedrien permit became expired.  Therefore, Defendant Ye Gon had ordered a stop construction of the critical section of that polytechnic laboratory.  Under the Defendant's order, the future chemical reaction process, purification section and testing

lab remained *undone*, water supply system remained undone.  The facilities did not have major electric power supply.  With these measures, no one would be able to use such an unfinished laboratory to produce pseudoephedrine.  The policy reason behind the Defendant's interruption of such project in middle is that he had decided to abandon the out-dated pseudoephedrine market, instead to grab the novel technology of Phenylephrine HCL.   When Defendant Ye Gon, being a pioneer in Latin America's pharmaceutical technology, he obtained the cutting-edge technical know-how in synthesizing Phenylephrine HCL, using non-controlled chemical raw materials, namely, Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne),  also known as ACETAMIDE*"*.

Acetethamtne, or ACETAMIDE, is such proprietary key ingredients to produce phenylephrine HCL, and at least such eight (8) other legitimate pharmaceutical products as Albuterol Inhalation, also known as Aersol (Subtanmol) in WHO's nomenclature, whose technical know how has been obtained by Defendant Ye Gon, and planned for Unimed mass production using those 22 state of art assembly lines imported into Mexico, mostly purchased from Germany.   Approximately in 2003-2005 period, nevel technology in Phenylephrine HCL has been gradually used in U.S. pharmaceutical industry to replace the outdated one of Pseudoephedrine.  In Latin America continent, however, such a cutting edge technology had been known to few, if not none, of other pharmaceutical companies.  It will be a good opportunity for Defendant to take the continent's lead, or even to take the monopoly the market using novel technology.

Phenylephrine HCL is a legitimate drug, not in controlled list, either in Mexico, or in the United States.

Therefore, when Mexican Government ceased to issue the Defendant the permit of importing pseudoephedrine, the Defendant immediately stopped importing and purchasing pseudoephedrine, except for disposing the remaining pseudoephedrine following the COFEPRIS direction, under the latter's supervision, recorded in the pseudoephedrine log book, which has been clean and neat. Continuing store and distribution of the remaining pseudoephedrine imported under the government issued permit, under the supervision of the Department of Health is lawful in Mexico.

What triggered the outburst of this entire case is a shipment of 19 tons of non-precursor chemical property imported from China into Mexico through proper Mexico's customs clearance and confiscated by the latter in December 2006.

About this event, the U.S. investigator, Officer Eduardo Chavez's Affidavit in support of Indictment, wrote in following, quoted:

> "On December 5, 2006, Unimed once again attempted to import 19,797 metric tons of Hydroxy-Benzyl-N-Methyl-Acetethamtne which was flagged for inspection by Mexican Customs at the Pacific Sea port of Lazaro Cardenas, Mexico. A sampling of the substance conducted by the Mexican Customs Central Laboratory identified it as N-Acetylpseudoephedrine, a derivative of pseudoephedrine/ephedrine. The substance is controlled by Mexican Federal health law as well as Mexican federal precursor law making it illegal for Unimed to import." ((Please see SA Eduardo Chavez's Affidavit in support of the Government's Indictment, page 1 and page 3). Id. P3.

Therefore, the government found "…Ye Gon willfully intended to import a restricted chemical into Mexico, violating Mexican law, for the express purpose of manufacturing pseudoephedrine/ephedrine, a listed by Title 21, United States Code Section 802(34)".

Referring to Government's criminal charge specified in its Grand Jury Indictment: Conspiring to commit and committed the offense against the United States by aiding and

abetting in manufacture of 500 grams or more of a mixture and substance containing a

detectable amount of methamphetamine." Here, the Defendant was charged for

controlled substance and now controlled substance has been found through Mexican

Customs Crime Lab's forensic examination.

Apparently acting on bad faith, the U.S. Government has intentionally concealed

the following compelling exculpatory evidence in favor of the Defendant, from both this

Honorable Court and the Grand Jury:

The Mexican Customs' Crime lab's report, when it was cited by Special Agent

Eduardo Chavez to the Grand Jury, the Government has concealed several well

documented frauds committed by Mexican authorities, and others:

> The Mexican Customs Crime Lab's finding based upon its forensic laboratory test
> into the samples from the same shipments, i.e., 19 MT allegedly "N-
> Acetylpseudoephedrine" *convertible* to meth, was contradicted with the Forensic
> finding made by the National Forensic Laboratory under the Attorney General's
> Office of that country when it conducted the same forensic laboratory testing
> upon the samples from the same Ye Gon shipment: The sample was not found as
> the pure "N-Acetylpseudoephedrine". Instead, it was pronounced to have
> "consisted of a mixture of Acetamide, N-(2(acetyloxy)-1-menthyl-2-phenylethyl)-
> N-menthyl and Ephedrien Acetate." (See Mexican Case Dossier page 85898, also
> see Mexican Attorney General's Order to Destroy)

Acetamide, is also known as Acetethamtne, exactly is what was specified in the

purchase contract concluded between Defendant Ye Gon and Chifeng Arker

Pharmaceutical Technology Ltd. in Inner Mongolia, China. Chifeng Arker

Pharmaceutical Technology Ltd., is ***a PRC state owned enterprise, being inspected and***

***certified by the Food and Drug Administration (FDA) of the United States***. The

chemicals specified in Unimed-Chifeng purchase contract is a legitimate, non-precursor

chemical property, the fact was at least twice certified, wholly or partially, by the

Attorney General of Mexico.

The same lab report further proclaimed, the fact was also concealed by the U.S. Government in seeking for grand jury indictment:

> Acetemide "is **NOT considered by the General Health Law to be a psychotropic and/or narcotic drug, Nor is it a chemical precursor or essential chemical to the Federal Law for Control of Chemical precursor**…" see Id (emphasis added).

It is true that the Mexican crime lab's contradictory report pronounced the testing results as follows: "The sample analyzed is N-AcetylPseudoephedrine." Further, it completely negated the existence of Acetemide: "This is not N-menthyl-Acetylamino" directly battling with the forensic finding with the National Lab under the Attorney General.

Further concealed from this court and the grand jury is the well documented fraud committed by the original source of the Mexican Customs Forensic Lab.  The same testing report further certify the following facts:

> ***"We treated the samples by adding chlorohydric acid and heat, we obtained the testing results of pseudoephedrine".***   (emphasis added. See Mexican Customs Central Administration of Laboratories,   Case Dossier page 85898, Exhibit #3)

This apparent government practice of fraud by contaminating the samples through harsh treatment before testing was caught by Dr. LaVerne L. Brown, faculty of Howard University, School of Pharmacy, a detached and independent expert:

> "Conclusions made in the Chemical Forensics documents indicated that the white powder substance from Unimed Pharmaceutical was determined to be a mixture containing acetamide.  In the documents, acetamide was described as a substance that was considered by the General Health Law to be neither a narcotic drug nor a precursor to such illicit drugs.
>
> However, a report from Customs Administrator suggests that the white powder substance confiscated from Unimed Pharmaceutical did not contain acetamide, but instead SOLELY of substance characterized as a derivative of the alleged controlled contraband. These conclusions were determined only after exposing the

sample to harsh chemical conditions and heat.  Clearly the two reports are contradictory."

Dr. Brown's Expert opinion further points out: ""… it is my professional opinion that preferred methods of characterization involve procedures that do not alter the chemical make-up of the sample under investigation."

The procedures in obtaining forensic testing results conducted by National Forensic Laboratory under the Mexican Attorney General's Office did not show its better respect of the generally observed clandestine guideline of the forensic chemical laboratories of the world, its finding of unclear ratio of "pseudoephedrine" was also obtained after its pre-treatment of sample by using the alkaline extraction from the questioned samples.

## II. <u>PROCEDURE POSTURE</u>.

A motion to dismiss for failure of the indictment to sufficiently allege a crime is permitted under Federal Rule of Criminal Procedure Rule 12(b). Such a motion can be made at any time during the proceedings. Rule 12(b) provides: "Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. The following must be raised prior to trial: (1) Defenses and objections based on defects in the institution of the prosecution; or (2) Defenses and objections based on defects in the indictment or information."[1]

The sufficiency of an indictment is determined by three factors: "(1) whether it contains the necessary elements of the crime alleged, (2) whether it informs the defendants of the crime charged with sufficient clarity to allow them to adequately defend against the charges, and (3) whether it is stated with the sufficient clarity to bar

subsequent prosecution for the same offense." *United States v. Boone*, 951 F.2d 1526, 1542 (9th Cir. 1991); *United States v. Buckner*, 610 F.2d 570, 573 (9th Cir. 1979), cert. denied, 455 U.S. 961 (1980).

To allege conspiracy under 18 U.S.C. 371, an indictment must show the three elements necessary for conspiracy: "the agreement, the unlawful object towards which the agreement is directed, and an overt act in furtherance of the conspiracy." *United States v. Giese*, 597 F.2d 1170, 1177 (9th Cir. 1979). In analyzing whether an indictment has accomplished these requirements, the allegation should be questioned in a manner "to be construed according to common sense with an appreciation of existing realities." *Id.* at 1178.

The sole-count Indictment charging the Defendant for conspiracy in aiding and abetting manufacturing methamephetamine in the United States, without any support of any credible evidence has violated Defendant's due process rights under 5th and 6th Amendment.

### III. ARGUMENT

### 1. INDICTMENT IS FATALLY DEFFICIENT ON ITS SURFACE: *GOVERNMENT 'S FAILURE TO PROVIDE ADEQUATE NOTICE OF THE CRIME CHARGED*

The Sixth Amendment mandates that "in all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI; see also Russell, 369 U.S. at 762. This constitutional requirement was incorporated in Rule (7)(c)(1) of  the Federal Rules of Criminal Procedure, which states that the Indictment "must be a plain, concise, and definite written statement of essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Notice to the defendant

of the essential facts which underlie the charge alleged is necessary to protect the defendant and ensure that he is aware of the charges he must be prepared to meet. United States v. Pickett, 353 F.3d 62, 67 (D.C. Cir. 2004).  Under the U.S. constitutional and statutory mandates, the charging document must therefore provide notice of the charges, adequate for preparation of the defense. Jones v. United States, 526 US 227 (1999)   The charging document must also provide enough detail to permit evaluation of a claim of double jeopardy. U.S. v. Miller, 471 US 130, 134-135 (1985), Johnson V. United States 613A2d, 1381, 1384 (DC Cir. 1992).

The 21 U,S,C, § 959 Covers the Drug Offense Committed Outside United States, While the Accused Offense Against the Defendants is Completely Unsupported, as we have analyzed in part of Introduction.  The problems of the Indictment goes much further away. First of all, the Indictment has greatly confused all parties: the Defendant, the Grand Jury, possibly this Honorable Court, from its very beginning.  "From in or about 1999, the exact date being unknown to the Grand Jury…"  (Indictment, page 1)  The starting time of the accrual of all alleged offense does not only appear absurdly groundless, it also directly contradicts to the timeframe description in Officer Eduardo Chavez's Affidavit, the lone information in support of that failed Indictment.  The Affidavit traced all events back to the year 2004 as its earliest date of alleged accrual of so-called drug related offenses.

The confusion of the time of the alleged accrual of cause of action triggering this instant criminal prosecution is by no means a harmless error, it is serious deficiency in an indictment by bad faith: Government's attempt to incriminate the defendant's almost all

legitimate and normal business operation in a groundlessly, and disproportionately extended timeframe.

Concerning the notice of crime charged, the indictment is unconstitutionally insufficient for two foremost reasons, among others: (a) it fails to specify both the "conspiracy" and "aiding and abetting" offenses in which Mr. Ye Gon was allegedly involved according to the unsupported allegation made by the Indictment; and (b) the worst prominently and the most visibly, it fails to articulate the American-based criminal activity (in addition to the same failure in articulating the alleged "criminal activities" in the State of Mexico and elsewhere.)  While the indictment, in color of law, generally tracks the language of 21 U.S.C. § 959, it is hopelessly insufficient for failing to allege the elements establishing the conspiracy and aiding and abetting.  Because the Government has totally collapsed in specifying the Defendant's role in the alleged conspiracy, neither did it do anything to establish or even adequately allege any factual basis concerning aiding and abetting charges, therefore, the Defendant cannot properly raise a defense to these charges, **whose severe consequence is prejudicial to the vital penal interests of the defendant.**  While "the charging document failed to give fair notice of the charges, thereby causing *substantial prejudice* to the Defendant", leading to an "*apparent miscarriage of justice.*" Clemons v. United States, 400 A2d  305, 306 (DC Cir. 1979) See also "Patterson v. United States, 575 A2d 305, 306 (DC  Cir.1990)

When compared to a sufficient indictment alleging conspiracy, this indictment is clearly insufficient: "the indictment in this case sufficiently apprised the defendants of ***the time frame*** of the alleged drug activity, ***the members of the alleged conspiracy***, and the ***type of drugs*** involved." *United States v. Olderbak*, 961 F.2d 756, 760 (8th Cir.

1992)(emphasis added)   In the instant case, not only are the members of the conspiracy not identified, but the conspiracy itself, in *terms of time frame, names and specification of of drugs, members of alleged conspiracies, members of the persons allegedly "aided and abetted" in alleged  illicit drug activities, are* either not defined, or vaguely and wildly speculated without evidentiary support, or even worse, by fraudulent allegation.  As defense counsel noted in oral argument, or on other credible public sources, more than 10,000 drug dealers, including several hundreds of ranking police officers, were arrested by Calderon cabinet and more than 30 Mexican drug cartel members have been extradited into America and as the Chavez affidavit makes clear, two major meth labs were raided and eliminated by Law Enforcement in Mexico.  Surely the Government should be able to proffer some link, clearly pinpointing certain linkage between spots in general mapping after this instant case has been put in place for U.S. –Mexico joint investigation in **March 2006, 18 full month ago. Unfortunately, none has been presented to this Honorable Court**.  Much less to the Grand Jury.  ***This is not just an ordinary failure, it appears a total collapse, rendering this entire criminal charge a frivolous one, a highly politicized bubble with no serious substance.***   Law in this jurisdiction is clear, an Indictment must state the species.  It must descend to particulars.  The statutory language must be accompanied with such a statement of facts and circumstances as well informed the accused of the specific offense, coming under the general description, with which he is charged. United States v. Nance, 533 F 2d 699, 701 (DC Cir. 1976).

The prejudicial effect of this frivolous nature in the indictment is indicated by the Government's inability to specify the illegal conduct with which Mr. Ye Gon is charged.

Because the Government has not indicated a single particular conspiracy which the Defendant allegedly participated in, the Government has enabled itself to proceed on **ever changing, inconstant, disparate and conflicting factual theories.** The Government has alleged in detention hearings that the Defendant ***imported*** pseudoephedrine, or ephedrine, a controlled substance. After the Defendant pinpointed that the forensic testing was apparently contaminated with Mexican government fraudulent practices, the Government changed its tone, now alleged that the Defendant illegally imported "mis-labeled" precursor or intermediate chemicals in order to **manufacture** pseudoephedrine. Thirdly, the original version of the Government's probable cause allegation went even wilder, it attempts to make links between the Defendant and the charge against him by proffering that he also worked with mass production of MDMA, a Schedule II controlled substance using twenty metric tons of Safrole, according to DEA Officer K. Hooton's Affidavit Statement issued on March 22, 2007. Query: Which specific drugs are in play? Such a collapse of evidence does not prevent the government from its ever renewing fishing trip going on and on.

Moreover, the indictment also accuses the Defendant to "knowingly aid and abet" others to traffic such illicit drugs as methamphetamine or its mixture into the United States, however, from nowhere Defendant can locate any single word concerning any persons, natural or juridical, to such "principals" having ever been aided and abetted. The notice of "aiding and abetting" crime as charged has also apparently collapsed in this instant case.

Since nothing in the indictment or any of the Government's proffers indicate which specific conspiracy it is alleging, or the nature of the US-based criminal activity,

the Defendant cannot raise a proper defense or protect himself from double jeopardy.  "It is required … that the charge be set forth with such particularity as will reasonably indicate the exact offense which the accused is alleged to have committed and which will enable him intelligently to prepare his defense and, if found guilty, to plead his conviction in a subsequent prosecution for the same offense. *A vague, general and indefinite description of the alleged crime is insufficient.* The averments must be such as clearly to designate, not only the particular kind of offense, but the specific criminal act for which the accused is to answer." (emphasis added) *United States v. United States Sav. & Loan League*, 9 F.R.D. 450, 452 (D.D.C. 1949)

Further, the Supreme Court of the United States laid out two primary criteria for measuring the sufficiency of an indictment (1) whether the indictment contains the elements of the offense intended to be charged and *sufficiently apprises* the defendant of what he must be prepared to meet, and (2) whether the record shows with *accuracy* to what extent the defendant may plead a former acquittal or conviction in case any other proceedings are taken against him for a similar offense. United States v. McBride, 498 F.2d 683, 685 (D.C. Cir. 1974); Russell, 269  U.S. at 763-64; see also Hamling v. United States, 418 U.S. 87,  116 (1974); United States v. Conlon, 628 F.2d 150, 155 (D.C. Cir. 1980) ("The test for sufficiency is whether it is fair to require the accused to defend himself on the basis of the charge as stated in the indictment.").

The first criterion is analyzed into two separate inquiries to simplify the analysis: (1)(a) whether the indictment contains the essential elements of the offense charged, and (1)(b) whether the indictment describes the elements with particularity and without any uncertainty or ambiguity. See U.S. v. Threadgill, 172 F.3d at 366.  Unfortunately, the

31

instant Indictment, together with its sole supportive document, i.e., Special DEA Officer

Eduardo Chavez' Affidavit Statement in Support of the Indictment either provides

"little", "thin", or completely none, infected with false information, concerning such

essentials of what is charged: when (1999?!), where ("inside United States?!"),

who/whom (who are "co-conspirators?, principals to be aided and abetted?) whats

(Methamphetamine? Pseudoephedrine? Safrole? MDMA? Or simply Hydroxy Benzyl-N-

Menthyl-Acetathamtne?) hows (manufacture? Distribute? Trafficking?)  Seventeen

months after the U.S.-Mexico joint task force fact-finding mission after March 2006, the

indictment has presented zero credible, free of  fraud accounts on the crime charged.

 In a number of cases, our Federal Courts have emphasized two of the protections

which an indictment is intended to guarantee, reflected by two of the criteria by which the

sufficiency of an indictment is to be measured. These criteria are, first, whether the

indictment "contains the elements of the offense intended to be charged, `and sufficiently

apprises the defendant of what he must be prepared to meet,'" 369 U.S. 749, 764 and,

secondly, "`in case any other proceedings are taken against him for a similar offence,

whether the record shows with accuracy to what extent he may plead a former acquittal

or conviction.' Cochran and Sayre v. United States, 157 U.S. 286, 290  Rosen v. United

States,161 U.S. 29, 34 Hagner v. United States, 285 U.S. 427, 431 See Potter v. United

States 155 U.S. 438, Bartell v. United States 227U.S. 427,  Berger v. United States, 295

U.S. 78,82    United States v. Debrow, 346 U.S. 374, 377, 378

 **Here, the description of such alleged charges as conspiracy, aiding and**

**abetting, and drug trafficking, is far too vague to properly protect the defendant**

**from later prosecution for the same acts or to allow for preparation of a defense.**

**While it constitutes a juicy media sound bite, the Government's Mexican drug cartel bubble coupled with complete absence of illicit drug activities, much, much less a specific US-based criminal activity, warrants dismissal of the indictment with prejudice.**

### 2.. FATAL DEFFICIENCY IN CONSPIRACY CHARGE

Defendant was sur-charged for criminal conspiracy.   The threat posed to society by [conspiratorial] combination arises from the creative interaction of two autonomous minds. It is for this reason that the essence of a conspiracy is an agreement.

However, there is no conspiracy in this case. For a conspiracy to exist, the law requires that "two or more persons conspire . . . ." Even if taken as true, the Government's indictment does not make such an allegation.  Conspiracy in drug related charges consists of four elements." United States v. Montelongo, 420 F.3d 1169, 1173 (10th Cir. 2005). "The government must prove beyond a reasonable doubt (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." Id. (internal quotation marks omitted).  The Government is so eager to fix the gap caused by absence of co-conspirators, therefore, it made a quantum leap over the time, by unilaterally, also mistakenly declared that the Ms. Marx Yu, the Defendant's wife held in custody in Mexico since March 15, 2007, was "convicted" and would be "sentenced" for years in prison, falling in short to clarify which part of the Mexican government has "convicted" Ms. Marx Yu, President Felipe Calderone, or any of Mexican Court, has convicted Marx Yu?

This imaginative "pre-trial conviction" against any person in related case by "prosecutors" in government's fantasy world would certainly not help support the government's conspiracy charge. This sort of deficiency is a typical case of the government's failure to provide adequate notice of the crime charged.

Further deficiency is also seen in absence of any persons, or entities who were aided and abetted in methamphetamine, or its mixture's manufacture, distribution, and trafficking, when the Defendnat himself was charged for knowingly aided and abetted to transact methamphetamine, or its mixture into the United States.

The indictment alleges an "unknown co-conspirator" appears to be a mere speculation. Defendant Zhenli Ye Gon was indicted on charges of one count of "unlawfully, knowingly, intentionally combine, conspire, confederate and agree with each other and with other co-conspirators ***unknown*** to the Grand Jury…to aid and abet in manufacture of 500 grams or more of mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance into the United States…" (Please see Grand Jury Indictment, pp 1-2), in violation of 21 U.S.C. §§ 959 and 960 and 18 U.S.C. § 2; Zhenli Ye Gon's acts are the acts of a single entity, it cannot be said that "two or more" persons have conspired here. The required "plurality," for a conspiracy does not exist.

It is widely reported that since President Felipe Carderon's hi-pitch war on drugs, more than 10000 drug suspects have been arrested, including 384 ranking police officers, and at least 30 alleged drug lords, have been extradited into the United States from Mexico. Officer Chavez' Affidavit also pinpointed that two major Meth production labs

on the West Hemisphere have been detected, found and destroyed.  In connection of these

facts to 18-full month of fact finding, evidence collection, and criminal investigation, the

Government's Indictment did not provide any single evidence to establish such linkage of

criminal activities.

.Because, as a matter of law no conspiracy has been alleged, Defendant Ye Gon

respectfully requests that the Court grant its motion and dismiss Count One of the

indictment.

### 3.. VINDICTIVE PROSECUTION IN VIOLATION OF DUE PROCESS

A Vindictive prosecution is the government's wrongful action:

"To punish a person because he has done what the law plainly allows him to do is

a due process violation of the most basic sort." Bordenkircher v. Hayes, 434 U.S. 357,

363 (1978).  Facts and circumstances has clearly demonstrated that the instant Indictment

is a typical product of vindictive prosecution, which should be dismissed for its violation

of due process.

Apparently for the purpose of misleading the Court, confusing the jury, paving its

way to gain undue prosecutorial advantage, while deviating from what it alleged as

"illicit trafficking of Meth into the United States," the prosecutors in this instant case,

being probed by the Honorable Sullivan, the presiding Judge, went on and on to have

accused this Defendant for excessive gambling, and alleged "net loss" of "102 million

U.S. dollars in Casino at Las Vegas, Nevada; the Government also accused this

Defendant for his efforts to import "Hydroxyl Benzyl-N-Menthyl Acetamide",

Government further accused this Defendant's efforts to build the Latin America's largest

pharmaceutical conglomerate by importing great number of assembly lines from Germany and other countries, Government also mistakenly accused this Defendant for his wife's alleged "conviction" and "several years prison term";  Most importantly, the urge under undue influence and pressure of an infamous foreign regime *which prompts* the Government to decide to prosecute while in absence of any inculpable evidence is this ***Defendant's speaking out of the truth to the media*** in response to a corrupted foreign government's defamation campaign tarnishing him to be the "world's largest illegal drug kingpin", while the root cause that triggers all these unsupported "illegal drug allegations" is stemming from the government's information concerning this Defendant's custody of approximately 210 Million U.S. Dollars, most of it is allegedly the PAN entrusted campaign slush funds.  All these have formed the solid basis for vindictive prosecution in gross violation of this Defendant's due process rights, rendering this case dismissible with prejudice.  The law is clear in this Jurisdiction, a vindictiveness is "any situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights."  United States v. Meyer 810 F.2d, 1242, 1245 (DC Cir. 1987)

The defendant was charged for drug trafficking.  The fact finding indicated that what Defendant meant to purchase, and actually signed contract to have purchased from the Government of the People's Republic, was "Hydroxy' Benzyl-N-Menthyl Acetamcetne", which, according to Mexican Attorney General's Office, is neither "Psychotropic, nor narcotic drugs, neither it under controlled substance list according to that country's general law of public health".  To purchase "Hydroxy' Benzyl-N-Menthyl Acetamcetne", a non-controlled substance, is not an unlawful action.   If this case goes to

trial, Defendant would lay out everything on the table to explain why he did need large quantity of "Hydroxy' Benzyl-N-Menthyl Acetamcetne" from the Government supplier, the People's Republic of China in the light of his state of art pharmaceutical mfg involving 22 assembly lines. .

Anything other than such a normal and legitimate business activities, such as taking entrusted custody of large amount of cash at home, gambling at casinos of Las Vegas, none of these activities has given rise to criminal prosecution on "illicit drug trafficking". Prosecution against this defendant, as what the Indictment has fulfilled, triggered by all these legitimate, irrelevant activities in its nature, is a vindictive prosecution, which is a prima facie violation of the Defendant's Due process rights. "Vindictive Prosecution violates Due Process", period. Moran v. V. Burbine 475 US 412 (1982).


Although a prosecutor has broad discretion in his charging decisions, there are two important limitations on this authority. First, a prosecutor may not bring charges with a vindictive motive, since "'penalizing those who choose to exercise' lawful rights including constitutional rights, 'would be patently unconstitutional.'" North Carolina v. Pearce, 395 U.S. 711, 724 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989) (quoting United States v. Jackson, 390 U.S. 570, 581(1968)); see Guam v. Fegurgur, 800 F.2d 1470, 1473 (9th Cir.1986).

In finding of vindictive prosecution, to dismiss such an indictment with prejudice based upon such finding does not even require the evidence of the prosecutors' bad faith, even though there are sufficient proof of government's bad faith in this instant case. Because the prohibition on vindictive prosecutions is intended not only to prevent against

prosecutions actually motivated by prosecutorial animus, but also to prevent the chilling

of the exercise of constitutional rights by defendants, no evidence of actual bad faith is

necessary to establish such a claim. Blackledge v. Perry, 417 U.S. 21, 28 (1974); United

States v. Groves, 571 F.2d 450, 454 n.1 (9th Cir. 1978); United States v. DeMarco, 550

F.2d 1224, 1227 (9th Cir. 1977); see also United States v. Ruesga-Martinez, 534 F.2d

1367, 1369 (9th Cir. 1976) ("the mere appearance of vindictiveness is enough to place the

burden on the prosecution") Once the defendant shows that charges have been increased

after he has exercised a constitutional or statutory right, the defendant has demonstrated

an "appearance of vindictiveness" on the part of the prosecutor. United States v. Shaw,

655 F.2d 168, 171 (9th Cir. 1981) (citing United States v. Groves, 571 F.2d at 453). With

this prima facie showing, or other evidence of "a realistic likelihood of vindictiveness,"

vindictiveness is presumed and the burden shifts to the government to prove that the

increase in the severity of the charge was not based on a vindictive motive. See United

States v. Spiesz, 689 F.2d 1326, 1328 (9th Cir. 1982); Shaw, 655 F.2d at 171; United

States v. Burt, 619 F.2d 531, 536 (9th Cir. 1980); see also Ruesga-Martinez, 534 F.2d at

1369 (when prosecution reindicts the accused after he exercises a procedural right, the

prosecution "bears a heavy burden of proving that any increase in the severity of the

alleged charges was not motivated by a vindictive motive"). "[A]n indictment must be

dismissed if there is a finding of 'actual' vindictiveness, or if there is a presumption of

vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's

action," *the indictment must be dismissed*. United States v. Johnson, 171 F.3d 139, 140

(2d Cir. 1999) (per curium); see Spiesz, 689 F.2d at 1328 (emphasis added).

The suspicious vindictive motive in Prosecutor's action can be further found in given circumstances. Until July 24, 2007, the Defense counsel's due diligent search of the Government's website indicated that this Defendant was not in Government's wanted list, even though he had been said to be a "fugitive" by President Carderon's defamation campaign. Things became drastically worsen since this defendant spoke out of the truth to a relatively large press conference held in Washington DC, National Press Club, an totally legitimate efforts in response to Mexican government government's sponsored defamation campaign. The Defendant's holding out himself had triggered the government's immediate reaction. Arrest, detention and this grand jury indictment were all followed.

The law gives the prosecutors "the broad discretion accorded prosecutors in deciding whom to prosecute." However, such a power is not 'unfettered,' and a decision to prosecute may not be deliberately based upon the exercise of protected statutory rights."); Brooks v. United States, 450 U.S. 927 (1981) (stating that a court must reconcile the rule that a prosecutor has broad discretion to file charges **where there is probable cause** with the rule that vindictive conduct by prosecutors is unacceptable and requires control); see also City of Houston v. Hill, 482 U.S. 451, 462-63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."). Lest there be any doubt from the prosecutor's words that this prosecution is vindictive, the sequence of events confirms this. Because future defendants may be deterred from exercising their constitutional and statutory rights by increased charges filed against a defendant, vindictiveness is presumed under these circumstances. See Shaw, 655 F.2d at

171; DeMarco, 550 F.2d at 1227; United States v. Groves, 571 F.2d at 453.  "The conclusion is inescapable on this record that the government brought the marihuana charge in retaliation for the appellant's exercise of his statutory rights on the cocaine charge); DeMarco, 550 F.2d at 1227-28 (In that case, the court dismissed indictment charging the making of false statements to an IRS agent after such charges were added in response to defendant's assertion of  his statutory venue rights to be tried in the district of his residence. )

> **For the cause of apparent vindictive prosecution against this Defendant in gross violation of due process, this indictment must be dismissed with prejudice.**

### 4. THE INDICTMENT SHOULD BE DISMISSED FOR PROSECUTORS' INTENTIONAL CONCEALMENT OF EXCULPATORY EVIDENCE AS TO GRAND JURY

Neither this Honorable Court, nor Grand Jury has been presented with any exculpatory evidence in this case due to Government's willful concealment of such exculpatory evidence.  Instead, what government has done is to mis-paint the Defendant being the illicit methamphetamine trafficker by messing up such exculpatory evidence in accommodating a foreign regime's political agenda.

Among all these exculpatory evidence, the top line, and foremost exculpatory evidence, taking it into judicial notice is that the sole supplier, that had been in chain of custody of the so-called "criminal drug trafficking" evidence, say, that 19.8 metric tons of the allegedly "illicit drugs" is the Peoples' Republic of China, which has never been quoted as the "co-conspirator" or "people to be aided and abetted".  Chifeng Arker

pharmaceutical company is the PRC government owned, PRC government officially run state enterprise, an integral part of the People's Republic.

The second exculpatory evidence is the transcripts, minutes, official business records of the USDOJ's fact-finding force interviewing the key witnesses of the Chifeng Arker in later March of 2007. These government records clearly indicates that what Defendant actually purchased from the PRC government supplier, and what he really meant to purchase therefrom, was not any controlled substance, but non-controlled, harmless chemical property.

The third exculpatory evidence is Mexican Attorney General's office's fact finding that "Hydroxy' Benzyl-N-Menthyl Acetamcetne" is neither "Psychotropic, nor narcotic drugs, nor is it under controlled substance list according to that country's general law of public health. All these are either well documented, or well debriefed to the U.S. Department of Justice. The Prosecutor should have been fully aware that this Defendant is completely innocent from any illegal drug trafficking charges.

Therefore, This Indictment should be dismissed for the Government's intentional concealment of exculpatory evidence to Grand Jury.

The entire weight of incriminating charges in this instant case is built upon the presumption that the chemicals shipped by Chinese supplier, Chifeng Arkar Corporation in Inner Mongolia, Chinainto Mexico for its recipient, Unimed, is either Methamphetamine, or pseudoephedrine, or ephedrine, or ephedrine derivative. All of

these and either of these items are controlled substance, while importing them without government issued special permit is illegal.

Moreover, the Defense team for Defendant Ye Gon also repeatedly wrote to the U.s. Department of Justice, by laying out numerous weighty evidence which indicated that the chemical agents later shipped to the Defendant's Mexican company were found to be a legitimate chemical property, in the meantime, the incriminating evidence cooked up by Mexican Government has clear birth mark of fraud, based upon scientific reading and scientific analysis. All these have formed overwhelming exculpatory evidence basis.

This exculpatory information may have greatly retarded the Government's determination to take any legal actions against Defendant Ye Gon. When Defense Team repeatedly approached the Government requesting for ways leading to solutions, the Government appeared not to be in a hurry to respond, no matter the growing pressure from Mexican authorities. Defendant's name had never appeared on the DEA's wanted list even though he was alleged to be an fugitive, but no Government website publicly listed him as wanted until our final due diligence check on July 14, 2007, hours after his arrest. Nevertheless, when Government was preparing the indictment related documents and did the Grand Jury testimony, it apparently appears that the Government had intentionally concealed all these exculpatory evidence in favor of the Defendant.

The Government's misconduct in its intentional concealment of the exculpatory evidence has completely violated the "constitutional disclosure requirement" established in the landmark case as Brady v. Maryland 373 US 87, when it is found that the Prosecutor in this case intentionally concealed critical exculpatory evidence in favor of

Defendant, including, but may not be limited to, the DEA officials criminal investigation conducted in Inner Mongolia, China during the last week of March, 2007. Consequently, the Indictment was obtained by intentionally defrauding the Grand Jury, such a violation usually triggers the proper result of dismissal. United States v. Nance, 533 F.2d 699, 701 (D.C. Cir. 1976).

The Brady Rule has been seen followed in this Jurisdiction.  In U.S. v. Short and Green, 777 F. Supp. 40, 1991, U.S. Dist.  Lexis 16380, when the Prosecutor failed entirely to illicit testimony before the grand jury concerning co-defendant Short's testimony which is exculpatory as to Defendant Green". The same Court held, for the relevant part: "Thus, while the government may elect to present Short's complete statement to the grand jury for another determination of probable cause as to Green, the Court cannot allow the present indictment to stand." Id. P 41.

A prosecutor's willful concealment of exculpatory evidence from grand jury is not a violation of law, but a serious violation of professional ethics.  The ethical violation in this instant case is so prominent because the entire case appears so frivolous, so politicized, evidencewise.  ABA Standards relating to the prosecution function, *i.e.*, Section 3.6(b) (2nd ed. 1980) provides that "the prosecutor should disclose to the grand Jury any evidence which he knows will tend to negate guilt".  The U.S. Attorney's Manual sets forth the Department of Justice view of Appropriate Conduct by prosecutors appearing before Grand Jury.  The Manual advises a prosecutor who is "personally aware of substantial evidence which directly negates…guilt" to notify the grand jury of this evidence." U.S. Attorney's Manual, Section 9-11, 334.  The government was and should

have been fully aware with all those exculpatory evidence which has directly negated alleged guilty charge of "illicit drug trafficking".

Indictment dismissed where prosecutor withheld evidence from the grand jury. United states v. Reid, 911 F. 2d 1456 (10th Cir. 1990)  For the cause of the prosecutors' willful concealment of exculpatory evidence in bad faith, which is prejudicial to the vital penal interests of the Defendant as guaranteed by our Constitution, this **indictment** should be dismissed **with prejudice.**

## 5. DISMISSAL OF THE INDICTMENT IS APPROPRIATE GIVEN TO THE FACT THAT THE GOVERNMENT'S FAILURE TO RESPECT THE GRAND JURY AS AN INDEPENDENT LEGAL BODY

It is amazing to see that so-called Grand Jury Indictment, which ripped off the Defendant's opportunity of having a hearing of probable causes , was not signed by a foreman.   The Grand Jury hearing appears to have been held on July 26, 2007, three days after this Defendant was incarcerated, hence available for testimony.  The Grand Jury proceedings appears being handled in such a lousy manner that it has well deviated from its origin: To protect the basic rights of criminal defendants.  The Grand Jury Indictment was found not having been signed by any foreperson.

While precedents in this jurisdiction views an absence of foreman's signing of the Indictment a serious government irregularity, not necessarily leading to dismissal of the indictment as a whole.  However, in the broad based environment of this instant case, such a serious irregularity has clearly indicated that the government's behavior which shows little, or completely no respect of the Grand Jury as an independent legal body. It is logical development of Prosecutor's failures in various aspects.

Such a failure in form concerning the Grand Jury Indictment obtained by the Government through such means at the back of the Defendant being rendered in darkness as discussed *supra* is apparently the government's bad faith efforts to *circumvent* all constitutional safeguard as what due process commands, and also circumventing such criminal procedural safeguards as probable cause hearings, in order to obtain undue prosecutorial advantage, by tramping upon, and complete disregard the defendant's constitutional rights, civil rights, and minimum decency of criminal procedures in a civilized judicial system under the constitutional democracy. Therefore, failure of signature here appears an ethical violation.  A prosecutor has an "ethical obligation to boserve the status of the grand jury as an independent legal body" Nogan v. United States, 712 F2d 757, 759 (2nd Cir. 1983).  Also see ABA Standards for Criminal Justice at 3.48, U.S. Attorneys' Manuel, Section 9-11. 015.

What remains a serious problem, as an addition to the weight of other grounds in support of Defendant's request for dismissal with prejudice, is the prosecutor's general disrespect of Grand Jury procedures and its ominous tendency in disregard of constitutionally and statutorily protected rights of defendant in this case.  A dismissal of such a document of serious irregularity is apparently appropriate.

### 6. DISMISSAL OF THE INDICTMENT IS APPROPRIATE GIVEN TO THE GOVERNMENT'S EGRGIOUS OMMISSION ALLOWING THE MEXICAN AUTHORITIES TO DESTROY THE PHYSICAL EVIDENCE OF ITS FRAUD: THE 19 METRIC TONS OF CHEMICALS IN QUESTION

The Indictment must be dismissed with prejudice because the government's action and omission in relation to a serious destruction and elimination of evidence, highly likely exculpatory as to "illicit drug" charge as to this Defendant, while

45

inculpatory as of fraud as to Mexican government,  taken by the government of Mexico

in may 2007, is egregious, dilatory and neglectful.  Such premature elimination of critical

evidence was apparently made under the urge of covering up concrete evidence of

Mexican government's fraud, it therefore, out of bad faith, and severely prejudicial to this

Defendant's constitutionally protected vital penal interests.

Starting as early as March 2006, according to USDEA Officer K. Hooton's

Affidavit Statement issued on March 22, 2007, the U.S. Department of Justice, USDEA

had formed joint task force to start joint criminal investigation against suspicious illicit

drug activities with the AFI of Mexico.  In December 2006, the joint task force has

intercepted 19.796 metric tons of allegedly "controlled chemical substance with the

terminal recipient of Unimed at Mexican Sea port.  After different national Forensic

Laboratories took the samples from these 19.8 metric tons of chemical agents, under the

name of hydroxy benzyl-N-Menthyl Acetamcetne, and tainted the samples, having left

well documented fraud in mis-handling the forensic testing, the Mexican Attorney

General's Office ordered to destroy the total 19.8 metric tons of chemical agents in

disputes, apparently in the intention to cover up its fraud.  Being partner of  the joint task

force, the U.s. government apparently had allowed such destruction of evidence to

happen.  Such an action or omission is egregious, dilatory and neglectful, to say the least.

The test is whether Government's action is seen "egregious", is to see whether the

government's conduct is  "neglectful" and "dilatory", to justify a dismissal of indictment

***with prejudice***. U.S. v. Taylor 487 U.S. at 338-39 (emphasis added). Consequently, this

**indictment** must be dismissed **with prejudice.**

## 7. DISMISSAL OF THE INDICTMENT IS APPROPRIATE GIVEN TO THE GOVERNMENT'S MOST RECENT IMPLICIT ADMISSION OF THE TOTAL COLLAPSE OF CHARGING "EVIDENCE", WHICH APPEARS OF WILLFUL "FRAUD" FROM MEXICAN GOVERNMENT, IN SUPPORT OF FRIVOLOUS CHARGE.

The Defendant's Motion for dismissal of grand jury indictment has been further fortified by the Government's most recent move for one-year extension of time which allows the Mexican Government with more time to make up more fraudulent evidence possibly by and through gross abuse of procedures by on-going torture and maltreatment against the innocent, and likely irrelevant inmates held since March 2007.

Government's Motion for More time to restart its "fishing expedition trip of fishing the incriminating evidence by luck is an implicit admission of the undeniable fact that the currently accessible charging evidence is either infected with epidemic of fraud and perjury, or appears exculpatory. The entire case, which had been in its place since March 2007, appears so frivolous that has pressed the Government to restart its fishing trip all over again after an extensive crimination investigation and case preparation has been in place for almost 6 months. Such a motion for enlargement of time should be instantly denied for lack of good faith and the Indictment should be dismissed with prejudice.

Dismissal of this instant case by dismissing its indictment with prejudice is apparently an appropriate, decent, and necessary disposition serving the interests of justice in all aspects given to the circumstances that defendant was arrested and detained without bail upon the Government's request, while in complete absence of credible, probative, free-of-fraud evidence.

In this instant case, government such willful, bad faith misconduct as intentional concealment of exculpatory evidence collected from China, and knowing of Mexican government having committed apparent fraud and perjury while fabricating such key incriminating evidence as of its Forensic Examination Reports by National Forensic Laboratories, without disclosing such fraud-turned exculpatory evidence, is much, much more serious than a *"neglectful"* misconduct.  It may be the world's most "egregious" willful misconduct in bad faith.  Well before the initiation of the arrest of the Defendant, the government had been informed by the Defendant's legal counsel on numerous occasions, with presentation of all those documentary evidence that fraud had been most likely committed by the government of Mexico.  On June 25, 2007, when Mexican Government decided and ordered to destroy the key evidence of 19 metric tons of what they falsely alleged "pseudoephedrine." instantly, Defendant's counsel immediately noticed the government again.  Several expert opinion indicating such serious irregularities on Mexican side were also forwarded to the government, having clearly demonstrated that the ultimate source of this instant prosecution to patronize the egregious foreign government's wrongful behavior, had also been delivered to the Government for its attention.  Under all these circumstances, the government prosecution under a foreign power's of this case apparently without credible, probative, free-of-fraud evidence to back up its accusation, and the government's efforts in seeking for pretrial incarceration, should be deemed as an egregious act, or to say the least, a reckless act in bad faith.  Furthermore, while petitioning for such an extensive one-year continuation of the time in obvious violation of both Defendant's due process rights and his rights under the Speedy Trial guarantee, taking the fact that he was incarcerated in pretrial

incarceration, the Government furthered its bad faith misconduct by further concealing the fact that it had got the Mexican government's "assistance" from day one of accrual of this case, and they had received an exculpatory evidence from their China trip in March 2007, having determined to continue to defraud this Honorable Court as of today by continuing to conceal the China related exculpatory evidence.  Instead, the government raised an apparently inappropriate, unreasonable request for substantial delay which, in its essence, to allow the Mexican Government to have more time to fabricate more fraudulent, perjurous evidence through further abuse of the procedures and torture of innocent, even irrelevant detainees in Mexico.

Therefore, the Governmen's more appropriate action should be a voluntary dismissal of its own fatally flawed indictment, instead of seeking for more time to continue or restart its aimless fishing expedition trip.  In absence of such an action, Defendant moves to dismiss the Indictment with prejudice, given to the additional facts that the Government's serious misconduct has pressed it to move for a substantial extension of time under the circumstances that its only accessible evidence, no matter how "little" and "thin", is the evidence made up by fraud, while the Defendant was held in custody without bail just based upon such fraudulent evidence known to the Government.

The Government's apparent inability to prepare the case for trial within 70 days is not because it does not have incriminating "evidence" (in allegedly "illegally importing "pseudoephedrine" "into Mexico") , even though being found by Judge Alan Kay as **"little" and "thin"**.  It is because the evidence it has is either frivolous, fraudulent, or exculpatory to the Defendant.   Under such a circumstances, dismissal with prejudice is

not just proper, but necessary.  "[i]f a defendant is not brought to trial within the seventy-

day deadline, dismissal of the indictment is mandatory."  United States v. Doran, 882

F.2d 1511, 1517 (10th Cir. 1989).(2)  The "indictment shall be dismissed on motion of

the defendant."  United States v. Vaughn, 370 F.3d 1049, 1055 (10th Cir. 2004).

Furthermore, 18 U.S.C. 3162(a) provides, for the relevant part, concerning the dismissal

of the indictment:

> "In determining whether to dismiss . . . with or without prejudice, the court shall
> consider, among others, each of the following factors: the seriousness of the
> offense; the facts and circumstances of the case which led to the dismissal; and
> the impact of a reprosecution on the administration of this chapter and on the
> administration of justice. Prejudice to the defendant is among the factors the text
> of 3162 directs the district court to consider.  United States v. Taylor, 487 U.S.
> 326, 334 (1988); see also id. at 344-46 (Scalia, J. concurring).

Here, the seriousness of the offense cannot just be judged by a foreign power's

politicized PR campaign, by any irresponsible, unsubstantiated statement.  It should be

based upon evidence, free of fraud and perjury.

Section 3161(c)(1) provides in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant
> charged in an . . . indictment with the commission of an offense shall commence
> within seventy days from the filing date (and making public) of the . . .
> indictment, or from the date the defendant has appeared before a judicial officer
> of the court in which such charge is pending, whichever date last occurs.

The seventy-day deadline takes into account various excludable events that do

not count against the seventy-day period.  See 18 U.S.C. 3161(h).  Thus, for example,

continuances may be excluded from the seventy-day period if the district court makes a

finding on the record that "the ends of justice served by taking [the] action outweigh

the best interest of the public and the defendant in a speedy trial." 18 U.S.C.  To allow

the Government to re-start its aimless fishing expedition trip after it finds, but refuses to

acknowledge, that the evidence presented before it by the Mexican counterpart has been

totally collapsed for its apparent fraud and perjury, is not to serve the end of justice at all.

Under the circumstances, dismissal of indictment may be of only appropriate disposition,

instead of undue delay for the purpose to encourage government's compliance of the

procedures, instead of committing intentional, severe misconducts.

      The Supreme Court stated:

> "This scheme (of dismissal-added) is designed to promote compliance with the
> Act without needlessly subverting important criminal prosecutions.  The more
> severe sanction (dismissal with prejudice) is available for use where appropriate,
> and the knowledge that a violation could potentially result in the imposition of
> this sanction gives the prosecution a powerful incentive to be careful about
> compliance.  The less severe sanction (dismissal without prejudice) lets the court
> avoid unduly impairing the enforcement of federal criminal laws  though even this
> sanction imposes some costs on the prosecution and the court, which further
> encourages compliance. "    Zedner v. United States, 126 S.Ct. 1976, 1984-85
> (2006) (quoting 18 U.S.C. 3288).

      The failure of the Government's compliance here appears willful, egregious and

in bad faith, the indictment should therefore be dismissed with prejudice.

      An instant denial of the Government's Motion for undue delay, and entering an

order of the dismissal of the Indictment with prejudice appear appropriate and necessary

in light of the Defendant's constitutional rights and the principles of equity given to the

fact that the Defendant was kept in pretrial custody, which could now face an prolonged

term in punitive nature for the same charge without bail upon the government's baseless,

bad faith charges:

> "The Sixth Amendment right to a speedy trial is thus not primarily intended to
> prevent prejudice to the defense caused by passage of time; that interest is
> protected primarily by the Due Process Clause and by statutes of limitations.   The
> speedy trial guarantee is designed to minimize the possibility of lengthy

incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." United States v. MacDonald, 456 U.S. 1, 8 (1982).

Consequently, in the light of the foregoing analysis, the appropriate disposition of this instant case is to dismiss the Indictment with prejudice.

## IV. <u>CONCLUSION</u>

Wherefore, Defendant respectfully moves that this Honorable Court dismiss the Grand Jury Indictment with prejudice, without reference to territorial restriction to the applicability of such a dismissal.  In the foregoing light, Defendant, by through counsels, respectfully moves that the Indictment be dismissed pursuant to Rule 12 of Federal of Criminal Procedures. Alternatively, this Honorable Court may order an immediate hearing on oral argument concerning Defendant's Motion.

Respectfully submitted by:

/s/Ning Ye, Esq.
_____

Ning Ye, Esq. (DC Bar Number MD26804)
Counsel for the Defendant
1150 Connecticut Avenue, NW, Suite 900
Washington, DC 20036
Telephone: (202) 862-4303;
Email: ynyale@aol.com
Fax: 202-828-4130

<u>CERTIFICATE OF SERVICE</u>

On this 19th day of September, 2007, I electronically filed this Rule 16 Motion with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following addressee:

Paul Laymon, Esq.
U.S. Dept. of Justice
1400 New York Avenue, NW, 8th floor
Washington, DC 20530


/s/Ning Ye, Esq.

Ning Ye, Esq.   (DC Bar Number MD26804)
Counsel for Defendant
1150 Connecticut Avenue, NW, #900
Washington DC 20036
202-862-4334; 301-641-7345
Email: <u>ynyale@aol.com</u>

# IN THE U.S. DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

|                               |   |                        |
|-------------------------------|---|------------------------|
| United States of America      | ) |                        |
|                               | ) |                        |
|             Plaintiffs        | ) |                        |
|                               | ) |                        |
| versus                        | ) |                        |
|                               | ) |                        |
| Zhenli Ye Gon                 | ) | File: 1:07 CR 181      |
|                               | ) | MOTION TO DISMISS      |
|             Defendant         | ) |                        |
|                               | ) |                        |
|                               | ) |                        |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*
        \*

ORDER (draft)


The Court having considered Defendant's motion to Dismiss pursuant to Rule 12(b) of the Rules of Federal Criminal Procedures and having determined that good cause exist to grant this motion.  It is this ____ day of ,  2007



It is so ORDERED.




_____  _____

**JUDGE: Emmit G. Sullivan**


54

# IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|                          |   |                      |
|--------------------------|---|----------------------|
|                          | ) |                      |
| United States of America | ) |                      |
|                          | ) |                      |
| Plaintiffs               | ) |                      |
|                          | ) |                      |
| versus                   | ) |                      |
|                          | ) |                      |
| Zhenli Ye Gon            | ) | File: 1:07 CR 181    |
|                          | ) | MOTION TO DISMISS    |
| Defendant                | ) |                      |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*
       \*

## ORDER

The Court having reviewed Defendant's Rule 12 Motion to Dismiss and the Plaintiff's Opposition, having determined that good cause exist to grant a hearing to adjudicate both parties' oral argument concerning the merits of Defendant's Rule 12 Motion.  It is hereby ordered that the Hearing on the Motion is scheduled on _____, 2007.  It is this ____ day of , 2007

It is so ORDERED.


_____

**JUDGE: Emmit G. Sullivan**