IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The United States of America | ) |
| | ) |
|        Plaintiff | ) File: 07-181 |
| | ) The Hon. Sullivan |
|   against – | ) |
| | ) |
| Zhenli Ye Gon | ) |
|        Defendant | ) |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS OPPOSITION TO GOVERNMENTS INTRODUCTION OF EVIDENCE OF AND CONCERNING RESIDUE, INCLUDING EXPERT TESTIMONY ON FORENSIC EXAMINATION OF AND CONCERNING "RESIDUES" COLLECTED ON APRIL 26, 2007**

    Defendant Zhenli Ye Gon, though undersigned counsel, respectfully submits this supplemental brief in support of his opposition to the government's introduction of residue and related expert testimony concerning forensic examination of "residue" collected on April 26/2007.

    Approximately six weeks after the Mexican law enforcement's search and seizure action against Defendant's residence and places of business with the direct involvement of the USDEA/USDOJ on March 15, 2007, such sweeping collection of dirt from every corner of Unemed's places of business appears an unreasonable, desperate effort to mislead the Court, and confuse the Jury, to improperly incriminate the Defendant by perjurous distorting the following straight facts and plain truth:

    A. The "residue" of so-called "pseudoephedrine" itself, collected on April 26, 2007, which had been allegedly "showing positive response to the presence of pseudoephedrine", as Government proposed to introduce into evidence, should be properly suppressed and excluded in its being irrelevant and for its violation of Rule 403 of Federal Rules of Evidence. Any such evidence as expert testimony of and concerning "residue" should also be suppressed and excluded on the same grounds.

B.  U.S. Government cannot, or unwilling to, explain why it waited so long a time doing nothing before it went to Unimed's places of business to collect "residues" as late as on April 26, 2007, given to the fact that U.S.DOJ had involved in joint investigation with Mexican Law enforcement as early as March 2006; U.S. Government cannot, or unwilling to, explain why it allows about six weeks of time lapsed after March 15, 2007 Search and seizure; With such an undue delay, *the methods and procedures of science may have been violated.*

C.  The factual basis upon which the entire prosecution is being built is 19.797 metric tons of alleged "pseudoephedrine", a methamphetamine convertible controlled substance with approximately 70% yielding ratio leading to meth, the whole bulk of the cargo allegedly destned for Unimed as its ultimate recipient, seized at the Mexican Seaport, was packed within the close reach by the USDOJ, as well as by the easy access for sampling by USDOJ's Forensic Chemists (FCs).  The U.S. Government cannot, or unwilling to, explain why it had to carefully avoid taking samples from that 19 metric tons of bulky white powders, but laboring to fumble around such irrelevant "residues" at the place of Unimed's business.

D.  Noticing these dates is critical to decode the un-manifested ulterior motive behind the USDOJ's "residue collection".  The destruction and elimination of the 19.797 metric tons of alleged "pseudoephedrine" by executive order of Mr. Medina-Mora, the Mexican Attorney General, apparently under the urge or at least consent of the U.S. DOJ, took place on May 29, 2007, i.e., approximately five (5) weeks *after* the U.S. residue collection.  There is no records ever having demonstrated that the FCs from USDOJ have made any diligent efforts to take samples from such a bulk of inventory of alleged "19.797 metric tons of alleged "pseudoephedrine", before it was totally destroyed, for forensic testing.

E.  This sort of omission from reaching the most critical evidence cannot be simply explained by government "negligence" or "recklessness".  It is more than what these terms carries.  The U.S. Government has apparently refused to jump into the truth, which had been *accidentally* revealed and manifested by the Forensic Scientists under the Mexican Attorney General's Office, for its partial truth: Hydroxyl-Benzyl-N-Menthyl Acethamtne, that was *partially* found by those government-controlled forensic examination, was neither psychotropic or narcotic drugs, nor is it on government controlled substance list.  Mexican government's forensic findings have accurately pinpointed the undeniable fact that none would be able to find any inculpatory, incriminating evidence without altering and contaminating samples taking from that 19 Metric tons of physical evidence.  That means nothing could be achieved without committing fraud and perjury.

    F. U.S. DOJ fully understands that in order to make up incriminating evidence, it must bypass the entire bulk of 19.797 metric tons of physical exculpatory evidence. Putting all these motives together, we have all seen the April 26, 2007 incident and May 29, 2007 governments' action.

    G. U.S. Government knew and should have known that the April 26, 2007 residues collected from the places of business of Unimed was irrelevant at its first place. The U.S. FCs' forensic examination on these April 26, 2007 residues has turned out neither "Methamphetamine", nor "MDMA", nor "safrole", nothing but what is alleged "pseudoephedrien". Assuming such an allegation happened to be true at this time, it is wasteful. One found "residues" of pseudoephedrine from the places of business that was officially permitted, licensed, and supervised to transact pseudoephedrine by several Mexican Federal Government agencies including its Department of Health, short while ago.

Consequently, such government's evidence should be suppressed and excluded.

This brief provides additional support for Mr. Ye Gon that either such testimony is in violation of the Federal Rules of. Evidence Rules 104, 401, 402, 403, Rule 702 (2) and (3) or it fails the 'Daubert test' and as such, the "government's proposed testimony is not relevant ," it is not "within the average jurors common knowledge and experience", the "proposed testimony will usurp the jury's role "on that" the testimony should be precluded pursuant to Rule 403 because the "probative value will be substantially outweighed by the danger of unfair prejudice". If Government insisted to include such an evidence, a Daubert hearing should be conducted before deciding its admissibility.

Section A below provides a brief summary of the relevant rules and authority governing the admissibility of expert testimony. Section B explains why the government expert's testimony fails the <u>Daubert</u> test. Section C discusses why the testimony is precluded by Rule 403.

A. <u>The Law Governing Expert Testimony</u>

The admissibility of expert testimony is governed by Rule 702 of the federal Rules of evidence and supreme court case law. Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to determine a fact in issue, a witness qualified by an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, if (1) the testimony is based up on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Collection, sampling and forensic testing of the "residues" in the circumstances has totally failed to satisfy these criteria.

To further clarifying the FED.R.EVID 702, the U.S. Supreme Court created a two-prong test to guide judicial determination of admissibility of expert testimony based on Rule 702 in Daubert V. Merrell Dow Pharmaceuticals, Inc. 509 U.S 579 (1993). Daubert imposed a "gatekeeping" function on judges to ensure all expert testimony is both reliable and relevant.

The first prong of the Daubert test " establishes a standard of evidentiary reliability " by regarding that the expert testimony pertain to "scientific knowledge." Ld. At 590  This knowledge must be " more than subjective belief on unsupported speculation, "it must be " ground [ed] in *the methods and procedures of science.* " ld. However, the trial court's gate- keeping obligation is not reserved for purely "scientific" testimony, but applies to all expert testimony. Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137 (1999). Since any kind of knowledge may become the subject of expert testimony that has " a reliable basis in the knowledge and experience of [the relevant] discipline. "ld. At 148-149 (quoting Daubert, 509 U.S at 592)

The second prong of the Daubert test relates to the relevance and "fit" of the testimony to the case. Ld at 591.  In other words, the testimony must be linked to the facts of the case and be helpful to the jury in resolving a factual dispute ld. (citing United States V. Douming , 753 F. 2d 1224, 1242 (3rd CIR 1985)). When determining whether the testimony is relevant; 2) whether it is within the juror's common knowledge and

4

experience; and 3) whether it will usurp the juror's role of evaluating a witness' credibility. "United States V. Libby, 461 F. Supp. 2d 3, 7 (D.D.C. 2007)(quoting U-S.V. Rodriguez-Felix, 450 F. 3d 1117, 1123 (10th CIR. 2006??.  Based on these factors, expert testimony about matters within the understanding of the average juror is indmissilele.  Ld.  Expert testimony is also inadmissible if it "usurp[s] the jury's role as the final adjudicator of the factual truth.

Even if the court determines that certain expert testimony satisfies both prongs of the Daubert test, the testimony must still pass the test of Federal Rule of Evidence 403. ld. At 8. Rule 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

FED.R.EVID. 403.  This interplay between Rules 702 and 403 is extremely important because "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  "Daubert, 509 U.S at 595 (quoting Jack B. Weinstein, Rule 702 of the federal rules of evidence is sound; It should not be amended, 138 F. R. D 631, 632 (1991) therefore, " the judge in weighing possible prejudice rules exercises more control over experts than over lay witnesses. " ld.

" General acceptance is met with a necessary precondition to the admissibility of scientific evidence under the federal rules of evidence. "Daubert, 509 U.S at 597l see also Gen. Elect. Co. V. Joiner, 522 U.S. 136, 146 (1997) (finding no error where trial count excluded expert testimony that did not pass Daubert test, "[a] count may conclude that there is simply too great an analytical gap…"

B. The government experts prepared testimony will fail to satisfy the Daubert test.

5

Even if the government's expert witness concerning the collection of "residues" and forensic finding of such residues may have sufficient background and qualification to satisfy the reliability prong of the Daubert test*, the government has failed to establish that his testimony will assist the jury in understanding the facts at issue in this case. The proposed expert testimony does not "fit" the case at hand, and therefore it definitely fails the second prong of the Daubert test.

As discussed above, when determining the admissibility of expert testimony under the second prong, counts consider: " 1) Whether the testimony is relevant; 2) whether it is in the juror's common knowledge and experience; and 3) whether it will usurp the juror's role of evaluating a witness' credibility. "libby, 461F. Supp. 2d at 7 (citation omitted). The governments expert testimony will fail to supply these three factors, therefore, it should be suppressed and excluded.

1. The Government expert's proposed testimony is Not relevant

Expert testimony of Residue of pseudoephedrine for which Zhenli Ye Gon's pharmaceutical company was licensed by law to possess in the country of Mexico is not relevant the underlying cause of action of this criminal prosecution: conspiring to knowingly aid and abet trafficking of methamphetamine in the United States (or elsewhere), nor is it admissible under the Federal Rules of Evidence. An average juror, especially in the Washington, DC. U.S. District Court jury pool knows what residue is, which is something that remains after treatment or removal of a part. However, what will be inherently and prejudicially confusing and misleading is that where is such "residue" originated from as matter of fact, while whether the residue's legal status as matter of law, the question deriving from the ambiguity of the factual truth.

2. The Government witness' testimony is within the average juror's common knowledge and experience.

The Government's witness is unable to provide information that jurors cannot clean from their own common knowledge and experience. Expert testimony is

admissible only if it contains specialized knowledge to assist the trier of fact in evaluating the evidence. See <u>United States V. Mitchell</u>, 49 F. 3d 769, 780 (D.C. CIR. 1995). In this case, jurors can utilize then collective knowledge to determine what "residue" is or what it means although individual jurors may have no personal experience in the pharmaceutical process, residue is residue and they have enough general knowledge to permit them to analyze the facts of the case.

Expert testimony must be helpful, that is, the expert must play a significant role in explaining an issue. This means, among other things, that an expert may testify only to matters that the jury cannot understand adequately on its own. Therefore, the expert may not speak to matters in which " the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions." <u>Lampkins V. United States</u>, 401 A. 2d 966, 969 (D.C.1979).

    3.  The Proposed Testimony Will Usurp Jury's Role.

If the court permits the government expert witness to testify, it will usurp the jury's role as the trial of fact. Although Rule 702 does not bar an expert from concluding that the defendant was involved in illegal activity, the D.C. Circuit has accepted the view that "an expert may not testify on the ultimate question of guilt or innocence." <u>United States V. Boney</u>, 977 F 2d 624, 629-630 (D.C. CIR. 1992). By testifying about residue that apart from properly licensed conditions may be a drug which could be used in the manufacture of methamphetamine, the expert witness in effect would be testifying about the ultimate question of guilt or innocent in this case. Involvement in the possession of psudoephedrine, apart from when Mr. Ye Gon's company was properly licensed would amount to illegal activity. Mr. Ye Gon vigorously denies his involvement in any sort of illegal activity. As discussed in previous motions, the government offers no evidence, whether admissible, circumstantial, clean and convincing, conclusive, corroborating, credible, critical, cumulative, demonstrative, direct, documentary, inculpatory, material, relevant, substantial, substantive or testimonial. Since the government witness should be discussing residue which was lawfully on the laboratory equipment when it arrived there,

that being when Mr. Ye Gon was properly licensed to possess the pseduephedrine in question, Mr. Ye Gon's acts cannot be described as illegal with relation to the subject matter with which the government expert would testify. The government experts testimony will usurp the jury's role as a trial of fact by answering the ultimate question of guilt or innocence.

The expert's role is to assist the jury without preempting the jury's function : Determining whether the government has proven the defendant's guilt beyond a reasonable doubt.

    C.  Pursuant to Rule 403, The "Residue" Itself Should be Suppressed and Excluded from Admissible Evidence, Everything of and Concerning Excludible Residues, Including  Government Expert's Testimony, Should be Precluded

Even if the court determines that the government expert's testimony satisfies the Daubert test, the testimony should still be excluded based on Rule 403, <u>because the so-called "Pseudoephedrine residue" *itself* should be suppressed and excluded from admissible evidence</u> for public policy reasons enumerated in Rule 403. It is within the count's discretion to exclude evidence if its "probative value is substantially outweighed by the danger of unfair prejudice." FED, R. EVID. 403; <u>United States V. Gaitting</u>, 96 F. 3d 1511, 1523 (D.C. CIR. 1996)

In this case, testimony about residue being pseudoephedrine which could potentially be used to manufacture methamphetamine is inherently prejudicial and misleading, because the government has failed to incriminate Mr. Ye Gon with even a scintilla of evidence to establish a nexus between Mr. Ye Gon's lawfully licensed pharmaceutical operations and the manufacture of methamphetamine. The government's case is based on irrational speculation, or even a knowing twist of truth for politicized purpose in simply patronizing the incurably corrupted foreign regime, no particularized on objectives basis and not supported by specific and articulated facts to reasonably suspect that Mr. Ye Gon could be involved in such criminal activity. The suspicion by government agents was biased on their wild imagination and apprehension of the

existence of something wrong based on no evidence with definite proof. Testimony regarding a possible pseudoephedrine/methamphetamine connection at large is likely to lead/mislead a juror to believe that Mr. Ye Gon was involved in such a scheme, despite the lack of evidence in support of such conclusion. The danger of unfair prejudice in the situation far outweighs the probative value of the government expert witness' testimony.

With regard to the probative value vs. the prejudicial impact, once the admissibility of expert testimony has been established, the trial count must, as with all relevant evidence, balance the probative value of the proffered testimony against the potential for prejudicial impact on the jury.

On appeal, the scales are tipped in favor of the proponent of the evidence: "[W]e follow the 'better approach' recommended…[in] Weinstein's Evidence, Para. 403 [03], a 18. We have attempted to tip the scales in favor of the proponent of the evidence by seeking to maximize its legitimate hearing upon the issues while minimizing its potentially allusions overtone."

Once relevance is established, the judge must then weigh the probative value of the evidence against any prejudicial impact that it might have on the defendant. Punch, 377 A 2d at 1358.

   D. The Court Should Conduct a Daubert Hearing To Address the Issues Raised in
      This Motion.

Courts regularly conduct Daubert hearings to preview the testimony of expert witnesses and "to consider the arguments of counsel with respect to why the proponent believes the testimony of each preffered expert should be admitted and why the proponent believes it should not." United States V. Naegele, 471 F. Supp. 2d 152, 157 (D.D.C. 2007) ( Friedman, J.) ; United States V. Day, 433 F. Supp. 2d 54 (D.D.C. 2006) (Friedman, J) ( rejecting the proffered testimony following a Daubert hearing); United States V. First Data, 287 F. Supp. 2d 69 (D.D.C. 2003) ( Collen, J) (announcing Daubert

9

hearing for count to explore the basis of expert testimony, even though there was no dispute requiring such a hearing).

Under the Daubert approach, when faced with a proffer of expert "scientific" testimony, the trial judge acts as a "gatekeeper" and must determine at the outset, pursuant to Rule 104(a) whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trial of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. See Daubert 509 US592-593.

What the trial court should consider amy include whether the theory on technique can be and has been tested, whether the theory on technique has been subjected to peer review and publication, the known on potential rate of error and, as under the Frye standard, the general acceptance of the theory of technique. Ld. At 593-94

E. Reasonableness Standard

The purpose of appointing an expert is to assist counsel, not to serve the court. Dobson V. United States, 426 A. 2d 361, 368 (D.C. 1981); United States V. Chavis, 476 F. 2d 1137, 1142 (D.C. CIR 1973), However, "[A] trial court need not authorize an expenditure…for a mere 'fishing expedition.'" Gaither V. United States, 391 A. 2d 1364, 1368 (D.C. 1978). The court may also consider counsels' ability independently to accomplish the task for which expert assistance is sought. This writer booked up 'residue' in the Websters II New-Riverside Dictionary. The definition of residue is "the remainder of something after treatment or removal of a part. The defense team has full faith in the prosecution team's ability to define residue within the framework of their argument.

Mr. Ye Gon is able to, even though he does not have to, stipulates to residue which should have been lawfully left on equipment when operated in a lawful manner. Evidence should be weighed in determining its probative value. See United States V. Williams, 561 F. 2d 859, 861-62 (D.C. CIR. 1977) ( Money found outside a bank that

may have been admissible to show- that a robbery had occurred would have been immaterial if admitted on this issue alone since the fact a robbery occurred was uncontroverted).

Mr. Ye Gon's Company, Unimed Pharm Chem Mexico was properly licensed to import drugs until the end of 2004 at which point the company was still licensed to distribute what was imported. Consequently, such a legitimate residues cannot be collected and utilized to incriminate the Defendant. Consequently, all evidence of and concerning residue should be suppressed and excluded. So is the government expert testimony.

F. Conclusion

The proffered expert testimony violates Rule 702 and the Daubert test. In addition, the danger of unfair prejudice outweighs the probative value of the testimony, in violation of Rule 402. Therefore, Mr. Ye Gon respectfully objects to the governments proposed introduction of "residue" into evidence. Defendant further opposes government's expert testimony of and concerning the excludible evidence of "residues" for its apparent violation of Federal Rules of Evidence. Defendant respectfully requests that this court exclude any evidence of and concerning "residue", including Government proposed expert testimony, laymen testimony of and concerning "residues".

Finally, Mr. Ye Gon requests a hearing on the issues raised by this Motion. Whereas undersigned counsel will in addition to arguments supported by this Motion, include a Fifth Amendment dice process argument as well as an argument based on the Sixth Amendment jury trial right. Se, e.q. Proctor V. United States, 728 A. 2d 1246, 1249 (D.C.1999) (rejecting expert testimony about lie detector tests while noting that, "because of the authoritative quality which surrounds expert opinion, Courts must reject testimony which might be given undue defense by jurors and which could thereby usurp the truth-seeking function of the jury.")

In the event Mr. Ye Gon learns of any new information which supports the need for further motions on memorandums of law, he respectfully reserves his right to later supplement this motion and/or file additional motions which may be appropriate as is necessary.

Respectfully submitted by:


/s/ Ning Ye, Esq.____
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4334
ynyale@aol.com

/s/ Martin McMahon, Esq.____
Martin McMahon, Esq., DC BAR Number: 196642
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com

/s/ Lisa Angelo, Esq.____
Lisa Angelo, Esq., DC BAR Number: 491206
Martin McMahon,
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
langelo@martinmcmahonlaw.com

*Counsel for Defendant Ye Gon*

**CERTIFICATE OF SERVICE**

On this 10th day of October, 2007, I electronically filed the foregoing Opposiotion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Paul Laymon, Esq.
U.S. Dept. of Justice
1400 New York Avenue, NW
Bond Bldg. 8th Fl
Washington, DC 20530


/s/ Ning Ye, Esq Esq.____
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4334
ynyale@aol.com

*Counsel for Defendant Ye Gon*