IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| The United States of America ) | |
| ) | |
| Plaintiff ) | File: 07-181 |
| ) | Hon. Emmit G. Sullivan |
| v. ) | |
| ) | |
| Zhenli Ye Gon ) | |
| ) | |
| Defendant ) | |
| ) | |

**DEFENDANT'S MOTION FOR BILL OF PARTICULARS**

Mr. Zhenli Ye Gon (hereinafter "Defendant"), by and through his undersigned counsel, respectfully moves, pursuant to Fed. R. Crim. P. 7(f), for good cause shown, to direct the Government to file a bill of particulars.

Despite the proliferation of documents produced by the Government during discovery, it has become clear that the Defendant cannot possibly prepare a defense against the Government's charge as recited in its indictment of him because the Government has not stated precisely, *inter alia*, (1) the specific date(s) and time(s) when the Defendant is alleged to have committed the offense of "aiding and abetting in the manufacturing of 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, … intending and knowing that it would be unlawfully imported into the United States from Mexico and elsewhere"; (2) the place where the alleged offense was committed; (3) the identities of the individuals and/or co-conspirators and/or co-aides and abettors with whom the offense(s) were allegedly committed; (4) the conversations (recorded or otherwise) and/or the documents (written or otherwise) that link the Defendant to the names and identities of individuals referenced in item; (5) the name, identification, characterization, and chemical property of the alleged "mixture and substance

containing a detectable amount of methamphetamine"; (6) the <u>time, place and geographical location</u> where the alleged "mixture" process occurred; and, (7) the <u>time, place and shipment-identifying information</u> pertaining to the actual shipment of the "substance containing a detectable amount of methamphetamine" allegedly shipped or brought from Mexico, El Salvador, or elsewhere" *into* the United States.

In addition, based upon the Government's subsequent proffers and pleadings filed since its indictment, it is also clear the Government has unlawfully supplemented or varied the charge in its one-count indictment, so much so that it is now unclear as to what criminal act the Defendant has allegedly performed.  To allow the Government to proceed herein without filing a bill of particulars will deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure as he will certainly be tried for charges based upon facts not found by, and perhaps not even presented to, the grand jury which indicted him.

WHEREFORE, the Defendant respectfully requests this Court direct the Government to file a bill of particulars.  A Memorandum of Points and Authorities in support of this motion is submitted herewith.

                                                          Respectfully Submitted,

                                                          /s/ Ning Ye, Esq._____
                                                          Ning Ye, Esq.
                                                          1150 Connecticut Ave., N.W.
                                                          Suite 900
                                                          Washington, D.C. 20036
                                                          (202) 862-4343
                                                          ynyale@aol.com
                                                          *Counsel for Defendant Ye Gon*

                                              **MARTIN F. MCMAHON & ASSOCIATES**

                                              /s/_Martin F. McMahon, Esq.
                                              Martin McMahon, Esq., D.C. Bar Number: 196642
                                              Lisa D. Angelo, Esq., D.C. Bar Number: 491206
                                              1150 Connecticut Ave., N.W.
                                              Suite 900
                                              Washington, D.C. 20036
                                              (202) 862-4343
                                              mfm@martinmcmahonlaw.com

                                              *Counsel for Defendant Ye Gon*

Of Counsel:

James M. Ludwig, Esq. #447827
1150 Connecticut Ave. NW
Suite 900
Washington, D.C.  20036
(202) 862-4343

**CERTIFICATE OF SERVICE**

On this 31st day of October, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Paul Laymon, Esq.
U.S. Dept. of Justice
1400 New York Avenue, NW
Bond Bldg. 8th Fl
Washington, DC 20530

    /s/_Martin F. McMahon, Esq.
Lisa D. Angelo, Esq., D.C. Bar Number: 491206
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The United States of America | ) | |
| | ) | |
| Plaintiff | ) | File: 07-181 |
| | ) | Hon. Emmit G. Sullivan |
| v. | ) | |
| | ) | |
| Zhenli Ye Gon | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR BILL OF PARTICULARS**

**INTRODUCTION**

If ever there were a need for a bill of particulars, it is in this case. Defendant Zhenli Ye Gon, the founder and CEO of a Mexican pharmaceutical company (Unimed Pharmaceuticals) who has never been charged with a crime in his life, sits in D.C. jail for allegedly taking part in a shadowy international *methamphetamine* conspiracy whose participants and activities are nowhere specified in the indictment – or, for that matter, in subsequent proffers and statements of record by the Government's prosecutors. Based on the alleged fact that Mr. Ye Gon's company imported into Mexico the decongestant pseudoephedrine and/or allegedly-related chemicals, the Government has taken "a leap" (as this Court recognized) to try to connect Mr. Ye Gon somehow to the manufacturing of methamphetamine, and, from there, another leap to the importation of methamphetamine into the United States. And the only justification for these leaps, in the Government's own words, is a mere *possibility*: "It seems very clear that he was charged in the United States because he imported into Mexico very large quantities of substances

which *could be* used as precursors to manufacture methamphetamine . . ." Govt. Opp. to Motion to Dismiss at 8 (Oct. 26, 2007) (emphasis added).

The purpose of a bill of particulars, of course, is "to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." United States v. Urban, 404 F.3d 754, 771-72 (3d. Cir. 2005).  Because Mr. Ye Gon has never been informed of any *facts* allegedly connecting him to either the manufacturing of methamphetamine or its importation into the United States, nor the identities of any individuals with whom he supposedly participated in this so-called conspiracy, he is quite literally foreclosed from "adequately prepar[ing] his defense" at this time.  Unless the Court dismisses the patently-deficient indictment outright pursuant to the Defendant's pending motion, a bill of particulars is essential to enable Mr. Ye Gon to prepare his defense, to avoid unfair surprise at trial, and to protect against the very real possibility of repeat prosecutions.

As shown below, the very lack of specificity in the indictment has enabled the Government to suggest and promote various, and sometimes contradictory, criminal activity scenarios.  Because it is unclear what Mr. Ye Gon is being charged with, let alone the time when he supposedly committed such activities, he needs (among other things) particularization of the Government's allegations regarding his allegedly-criminal activity during each of the following periods

(1) 1999-2001 (the period prior to Mexico's licensing requirements for pseudoephedrine);

(2) 2002-2004 (during which pseudoephedrine importation was required to be licensed);

and[1]

---

[1] As this Court knows, Mr. Ye Gon has repeatedly contended that discovery (i.e., the Unimed log book, or "Libro do Control" ) will confirm that Unimed had the requisite licenses to legally import and sell pseudoephedrine

2

(3) 2005-2006 (the post-licensing period in Mexico). Mr. Ye Gon also seeks particularized information regarding the identities of all indicted and/or unindicted co-conspirator(s); and the time, place, manner and means of the criminal acts such individuals – including, of course, Mr. Ye Gon – are alleged to have carried out.

Finally, while the Government will undoubtedly cite to its recent document production in response to this motion, the tens of thousands of pages of unindexed documents from Mexican authorities that Defendant has received – almost all of which are in Spanish – are certainly no substitute for a bill of particulars. This is not a Mexican case about pseudoephedrine, but an American case about methamphetamine. It is not Mr. Ye Gon's responsibility, but the Government's, to determine what the case against him is based on – if it is based on anything at all. Moreover, it is surely no burden for the Government to provide a bill of particulars here. After all, the Government's case should not be predicated on unknown acts and actors, nor on leaps of logic, given that its investigation into Mr. Ye Gon began in March of 2006, and culminated in a raid on Unimed in March of 2007.

## BACKGROUND

The Government alleges in its indictment that, "from in or about 1999, the exact date being ***unknown*** to the Grand Jury and continuing thereafter up to and including the date of the filing of this Indictment, in the countries of Mexico, El Salvador, the United States, ***and elsewhere***, … ZHENLI YE GON, and ***others known and unknown*** to the Grand Jury, did unlawfully knowingly, and intentionally combine, conspire, confederate, and agree with ***each other***, and with other co-conspirators ***unknown to the Grand Jury***, … to aid and abet in the manufacture of 500 grams or more of ***a mixture and substance*** containing a detectable amount

---

in Mexico. To date, the Government has not produced the Libro de Control, notwithstanding its mass production of Spanish documents.

3

of methamphetamine, a Schedule II controlled substance, *intending and knowing* that it would be unlawfully imported *into the United States* from Mexico *and elsewhere*, outside of the United States, …" (emphasis added).

In its subsequent proffers to the court, the Government has alleged the following factual theories for charging Mr. Ye Gon: (1) unexplained wealth; (2) unexplained "ties" to manufacturing activity; (3) acquisition of tons of "precursor chemicals" to be converted into pseudoephedrine; (4) creation of a "chemical cousin" to pseudophedrine in order to get around a "new Mexican law"; and (5) "importation of both pseudoephedrine and ephedrine by the tons prior to 2004."  Similarly – and most revealingly – in its most recent pleading, the Government alleges, "It seems very clear that he was charged in the United States because *he imported into Mexico very large quantities of the substances which could be used as precursors to manufacture methamphetamine*, he had huge *unexplained wealth* (more than $300 million dollars), and *other evidence ties him* to manufacturing activity."  Govt. Opp. to Motion to Dismiss at 8 (October 26, 2007).

The Government repeated these tenuously-related theories in open court when asked to explain the purported connection between Mr. Ye Gon and the crime charged:

```
                                                            67
  17      . . . since the late '90s, certainly the year 2000,
  18      [the Defendant] has imported multi-ton quantities of ephedrine and
  19      pseudoephedrine from China, from a company that we know as
  20      Cipher (ph), a company located in inner Mongolia, he imported
  21      tons of this product.
                                                            68
  22      in the early part of 2004, he wasn't
  23      selling it to people involved with the tableting or capsulating
  24      ephedrine or pseudoephedrine.  That's not the kind of business
  25      he had.  He was acquiring these tons of ephedrine and
                                                            69
   1      pseudoephedrine prior to and up to 2004 and then selling it to
   2      customers that are virtually unknown because there's no
   3      documentation in his business because his legitimate business
   4      was the sale of other products such as penicillin, such as a
   5      amoxacillin, such as steroids, which are legal to sell in
   6      Mexico, that we have documentation and witnesses for and that we
```

4

```
         7    can show that he would have made a modestly legal income which
         8    would have entitled him to live a modest lifestyle, a nice
         9    lifestyle, not the lifestyle he's living.
                                    . . .
        16    [in] 2004 when the law changes he calls or goes on sales calls and
        17    goes to China and he meets with representatives of this company
        18    in China, and effectively the conversation he has now is the law
        19    has changed, I need to figure out a way to get around it, and so
        20    he has them pursuant to his recipe make a chemical cousin to
        21    ephedrine and pseudoephedrine that he then imports by the tons
        22    into Mexico and eventually he builds this plant, part of which
                                                                            70
         2    contains what appears to me to be very expensive equipment, and
         3    we know from our chemists who were there on site taking samples
         4    that he was bringing in this chemical cousin, and therefore if
         5    he was transforming it into ephedrine and pseudoephedrine in ton
         6    quantities.
                                    . . .
        11    [he had a] manufacturing plant with no salesmen, with no customers.
                                    . . .
        20    so we know he's acquiring
        21    these huge tons of precursor chemicals.  On the other end of
        22    this factory bell, so to speak, is the fact that this defendant
        23    is in possession of more than $300 million in United States
```

It is an understatement to say that these proffers provide the Defendant with no clear understanding as to why he is in jail – particularly in light of the Government's acknowledgement that his imported chemicals merely "*could* be" used "*as precursors*" to make methamphetamine, and, indeed, the Government's conceded uncertainty as to whether Unimed's imported chemicals were even used to make pseudoephedrine, much less methamphetamine ("*if he was transforming it into ephedrine and pseudoephedrine*").[2]

Discovery has only reinforced the need for a bill of particulars. Rather than clarifying the Government's theories, the Government's document production has muddied the waters even further. Consisting of over 30,000 pages of untranslated material in Spanish and Chinese, the production has no index or organization we can discern (other than Bates stamping). Among the numerous documents provided only in CD format, many are corrupted and unretrievable. In

---

[2] One need not be cynical to conclude that if the Government had any concrete allegations to make about Mr. Ye Gon's purported involvement with methamphetamine, it would not be talking about the "very expensive equipment" at the new Unimed plant or Mr. Ye Gon's "immodest" lifestyle.

addition, a number of the hard copy documents are blank or unreadable. Despite hiring several additional attorneys, including a Spanish-speaking attorney, Defense counsel has not yet seen a single document from 1999, the alleged start of the conspiracy, nor a single document connecting the Defendant to methamphetamine production, distribution, or importation.

Without a bill of particulars, the burden of reviewing these documents is compounded by the lack of clarity as to the Government's theory connecting the Defendant to the methamphetamine crime he is charged with. Based on the discovery that the Government has thus far produced, it appears that Mr. Ye Gon has been indicted (in part) for a failure to explain his accumulated wealth, not yet a criminal activity here in America. The Prosecutor's basic justification for indicting the defendant, as he explained to the court in a motions hearing, is that the Defendant is not living a "modest lifestyle." While discovery shows a lot of banking activity and a lot of profits from selling penicillin, the nexus *to methamphetamine* that this Court found absent in previous Government proffers appears to be absent from its document production as well.

Relying solely on the above-identified proffers and documents produced by the Government, it is unclear (perhaps because it is unknown) whether the Government's allegation against the Defendant is somehow predicated on the allegedly-illegal importation of pseudoephedrine from China into Mexico, or on legal or allegedly-illegal importation of intermediate chemicals from China into Mexico – neither of which, in and of themselves, would constitute a crime in the United States in any event.[3] But to the extent that such activities play

---

[3] The Defendant needs to know *exactly* what the Government is alleging were the "criminal acts" committed, and during what time periods, so that when he reviews documents produced by the Government, he can look for relevant documents that adequately respond to the Government's allegation(s). For example, if the Government is alleging that the Defendant illegally imported pseudoephedrine from China into Mexico, then the Defendant needs to look for the licenses and other related documents relating to the legality of the importation. If, however, the Government is alleging that the Defendant imported intermediate chemicals from China into Mexico, licenses are not required for these imports and different documents would be relevant to rebuttal of the allegation.

6

any part in what the Government is alleging against Mr. Ye Gon, he is entitled to know what such activities are, and how they relate (if at all) to any alleged involvement with methamphetamine.

## ARGUMENT

**A.    THE DEFENDANT CANNOT PREPARE A DEFENSE BASED UPON THE GOVERNMENT'S FACTUALLY DEFICIENT INDICTMENT**

An indictment must set forth the offense "with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged," and "every ingredient of which the offense is composed must be accurately and clearly alleged." Cruikshank at 558 (internal citations omitted). It is an elementary principle of criminal pleading that where the definition of an offense, whether it be at common law or by statute, "includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species, -- *it must descend to particulars*. Id. (internal citation omitted) (emphasis added). Thus, the object of an indictment is (1) to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, (2) to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. Id.; see also U.S. v. Brown, 2007 U.S. Dist. LEXIS 49169 * 30 (D.D.C July 9, 2007) (citing Hamling v. United States, 418 U.S. 87 (1974) (additional citations omitted)).

Moreover, facts are to be stated in an indictment, not conclusions of law alone. Cruikshank, 92 U.S. at 58. While the indictment may use the language of the statute, that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged. Brown, 2007 U.S. Dist. LEXIS at *31 (citing U.S. v. Conlon,

7

628 F.2d 150, 155 (D.C. Cir. 1980)).  The test for sufficiency is whether it is fair to require the accused to defend himself on the basis of the charge as stated in the indictment.  <u>Brown</u>, 2007 U.S. Dist. LEXIS 49169 at *31 (citing <u>U.S. v. Dale</u>, 782 F. Supp. 615, 621 (D.D.C. 1991)).

As indicated by the Government's use of the term "unknown" three times in its one-count indictment,[4] the indictment fails to furnish the Defendant "with such a description of the charge against him as will enable him to make his defense."  <u>Cruikshank</u> at 558.  As this Court aptly noted at the October 7, 2007 motions hearing: "[T]here's a leap there.  The drugs [pseudoephedrine or related chemicals] are brought in, tons of drugs are brought from China to Mexico.  There's a transformation process.  Drugs leave the factory.  According to the government's theory the drugs are sold to unknown people, and according to the government's theory, and there may be evidence for it, the drugs [*methamphetamine*] enter the United States, that's your case there?"  J. Sullivan, Trial. Trans 72:22-25 – 73:1-3 (October 7, 2007).  The indictment is devoid of any facts connecting the Defendant with any conduct potentially in violation of United States laws.  This Court observed as much in its question to the Government: "…there's no other conclusion but the drugs entered the United States?" (73:23-24).  The Government's answer:  "Correct."  (P. Laymon, Tr. at 73:25.

The defendant cannot be expected to defend against allegations of unknown acts involving unknown people in unknown places during an uncertain time frame.  Such vague and conclusory accusations do not begin to approach the "certainty and precision" required by Fed. R. Crim. P. 7(c).  As a result, the Government's indictment is not "good and sufficient in law" such that a judgment of conviction could be pronounced upon it.  <u>Cruikshank</u>, 92 U.S.  at 558-59

---

[4] To wit, "from in or about 1999, ***the exact date being <u>unknown</u>*** to the Grand Jury and continuing thereafter up to and including the date of the filing of this Indictment, in the countries of Mexico, El Salvador, the United States, and elsewhere, … ." … "ZHENLI YE GON, and others ***known and <u>unknown</u>*** to the Grand Jury, did unlawfully knowingly, and intentionally combine, conspire, confederate, and agree with each other, and ***with other co-conspirators <u>unknown</u> to the Grand Jury***, …" (emphasis added).

8

B.  **LACK OF SPECIFICITY IN THE INDICTMENT ALLOWS THE GOVERNMENT TO PROCEED ON DISPARATE, INDETERMINATE FACTUAL THEORIES**

It is a "settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." Id. Here, the Government's *de facto* modifications to the indictment go well beyond a "matter of form." Consequently, if this Court does not require a bill of particulars, the Defendant could "be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." U.S. v. Russell, 369 U.S. 749, 770 (1961).

In U.S. v. Holder, the court granted the motion for a bill of particulars seeking "specification as to the way the aider and abettor is alleged to have aided or abetted the commission of the offense." Id.,1991 U.S. Dist. LEXIS 7566 *10 (May 31, 1991). The Government was ordered to respond because the type of "information sought does not require the government to disclose purely evidentiary material." Id. at *10 (May 31, 1991). Similarly, in U.S. v. Hubbard, the District Court also found that in a complex case, information directly relating to the Government's theory of the case should be disclosed in a bill of particulars. Id., 474 F. Supp. 64, 81 (D.D.C. 1979). In addition, "acts of unindicted co-conspirators" as well as overt acts (not specified in the indictment) by any alleged conspirator not named as a defendant were also ordered to be disclosed in a bill of particulars. Id. at 81.

As its proffers and post-indictment representations show, the Government has confusingly supplemented and modified the charge set forth in its indictment in such a way as to make it even less clear at this stage of the case (than at the outset) what exactly Mr. Ye Gon is alleged to have done. A bill of particulars cannot save an invalid indictment (and the indictment may be found invalid here). See U.S. v. Russell, 369 U.S. 749, 770 (1961). If the indictment is

9

not dismissed outright, a bill of particulars is essential to afford Mr. Ye Gon the basic protection afforded by the grand jury – that a conviction, if one were to be had, was not on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

      Accordingly, the Government can and should be ordered to produce particularized information regarding the manner and means of the alleged conspiracy, the identities of all alleged co-conspirators, and the dates, locations and nature of any overt acts allegedly committed by the Defendant and each of the identified co-conspirators.  See U.S. v. Baker, 262 F. Supp. 657, 675 (D.D.C. 1966) (quoting, "the names and addresses of any co-conspirators who have become known to the Government since the indictment was returned should certainly be furnished." (internal citation omitted)).  This Court has acknowledged, in the context of its ruling on the Defendant's motion for a speedy trial, that this case is complex.  Since subsequent proffers and document production have only compounded this complexity, the Government should be required to provide the Defendant with all particulars set forth above, and requested in the motion submitted herewith.

Respectfully Submitted,

/s/ Ning Ye, Esq.
Ning Ye, Esq.
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
ynyale@aol.com

**MARTIN F. MCMAHON & ASSOCIATES**

/s/_Martin F. McMahon, Esq.
Martin McMahon, Esq., D.C. Bar Number: 196642
Lisa D. Angelo, Esq., # 491206
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

Of Counsel:

James M. Ludwig #447827
Martin F. McMahon & Assoc.
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

**CERTIFICATE OF SERVICE**

On this 31st day of October, 2007, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Paul Laymon, Esq.
U.S. Dept. of Justice
1400 New York Avenue, NW
Bond Bldg. 8th Fl
Washington, DC 20530

/s/ Martin F. McMahon, Esq.
Martin McMahon, Esq., D.C. Bar Number: 196642
Lisa D. Angelo, Esq., # 491206
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The United States of America | ) | |
| | ) | |
| Plaintiff | ) | File: 07-181 |
| | ) | Hon. Emmit G. Sullivan |
| v. | ) | |
| | ) | |
| Zhenli Ye Gon | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**ORDER**

Upon consideration of Defendant's Motion for a Bill of Particulars, and the Government's opposition thereto, it is this _____ day of _____, 2007 hereby

**ORDERED** that the Defendant's Motion is **GRANTED** and it is further;

**ORDERED** Government will file a bill of particulars on or before _____.

 

_____
Hon. Emmit G. Sullivan
United States District Judge