## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                               |   |                        |
|-------------------------------|---|------------------------|
| The United States of America  | ) |                        |
|                               | ) |                        |
| Plaintiff                     | ) | File: 07-181           |
|                               | ) | Hon. Emmit G. Sullivan |
| v.                            | ) |                        |
|                               | ) |                        |
| Zhenli Ye Gon                 | ) |                        |
|                               | ) |                        |
| Defendan                      |   |                        |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS**

The Government filed its response to Defendant's Motion to Dismiss. The Government's response has carefully crafted to have bypassed all fatal and dismissible errors involved in the Government's Indictment, and all other directly related supporting documents:  knowing falsity and highly reckless disregard of the truth, therefore, it appears weak, evasive and irresponsive.  Though the Government generally opposes any dismissals, with or without prejudice, nevertheless, the context of the Government's response, for its most relevant part, may have helped lead to this case's dismissal.

1. **THE ALLEGED 'PRECURSOR' HAS NO RECORD OF EXISTENCE AND REGISTRATION IN THE CHEMISTRY COMMUNITY, THEREFORE, THE EXISTENCE OF AN ALLEGED 'PRECURSOR' HAS NOT BEEN, WILL NEVER BE, ESTABLISHED BY THE GOVERNMENT**

On page 7, paragraph 2, the Government states the following:

"In the instant case defendant ordered _a chemical_ from a company in Inner Mongolia, People's Republic of China, which **could be** rather easily **converted** by the Defendant  into ephedrine and pseudoephedrine, **which** are precursor chemicals used in manufacture of methanphetamine." (Emphasis added)

**If the foregoing is the government's explicit admission of the whole factual truth in the underlying cause of action brought by this instant Indictment,**

1

**Defendant, by and through the undersigned counsels, humbly prays that the instant Indictment be immediately dismissed.**

According to government's own finding, the ***"a chemical"*** " ***will be*** precursor chemicals" only **after** it is **converted** by Defendant into "Ephedrine" and "Pseudoephedrine". Examining the Government's other related allegations concerning "illicit drug trafficking", the same prosecutor, Paul Laymon, Esq., has also used such term as "chemical cousin" which could be ***transformed*** into "pseudoephedrine". At this point, all controversies have been clarified in the following fact patterns:

A.   There is neither allegation, nor proof, that a **conversion** process from "a chemical" into pseudoephedrine or ephedrine has been undertaken;

B.   Defendant's proven involvement in such conversion process, if any, is completely missing.

C.   The only remaining question is whether Defendant's importation of what government alleged "a chemical", in its pre-conversion status has violated the U.S. Federal Law on controlled substance.

Listing, enumeration, and definition of controlled substances are set forth in 21 USC 802. For most relevant part, such chemical substance as ephedrine, pseudoephedrine, methamphetamine, MDMA, safrole, can be found in the statute. There is no such listing as "**a chemical** which could be converted into ephedrine and pseudoephedrine", or "chemical cousin" which could be transformed into ephedrine and pseudoephedrine". (U.S. Code Collection, Title 21, Chapter 13, Subchapter I, Part A, Section 802) Having carefully reviewed the Federal Statute, we find that the alleged 'precursor', an unprecedented novel, *i.e.,* "a chemical" convertible, or a "chemical

2

cousin" transformable, into ephedrine or pseudoephedrine, has no record of existence in Federal Statutes governing controlled substance, neither can it be found in any registration in the chemistry community, therefore, the existence of an alleged 'precursor' has not been, will not likely be, established by the government.  Consequently, the government's entire case has collapsed by the weight of its own admission of the factual truth:  What Defendant imported from Inner Mongolia into Mexico is itself not a precursor chemical according to 21 USC 802, even though such a non-precursor chemical could be converted, or trans---formed into a precursor.

Is anything left in this entire case if there is no chemical precursor, no controlled substance involved, as the fact itself persistently demonstrates, now being admitted by the prosecuting U.S. Attorneys? Nothing.  Time may be right to have this case ended starting from dismissal of the failed indictment.

Further, to continue pursuing this instant case by hanging on "chemical cousin" theory may be improper, because the U.S. prosecutors are not supposed to rewrite, or overwrite, what has been written by the Congress, the Legislative Branch, by inserting "chemical cousin" into 21 USC 802, just for prosecutorial convenience.  U.S. Department of Justice, as part of the executive branch, is not supposed to improperly expand its its executive power into either legislative branch or judicial branch.  In this instant case, the tendency of such an encroachment of executive power demonstrated in a case which is not related to terrorism, may need to be halt by this Honorable Federal Court

In total absence of Defendant's proven involvement in chemical "conversion" process, Government is left with no case.  What is that **_"a chemical's"_** chemical characterization and identification, hence its legal status by itself? What is that **_"a_**

*chemical's"* chemical characterization and identification, hence its legal status prior to "conversion"? In classical chemistry, hence in Forensic Chemistry, "*a chemical*" by itself in its existing  molecular structure is distinctive from a "converted chemical"or "transformed chemical".  On molecular level, or even just on organic chemistry level, zillions of completely different chemical organisms, as matter of its own distinctiveness bearing its own identification and characterization, are inter-convertible or inter-transformable through chemical conversion process.   It is a common sense that a transformed chemical organism is scientifically different matter gaining its own distinctiveness and identity.  If  such a common sense rule is not observed and respected, different matters can then be messed up at free will, the classical chemistry, hence, the forensic chemistry, followed with our entire legal order, will inevitably collapse into chaos.

        To vividly illustrate this matter, let's take a simple example: A nitrogen based ordinary fertilizer is an "innocent" chemical, having its own distinctive molecular structure, and its own expression of chemical characterization.   However, if one, for instance, a terrorist bomb-maker, has caused "conversion" of its chemical organism by adding, among others, the main ingredient, *i.e.,*  nitric acid, the *converted* fertilizer is then no longer a fertilizer, it becomes an powerful explosive, namely, TNT.  Such "conversion" caused change of label reflects fundamental change of chemical identity, by and through easy "conversion", or, say, easy "transformation".  It is so easy that an amateur terrorist bomb maker can "convert" it in his/her basement or car garage.  Taking this chemical "conversion" example into human civilization under rule of law: One in good faith buying and selling chemical fertilizer and one making TNT underground during the midnight, their respective legal status and legal consequences may also be different.

In the same light, no government of minimum rationale shall arrest, detain, and prosecute all merchants simply because the latter are found selling chemical fertilizers or selling nitric acid, even though you can call these two main ingredients as TNT cousins. If one says Defendant Ye Gon's "a chemical" could be easily "converted" into ephedrine, pseudoephedrine, in absence of such proven conversion or in absence of allegation of "conversion", the "a chemical" by itself is NOT ephedrine or pseudoephedrine.  In the same light, a chemical fertilizer by itself is not TNT Explosive, regardless being "cousin, sister, spouse, or grandfather.  Moreover, Defendant's "a chemical" could also be easily converted into at least, according the technical know-how possessed by Defendant Ye Gon, eight such other health-care related medicinal chemicals as Phenylphrine HCL, a cutting-edge decongestant as **Pseudoephedrine substitute**.

Government's foregoing admission, which represents the factual truth, has been corroborated by Mexican Government's forensic finding, that such "a chemical", namely, Hydroxy Benzyl-N-Menthyl Acetethantene, is neither psychotropical, nor narcotics, nor precursor chemical according to Mexican Federal Health Law.  While such "a chemical" appears positive reaction to pseudoephedrine *after* it was treated (converted?) by adding Chlorohydric Acid and heat.*  Consequently, government's foregoing finding clearly demonstrates there is no violation of controlled substance.

In respect of motion for dismissal, the significance of quoting the foregoing government's fact finding, as matter of law, is to manifest the government's full knowledge in such exculpatory nature in this instant case: the Defendant is not guilty of transacting any precursor chemicals.

---

*"We treated the samples by adding chlorohydric acid and heat, we obtained the testing results of pseudoephedrine chlorohydriate."Q.I. Jose Fernando Jauregui Zavala,  Mexican Secretary of Treasury, General Customs Administration, Central Administration of Laboratories and Scientific Services, File 326.02.02/879, 04/20/2006

**2. The Indictment Must be Dismissed with Prejudice, Not Because the Evidence Presented to the Grand Jury is Not Sufficient, But for "Knowing Fraud and Perjury"**

In Federal Criminal Proceedings, Government's charging papers against Defendant may face serious challenge if there are proven deliberate falsity.   The Government's charging papers,  supported by Oath or affirmation*, " would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause*, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." Franks v. Delaware, 438 U.S. at 168. (emphasis added)

When Government itself has been so close to have acknowledged there is no precursor chemical involved, the "ploy" may no longer be worthwhile to continue. Unfortunately, what the Government has done is not to timely pull itself back from that likely impassible track, but to have made improper efforts in attempting to collect untruthful confessions in the manner which may be strictly prohibited by professional ethics in the community of legal profession.

In Government's Response to Defendant's Motion to Dismiss, the Government argued: Defendant claims the Government did not present sufficient evidence to the Grand Jury to warrant the return of an indictment." (Government's Response, Page 2)

In this instant case, the Indictment, hence the entire case, may need to be dismissed with prejudice when Government's misconduct is "neglectful and dilatory", to justify a dismissal of indictment with prejudice.  U.S. v. Taylor, 487 US 338-339.  The issue here is not whether the government's charging evidence presented against the Defendant is sufficient or deficient. The issue is whether such a deficiency is the outcome of willful, intentional misconduct.

In reference to such a deliberate falsehood or reckless disregard of truth, only conclusory remarks are not sufficient.    "***There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.***" Franks v. Delaware, 438 U.S. at 168. (emphasis added).

While knowing the Defendant did not involve in transacting any precursor chemicals or narcotic drugs, the Government did commit neglectful, dilatory acts in reckless disregard of the factual truth.  On August 29, 2007, Paul Laymon, Esq., and other US Attorneys, DEA officials traveled to Mexico, and interrogated at least three of the inmates, including the Defendant's wife, Tomoiyi Marx Yu, without allowing their legal counsel to be present. Without any due respect to spousal privilege, these U.S. interrogators used "inducements and crude threats", these U.S. interrogators, said to be invited by the superintendent of the Mexican detention facilities, brought to those interrogated with pre-done version of her "confession", coercing the Defendant's wife to implicate her husband for "massive illicit drug trafficking" under the protest of latter who told them that those pre-framed "confession" was too distant from the truth, and had completely violated the factual truth.*    Submitted are three Affidavits clearly indicating that the government has committed serious ethical violations for its failed attempts to make up an illicit drug case from knowing nothingness.  These Affidavits are self-evident, self-explanatory.  With such knowing, intentional, and malicious ethical violation, it may be the high time to dismiss this instant case with prejudice.

---

*"…I was then induced to frame up my husband for what these interrogators had prepared for me: a formed answer leading to conclusion that I witnessed my "alienated" husband to have done such heinous criminal activities as massive drug trafficking and massive manufacturing of precursor drugs.  When I told these interrogators that these pre-framed "my testimony" was too distant from the truth, and had completely violated the truth, they immediately became irritated and viciously rude to me."  Affidavit issued by Tomoiyi Marx Yu from Mexican Jail, dated October 9, 2007

### 3. The Government's Argument that the Indictment is Valid Has No Merit

Government argued:

"Here the indictment is facially valid, as it sets out a violation of federal Law, is signed by a government lawyer, as well as by the foreperson of the grand jury, cites to the federal statute which the defendant is alleged to have violated, and was filed with the clerk." See Government's Response to Motion to Dismiss, page 3, paragraph 3.

Assuming the indictment in question has satisfied its formality request under the Rules of Criminal Procedures, even though it has not even met the mere formality requirement concerning its serious irregularity, that fact alone does not render the indictment valid if such an indictment is a product of fraud, or of bad faith misconduct. In addition to formality, "…facts are to be stated in an indictment, not conclusions of law alone. U.S. v. Cruikshank, 92 U.S. at 58. While the indictment may use the language of the statute, that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged. Brown, 2007 U.S. Dist. LEXIS at *31 (citing U.S. v. Conlon, 628 F.2d 150, 155 (D.C. Cir. 1980)). The test for sufficiency is whether it is fair to require the accused to defend himself on the basis of the charge as stated in the indictment. Brown, 2007 U.S. Dist. LEXIS 49169 at *31 (citing U.S. v. Dale, 782 F. Supp. 615, 621 (D.D.C. 1991)). This instant Indictment has never met these criteria. It is therefore invalid in both form and contents and should be dismissed.

To further support the Government's argument that the Indictment is not only valid on its facial value, but also sufficient for its contents, the government quoted States v. Olderbak, stating that "the instant indictment lists both a limiting time frame and specifies the type of controlled substance involved, and therefore meets the requirements

of Fed. R. Crim, P 7( c)(1).  Government may cite any other authorities but Olderbak

because Olderbak may not even remotely support the government's argument.   It is in

the light of Olderbak, the Government has failed to meet none of three criteria set up in

Olderbak.  The Government has apparently misquoted, and misinterpreted the Matter of

Olderbak.  In Oldbak, the Indictment was found sufficient because "the Indictment in this

case sufficiently apprised the defendants of the **time frame** of the alleged drug activity,

the **members of the alleged conspiracy,** and **the type of drugs** involved."  United States

v. Oldbak, 961 F2d, 756, 760 (8th cir, 1992)

     None of all these three criteria set forth by Olderbak has been met in this instant

case.  While revisiting this instant Indictment: Time (exact date): Unknown; Co-

Conspirators: Unknown; Type of drugs: Six or more different versions, ever changing

stories, totally lost.  If standards in Olderbak is applicable, this instant indictment fails

and it should be dismissed.

     Let's revisit the text of the indictment in comparison to Olderbak's three criteria:

"from in or about 1999, ***the exact date being <u>unknown</u>*** to the Grand Jury and continuing

thereafter up to and including the date of the filing of this Indictment, in the countries of

Mexico, El Salvador, the United States, and elsewhere, … ." … "ZHENLI YE GON, and

others ***known and <u>unknown</u>*** to the Grand Jury, did unlawfully knowingly, and

intentionally combine, conspire, confederate, and agree with each other, and ***with other***

***co-conspirators <u>unknown</u> to the Grand Jury***, …" (emphasis added).  As indicated by the

Government's use of the term "unknown" three times in its one-count indictment, the

indictment fails to furnish the Defendant "with such a description of the charge against

him as will enable him to make his defense." <u>Cruikshank</u> at 558.

Now, given to the foregoing authority cited by the United States, we feel amazed to have seen that the prosecutor has the bold to declare the indictment's sufficiency by quoting Olderbak: The instant indictment lists both a limiting time frame and specifies the type of controlled substances involved, and therefore meets the requirements of Fed R. Crim. P. 7 (c )(1)" Olderbak 961 F2d, 750-760.   Has the government specified the type of controlled substance? Never.  We have so far seen at least six (6) different, ever changing versions concerning "the type of controlled substance", none has ever been "specified"*.  The newest version, "a chemical which could be easily converted into ephedrine and pseudoephedrine", precursor chemicals" is not by itself "the type of controlled" substance.

As this Court aptly noted at the October 7, 2007 motions hearing: "[T]here's a leap there.  The drugs [pseudoephedrine or related chemicals] are brought in, tons of drugs are brought from China to Mexico.  There's a transformation process.  Drugs leave the factory.  According to the government's theory the drugs are sold to unknown people, and according to the government's theory, and there may be evidence for it, the drugs [*methamphetamine*] enter the United States, that's your case there?"  J. Sullivan, Trial. Trans 72:22-25 – 73:1-3 (October 7, 2007).  The indictment is devoid of any facts connecting the Defendant with any conduct potentially in violation of United States laws. This Court observed as much in its question to the Government: "…there's no other conclusion but the drugs entered the United States?" (73:23-24).  The Government's answer:  "Correct."  (P. Laymon, Tr. at 73:25.)  Regardless its tonnages and quantity, the threshold question is what"drugs" the government is talking about?  "a chemical"

*among those ever-changing version of the alleged chemicals, in addition to "a chemical", there are: something to make "chemical cousin to ephedrine and pseudoephedrine" by Defendant's "recipe"; "Chemical cousin" transforming it into ephedrine and psuedo-ephedrine"; (There is no evidence that Defendant has ever "transformed" that chemical cousin" into ephedrine and pseudoephedrine, much less into Methamphetamine.  On the contrary, evidence is solid that transformation and conversion was carried out by the Forensic Lab under the Mexican Government: "we treated the samples by adding chrolol acid and heat." Mexican government admitted.
"The substance which could be used as precursor to manufacture methamphetamine" government's Opp to Motion to Dismiss, p8.
Methamphetamine, DEA Officer Margaret's Affidavit:

MDMA or Ecstacy, made from Safrole, DEA Officer K. Hooton's Affidavit

which could be easily "converted into pseudoephedrine", a precursor chemical after conversion, is by itself NOT controlled substance, or precursor drugs, much less a methanphetamine, either in Mexico or in the United States.

**The defendant cannot be expected to defend against allegations of unknown acts involving unknown people in unknown places during an uncertain time frame, with unknown co-conspirators.** The reason is simple: If the Defendant, for instance, wants to raise an Alibi defense, with all these "unkowns" in the Indictment concerning the most critical fact patterns: whens, wheres, whoms, and whats, it is impossible that an "Alibi" defense could be raised under the circumstances. Further, the Defendant does not have to defend "the type of drug", which the Government knows and admits that is not "precursor chemical" neither is it "controlled substance", by itself. Such vague and conclusory accusations do not begin to approach the "certainty and precision" required by Fed. R. Crim. P. 7(c). As a result, the Government's indictment is not "good and sufficient in law" such that a judgment of conviction could be pronounced upon it. Cruikshank, 92 U.S. at 558-59

The reason why the indictment is so lousy is simply because the entire prosecution is built upon Mexican fraud at its first place. Such a fatal deficiency cannot be solved in any other way unless and until this instant indictment is dismissed with prejudice, given to the government's own exculpatory admission which negates the alleged guilt, further given to the government's willful and intentional misconduct set forth *supra.* The reason is simple, Government can keep changing its version of accusations in order to fix the loopholes of its old version of story, it is not allowed to change the text of its indictment in order to adapt any novel circumstances brought by its

rambling fishing expedition.  Unfortunately, the fatally defective, thus invalid indictment is itself irreparable.   The best solution and disposition is a dismissal.

It is a "settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." Id.  Here, the Government's *de facto* modifications to the indictment as its rescue efforts go well beyond a "matter of form."  Consequently, this Defendant could "be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." U.S. v. Russell, 369 U.S. 749, 770 (1961).

As its proffers and post-indictment representations show, the Government has confusingly supplemented and modified the charge set forth in its indictment in such a way as to make it even less clear at this stage of the case (than at the outset) what exactly Mr. Ye Gon is alleged to have done.  If the indictment is not dismissed outright, there must be a miscarriage of justice should any further proceedings are pursued based upon so lousy an indictment.

### 4. A Jenks Posture on Laboratory Charts or Data is not Supported by Precedent

To legitimize its refusal to disclose the most relevant evidence to the Defendant, Government invoked the Jencks Act under 18 USC 3500.  Jencks Act which legally enables the Government to cover up information concerning its testimonial witnesses until the trial is on its face against an older, and prevailing law in writing: Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right …to be informed of the nature and cause of the accusation." U.S. Constitution, Amendment VI, See also U.S. v.  Russell, 369 US at 762. Here the black letter law made by Founding

Fathers are literally clear and conspicuous: Government's witnesses are certainly the integral part of "nature and cause of accusation", while "all criminal prosecutions" definitely also covers all stages of prosecutions. There is no reason to shred and choke our Founding Father's legal foundation without going through constitutional amendment process. While Jencks Act was made to improperly restrict the defendant's constitutional rights under Sixth Amendment appears on its face unconstitutional.

To invoke Jenck's Act herein this instant case goes to nowhere. Defendant, in his Motion to dismiss, did not even raise any issues in relation to Grand Jury witness testimony. When the entire case is dismissible due to Government's own acknowledgment and admission that the "a chemical" is itself not a precursor chemical, but needs to be *converted*, and/or *transformed* into a precursor, government's case is over. (The government's allegation that Defendant "could easily convert" does not mean the Defendant actually did.) Everything in relation to Grand Jury testimonial witnesses have become *moot, period.*

Concerning discovery of evidence, what we are urgently seeking for is, among others: the Defendant's Log Book, and the DEA FCs complete forensic examination report package. Fortunately, these items are not within the area of Jencks Act. Otherwise we have to fight against Jencks Act for the integrity of U.S. Constitution.

### 5. The Indictment Must be Dismissed For Prosecutor's Intentional Concealment of Exculpatory Evidence

In the Response to Defendant's Motion to Dismiss, the Government argued, for its relevant part, that "because the Grand Jury determines only probable cause, the prosecutor may be selective in deciding what evidence to present to the Grand Jury."

Government concluded that there is no obligation for the government to present evidence

that might be exculpatory, citing United States v. Williams, 504 US 36, 46-47 (1992).

     At the first glance, the Government's argument seems valid and four-corner

squared. But if one connect such an argument to the specific set of circumstances, as

specifically enumerated by the Government, the validity of such an argument

immediately collapses: Among all government quoted circumstances, there is one that

"Defendant could lawfully import ephedrine and pseudoephedrine from 2002 through the

end of 2004."  If the government concealed such an information to Grand Jury, it is not

just "not present" exculpatory evidence, it would be a willful concealment of most critical

information in order to mislead the Grand Jury for the latter to make a wrongful decision.

Checking the Indictment, the Government's allegation concerning Defendant's alleged

illicit drug trafficking, mostly, in relation to his importation of pseudoephedrine from

China to Mexico covers the period from some unknown time of 1999 through July 2007.

During that period, the Defendant's only traceable records of importation of

Pseudoephedrine, a controlled substance, occurred during such period from 2002 through

2004, all related transaction was recorded in the log book.  After Mexican Government

changed its law in 2005, defendant stopped importing pseudoephedrine.  The only thing,

he imported after the period, which is under dispute, is "a chemical" which "could easily

be converted into Pseudoephedrine", rather than Pseudoephedrine itself.  If the

Government willfully omitted the fact of legitimacy concerning Defendant's

pseudoephedrine related activities under the regime of government permit, when it

presented the Defendant's pseudoephedrine importation to Grand Jury, the nature of this

instant case in its totality would immediately be misrepresented and falsified.

It is true that the Government may not have obligation to disclose all exculpatory evidence to Grand Jury, however, if government's selective concealment of such exculpatory evidence would inevitably defraud the Grand Jury, such a willful concealment would immediately become a willful misrepresentation, as this instant case demonstrates, given to the Government's revelation.  Government does not have such a privilege to mislead and defraud the Grand Jury by willful concealment.   In context of such way of concealment, it triggers the landmark case of Brady v. Maryland, 373 US 87, where the government's intentional concealment of exculpatory evidence favorable to Defendant has completely violated the "constitutional disclosure requirement".  Therefore, the Government's selection in concealment of exculpatory evidence favorable to Defendant may only be allowed when such a concealment appears in good faith, accorded with its normal practice.  If the Indictment was obtained by intentionally defrauding the Grand Jury, such a violation usually triggers corresponding disposition of that indictment: Dismissal.  (United states v. Nance 533 F2d 699, 701 (DC Cir. 1976) Please also see U.S. v. Short and Green, 777 F. Supp 40, 1991)

The most recent discovery of the evidence has further revealed serious problems of willful and intentional concealment of exculpatory evidence:

1. Log Book (Libre De Control).  Regardless Defendant's repeated request, the Government refused to release the Log Book to Defendant.  Government declares that it was unable to locate the log book.  However, the government's CD revealed the cover with the stamp by  Mexican Department of Health. However, all the contents pages, which involves comprehensive exculpatory information was made unreadable.

2. Defendant's Pseudoephedrine import permits, customs clearance documents, Mexican Embassy's verification documents, all but one are missing, most likely, being concealed;

3. All documents concerning Mexican Department of Health's evaluation, examination report in relation to its monitoring and supervision of Defendant's management of controlled substance under the permit issued by that Department, are found missing or being concealed;

4. Correspondence between Mexican Department of Health and the United Natiions Concerning Unimed's lawful transaction of pseudoephedrine during the period covered by the Government issued license.

5. Forensic Examination Report package and Expert Opinion of FCs from U.S. DEA concerning 04/26/2007 residues, was persistently held undisclosed no matter how hard has been pressed for disclosure by Defendant.   .  As of this date, no laboratory analysis charts or data have been provided by the Government for the review by Defense;

Such a willful concealment of exculpatory evidence, in the meantime, also appears a  serious ethical violation for the prosecutors.

Bringing these balanced rules and principles into this instant case, it may not be difficult to find that the Government's willful, and defrauding concealment of the exculpatory evidence to Grand Jury in order to obtain the latter's indictment should irreversibly lead to a dismissal of the indictment.  The Brady Rule, which has been further deliberated in U.S. v. Short and Green, is applicable in this instant case. Consequently, for this cause alone, the instant indictment should be dismissed.

**6. The Destruction of 19 Metric Tons of "a Chemical" Has Caused Catastrophic Consequences, Which is Extremely Prejudicial To Defendant.  As the Result of such Unlawful Elimination of Evidence, the instant Case must be Dismissed**

Government argued that Mexican Government's Elimination of entire shipment of 19 metric tons of "a Chemical" had not violated the rules set forth in California v. Trombetta.   To fortify such argument, the Government stated:

> "Had the United States authorities destroyed this evidence, there would be no violation of Trombetta and Chandler because the Government would have been acting in good faith, and in accord with normal practice to destroy such large shipment ***but to save representative samples***." Page 3, para. 3. (emphasis added)

Here, the Government has apparently misinterpreted both the Trombetta Rule and the set of circumstances in which the evidence was physically eliminated.

In the instant case of destruction of evidence, what had been physically eliminated is 19.797 metric tons of "Hydroxyl Benzyl-N-Menthyl Acetinomino", the "a chemical" as called by prosecutor, which the National Forensic Laboratory under Mexican Attorney General's office, partially finds that it is a legitimate chemical\*.  What is saved as "representative samples", if any, is suspiciously a treated, tainted, and contaminated samples.  Using Mexican government's own manifestation: "We treated the samples by adding Chlorohydric Acid and Heat".

In California v. Trombetta, the U.S. Supreme court did not give the Government a blank check for its physical elimination of evidence.  Instead, it sets forth clear guidelines in this matter: "The government officers act in good faith and in accord with their normal practice, and without any animus towards the defendants or ***conscious effort to suppress***

---

\*"Second, Acetamide, N-(2-(acetyloxy)-1-methy-2-phenylthyl)-N-methyl- is NOT considered by the General Health Law to be a psychotropic and/or narcotic drug, Nor is it a chemical precursor or essential chemical according to the Federal Law for Control of Chemical Precursors, Essential Chemical Product, and Machine for the Manufacture of Capsules, Tablet and Compressed Tablets." Ocular Inspection Proceedings and Authorities, United Mexican States, Office of the Attorney General for the Republic12/08/2006

*exculpatory evidence*, the **duty to preserve evidence** is limited to evidence that might be expected to play a significant role in the defendant's defense".  California v. Trombetta 467 U.S. 479, 488 and 489 (1984)

As being well documented, the Mexican government's forensic finding has prominent feature of exculpatory: Second, Acetamide N-(2-(acetyloxy)-1-menthyl-2-phenylethyl) –N-menthyl *is NOT considered by the General Health Law to be a psychotropic and/or narcotic drug, NOR is it a chemical precursor or essential chemical according to Federal Law of for Control of Chemical Precursors*…" When the 19.797 metric tons of Ye Gon Chemical in its pre-treatment, pre-transforming state manifested its innocent non-precursor characterization, the whole shipment's exculpatory nature is clear cut. The ulterior motive to destroy such an actual and potential exculpatory evidence is apparently an effort to eliminate such evidence which may most loudly negates the Defendant's alleged guilt.   While coming into defense of its partner's wrongful action, the U.S. government's defense astonished Defendant:

The Mexican Government has saved "Representative samples"?

The well documented evidence clearly demonstrated that the "samples", if  any, is neither pure, nor "representative".  Because the samples were fraudulently "treated" and contaminated, as the government's well documented fraud.  Moreover, had such representative samples been actually preserved, why should the government of the United States had to labor itself by going to Defendant's warehouse to collect particles of residues?  More astonishing is Government's allegation that "the chemical would not have played a significant role in the defendant's defense".  It appears inconceivable how could not the government see that no other evidence could be more significant and

decisive than the "chemical" itself in differentiate being guilty or not guilty for the crime charged. Therefore, the government's argument that these 19.797 metric tons of "a chemical" is no significance in Defendant's defense is not just erroneous, it is absurd. What has been eliminated is not simply **"significant"**, it is **decisive** in determining such demarcation line: guilt or innocence.

Finally, Government argued that no relief should be considered because such a destruction of evidence is a foreign government's "unilateral" acts. Destruction and elimination of such block of exculpatory evidence is not Mexican government's unilateral act. According to DEA Official K. Hooton's Affidavit, the joint operation in the instant case of both DEA of the United States and Mexican authorities started as early as March 2006. It is hardly persuasive that the U.S. government had no involvement in Mexican authority's acts in destroying such exculpatory evidence. It appears that Mexican government would never be so smart and so courageous to do such an "unilateral" evidence elimination acts without intelligent couch of its bossy business partner standing therebehind.

7. **Vindictive Prosecution in this Highly Politicized Case**

The government's argument in denying vindictive prosecution, at the first glance, appears plausible. Under normal circumstances, the U.S. government will not prosecute a defendant simply for the latter's exercise of his/her legitimate rights guaranteed by U.S. Constitution and Federal Statutes, especially when the proven innocence from the charged guilt has gradually appeared more and more overwhelming.

It is generally believable that the government of the United States would not tend to prosecute a person for the following:

19

He is rich and wealthy;

He extravagantly gambled at Casino in Las Vegas where gambling is legal;

He imported many tons of innocent, harmless, and legal chemicals even such legal and non-precursor chemical could easily be converted, either to Pseudoephedrine, a precursor, or phenylphrene HCI, a non-precursor, decongestant ingredient.

He imported chemical "cousins";

He is building up the largest pharmaceutical company in the entire Latin America;

He held press Conference to speak out the alleged truth and received overwhelming press coverage;

His loose-canon has angered the head of state of an allegedly corrupted foreign state while such a foreign government happens to be strategic ally to the current Administration;

If, on the contrary, prosecution actually occurred against a citizen simply for the foregoing listed, vindictive prosecution is hereby triggered, i.e., "to punish a person because he has done what the law plainly allows him to do…" Bordenkircher v. Hayes, 434 U.S. 357

Unfortunately, this instant case has clearly demonstrated that the defendant is prosecuted just for such foregoing situation which is accorded with defendant's constitutional and statutory rights.

The on-going prosecution is vindictive because the U.S. prosecutors are apparently under the political pressure to patronize a corrupted foreign regime, which held even an innocent and irrelevant gardener behind bars.  In this instant case, the truth, according to the Defendant's allegation, the large portion of the cash is the Mexican

ruling PAN party's slush campaign funds illegally and scandalously entrusted in the Defendant's luxury mansion close to President Calderone's presidential palace. There is widely spreading rumors in the state of Mexico that this President's last minute sworn-in was the fruit of corruption in 2006 presidential election.  Under the circumstances, if the Defendant were not tarnished to be, or framed to be, a drug kingpin, his allegation in campaign scandal would inevitably inflame inside that political ally to the current Administration.

In this instant case, the on-going prosecution by the government of the United States in the face of complete absence of credible and probative charging evidence, has shown its extraordinary feature of vindictiveness after this case has been highly politicized.  This is the only reason to explain why the government's conducts are so odd in this instant case.

The government's argument that it is not clear that the defendant can raise a claim of vindictiveness, "since he was not charged in the United States at the time of his alleged statements." (Response: Page 8, paragraph 2)  an actual vindictiveness is not pre-conditioned with Defendant's post-prosecution exercise of his legal rights. Vindictiveness attached if the Defendant's exercise of his rights guaranteed by the Constitution and Statutory laws triggers the Government's prosecution. The law is clear that any situation in which the government acts against a defendant in response to the defendant's prior exercise of his constitutional or statutory rights"  United States v. Myer 810 F2d, 1242, 1245 (DC Cir, 1987) While no evidence of actual bad faith is necessary to establish such a claim. Blackledge v. Perry, 417 U.S. 21, 28 (1974)  While the mere

appearance of vindictiveness is enough to place the burden on the prosecution". U.S. v.

Ruesga-Martinez, 534 F. 2d 1367, 1369 (9th cir., 1976)

Consequently, this instant indictment must be dismissed for the indictment's

apparent vindictiveness. "An indictment must be dismissed if there is a finding of

"actual" vindictiveness , or if there is a presumption of vindictiveness  that has not been

rebutted by objective evidence justifying the prosecutor's action.", the indictment must

be dismissed.  United states v. Johnson, 171 F3d, 139, 140 (2nd Cir. 1999).

The most recent discovery efforts turned out 11 boxful of charging documents

furnished by the U.S. Department of Justice.  After intensified search and screening of all

tens of thousands of pieces of paper, it appears not a single piece of paper has implicated

that the Defendant has ever involved in any illegal drug activities as he was charged by

the Indictment.  Therefore, any prior and continuing prosecution, given to the complete

absence of any credible proof of guilt as alleged, has clearly targeted all his lawful

activities, as an exercise of his rights under the constitution and statutes, particularly,

among others, his truth telling of the "state secret" of scandalous political corruption in

the state of Mexico.   Such hanging-on prosecution is nothing, but vindictive prosecution.

Finally, Defendant should point out that whether the Grand Jury Indictment was

properly signed by a foreperson is not adjudged by the prosecutors statement, it is

demonstrated by a clearly visible fact.  Above the signature line, the normal place for the

foreman to affix his/her signature, was left blank. The supposed foreperson's signature

was either eliminated, wiped out, or has it never been in its place, for the reasons only

such real creators of that indictment can explain.

Wherefore, in the light of the foregoing, the fatally failed Indictment should be dismissed with prejudice.  Defendant further prays that an oral argument session be scheduled as soon as possible by this Honorable Court.

Respectfully submitted.

/s/ Ning Ye, Esq._____
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4334
ynyale@aol.com
*Counsel for Defendant Ye Gon*

/s/  Martin F. McMahon, Esq.
Martin McMahon, Esq., D.C. Bar Number: 196642
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

/s/  Lisa D. Angelo, Esq.
Lisa D. Angelo, Esq., D.C. Bar Number: 491206
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
langelo@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

<u>CERTIFICATE OF SERVICE</u>

On this 5th day of November 3, 2007, I electronically filed the foregoing Reply with the Clerk of Court using the CM/ECF system, which will automatically send a copy of the such filing (NEF) to the following recipient:

Paul Laymon, Esq.
U.S. Department of Justice
1400 New York Avenue, NW
Bond Bldg, 8th Fl
Washington, DC 20530

/s/ Ning Ye, Esq._____
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4334
ynyale@aol.com
*Counsel for Defendant Ye Gon*