IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| The United States of America | ) | |
| | ) | |
| Plaintiff | ) | File: 07-181 |
| | ) | Hon. Emmit G. Sullivan |
| v. | ) | |
| | ) | |
| Zhenli Ye Gon | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

The more one learns about the U.S. Government's case against Zhenli Ye Gon, the more disturbing this prosecution becomes. Although the indictment accuses Mr. Ye Gon of a criminal scheme involving the manufacture and importation of the drug methamphetamine into the United States, the basis for the indictment – by the government's own acknowledgment – rests on the mere *possibility* that chemical products imported by Mr. Ye Gon's company (Unimed Pharmaceuticals) "*could be* rather easily converted by the Defendant *into ephedrine and pseudoephedrine*, which are [merely] *precursor* chemicals [that could be] used in the manufacture of methamphetamine." Because there is nothing linking Mr. Ye Gon or his company to methamphetamine itself at all – much less its purported importation into the U.S. – the indictment should be dismissed.

Just as Mr. Ye Gon himself has never been accused of any crime, there is nothing sinister in the background of Unimed Pharmaceuticals, which is headquartered in Mexico City. During the past decade, Mr. Ye Gon's company has enjoyed increasing success in

1

the business of importing a variety of bulk, wholesale chemical products – numbering fifty or more – from China and selling them to pharmaceutical distributors in Mexico and other countries. One such bulk chemical Unimed imported (pursuant to a *license* granted by the Mexican government) was the decongestant pseudoephedrine – the same chemical sold "over-the-counter" in the U.S. under the brand name "Sudafed" – up until December 2004, that is, when Mexico stopped licensing pseudoephedrine imports altogether. Unimed did not import pseudoephedrine into Mexico after the licensing ceased. Moreover, notwithstanding the ban on imports after 2004, Unimed was permitted by Mexican authorities to sell the pseudoephedrine it had legally imported during the licensing period. Unimed's authorized sales of its remaining pseudoephedrine supplies are recorded (by law) in the "log book" or "Libro de Control" maintained at the company's offices in Mexico City – which, disturbingly, has yet to be produced to Mr. Ye Gon's defense lawyers in this case, despite repeated requests.

The chemical shipment to Unimed in Mexico (in December 2006) that sparked this prosecution in this case was not even pseudoephedrine (much less methamphetamine), but merely a chemical that the government characterizes as "easy to convert" into pseudoephedrine. Not only is this two stages removed from any conceivable connection to methamphetamine, but the shipment itself *has been destroyed by Mexican authorities* – preventing Mr. Ye Gon from demonstrating, as he could and would have – that the chemical in question was an intermediate for any number of pharmaceutical products. Now that the U.S. Government has elected to proceed with this prosecution despite the obvious prejudice to Mr. Ye Gon, the U.S. Government should not be permitted to take cover from it because it was done by the Mexican

government.  Moreover, as the "Libro de Control" entry for this shipment will reflect, Unimed was authorized by Mexican authorities both to import and to sell this very shipment in any event.  But again, with no actual connection between Mr. Ye Gon and methamphetamine whatsoever, the indictment should be dismissed with prejudice.

      A.      **The Mexican Government's Intentional Destruction of 19 Metric Tons Of "a Chemical" is Prejudicial To The Defendant**

The Government has largely dismissed the notion that the Mexican Government's elimination of an entire shipment of 19 metric tons of "a Chemical" does not prejudice the Defendant, citing <u>California v. Trombetta</u>, 467 U.S. 479 (U.S. 1984) and <u>United States v. Chandler</u>, 894 F.2d 463 (Table), 1990 WL 6895 (D.C. Cir. 1990).  The Government's reliance on these decisions is misplaced, however.  <u>Trombetta</u> holds, in pertinent part:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.  To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

<u>Id.</u>, 457 U.S. at 488-89 (internal citations omitted)   While in <u>Chandler</u> that standard was held not to have been met by the destruction of all but a representative sample of approximately 1000 grams of PCP seized from the defendant – as such evidence was "much more likely to provide inculpatory than exculpatory evidence" – that is far from true here.  Unlike <u>Chandler</u>, in this case all of the challenged shipment was either destroyed, or chemically tainted by a process designed to convert the chemical *into* pseudoephedrine, so that none of the original (untainted) shipment remains for testing by Mr. Ye Gon.   Put differently, the Defendant in this case challenges the very nature of the

chemical being tested, and not just the method of testing. (In <u>Chandler</u> the defendants challenged the weight of the PCP seized, and in <u>Trombetta</u> the defendants challenged the accuracy of the "Intoxilyzer" results.) This case is further distinguishable because unlike <u>Chandler</u>, where a representative sample was maintained for trial, there are no samples available to the Defendant in the this case because the only samples taken were subsequently mixed with chemicals and heated until they were converted into another chemical (pseudoephedrine).

      The constitutional standard set forth <u>Trombetta</u> is applicable in this case because there is evidence that exculpatory evidence was intentionally destroyed by the Mexican government, perhaps with the knowledge of US DEA agents; that evidence will play a significant role in the Defendant's defense; and the Defendant cannot obtain comparable evidence. The Government's analysis of <u>Trombetta</u> cannot withstand scrutiny when applied to the facts at hand. The Mexican Government physically eliminated 19.797 metric tons of "Hydroxyl Benzyl-N-Methyl Acetoamino" (hereinafter "HBNMA"). This is the "a chemical" specifically referenced by the Government in its opposition (at 5). The problem is that the Government ignores in its analysis a fundamental fact, i.e., the National Forensic Laboratory under the auspices of the Mexican Attorney General's office, in part found that HBNMA is a non-controlled chemical.[1]

      The Mexican government's well-documented forensic finding makes clear the exculpatory nature of the evidence that has been destroyed. So the Court understands, Acetamide N-(2-(acetyloxy)-1-methyl-2-phenylethyl) –N-methyl ***is NOT considered by the General Health Law to be a psychotropic and/or narcotic drug, NOR is it a***

*chemical precursor or essential chemical according to Federal Law for Control of Chemical Precursors*…" Thus, as the 19.797 metric tons of destroyed chemicals are not even *precursor* chemicals (let alone methamphetamine), the exculpatory nature of the shipment was (or should have been) obvious both to the Mexican and U.S. Governments when it was destroyed.

The Government's opposition brief ignores that the "representative samples" saved by the Mexican authorities (if any really exist) are treated, tainted, and contaminated samples – hardly "representative" in nature. Using the Mexican government's own explanation, "[w]e treated the samples by adding Chlorohydric Acid and Heat . . ." It is clear that these samples are hardly "representative" in nature – they have been literally treated and cooked to achieve a pseudoephedrine finding. <u>Query</u>: Had such "representative samples" been actually preserved, why did US DEA officials have to reenter the Defendant's warehouse on April 26, 2007 to collect pseudoephedrine "residue"?

Finally, the Government has argued that no relief should be considered because the act of destroying evidence is a foreign government's unilateral act. It is hard to believe that the destruction and elimination of such a massive amount of exculpatory evidence is solely the result of a Mexican government decision. According to DEA Official K. Hooton's Affidavit, the joint operation in the instant case of both DEA of the United States and Mexican authorities started as early as March 2006, approximately ten months before the destruction occurred. The decision to destroy was obviously a team (US/Mexico) decision.

Respectfully Submitted,

/s/ Ning Ye, Esq.
Ning Ye, Esq., MD BAR Number: 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
ynyale@aol.com
*Counsel for Defendant Ye Gon*

/s/_Martin F. McMahon, Esq.
Martin McMahon, Esq., D.C. Bar Number: 196642
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

/s/_Lisa D. Angelo, Esq.
Lisa D. Angelo, Esq., D.C. Bar Number: 491206
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
langelo@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

**CERTIFICATE OF SERVICE**

On this 5th day of November, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Paul Laymon, Esq.
U.S. Dept. of Justice
1400 New York Avenue, NW
Bond Bldg. 8th Fl
Washington, DC 20530

/s/ Lisa D. Angelo, Esq.
Lisa D. Angelo, Esq., D.C. Bar Number: 491206
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
langelo@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

**U.S. DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**

Zhenli Ye Gon aka Zhenli Ye
c/o Ning Ye/Esq.
4242 Union Street, Apt 3C
Flushing, NY 11355-2596

| | |
|---|---|
| Asset Id: | 07-DEA-486974 |
| Case Number: | R1-07-0204 |
| Property: | Bank of America, Acct. #10204-41786 |
| Account Number: | 10204 41786 |
| Asset Value: | $273,606.89 |
| Seizure Date: | 06/18/2007 |
| Seizure Place: | Newport Beach, CA |
| Owner Name: | |
| Seized From: | Zhenli Ye Gon aka Zhenli Ye |
| Judicial District: | Central District of California |

NOTICE MAILING DATE: August 3, 2007

## NOTICE OF SEIZURE

The above-described property was seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture pursuant to Title 21, United States Code (U.S.C.), Section 881, because the property was used or acquired as a result of a violation of the Controlled Substances Act (Title 21, U.S.C., Sections 801 et seq.). The seizure date and place, as well as other pertinent information regarding the property are listed above.

Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court. You should review the following procedures very carefully.

## TO REQUEST REMISSION OR MITIGATION OF FORFEITURE

If you want to request the remission (pardon) or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (30) days of your receipt of this notice. The petition must include proof of your interest in the property and state the facts and circumstances which you believe justify remission or mitigation. The regulations governing the petition process are set forth in Title 28, Code of Federal Regulations, Part 9.

## TO CONTEST THE FORFEITURE

In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by September 7, 2007. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)). The claim shall identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to penalty of perjury (Title 18, U.S.C., Section 983(a)(2)(C)). A frivolous claim may subject the claimant to a civil fine in an amount equal to ten (10) percent of the value of the forfeited property, but in no event will the fine be less than $250 or greater than $5,000 (Title 18, U.S.C., Section 983(h)). Upon the filing of a claim under Title 18, U.S.C., Section 983(a), a claimant may request, pursuant to Section 983(f), release of the seized property during the pendency of the forfeiture proceeding due to hardship. Requests must be sent to the Forfeiture Counsel of the DEA. The following property is not eligible for hardship release: contraband, currency, or other monetary instruments or electronic funds unless the property constitutes the assets of a legitimate business which has been seized; property to be used as evidence of a violation of the law; property, by reason of design or other characteristic, particularly suited for use in illegal activities; and property likely to be used to commit additional criminal acts if returned to the claimant. If you wish to contest the forfeiture of the asset, you must comply with the procedures set forth herein. Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding - either civil or criminal - even if such a proceeding has already been commenced or is commenced in the future.

## WHERE TO FILE CORRESPONDENCE

All submissions must be filed with the Forfeiture Counsel, Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, HQs Forfeiture Response, P.O. Box 1475, Quantico, Virginia 22134-1475. Correspondence sent via private delivery must be filed with the Forfeiture Counsel, Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, 2401 Jefferson Davis Highway, Alexandria, VA 22301. A PETITION, CLAIM, OR OTHER CORRESPONDENCE SHALL BE DEEMED FILED WITH THE FORFEITURE COUNSEL, ASSET FORFEITURE SECTION, WHEN RECEIVED BY THE DEA AT EITHER OF THE ADDRESSES NOTED ABOVE. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED. The Asset ID referenced above should be used with all submissions. Failure to include the Asset ID may cause a delay in processing your submission(s).

EXHIBIT NO. 1

FedEx US Airbill

Express

FedEx Tracking Number: 8604 2574 2648

1 From
Date: 08/03/2007
Sender's FedEx Account Number:
Sender's Name: Ning Ye, Esq.
Phone: 718-308-6626
Company:
Address: 42-42 Union Street #3C
City: Flushing   State: NY   ZIP: 11355

2 Your Internal Billing Reference: 07-DEA-461048 & 07DEA482020 & 07DEA484278

3 To
Recipient's Name: Forfeiture Counsel
Company: Asset Forfeiture Section, Office of O.M.
Recipient's Address: USDEA, HQs Forfeiture Response
Address: 2401 Jefferson Davis Hwy
City: Alexandria   State: VA   ZIP: 22301

Credit Card: 4388 6426 3133 6446   Exp: 11/09

Sender's Copy

520

## Law Offices of Ning Ye, Esq.
*42-42 Union Street, Suite #3-C, Flushing, NY 11355*
**TEL:** (718) 321-9899; (718) 308-6626 • **FAX:** (718) 321-7722 • **E-MAIL:** ynyale@aol.com

August 2, 2007

Forfeiture Counsel, Asset Forfeiture Section
Office of Operation Management
USDEA
HQs Forfeiture Response
2401 Jefferson Davis Highway
Alexandria, VA 22301

Re.: In Matter of Zhenli Ye (AKA: Zhenli Ye Gon)
Case No.: R1-07-0204

Dear Forfeiture Counsel:

Respectfully enclosed is an affidavit statement made under the penalty of perjury in support of/in lieu of, the claim of lawful entitlement, and legitimate ownership of the property under the lawful title of the above-referenced claimant.

Please kindly note that the Affidavit of Claim is respectfully submitted to you without ownership paperwork due to the following facts:

1. There is no dispute on ownership issues; The USDEA that seized the property for forfeiture purpose acknowledges the claimant's ownership; It is therefore undisputed concerning the original ownership;
2. The Claimant was incarcerated in US detention Center in DC, having no access to all his documents confiscated by either/both U.S. and/or Mexican law enforcement agencies.
3. This Counsel's repeated requests addressed to the USDOJ, demanding for copies of documentary evidence has thus far not turned out any positive response.

The above-referenced claimant categorically denies all unsubstantiated charges fraudulently originated by the corrupted government of Mexico. There is no legal basis to take, or "nationalize" any of his lawful property under the circumstances. Please also kindly note that the total amount of the cash entrusted to Alicia Yihui Zhou by Unimed under the Claimant's sole ownership is approximately $1.8 million to 2 million.

Should you have any questions and inquiries about this matter, please feel free to contact me at any time. Your prompt attention to this matter is greatly appreciated.

Sincerely yours,

*[signature]*

Ning Ye, Esq.
Defense Counsel for Zhenli Ye Gon

1

# Affidavit Statement

Zhenli Ye Gon, being duly sworn, deposes and certifies, under the penalty of perjury, that the following of my sworn statement is true and correct: I respectfully submit this Affidavit Statement in support of my claims against seizures and forfeitures, which include, but not limited to, the following enumerated case numbers:

Asset Id: 07-DEA-482646
Case Number: R1-07-0204
Property: $499,985.00

I respectfully disagree with any claims made by any government agencies that the properties under and beyond the foregoing enumerated case numbers are subject to forfeiture, instead I am seeking for a judicial determination of the matter, should the administrative agency taking these properties refuse to return to me, their lawful owner, because I am entitled to the immediate release of these seized property pursuant to 18 USC Section 983, for the following reasons:

A. It is undisputed I have exclusive legal title and lawful interest in the property;
B. If the seized funds are returned to me, I have sufficient ties to the community to provide assurance that the property will be available and intact at the time of trial, I am father of three U.S. born, U.S. citizen minor children; and I am a wealthy, well-established, reputable, law-abiding business entrepreneur. I take such constitutional democracy as the United States as my permanent safe haven from politically motivated persecution from my own country of Mexico and China. Now, all these are the underlying reasons why I have my roots deeply rooted in the soil of American community.
C. Such continued, improper possession of the foregoing enumerated properties by the U.S. Government, pending final disposition of any forfeiture proceedings, will cause me substantial, extreme hardship, and irreparable loss, because taking such funds in government custodian account will rip me off such opportunity as of viable capital investment, hence to deprive my rights to "pursue happiness" and livelihood, which is in violation of this nation's founding principles. To take funds away from such a top-line expert in the area of lawful business transaction simply for a foreign government's unsubstantiated, groundless and frivolous charges, is simply to drain such a business man incapacitated, causing a tremendous, life threatening waste in a world of ever-growing competition. Moreover, the properly derived profits and interests from these property will be desperately needed to contribute to my defense funds which will help reinstate justice in my case. Without such financial support from my confiscated property, I can be coerced to lose my life before I can clear of myself through sufficient legal aids, while this prospects are crystal clear to me. But if I am no longer live and breathe when I am cleared and all properties are returned to "me" or my estate, than the too-later coming justice cannot reverse the irreparable damages caused by such wasteful continuity of the government custody of such property.

1

D. In the foregoing light stated in the preceding paragraph, it is then clear that my extreme hardship from Government's continued possession of these seized property will definitely outweigh the risk of such remote possibility as these properties may be destroyed, damaged, lost, concealed, or transferred, if they are returned to me while any proceedings are pending;
E. Most importantly, more and more evidence has clearly indicates that the ultimate, underlying causes prompting the U.S. government to take seizures and forfeitures against my lawful properties, particularly on the side of Mexican government, is nothing more than a *pure frivolous* case. Therefore, it appears highly unlikely that the future judicial proceedings will turn out the results in support of such premature seizures and forfeiture.
F. These property confiscated is not evidence of my violation of law. My hard-earned cash and other properties are in its nature lawful, neutral, transcendent and clean. These are from lawfully engaged business and will be used for the purpose of same lawful, ethical and clean business.
G. The property seized is not itself contraband, such as illegal narcotic drugs or their containers, neither it will be used to finance such illegal business activities. Unimed Pharmaceuticals Corp, AG, Ltd., and all its related, branches, within the business family of Unimed, is a total US$300M investment program, using 24 assembly lines of the world's most cutting edge technology, an undisputable flagship of pharmaceutical industry in the entire Latin American landmass. Such a huge business will not be foolishly abused for illegal drug trafficking, such as a smuggler of a few cantons of smuggled cigarettes would not even imagine to use the USS Independence Aircraft Carrier to smuggle his tiny stock of smuggled cigarettes.
H. I have never involved in any criminal activities, let alone illegal drug related criminal activities. Should such property is returned to me, its lawful owner, I will certainly not use it to commit "additional" criminal acts, while the term "additional" is apparently imprecise here.

I am a citizen of Mexico of Chinese origin, currently residing at the United States of America. I am father of three U.S. born minor children having U.S. citizenship at their birth. I have been a successful business entrepreneur and an ambitious business investor in lawful business. In the meantime, I am a PRI party member and was an Honorary Senator with Mexican Parliament. In the meantime, I am a law-abiding citizen, without any criminal records. At this moment of filing my claims requesting return of my wrongfully taken properties, hard-earned through my 20-year legitimate business activities. By taking this opportunity of submitting my claims for the government to release my properties to his lawful owner: Zhenli Ye Gon, I would like to clarify the following most critical issues, to be self-evident, self-explanatory:

1. I am not a drug dealer, neither am I a drug lord, much less a drug kingpin. I have never transacted illegal narcotic drugs either by myself, or in association with any "drug cartel", let alone organizing and leading "drug cartel" in any place of the world at any time. The enterprises, namely, "Unimed", any part, branches, subsidiaries thereof, is a lawful business organization, transacting lawful business in clean, neat and transparent manner.

2

2. I have never engaged in, by myself, or associated with any others, illegal narcotic drug trafficking, through out my life, since the day one of my birth, up till now; I have never consumed, tasted, inhaled, smoked, sold, bought, manufactured, processed, tested, distributed any illegal drugs, not even a single once, a single milligram;

3. I have never touched such staff as Safrole, MDMA, Methamphetamine, etc, through out my life;

4. I have never written, kept, or seen such "handwritten note" on how to make 20 tons of Safrole into MDMA or Methamephetamine;

5. I purchased 22 Assembly lines using the state of arts technology from Germany, Italy for the purpose of mass production of multi-faceted legitimate pharmaceutical products. The world's most advanced technology I employed and bought is not to use for mass-production of such illegal drugs as MDMA, Methamephetamine. It is a simple and plain truth.

6. I cannot say that I have never transacted in any chemical agents under "controlled substance" list in Mexico. During the period from 2002 through the end of 2003, I was lawfully transacted, imported and distributed "pseudo ephedrine" in Mexico, with the government permit, issued by the Department of Public Health of Mexico. I was competing with the several other suppliers of Pseudoephedrine" in Mexico. All my government permitted transaction of pseudo ephedrine has been fully recorded, under the strict supervision by Mexican Department of Health. The quantity, the tonnage of the pseudo ephedrine that I have transacted, had never exceeded the quota set forth by the Mexican government.

7. When Mexican Government ceased to issue me the permit of transacting pseudo ephedrine, I immediately stopped importing, buying, selling, processing, distributing pseudo ephedrine". What is now in dispute is the 19 metric tons of chemical agents that I imported from China without government license. These 19 tons of chemical agents are legitimate chemical agents, namely, Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), the chemical itself who pharmaceutical property was ascertained by Mexico's own forensic laboratory test while its legitimacy was also "partially recognized" by the same testing report. However, Mexican government argued that these chemical agents that I imported from China from 2005 through 2006 is "pseudo-ephedrine" in its contradictory national forensic laboratory testing. The allegation, together with so-called "scientific analytical report" is frivolous. All these chemical agents are harmless, lawful chemical products not under "controlled substance" list. Neither is it under the list of "analogue drugs". Based on several of independent chemists analytical reports, these chemical agents are completely different chemical agents with complete different molecule identification and characterization. Importation of these chemical agents is to prepare my mass production of a lawful products.

3

8. Consequently, all my properties, including those which were seized, confiscated, "forfeited" by the U.S. law enforcement agencies, acting on the false, fraudulent and misleading information provided by thoroughly corrupted Mexican authorities, that I am a "drug lord", involving in "international drug trafficking", are my lawful assets, amassed through my 20-year hardworking, lawful and ethical business operation in Mexico, China and other places. Not a single penny of my hard-earned money is tainted with narcotic illegal drugs.

9. Wherefore, in the light of foregoing, I respectfully pray that all these properties should be immediately returned to me.

For further questions and concerns about this matter, you may also contact my counsel Ning Ye, Esq. At 301-641-7345. Further affiant sayth naught.

_____  August 2, 2007 in DC. Jaile.
I hereby certify that my foregoing statement made under penalty of perjury is true and correct.

4