IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| Plaintiff | ) | 07-Cr-181 |
| | ) | |
| v. | ) | The Hon. Emmit G. Sullivan |
| | ) | |
| Zhenli Ye Gon | ) | |
| | ) | |
| Defendant | ) | |

DEFENDANT'S SUPPLEMENTARY MOTION FOR BILL OF PARTICULARS

Defendant Zhenli Ye Gon, by and through the undersigned counsel, feels it absolutely necessary to respectfully submit his supplementary Motion for Bill of Particulars further clarification of critical issues left unanswered, in order to enable him to prepare an adequate defense, avoid surprise at trial, hence to spare him from substantial prejudice.

Defendant further request that this Honorable Court grant such discretional releaf by ordering a Bill of Particulars to be provided by the U.S. Government, pursuant to Rule 7(f) of F. R. of Crim. Pr.. Defendant respectfully prays a Bill of Particulars because in a number of respects, the indictment does not provide Defendant Ye Gon with the information necessary to prepare his defense. The requisite information is set forth in Mr. Ye Gon's accompanying Memorandum of Points and Authorities of Law in Support of this Motion, specifying the following, *inter allia*, as to the offense charged:

1. As precisely as possible, the specific date, a precise time period, during which the alleged offense(s) was/were committed;
2. As precisely as possible, the place where the alleged offense(s) was/were committed;

3. As precisely as possible, the names, identities of the individuals with whom the alleged offense(s) was/were committed;
4. As precisely as possible, the name, identification, characterization, molecular structure, and chemical chart of the alleged "illicit drug", the alleged offense(s) was/were found;
5. In indictment, Defendant is accused for chemical substance where detectable amount of Methamphetamine was found, please specify as precisely as possible <u>how</u> such detectable amount of Methamphetamine was detected?
6. From which base substance, such detectable amount of Methamphetamine was detected?
7. Before detecting, whether the base chemical substance had been first "converted" or "transformed"?
8. If transformation and conversion of base substance is necessary step in order to obtain detectable amount of "methamphetamine', how such conversion and transformation process was conducted? Before such conversion and transformation, what were the names and chemical identification of these base substance?
9. When and where the detecting conducted?
10. Who involved in such detecting process?
11. What scientific approach, methords were involved in detecting process?
12. What testing kits were used?
13. What equipments were used?
14. What participating ingredients, if any, were involved in the detecting process?
15. On more than one occasion, U.s. prosecutors used the term "chemical cousin" to pseudoephedrine to describe the nature of the alleged illicit drug, because, "chemical cousin" is not a legal or scientific term enumerated in U.S. Statutes concerning controlled substance, please specify as precise as possible, what does "chemical cousin" mean? How close or how distant between "pseudoephedrine" and its "chemical cousin"? Is that "cousin" is "cousin" to pseudoephedrine only, or it could be cousin to any other chemical property/properties?
16. From pseudoephedrine cousin, to pseudoephedrine itself, what procedures needs to be taken? Does it involve any other participating ingredients? Participating facilities? Please specify as precise as possible?
17. In numerous government charging paper or court presentation, the concept of "transform" was used. Please specify as precisely as possible how to define the term "transform" in chemical science?
18. As precisely as possible, the name, identification, characterization, molecular structure, and chemical chart of the alleged "chemical cousin" to pseudoephedrine, the alleged offense(s) was/were found;
19. As precisely as possible, the name, identification, characterization, molecular structure, and chemical chart of the alleged "a chemical which could be easily converted by the defendant into ephedrine and pseudoephedrine", the alleged offense(s) was/were found;
20. As precisely as possible, the name, identification, characterization, molecular structure, and chemical chart of the alleged "a chemical which could be easily

transformed into ephedrine and pseudoephedrine", the alleged offense(s) was/were found;
21. As precisely as possible, the time, place, manners, and means, by which the Defendants' shipments of cargos were examined to be allegedly "chemical precursor" drugs;
22. As precisely as possible, the place where the "a chemical" was converted by Defendant into ephedrine and pseudoephedrine; If more than one place for conversion was involved, please specify each conversion at each place?
23. As precisely as possible, the place when the "a chemical" was converted by Defendant into ephedrine and pseudoephedrine; If such an "easy conversion" was taken by Defendant for more than one time, please specify: how many times altogether? What time was each conversion took place?
24. If more than one person was involved in such a conversion from a chemical to "ephedrine and pseudoephedrine", please specify the other person or persons' names, ientitity, bio;
25. As precisely as possible, whether such "conversion" involved any other ingredients, in addition to "a chemical"?
26. If the answer to foregoing question is "yes", then, what other ingredients, in addition to "a chemical", were used in such a conversion process?
27. What machines, facilities and equipments were used by Defendant in converting his "a chemical" into Ephedrone or pseudoephedrine for each time of conversion?
28. What methods and approaches were used by Defendant in converting a chemical into Ephedrine and pseudoephedrine?
29. As precisely as possible, please specify the time, place and identity of persons who involved in conversion of "a chemical" into methamphetamine;
30. Please specify: did any government agents find any particles of methamphetamine from any place in relation to Defendant? If so, Please specify the time and place of the discovery and the total quantity as precisely as possible;
31. Please specify: did any government agents find any particles of MDMA from any place in relation to Defendant? If so, Please specify the time and place of the discovery and the total quantity as precisely as possible;
32. Please specify: did any government agents find any particles of Safrole from any place in relation to Defendant? If so, Please specify the time and place of the discovery and the total quantity as precisely as possible;
33. Concerning U.S. DEA's search of residues on April 26, 2007, how many DEA officers participated in the search; Their identities respectively?
34. Please specify whether residue was also found in any other machines, any other equipments, any other containers, in addition to one specific equipment at one place?
35. How many equipments were examined? What tools and methods were employed to: locate the residues? Collect the residues? And test and examined the residues?
36. Who did the forensic examination over the residue?

37. At what laboratory such forensic examination was conducted? When and Where?
38. What testing kits were used?
39. Using what methods were used by testing Forensic Chemists to exclude any possibility that the residue was left during the period from 2002-2004?
40. As precisely as possible for each and all occasions, please list, describe the details: when, and where the methamphetamine was manufactured?
41. Please specify as precisely as possible how was the methamphetamine manufactured?
42. As precisely as possible for each and all occasions, please list, describe the details: who involved in manufacturing methamphetamine?
43. As precisely as possible for each and all occasions, please list, describe the details: Before shipment into United States, where was the methamphetamine stored?
44. As precisely as possible for each and all occasions, please list, describe the details: After being carried into the United states, where was the methamphetamine stored?
45. As precisely as possible for each and all occasions, please list, describe the details: What means of transportation were used by Defendant respectively?
46. As precisely as possible for each and all occasions, please list, describe the details: With whom did Defendant Ye Gon transported Methamphetamine into the border of the U.S. with such shipments of meth respectively?
47. As precisely as possible for each and all occasions, please list, describe the details: How many hand written notes on recipe as to how to make MDMA from 19 tons of Safrole, were found at any places in relation to Defendant?
48. Please specify whether government also found MDMA or Safrole, or their residues from any places in relation to Defendant?
49. If the answer is "yes", thn, as precisely as possible for each and all occasions, please list, describe the details: how much? Where and when such MDMA/Safrole related evidence was found?
50. As precisely as possible for each and all occasions, please list, describe the details: when, where, how, and with whom, such safrole, if any, were put into mass assembly into MDMA?

WHEREFORE, for the reasons set forth in the attached memorandum of law, Mr. Ye Gon respectfully prays that this Honorable Court order the provision of a Bill of Particulars.

Respectfully submitted,

/s/ Ning Ye, Esq._____
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
ynyale@aol.com
*Counsel for Defendant Ye Gon*

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUPPLEMENTARY MOTION FOR A BILL OF PARTICULARS

Zhenli Ye Gon, by and through undersigned counsel, respectfully requests that the Court order the provision of a Bill of Particulars pursuant to Federal Rule of Criminal Procedure 7(f). Provision of a Bill of Particulars is required in this matter because the indictment does not provide Defendant Zhenli Ye Gon with the appropriate information necessary to prepare his defense. In support of his Motion, Defendant states as follows:

Under Fed. R. Crim. Pro. 7(f), it is in the Court's sound discretion to order the provision of a bill of particulars. The purpose of a bill of particulars is to "fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial. . . ." United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996). A bill of particulars amplifies the indictment by providing missing or additional information necessary for effective preparation for trial. Id.

A bill of particulars is particularly appropriate where, although the indictment contains general allegations necessary to plead the charged count, it does not provide specifics as to the indictment's charges. See United States v. Loayza, 107 F.3d 257, 261 (4th Cir. 1997)(a bill of particulars "is available to add specifics beyond those required for the indictment to pass constitutional muster.") In such cases, provision of detailed information must be made by the government, especially when that information is crucial to the creation of a defense against the charges. Id.

Consequently, the indictment fails to provide the Defendant the appropriate level of detail to prepare an adequate defense in the following respects:

General Allegations:

1. The indictment in this case fails to provide Defendant with the information necessary to prepare his defense in almost all crucial respects. Here the instant Indictment alleges that Defendant Ye Gon had involved in an conspiracy by knowingly aiding and abetting

6

the manufacture of 500 grams or more of mixture and substance containing a detectable amount of Methamphetamine, intending and knowing that the methamphetamine would be imported into the United States, in violation of Title 21, USC 959, 960 and 963, and in violation of Title 18, USC 2.  However, the indictment has remained in complete absence in presenting any particulars as to such questions in relation to "whens" "wheres", "whoms", "whats" "hows", and etc. Mr. Ye Gon, by and through his counsels, has attempted to receive such specific information leading to clarification of such particular factual issues from the Office of U.S. Attorneys.

1. The first line of the Indictment alleges the specific period of the Defendant's alleged criminal activities starting from "in or about 1999" which fails to allege that before the starting of year 2005, the Defendant was a lawfully permitted, licensed importer and distributor of "pseudoephedrine", a controlled substance by itself, which might have contained "detectable amount of methamphetamine", under the strict supervision of Mexican Federal Department of Health, one of the multi-agency regulatory efforts on national and international level.  The Indictment fails to present any particulars which can give clear, convincing, and persuasive manifestation as to what illicit drug activities or controversies of such alleged drug activities occurred during the period covering the year 1999 through the end of the year 2004?  If the Government knew or should have known that such a time span of alleged "criminal activities" tracing back to the year of 1999 was without any merit when it present a groundless accusation before the ground jury, it should now present newly discovered facts to fix such deficiency.   Therefore, Government should be ordered to provide the particulars to substantiate its allegation built upon nothing but merely more than an allegation;

2. Starting from line 3, page one of the Indictment, Defendant's alleged conspiracy to aid and abet manufacture of a mixture containing a detectable methamphetamine, intending to import into the U.S. took place in the following countries: Mexico, El Salvador, the United States, the Indictment fails to provide such particulars as to which city, state, and locality of the above three countries where such manufacturing and importation were taking place, time and date of each such event took place.  Without such particularity of information, the whole allegation appears to be a miscarriage of prosecution, nothing

more than the prosecutors' wild speculation. Therefore, the U.S. Government should be requested to provide such detailed information as to each detailed geographical location concerning each specific illegal drug activity within the specific time frame, at least year and month certain.  **When such general geographical term as the "United States" is invoked, the Government is under the obligation to present such particulars as to when and where the defendant's "methamphetamine" related activities took place in the United States, during the eight-year period from 1999 through 2007. Such particular information as to when and where the Defendant's "meth" related activities taking place in El Salvador is also requested to provide.**

3. Starting from line 4, page 1 of the Indictment, the Government alleges that the Defendant "unlawfully, knowingly, and intentionally combine, conspire confederate and agree with each other, and with other co-conspirators" to manufacture and import "methamphetamine" (into the United states), while the Government fails to present any such particulars as to the names, identities of any co-conspirators in such trans-national drug cartel activities, given to the fact that so much has happened since the U.S.-Mexican joint investigation was in place since March 2006.  The U.S. Government should be ordered to present detailed information concerning co-conspirators in "methamphetamine" related illicit drug manufacturing and importation into the U.S.;

4. Starting from line 1, page 2 of the Indictment, the Government alleges that the Defendant "aid and abet" other criminals in methamphetamine related criminal activities. However, the Government has failed to present any particular, detailed information concerning the identities of the principal criminals who received such aiding and abetting from the Defendant.  Government should be order to provide such particular and detailed information concerning time, place, persons, event, manner in substantiating its "aiding" and "abetting" charges;

Starting from line 2, page 2 of the Indictment, the Government alleges that what Defendant aid and abet is to help manufacturing and importation of "mixture" containing "a detectable amount of methamphetamine".  The Indictment has fatally failed to present any detailed information as to how, in what manner, using what process, through which

forensic examination, such amount of "methamphetamine" was detected from the chemicals transacted by the Defendant. The Government's inconsistent, ever-changing, self-contradictory, and self-destructive, also extremely evasive versions of such allegation concerning its "detectable" process appears jumping from one extreme to another. The most novel version is Prosecutor Paul Laymon's allegation that Defendant "Defendant imported a chemical from a company in Inner Mongolia, People's Republic of China, which could be easily converted by Defendant into ephedrine and "pseudo-ephedrine", See page 7, paragraph 2, of the Government's Response to Defendant's Motion to Dismiss the indictment. With the Government's novel version of the U.S. connection of Methamphetamine activities, the Government is requested to provide such detailed information as to: what was the chemical, hence, legal status of the chemical cargo that the Defendant imported before its alleged "conversion" into "pseudoephedrine"? When and where was each of such "conversion" from "chemical" into "ephedrine" and "pseudoephedrine" was taken? With whom each of such "conversion" was taken? In what manner? Using which means? With any other participating ingredients involved in "conversion"? If there was no such conversion from something as "a chemical" into "pseudo-ephedrine" that was ever taken, what was the chemical characterization and identification, hence its related legal status, of Defendant's chemical raw materials? Was the alleged "pseudoephedrine" a pre-conversion precursor drug or post-conversion precursor drug? Without such detailed information, it is impossible for the Defense team to prepare a meaningful defense.

Provision of the above-described information is absolutely necessary for Defendant Ye Gon to adequately prepare his defense. For instance, requests for all these detailed information concerning "whens, wheres and whoms", which is completely missing from the Indictment and all other related Government charging papers, are reasonable. The reason is simple, if there is no such detailed information, how could the defendant to present an alibi defense, if any.

The recent development on the Prosecutors' side does not appear any improvement. Under this Honorable Court's order, the U.S. Government dumped to the Defendant counsels with eleven (11) boxful of documents in English, Spanish and

Chinese languages. Under overwhelming pressure for examining all of such truck-loads, voluminous, but wasteful paperwork, the Defendant finds that none of such document, not even a single piece of paper, is helpful to substantiate the Government's allegation, neither is it helpful to present any particulars to the allegation set forth by the Government in its indictment. Except for quite a few pieces of document which are seen clearly exculpatory in the nature, all the rest of 11 boxes of documents are irrelevant waste. The most illustrative example of the Government's lack of good faith in presenting any meaningful information to the defendant is that it even refuses to provide the Defendant with what it proposed the DEA FCs forensic examination kit on "residues" of alleged "pseodoephedrine", even though it generously dumped 11 boxful of mostly devoid paper waste over the Defendant. The U.S. Forensic Laboratory Report on "residues" is one of the critical evidence outside the range of those 11 boxful information. In addition to that, what is completely missing is the readable contents of the Defendant's log book recording his transaction of "pseudoephedrine" within the regime of Mexican government issued license. We have already located the cover page, namely, "Libre De Controll", unfortunately, Government has so far not released a complete, and readable copy to the counsels of the Defendant.

Counsels for Defendant Ye Gon understands that the Bill of Particulars is not a discovery tool. *United States v. Salisbury,* 983 F.2d 1369, 1375 (6th Cir. 1993). *See also, United States v. Martin*, 1987 WL 38036, *3 (6th Cir. 1987) ("Clearly, a bill of particulars is not to be used as a general discovery device"). For general impasse, due to U.S., Government's lack of passion in full cooperation, concerning such most critical, most decisive, most likely exculpatory evidence as Libre De control (Log Book), Mexican Government issued Pseudoephedrine Import Permit, Mexican Department of Health Internal Evaluation Records concerning Unimed, and U.S. DEA's own Forensic Laboratory Reports, we have to take the avenue of Rule 16 Motion separately. However, a Bill of Particulars are absolutely necessary to guarantee a fair trial, where Defendant's critical Due Process Rights attached, should be sought by Defendant in order to enable him to prepare an adequate, meaningful defense, to avoid "Unfair surprise" (for government's concealing of such evidence as DEA FC Forensic examination package.)

10

avoid surprise at trial, consequently, to avoid "substantial prejudice" to Defendant. United States v. Moody, 923 F.2d 341, 351 (5th Cir.), cert. denied, 502 U.S. 821 (1991). See United States v. Marrero, 904 F.2d 251, 258 (5th Cir. 1990) *United States v. Birmley,* 529 F.2d 103, 108 (6th Cir. 1976).

Defendant fully understands that to order a Bill of Particulars is within the sound discretion of the court. Defendant here respectfully prays to this Honorable Court for a bill of particulars because this instant case, the absence of details for the crime charged has been so serious that without a Bills of Particulars, the whole charges appear completely clueless and the Defendant will definitely suffer from unfair surprise and substantial prejudice without such tools as of Bills of Particulars. Therefore, a Bill of Particulars is required only where the defendant would suffer "actual surprise and substantial prejudice" at trial. *United States v. Rey,* 923 F.2d 1217, 1222 (6th Cir. 1991). *Accord United States v. Phibbs,* 999 F.2d 1053 (6th Cir. 1993).

Consequently, Defendant respectfully prays for this Honorable Court's discretional relief to grant this Motion for Bill of Particulars.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should order the filing of a Bill of Particulars to provide Defendant Ye Gon with the specific information necessary to his defense as set forth above.

    Respectfully Submitted,

    /s/ Ning Ye, Esq._____
    Ning Ye, Esq., DC BAR Number: MD 26804
    1150 Connecticut Ave., N.W. Suite 900
    Washington, D.C. 20036
    (202) 862-4343
    ynyale@aol.com

    *Counsel for Defendant Ye Gon*

**ORDER (Draft)**

Upon consideration of Defendant's Motion For a Bill of Particulars, it is this _____ day of _____, 2007, hereby

ORDERED that the Defendant's Motion is hereby GRANTED, and it is further

ORDERED that the U.S. Government will file a Bill of Particulars within ten (10) days of the entry of this Order providing the information sought by the above- described Motion.

_____

Hon. Judge: Emmit Sullivan:

CERTIFICATE OF SERVICE

On this 7th day of November, 2007, I electronically filed the foregoing Reply with the Clerk of Court using the CM/ECF system, which will automatically send a copy of the such filing (NEF) to the following recipient:

Paul Laymon, Esq.
U.S. Department of Justice
1400 New York Avenue, NW
Bond Bldg, 8th Fl
Washington, DC 20530

/s/ Ning Ye, Esq.
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4334
ynyale@aol.com
*Counsel for Defendant Ye Gon*