# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U S District Court of Maryland

LISA D ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTOPHER D BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

JACQUELYN GLUCK
Of Counsel
Admitted in District of Columbia

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

December 6, 2007

**VIA FAX AND U.S. MAIL**
The Honorable Judge Emmet G. Sullivan
U.S. District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

**FILED**

DEC 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Re: Access at the D.C. Jail in U.S. v. Ye Gon, 1:07-CR-181

Dear Judge Sullivan:

Per this Court's suggestion at the November 14, 2007 status hearing, this letter serves to inform the Court of two significant problems defense counsel has encountered when trying to access the defendant, Zhenli Ye Gon, at the D.C. Jail – (1) wait time until the Defendant is produced for his legal visits; and (2) remaining shackled during his legal visits.

With respect to the wait time issue, we provide the Court with a synopsis of incidents that defense counsel has been forced to endure:[1]

> ➢ On October 24, 2007, defense counsel Lisa D. Angelo arrived at D.C. Jail at approximately 2:00pm. For the next *hour and a half*, Ms. Angelo was shuffled between the first, second, and third floors until finally she was sent to the second floor and Mr. Gon was produced.

> ➢ On another occasion, Ms. Angelo was sent first to the 3rd Floor and waited for *over an hour*, before she was told that she had to go to the 2nd floor because it was too difficult for them to bring Mr. Gon to the 3rd Floor. Ms. Angelo then waited another 30 minutes on the 2nd floor before Mr. Gon was produced.

> ➢ On November 1st, 2007, Defense counsel Lisa D. Angelo and Juliette Niehuss, Esq., arrived at the D.C. Jail at approximately 10:00 a.m. While checking into the jail Ms. Niehuss was questioned about whether she could enter the jail when she

---

[1] Defense counsel provides this Court with a "synopsis" rather than a complete timeline because each and every visit is problematic with respect to wait time and thus we advise this Court of only the most notable occasions.

was licensed to practice law in New York and not the District of Columbia. After this unnecessary delay, counsel were shuffled between the second and first floors until finally at 11:45am, Mr. Gon was brought to the first floor waiting room. Counsel waited for *almost two hours* and Mr. Gon informed counsel that he had been sitting, handcuffed, in a locked room for over an hour waiting for someone to bring him down to the visitation rooms.

> ➢ On November 8th, 2007, Defense counsel Lisa D. Angelo and Juliette Niehuss, were forced to *wait an hour* before Mr. Gon was produced. On each occasion, D.C. jail officers cite the need for a lieutenant to bring Mr. Gon to his visit as the basis for their delay.

Per this court's suggestion, Defense counsel has reached out to Ms. Maria Amato for assistance on this issue. Unfortunately, despite her best efforts, 2-hour delays continue. On November 20, 2007, Christine Hilgeman, Esq., contacted Maria Amato and advised her of the serious delays all defense counsel have encountered when visiting Mr. Gon. Ms. Hilgeman asked Ms. Amato when the best time of day to visit Mr. Gon would be and sought any other advice available in an effort to avoid such delays in the future. Ms. Amato conferenced Deborah Miller, Deputy Warden for Programs, into the call and Ms. Miller advised Ms. Hilgeman that the best time to arrive at the jail would be 10:00 am. She also said that she would inform the supervisors responsible for Mr. Gon's transportation that Ms. Hilgeman would be arriving around 10:00 am on the morning of November 21st.

> ➢ On November 21. 2007, Ms. Hilgeman arrived at the D.C. jail at 10:12 am and was sent to the 2nd Floor to wait for Mr. Gon. At 11:45 am (almost ***2 hours later***) Mr. Gon was finally escorted into the waiting room for his legal visit. Clearly, Ms. Hilgeman's efforts to minimize her wait time by speaking with Ms. Amato and Ms. Miller the night before her visit did not help the situation. In fact, when Ms. Hilgeman informed the guard on duty that she had spoken with Ms. Amato and Ms. Miller, and that they suggested to her she should arrive at 10:00 am in order to avoid delays, the guard became angry and dismissive.

Finally, a significant problem arises when Mr. Gon remains shackled during his legal visits. As this Court is aware, the Government has produced 26,000 pages and threatens to produce 25,000 more. Most of these documents are in Chinese and Spanish. The Defendant's participation in going through the documents with his defense team is crucial. Hence, it is necessary for Mr. Gon to have at least one hand free to draw diagrams to better explain himself or a document to his attorneys, peruse through a box of documents, turn pages over as he reads (if hard copies are brought) or hit the page down keys on a laptop freely and at his speed (especially if he just needs to skim a batch of documents) during all legal visits.

Defense counsel Angelo has had several lengthy encounters with Sergeants and guards on the first floor of D.C. jail about this "handcuff" issue. Between the lengths of time it takes to meet with Mr. Gon, and a 30 minute battle (after Mr. Gon is produced) to have one of his hands released for the visit, meaningful and productive legal visits are far and few between. What is more, both Mr. Gon and defense counsel are often frustrated for the first part of a legal visit due

to the horrific experiences they have with D.C. Jail personnel. It almost goes without saying that at this point, the Defendant's 6th Amendment right to effective assistance has and continues to be seriously hamperedby the D.C. Jail's incredible disorganization and careless disregard for Mr. Gon's need for legal visitation. "Th[e] traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent infliction of punishment prior to conviction. Stack v. Boyle, 342 U.S. 1, 4 (1951) (citing Hudson v. Parker, 156 U.S. 277, 285 (1895)).

    We have learned that the delay in bringing our client to his legal visits often results from the fact that, Mr. Gon's is in protective custody and a lieutenant is the only prison official who is allowed to escort him to the visitation rooms. D.C. guards have further explained that it is often hard to locate a lieutenant who can bring Mr. Gon to his legal visits. Because neither Ms. Amato nor Ms. Miller has been able to resolve the foregoing problems thus far, Mr. Gon seeks judicial intervention as to these issues. In seeking this Court's assistance, the defendant respectfully notes, that pursuant to 18 U.S.C. § 3142(i)(2-3) of the Bail Reform Act, any pretrial incarceration order shall direct to the corrections facility that a person be afforded reasonable opportunity for private consultation with counsel.[2]

    Although the Supreme Court has held that pretrial detention under the Bail Reform Act is "regulatory in nature," it is hard to imagine that the treatment Mr. Gon has endured while at D.C. jail is the kind which "appear[s] to reflect the regulatory purposes" of the Act, especially when it "requires that detainees be housed in a 'facially separate facility to the extent practicable' from the persons awaiting or serving sentences or being held in custody pending appeal." U.S. v. Solarno, 481 U.S. 739, 748 (1987) (citing Schall v. Martin, 467 U.S. 253, 270 (1984). While release from incarceration would be the best way for Mr. Gon to assist in the preparation of his defense, in the meantime, additional accommodations must be made for Mr. Gon to meet with his counsel and sort through the Government's 26,000 pages of discovery and the additional 25,000 pages yet to be produced.

    We appreciate your concern for our ability to access our client and your openness to our contacting you about these matters.

Very Truly Yours,

Lisa D. Angelo, Esq.

---

[2] To this end, it is worth noting that in U.S. v. Cordero, the Fourth Circuit observed that the district court "went to great lengths to ensure that Cordero would have access to legal resources, discovery materials, and supplies necessary for trial preparation even though he was in custody." 1998 U.S. App. LEXIS 31039, *8 (October 30, 1998). Examples of the "great lengths" include, transporting Cordero to the courthouse two days a week so he could review all discovery materials (including grand jury testimony) in a secure setting, appointing a volunteer law student to obtain legal materials and make copies through Cordero's "shadow counsel" (who the court also appointed), and finally arranging for Cordero to use the law library in a state prison facility. Id. at n. 7.

CC VIA FACSIMILE ONLY:

Paul Laymon, Esq.
United States Attorney's Office
Maria Amato, Esq.,
General Counsel, Department of Corrections
Warden, D.C. Jail

4