IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The United States of America | | ) |
| | | ) |
| | Plaintiff | ) File: 07-181 |
| | | ) The Hon. Sullivan |
| against – | | ) |
| | | ) |
| Zhenli Ye Gon | | ) |
| | Defendant | ) |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S RENEWED MOTION TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT AND DEFENDANT'S CROSS-MOTION FOR DISMISSAL OF THE INDICTMENT FOR GOVERNMENT'S VIOLATION, AMONG OTHERS, OF SPEEDY TRIAL ACT**

Rule 48(b), Fed. R. Crim. P. authorizes the trial court to dismiss indictment if there is "unnecessary delay" in presenting the charge to a grand jury, in filing an information, or **in bringing a defendant to trial**. (emphasis added). This instant case precisely fits the category of such dismissal given to the fact that irreparable and dismissible failures have already been made in the records, consequently, the indictment and information should be dismissed with prejudice, even without touching the more broad-based dismissible errors that have demonstrated more frivolous in nature.

Such an obligation in filing the Motion for dismissal of the Indictment and information in relation to STA should be timely and properly exercised pursuant to 18 U.S.C. 3162(a)(2). On December 7, 2007, the Government filed with this Honorable Court its Renewed Motion to Exclude Time Given the Complex Nature of the Case and to Exclude Time to Obtain Evidence from Foreign Countries, pursuant to, among others, 18 USC 3161(h)(8)(A). Government's renewed Motion should be instantly denied and the Indictment and Information concerning this Case should be summarily dismissed for Government's violation, in addition to other more severe violations, of Speedy Trial Act.

In addition to defendant's respectful opposition to Government's Renewed Motion, Defendant respectfully moves that this Honorable Court summarily dismiss the "information and Indictment" concerning instant case for Government's intentional or reckless violation of Speedy Trial Act pursuant to 18 USC 3161(h)(8)(A), and 18 U.S.C.

3162(a) and (b), in addition to other violations in alleged bad faith specified in Defendants prior broad-based Motion for dismissal.   Most importantly, the Indictment and Information should be instantly dismissed because the controlling statutory and case law has already been violated pursuant to 18 USC 3161(h)(8)(A), while granting the Government's Motion for 90-day continuance by failure to strictly following the requirement under 18 USC 3161(h)(8)(A) according to records.  As the governing case law has made it clear such a failure is by no means a harmless error. In that controlling precedent, the unanimous Court held:

"We thus conclude that [HN25] when a district court makes no finding on the record in support of an Section 3161(h)(8) continuance, harmless-error review is not appropriate."   Zedner v. United States, 547 U.S. 489; 126 S. Ct. 1976, 2006 U.S. Lexis 4509.

For obvious reason, as matter of law, this instant case should now be dismissed for violation of STA, and also for violation of Speedy Trial clause under the Sixth Amendment, in addition to other more severe, more messy and nasty violations. Therefore, to dismiss that excessively poorly fabricated Indictment and Information by invoking a statutory violation of STA, may provide all parties in this on-going proceedings with a painless, possibly most decent exit, without entering into darker side of the prosecution.

For this purpose, Defendant respectfully seeks for an immediate and summary dismissal of the Indictment and Information of the instant case.  Consequently, the Government's Renewed motion for Additional Exclusion of time further tolling the STA clock should be instantly denied.

A Memorandum of Points and Authorities in support of this Motion is respectfully attached.

Respectfully submitted by:



Ning Ye, Esq.
Defense Counsel for defendant

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The United States of America | | ) |
| | | ) |
| | Plaintiff | ) File: 07-181 |
| | | ) The Hon. Sullivan |
| | against – | ) |
| | | ) |
| Zhenli Ye Gon | | ) |
| | Defendant | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S OPPOSITION TO GOVERNMENT'S RENEWED MOTION TO
EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT AND DEFENDANT'S
CROSS-MOTION FOR DISMISSAL OF THE INDICTMENT FOR
GOVERNMENT'S VIOLATION, AMONG OTHERS, OF SPEEDY TRIAL ACT**

## I.. INTRODUCTION

Rule 48(b) of the Federal Rules of Criminal Procedures authorizes the trial court, in this instant case, the honorable U.S. District court for the District of Columbia to dismiss indictment if there is "unnecessary delay" in presenting the charge to a grand jury, in filing an information, or **in bringing a defendant to trial**. (emphasis added).

This instant case precisely fits the category of such dismissal given to the fact that irreparable and dismissible failures have already been made in the records, consequently, the indictment and information should be dismissed with prejudice, even without touching the more broad-based dismissible errors that have demonstrated more frivolous in nature. Additionally, the government's "snail pace" unnecessarily delay coupled with numerous misconducts in reckless disregard of truth in making up a case devoid of the reality has been the direct fruit of such "snail pace" delay and lack of diligence.

**II. Defendant's Cross-Motion for Dismissal In Opposition to Government
Motion and Renewed Motion to Toll the STA Clocks: The Indictment Should
be Dismissed for Apparent Violation of 18 USC 3161 (h)(8)(A) and its
Related Subsections**

As required by the statute, the Defendant's obligation in filing the Motion for dismissal of the Indictment and information in relation to STA should be timely and properly exercised pursuant to 18 U.S.C. 3162(a)(2). Consequently, defendant files this cross motion in opposition to Government's renewed Motion for further continuance.

On September 7, 2007, Government made its "ends of justice" Motion for a tolling of the STA clock up to one year pursuant to 18 USC 3161 (h)(8)(A) and its related sub-sections.  Over Defendant's opposition, this Honorable Court granted the Government's Motion for 90-day continuance in response to the Government's Motion under 18 USC 3161 (h)(8)(A) and its sub-sections.

On December 7, 2007, the Government filed with this Honorable Court its Renewed Motion to Exclude Time Given the Complex Nature of the Case and to Exclude Time to Obtain Evidence from Foreign Countries, pursuant to related statutory provisions under 18 USC 3161(h)(8)(A).

In support of its renewed Motion for additional tolling from STA time limitation, the government petitioned that this Honorable Court to re-certify this case as complex, while still more evidence should be obtained from foreign countries.  The Government's fatal, irreparable and dismissible error is that it completely ignored the following factors as matter of law: To legitimately and successfully evade the mandatory statutory requirements under STA, to merely address a Court's certification of the case's complexity, or alleged hardship arising from obtaining evidence, is not legally sufficient. The controlling statutory requirements under 18 USC 3161 (h)(8)(A) must be fully addressed for the records.

For relevant part, the Government's 12/07/2007 Motion stated as follows:

"Comes now the United States of America, by and through the undersigned attorneys, and hereby renews its motion **under 18 United States Code ("U.S.C.") section 3161 (h)(8)(A),** and 3161 (h)(8)(B) (i)and (ii), and  3161 (h)(9) of the Speedy Trial Act to exclude time based on the complex nature of the case and to exclude time to permit the United States to obtain evidence from foreign nations." (Please refer to Government's Renewed Motion, page 1) (emphasis added).

Both the Government's initial Motion and its renewed Motion is made based upon the STA specific provisions and case laws under the umbrella U.S. Codes governing the

ends of justice balancing testing, *i.e.*, **18 United States Code ("U.S.C.") section 3161 (h)(8)(A).**  Noticing that the Government also cited subsection 3161(h)(8)(B) and 3161 (h)(9) in support of its renewed Motion.  These subsections following **18 United States Code ("U.S.C.") section 3161 (h)(8)(A)** , according to clear-cut black letter statutory text itself, reads: "(B)  the factors, among others, which a judge shall consider in determining whether to grant a continuance *under subparagraph (A)* of this paragraph in any case are as follows:…"  (emphasis added)

In reference to government's motion and renewed motion for this instant case, the main and controlling thrust here is **18 United States Code ("U.S.C.") section 3161 (h)(8)(A).**  It is quite clear that the Government has built both its Motion and Renewed Motion upon the **18 United States Code ("U.S.C.") section 3161 (h)(8)(A).**

Government argued: "the Government requests that the Court grant an exclusion of additional time from the speedy trial computation so that the requests can be acted upon and resulting evidentiary materials can be obtained from the appropriate countries and translated", citing United States v. Serna, 630 F. Supp, 779 (SDNY 1986) (finding the government was entitled to continued exclusion of time not to exceed one year under 18 usc 3161(h)(9),  **while the government made a diligent and good faith effort to obtain evidence gathered by Spanish police); citing U.S. v. Strong, 608 F. supp 188 (E.D. Pa 1985)**

After the Government filed the Motion for Tolling the STA clock under 3161 (h)(8)(A) and its related sub-paragraphs, the issues was first argued, addressed, deliberated, held and ruled by the Honorable Court on September 7, 2007.  The written order issued by the Honorable Court on the same day very briefly reflected the Court's oral ruling and its deliberation.  The written order did not set forth the Court's reasoning and deliberation.    Upon Defendant's opposition to continuance, the Honorable Court granted the Government's motion for 90-day continuance.

It is critically significant to pinpoint the irreparable failure of 18 USC 3161 (h)(8)(A) factor, which may inevitably lead to Dismissal of the Indictment and information upon Defendant's Motion, as matter of law.   In response to Government's

3161 (h)(8)(A) Motion for tolling of STA clock, the Honorable Court addressed the issue as follows:

> "With respect to the speedy trial clock, the Court will find this case is indeed complex. I've devoted almost three hours to this hearing. It's indeed complex, complicated, and that a basis in fact in law certainly exists to toll, to stop the speedy trial clock. I'm not inclined to toll it for a year. I'll give the government ninety days to with all due diligence proceed with its discovery of additional evidence, and I'm telling the government, I've said it more than once, you know, I expect that the government devote significant resources to its continuing investigation." (Please refer to Transcript of Status Hearing on September 7, 2007, page 82)

To further address the government's request for extensive tolling up to one year, the Honorable Court certified and re-certified the case being "complex" and involving "several different countries". But that is all the Court addressed the factual/legal issues in response to Government's tolling STA clock request under 3161 (h)(8)(A) and its related sub-paragraphs:

> "I expect the government to proceed at something other than at a snail's pace with its efforts to continue its investigation. This case is complicated. It involves several different countries, and the government's job is not easy, and that's a significant factor in the Court's decision to toll the speedy trial clock, but it sounds as if it's an extremely complex case based upon the significant proffer of evidence that the government has already made to the Court." (Please refer to Transcript of Status Hearing on September 7, 2007, page 84)

Let's first go back to the core in nutshell, the black-letter text of the statute. 18 USC 3161 (h)(8)(A) makes it specific:

18 USC 3161 (h)(8)(A) provides, for the relevant part:

"No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection ***unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.***" (emphasis added)

In a most recent case as Zedner v. United States, the U.S. Supreme Court finds that the District has "never made an express finding on the records about the ends-of-

justice balance" test, it unanimously held: "The Act requires that when a district court grants an end-of-justice continuance, it must '***set forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice are served and they outweigh other interests."*** In exactly mirroring the instant case, the Supreme Court clearly held: "But Section 3161 (h)(8)(A) is explicit that 'no… period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable…unless the court sets forth…its reasons for (its) finding[s]' Thus, without on-the-record findings, there can be no exclusions under 3161 (h)(8)(A)." The Unanimous Supreme Court pinpointed: "Here, the District court set forth no such findings at the January 31 status conference, and 3161 (h)(8)(A) is not satisfied by the District court's passing reference to ***the case's complexity*** in its [***34] ruling on petitioner's motion to dismiss."     Finally, the unanimous Supreme Court concludes:  "The sanction for a violation of the Act is dismissal." Leaving with the District Court to decide is whether the dismissal should be with or without prejudice.   Zedner v. United States, 547 U.S. 489; 126 S. Ct. 1976, 2006 U.S. Lexis 4509.

Now, we have the exactly same set of situation. While granting the Government's 90-day exclusion upon its Motion under 3161 (h)(8)(A) and its sub-sections, upon opposition of the Defendant, this Honorable Court has never made an express finding on the records, either orally or in writing, about the ends-of-justice balance" test.  In the light of the most recent authority by the U.s. Supreme Court addressing the exact same issue, the Government's renewed Motion should be instantly denied and the Indictment and Information concerning this Case should be summarily dismissed for the irreparable violation, in addition to other more severe violations, of Speedy Trial Act.

The remaining issue is whether such a dismissal should be with prejudice.

### III.  Complexity Arising from Turning a Simple Factual Truth into Complicated Untruthfulness May Not Be a Valid Ground for Tolling The STA Clock on Grounds of "Complexity" at the First Place

The Government's grounds of "complexity" upon which the tolling of the STA clock was argued may not have been valid at the first place.  Consequently, the exclusion

of the STA time limitation should not be counted.  Consequently, the STA was violated and the Indictment should be dismissed.

The Government has argued and convinced, or has been getting so close to have convinced this Honorable Court that walking away from the strict time limitation under the Speedy Trial Act is necessary because this instant case is complicated and complex.

As common sense indicates, a statement of the truth itself is simple, rather than complicated. But if one decides to twist the truth, and to make up a case from nothingness, it can then become a complicated process: What is required is not a simple, straight-forward reflection of the image of the truth itself.  Instead, it needs more ingredients to change the truth itself, hence it takes much time to fill in all potential loopholes at all dimensions.

This instant case is not a complicated one by itself.  The centerpiece is that the authorities intercepted 19.797 metric tons of chemicals in November 2006.  If the following forensic examination possibly couched by the U.S. government were not serious tainted with fraud of such great magnitude that had to prompt the Mexican Government to order to eliminate the entire load of such "criminal evidence" on May 19, 2007, then the U.S. Government did not have to labor itself to go to the place where the Unimed's allegedly "contaminated" centrifuge is located back to April 26, 2007. Because the case is simple: Had Defendant illegally imported large bulk of controlled substance, the criminal prosecution would have been four-corner squared.  Especially the most significant foundation for criminal charge would have been well established, rather than collapsed as in the reality.

Now, this instant case has suddenly become so complicated because one now needs to make up a case, while in the making-up process, it becomes so complicated to patch up one loophole after another.  Those growing numbers of loopholes as missing links in a chain of incriminating evidence has driven the Government to change its versions of stories in extremely busy fashion.  While people's attention from the essence of the case also needs to be shifted and extracted into all fancy, but such completely irrelevant matters as gambling at Casino, purchasing state of art technology from Germany into Mexico, land transaction in the state of California, purchasing anti-biotic

from Hong Kong, etc, etc.  Therefore, case being complicated because of the necessity to turn the simple truth into a complicated expression of untruthfulness may not be a valid reason to toll the STA time limitation at its first place.

For instance, when the government presented a myth that the Defendant spent "millions and millions of U.S. dollars buying sophisticated equipments for the purpose to slightly modify, the term "loosely" used by the Government, to "convert" tons of "chemical cousins" into the "controlled" substance. (Please refer to Transcript of Status Hearing on September 7, 2007, page 22)

The loophole in this unsubstantiated government speculation appears obvious that such alleged "slight modification" of chemical cousins does not require millions and millions of dollars in purchasing such 24 assembly lines from synthesizing, tabulating, capsulation to packaging.   When loopholes emerge, the efforts to patch up the loopholes, sometimes requiring to change the version of story entirely.  It appears that the Government needs such time to handle such a "complex job".

### IV. The Indictment should be Dismissed with Prejudice for Violation of STA Not only for Government's Failure in Living Up to What the Court Ordered While Granting Three-Month Continuance, but also because Such a Failure Is of Absolute Necessity in Defense of Government's Complicated Process in Making up a Case

Section 3161(c)(1) provides in relevant part:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an . . . indictment with the commission of an offense shall commence within seventy days from the filing date (and making public of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

The seventy-day deadline takes into account various excludable events that do not count against the seventy-day period.  See 18 U.S.C.  3161(h).  Thus, for example, continuances may be excluded from the seventy-day period if the district court makes a finding on the record that "the ends of justice served by taking [the] action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C.  To allow

the Government to re-start its aimless fishing expedition trip after it finds, but refuses to acknowledge, that the evidence presented before it by the Mexican counterpart has been totally collapsed for its apparent fraud and perjury, is not to serve the end of justice at all. Under the circumstances, dismissal of indictment may be of only appropriate disposition, instead of undue delay for the purpose to encourage government's compliance of the procedures, instead of committing intentional, severe misconducts.  According to Zedner, the period of tolling/exclusion of computation of the dates should not be counted if the reading of "interests of justice" balancing test under Section 3161(h)(8)(A) is completely absent from the records.  In that light, the 90-day continuance period should not be excluded, then the STA has been already violated.  Accordingly, the Indictment must be dismissed.  The remaining issue is whether or not such dismissal should be with prejudice. Our answer is "yes".

On September 7, 2007, while granting the government's motion for continuance, upon the Defendant's opposition, this Honorable Court directed the Government with the following dictum:

> "I'll give the government ninety days to with all due diligence proceed with its discovery of additional evidence, and I'm telling the government, I've said it more than once, you know, I expect that the government devote significant resources to its continuing investigation." (Please refer to Transcript of Status Hearing on September 7, 2007, page 82)

With the Honorable Court's warning for the Government to avoid the "snail pace" progress in the discovery in its fresh memory, the Government was lavishly talking about its "slow moving process" in cooperating with such foreign government as the government of Germany and translating German language into English.   It appears the government's fishing expedition trip has totally lost its direction or has been completely confused by its own creation of a fantasy world*.  Defendant spent more than 60 million dollars to purchase state of art pharmaceutical equipments for 24 assembly lines, mostly from Germany, for the purpose in building up one of world's greatest pharmaceutical

manufactures using cutting-edge technology, the biggest one through out the landmass of Latin America. Defendant's business and contractual relationship with all brand name German mfgs is completely irrelevant to any alleged "illegal drug" activities. Such a thing can only be found in Government's fantasy world that Defendant Ye Gon's pharmaceutical flagship in the entire Latin American's pharmaceutical fleet would be used for "clandestine mass production of meth and MDMA"**. Government's slow moving discovery efforts in Germany may have been completely wasteful, and least relevant to its one-count charge. The critical issue is not the such discovery pace is slow moving, the key issue is such wasteful slow moving process is used to distract the center of the attention into something completely irrelevant to centerpiece of this instant case.

The slowest move is no move. Apart from all these "slow moving in such foreign state as of Germany", the government, on the other hand, has completely refused to move any inch forward.

1.      Regardless Defendant's repeated urge, Government has persistently refused to make any move to furnish to the Defendant with the Unimed's ephedrine and pseudoephedrine log book, namely, "Libro De Control" to Defendant; even though the government provided database has shown its clear cover-page, while the recorded contents were made unreadable.

2.      Regardless Defendant's repeated urge, Government has persistently refused to make any move to furnish to the Defendant with the *full package* of DEA chemists' forensic examination for an independent, detached forensic chemists to evaluate and review.

The Government's consistent lack of candid in handling its "slow moving" discovery process and its inconsistency in its ever-changing version of prosecutorial stories deeply concerns Defendant.   While Defendant lavishly talked about its efforts to collect evidence from such foreign countries as Mexico, China, Germany, Hong Kong and Switzerland, given to the fact that joint drug investigation between U.S. and Mexican law enforcement started in March 2006. But how did government handle such localized evidence which is simply at arm's length?  The complete, readable log book is supposed to be in Government's

immediate possession while the government has refused to turn it to the Defense. If the log book's cover page could be clearly scanned, why the rest of its pages well documenting lawful transaction of pseudoephedrine became completely blackened out?  Another example is Government's Forensic Examination on residues, about which, the Defendant filed Derbet Motion with this Honorable Court.  Upon Defendant's repeated urge for Government to disclose the whole package of its Forensic Examination information, the Government recently released to Defendant a two-page Forensic Testing Conclusions, dated its testing date as of "November 17, 2007".  While the 11/17/2007 Forensic Testing Conclusion Report had head-on collision with the FC testing data cited by DEA Official Eduardo Chevas presented to Grand Jury.  The dramatic change of the contents concerning the same 04/26/2007 residue samples during the 6-month questionable chains of custody and the real issues behind all these dramatic inconsistency may give the real reason to the government's time consuming reluctance to disclose all such local information to the Defense team.          .

While such failure was not because the government is unable to fulfill its obligation to allow the Defendant to adequately prepare his defense under certain degree of transparency, it is because the government is unwilling to do so, no matter how long the time will be tolled.

If we trace back the Government's proffer presented to this Honorable Court that helped the Government to get its motion for tolling the STA clock, we then may find why government has to furnish the Defense with such a log book whose contents pages were blackened out.

On September 7, 2007 hearing when both issues as bail and STA were argued and adjudicated, Government testified to the Court as follows, among others:

> "Whatever he was doing with ephedrine and pseudoephedrine, the tons of it that was ordered prior to and in the end of 2004, he wasn't selling it to people involved with the table ting or capsulating ephedrine or pseudoephedrine. That's not the kind of business ha had.  He was acquiring these tons of

ephedrine and pseudoephedrine prior to and up to 2004 and then selling it to customers that are virtually *unknown because there is no documentation in his business* because his legitimate business was the sale of other products such as penicillin, such as amoxicillin, such as steroids, which are legal to sell in Mexico." (Please refer to Transcript of Status Hearing on September 7, 2007, pp 65-66, emphasis added)

Government's foregoing representation of facts to the Court that enabled it to obtain its 90-day continuance, and helped it keep the Defendant in pretrial detention without bail in the meantime, upon opposition of Defendant, is apparently untrue. Such Government's statement of facts before the Court will be faced with head-on collision with the well documented factual truth recorded in the log book if its contents had not been "accidentally" turned blackened.

With the presence of COFEPRIS 2005 auditing report on Defendant's ephedrine and pseudoephedrine transaction, whose audited quantity was submitted to the United Nations for the UN records, the possibly accidentally leaked well documented factual truth has reversed the government's version of stories: hundreds and hundreds of tons of ephedrine and pseudoephedrine were sold to customers that are virtually *unknown because there is no documentation in his business* prior to and up to 2004 while the Defendant's only legitimate business was limited to the sale of other products such as penicillin, such as amoxicillin, such as steroids (Please refer to Transcript of Status Hearing on September 7, 2007, page 82)

The *slow moving or simply no moving* in turning to defense such critical documents as to comprehensive forensic examination of 04/26/07 sample of residues may also have the potential risk of head-on collision to Government's representation of facts to Grand Jury on 07/26/2007.

In contrary to such "snail pace" progress, if any, in turning the critical evidence to the Defense, the government's "interviewing witnesses after witnesses after witnesses" was said to be in "very aggressive" manner. On November 14, 2007 status hearing, Government proffered to this Honorable Court: "We are actively interviewing witness after witness after witness….we have continued to be very aggressive, following leads, following witnesses, talking to witnesses" (Transcript of Status Hearing on 11/14/2007, page 7) Government's such aggressiveness does not seem to be the valid grounds for the Court to grant its renewed Motion for further tolling of the STA clock. Such

government's aggressiveness has been proven to fall into a ethically wrong track, in highly reckless disregard of the truth, to say the least.  From what the defense team collected the grievances from some of these "aggressively interviewed" in jail of Mexico, it appears the Government's such "very aggressiveness"  will not lead anybody to truthful discovery, but to disaster. (Please refer to three affidavits issued by three Mexican inmates as the attachment to Defendant's Motion for Rule 12 Dismissal with Prejudice docketed with this Honorable Court.)

Therefore, if this Honorable Court grants the Government's renewed motion for additional tolling of the STA clock, it may not be difficult to see that the Government's further discovery efforts, either in "slow moving" pace or in "very aggressive manner", will definitely not lead us closer to the factual truth, but lead to a doomed destination: disaster, a disaster not just to Defendant.

As matter of law, to grant Government's such unreasonable request, upon Defendant's opposition, may be statutorily barred.

As 18 USA 3161(C) provides: "No continuance under subparagraph (A) of this paragraph shall be granted because of… lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government.

Under the circumstances, dismissal with prejudice is not just proper, but necessary.  "[i]f a defendant is not brought to trial within the seventy-day deadline, dismissal of the indictment is mandatory."  United States v. Doran, 882 F.2d 1511, 1517 (10th Cir. 1989).(2)  The "indictment shall be dismissed on motion of the defendant." United States v. Vaughn, 370 F.3d 1049, 1055 (10th Cir. 2004).  In Zedner v. U.S. 126 S. Ct. 1976, 1984-85 (2006), the Unanimous Supreme Court, while ruling that the Indictment must be dismissed for failure of holding the balancing test for the records, leaving the issues of dismissal under STA with or without prejudice to the District Court. However, the criteria set forth in other case is that if the Government's action is found

***"egregious", "negnectful, and "dilatory"***, then the indictment should be ***dismissed with prejudice.*** U.S. v. Taylor, 487 US 338-339 (1988).

Furthermore, STA, specifically, 18 U.S.C. 3162(a), provides, for the relevant part, concerning the dismissal of the indictment:

> "In determining whether to dismiss . . . with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Prejudice to the defendant is among the factors the text of 3162 directs the district court to consider. United States v. Taylor, 487 U.S. 326, 334 (1988); see also id. at 344-46 (Scalia, J. concurring).

Here, the seriousness of the offense cannot just be judged by a foreign power's politicized PR campaign, by any irresponsible, unsubstantiated statement. It should be based upon evidence, free of fraud and perjury.

The Supreme Court stated:

> "This scheme (of dismissal-added) is designed to promote compliance with the Act without needlessly subverting important criminal prosecutions. The more severe sanction (dismissal with prejudice) is available for use where appropriate, and the knowledge that a violation could potentially result in the imposition of this sanction gives the prosecution a powerful incentive to be careful about compliance. The less severe sanction (dismissal without prejudice) lets the court avoid unduly impairing the enforcement of federal criminal laws though even this sanction imposes some costs on the prosecution and the court, which further encourages compliance. " Zedner v. United States, 126 S.Ct. 1976, 1984-85 (2006) (quoting 18 U.S.C. 3288).

The failure of the Government's compliance here appears willful, egregious, neglectful and dilatory. Consequently, the indictment should therefore be dismissed with prejudice.

Consequently, in the light of the foregoing analysis, the appropriate disposition of this instant case is to dismiss the Indictment with prejudice.

**V. The Indictment Should be Dismissed Because the Government's Violation of STA, Among Other Violations, Is Severely *Prejudicial* to the Defendant's Constitutional and Statutory Rights, Especially Given to His Open-Ended Pretrial Detention without Bail**

Concerning dismissal of the indictment for violation of STA, the Courts will scrutinize whether such violation of STA will be an harmless error or prejudicial to Defendant.  In Zedner v. U.S., the Supreme Court held that a failure under 3161(h)(8)(A) is no harmless error.  Concerning the prejudice against the Defendant, the open-ended pretrial detention without bail against the Defendant is the worst case to show prejudice. As the Higher Court held:

> "The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee *is designed to minimize the possibility of lengthy incarceration prior to trial*, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." United States v. MacDonald, 456 U.S. 1, 8 (1982) (emphasis added).

Defendant contends that any extension of time, once granted or yet to be granted, to government upon opposition of Defendant, will be substantially prejudicial to the Defendant's undeniable constitutional rights under Sixth Amendment, probably also under Fifth Amendment in this instant case, given to the fact that the government had sought to place the defendant in an *open-ended pretrial detention without bail* and such efforts were aggressively and persistently sought with the government's clay feet on fatal evidentiary defects, even though the trouble had been originated by Mexican government, to which the prosecutors have agreed to characterize as "corruptive" , however it has committed to patronize at the cost of justice in many aspects.

While 18 USC 3121 provides certain guideline for the Court to consider a waiver of strict enforcement of 70-day statutory limitation:

B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

**(i)**     Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

**(ii)**    Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

None of the above circumstances are seen in the set of circumstance concerning instant case.  In the wake of most recent discovery of accumulated novel exculpatory evidence, being further corroborating the exculpatory evidence that had been in place well before such novel discovery, in further addition to Government's questionable Mexican rush for untruthful confessions, may have demonstrated that any further delay may lead to complete miscarriage of justice, if such miscarriage is yet to happen.

At the moment this Motion is written, the Government remains silent, irresponsive and un-apposed position for Defendant's following pending motions whose prescribed time limitation for response have been expired, henceforth, they may be deemed as unopposed motions:

1. Defendant's Motion for Bill of Particulars;
2. Defendant's Amended Motion for Bill of Particulars;
3. Defendant's Motion for Derbet Hearing;
4. Defendant's Amended Motion to Dismiss.

The government's lack of diligence in response to Defendant's motions addressing such critical matters may have further retarded the statutorily commanded prompt disposition of pretrial motions pursuant to 18 U.S.C. 3161(h)(1)(F).

There appears further delays in government's reproduction and delivery of what Plaintiff requested for: The clearly readable contents of the log book, namely, Libre de Control;  U.S. DEA Forensic Examination of "Residues" collected from Unimed place of

17

business in Mexico on April 26, 2007; U.S. Government records concerning its fact findings via interrogating witnesses in both China and Mexico.  Such further delay of justice in facial violation of the Defendant's constitutional rights for Speedy Trial under Six Amendment, vis-à-vis the fact of his pretrial detention without bail has been lasting for almost 5 months, and it appears open-ended.  Given to the Government's excessively slow pace in complicating the discovery process, the pretrial detention has now become a pretrial life imprisonment in theory, while the Defendant should be presumed innocent, while a chains of growing number of exculpatory evidence, has undoubtedly pinpointed one simple fact that Defendant Zhenli Ye Gon appears to be innocent from the alleged offense he was charged: illicit drug trafficking even in the State of Mexico, much less in the United States.  As the Defense counsels orally presented to this Honorable Court on November 14, 2007 status hearing,  the first 11 boxful of documentary evidence provided by the Government has produced nothing more than overwhelming evidence of exculpatory nature, fully corroborated one another.  The ground breaking discovery of such exculpatory evidence, while far from being exhaustive, are the following:

A.      Mexican Government's (specifically "COFEPRIS") inspection and evaluation certified in February 2005 on Unimed's lawful business transaction in relation to such controlled substances as Pseudoephedrine under Government issued import license;

B.      Mexican government issued import permits;

C.      Proof of joint certifying process by both China's Ministry of Public Security and the Embassy of Mexico;

D.      From the above-referenced documentary evidence, inference was made that the quantity of controlled chemicals imported by Unimed was reported to, and recorded with the United Nations.

E.      Cover page of Log Book (Libro de Control); with the contents pages having been "accidentally" scanned illegible.

F.      Revelation and proof of the Government's improper, unethical and willful misconduct in inducing and coercing confessions by twisting factual truth to fit for government's fine-tuned framework, to simply

put, a perjury, as being demonstrated in three revealing affidavits from the inmates in Mexican cell in the same case.

Defendant opposes any delay not only because the grounds invoked by the government appears on its very surface unreasonable, probably untruthful, but also we see such a demand for such an additional delay has further violated the constitutional value in its explicit, unambiguous provision of speedy trial, such demand, if any, also violated is the equitable principles underlying the balancing criteria of speedy trial vs. pretrial detention without bail.

Theoretically, Government's unreasonable demand for repeated delay of justice plus government's another excessive demand for an open-ended pretrial detention without bail against this highly likely innocent Defendant has constituted of unconstitutional pretrial "life imprisonment".    Apparently, such a practice is prohibited by this Nation's Constitution, not only by its inherent value and principles, but also by its black-letter text itself.

In this very instant case, the Defendant is doubtlessly  entitled to "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." United States v. Ewell, 383 U.S. 116, 120 (1966); see also Klopfer v. North Carolina,  386 U.S. 213, 221, 226 (1967); Dickey v. Florida, 398 U.S. 30, 37 -38 (1970).

Defendant opposes any unnecessary, wasteful delay of justice particularly in the wake of the government's ethically questionable practice in making up its unsupported case via fabricating untruthful confessions from inmates of Mexico, such obviously tainted practice, if proven, has constituted of actual malice, to say the least, a reckless disregard of the truth underlying this instant case, rendering this instant case dismissible with prejudice.   While any such further delay has opened the door wider to potentially facilitate the scheme of deliberately exploiting from such delay of justice in violation of speedy trial Act, which is ***prejudicial*** to Defendant's undeniable constitutional and statutory rights.   U.S. v. Marion, 404 US 309, 317 (1971) and Dickey v. Florida, 398 U.S. 30, 37-38 (1970).

The Sixth Amendment of the Constitution ensures that defendants in criminal prosecutions "shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court acknowledged that the right to a speedy trial is as "fundamental" as any of the Sixth Amendment rights extended to criminal defendants, Klopfer v. North Carolina, 386 U.S. 213, 223 (1967), the Court has also found the right to be "generically different." Barker v. Wingo, 407 U.S. 514, 519 (1972).   The STA also provides the courts with a clear standard by codifying time limits that can only be extended in accordance with the Act.

In light of the SAT's text and Congress's goal of protecting the public interest in prompt criminal trials, the requirements of the Speedy Trial Act may be waived only in the limited circumstances mentioned in the statute, whose constitutionality may yet to be scrutinized,  however, the issue left open in New York v. Hill, 528 U.S. 110, 117 n.2 (2000).   In terms of enumerated grounds for a waiver of Speedy Trial Restriction, the government's own lack of diligent preparation (of the evidence) or failure to obtain available witnesses on the part of the attorney for the Government, should not be supportive for government's demand for continuance. (Ref. to 3161(h)(8)(C) of STA)  Further, the most recent precedent establishes in this Jurisdiction, the statute's mandatory language stating that, in the event of a violation of speedy trial, the "indictment shall be dismissed." As the "only recourse".  (United States v. Lorenzo R. S. Anders No. 02cr0055-02, decided May 11, 2007, US DC Cir.)  Due to the fact that the

Act has been failed to meet, the Indictment should be dismissed.  While if there is no such sanction as dismissal of the indictment to deter the violation of STA, the STA's strict mandate for bringing a criminal case for trial timely will be rendered "useless" U.S. v. Brown (DC Circuit, 2003)  Therefore, in accordance of 18USC 3161, "…if a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice.  Zedner v. United States, 547 U.S. 489 (2006).  In consolidation of this Motions pursuant to Rule 48, with the underlying cause to dismiss under STA, into the related pending Rule 12 Motions, opposed and unopposed by the Government, the Dismissal of the Indictment concerning the instant case should be with prejudice, for the allegations of misconducts in bad faith.

The founding value of the Speedy Trial under Sixth has precluded, and will preclude a government's power abuse to use any further delay as a "deliberate scheme to prejudice the accused.   In this instant case, the delay tactic appears to be a scheme deliberately designed and devised to further patronize certain corrupted forces in current Mexican government with ample time to patch up its fatality of evidentiary collapse to rescuer its frivolous drug charges against the Defendant.  Such tactic of unnecessary delay is on its very surface against the purpose and principles of the Speedy Trial under Sixth Amendment.  Dickeey v. Florida 398 US 30, 40 (1970).

Since it is "doubtless true that in some cases the power of the Government has been abused and charges have been kept hanging over the heads of citizens, and they have been committed for unreasonable periods, resulting in hardship," to such citizens. the Court noted that many States has been "[w]ith a view to preventing such wrong to the citizen . . . [and] in aid of the constitutional provisions, National and state, intended to secure to the accused a speedy trial".  (U.S. v. Marion , 404 U.S. 307, 319 (1971))

Instead of considering any further motions of deliberate delay tactics in bad faith, it may be "the right time" for this Honorable Court to address the issue under 18 USC 3162(a) and (b), given to the Defendant's allegation of the government's intentional, and reckless misconduct.   The Speedy Trial Act provides that if a defendant is not brought to trial within the 70-day period, (given to the fact of exhaustion of that 90-day period of

continuance without proof of government's due diligence, seeing no improvement of government's charging evidence as seen in this instant case--added) "the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. 3162(a)(2). Dismissal may be with or without prejudice, depending upon the district court's weighing of various factors.  United States v. Taylor, 487 U.S. 326, 336-337, 342-343 (1988).

In the light of such expressive statutory provisions, Defendant respectfully moves to this Honorable Court that "the information or indictment" against the Defendant be accordingly dismissed, for the Government's apparent violation of the Defendant Constitutional/statutory  Speedy Trial rights, in additions to other severe violations and misconducts which he deliberates in his prior Motions and related prays for Dismissal of Indictment with Prejudice. By taking this opportunity, Defendant also prays for a Hearing of oral argument on his Motion for Dismissal based on other grounds if this Honorable Court finds it necessary and proper.

## V. **CONCLUSION**

Wherefore, based upon the foregoing, Defendant respectfully moves that this Honorable Court summarily dismiss this instant case via dismissing the "Information or Indictment" for Government's intentional or reckless violation of Speedy Trial Act, in addition to other violations in alleged bad faith.  The Defendant also respectfully prays that this Honorable Court schedule oral argument sessions to adjudicate Defendant's other important pending motions, opposed or unopposed by the Government, if it finds it still necessary and appropriate.

Respectfully submitted by:


Martin McMahon, Esq.
Lisa Angela, Esq.
/s/ Ning Ye, Esq._____
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
ynyale@aol.com
*Counsels for Defendant Ye Gon*

Proposed ORDER (draft)

Upon consideration of Defendant's Motion For a Dismissal of Indictment for Violation of Speedy Trial Act it is this _____ day of _____, 2007, hereby

ORDERED that the Defendant's Motion for Dismissal of Indictment for Violation of STA, in addition to other grounds for Dismissal, is hereby granted. It is further ORDERED that the Indictment rendered by the Federal Grand Jury on July 26, 2007  is hereby Dismissed with Prejudice.  It is so Ordered on _____, 200__.


_____
The Hon. Emmit G. Sullivan
Judge of the United States District Court for the District of Columbia