IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The United States of America | ) |
| | ) |
|                Plaintiff | ) File: 07-181 |
| | ) The Hon. Sullivan |
|     against – | ) |
| | ) |
| Zhenli Ye Gon | ) |
|               Defendant | ) |

MOTION TO RECONSIDER

While rendering his ruling, further granting the Government's Renewed Motion for three more months of tolling the STA clock, this Honorable Court made it specific and expressive, as part of the records, that the Party may file Motion to Reconsider. In the light of the Honorable Court's ruling, this Defendant, by and through his undersigned counsel, humbly and respectfully file the corresponding Motion to Reconsider, strictly and literally following the Court Order orally rendered on December 20, 2007.

### I. Instead of Granting the Government's Second Motion for Additional Tolling of STA Clock, the Court May Need to Dismiss the Indictment as Matter of Law

This Motion needs to be immediately filed because the undersigned counsel was only given five minutes to present to the Honorable Court his oral argument while he was from time to time not allowed to even briefly respond or address all those critical issues raised by the prosecutors in their usually lengthy proffer, particularly concerning groundless, possibly even slanderous charges of Defendant's "illegitimate drug" activities. This Honorable Court's explicit, and specific permission for the Defendant to file the Motion to Reconsider may have provided a proper avenue through which the undersigned counsel, as an advocator in an adversary proceedings, may add those most critical contents into the records.

This Honorable Court may need to reconsider today's Order in granting the Government's renewed Motion for further tolling the STA clock for an additional 3-moth period, again, "in the interests of justice", while without setting up a fixed date for trial for the following reasons:

The Speedy Trial Act provides that the trial must be started within seventy days after the indictment, with a detailed procedural mechanism regulating the exceptions and exclusions.  On August 13, 2007, the government filed with this Court its first Motion to Exclude Time under the Speedy Trial Act, under 18 USC Section 3161(h)(8)(A) and related sub-sections.  For relevant part, that Motion reads as follows: "First, the Court may toll the seventy day period by granting a 'continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." citing 18 USC Section 3161(h)(8)(A), and deliberating the balancing test under 18 USC Section 3161.  Again, on December 14, 2007, the Government's Renewed Motion for Further tolling of STA clock, it specifically raised the issue of "interests of justice" under 18 USC Section 3161(h)(8)(A).

For unknown reason, on September 7, 2007 when the STA issues was first brought into this court room for oral argument, the Government appeared to have forgotten its "interests of justice" argument raised in its 08/13/2007 Motion. Consequently, when this Honorable Court grants the Government's 08/13/2007 Motion for Continuance, it had been silent on the balancing test between the "interests of justice " and "the best interests of the public and of the defendant in a speedy trial".  Checking the court records for September 7, 2007 hearing, followed with its written line order, the Defendant is unable to find any holdings or reasoning in relation to the "balancing test".

Government's renewed Motion for further tolling of STA clock, in writing, again raised the legal issue of interests of justice under 18 USC Section 3161(h)(8)(A). However, the balancing test which was designed to guarantee the best interests of the public and of the Defendant, was again forgotten, by the prosecutors through out the entire oral argument session.  Consequently, the Honorable Court again, did not address the balancing test into the records.   The Written Order issued by the Honorable Court granting the additional three month of tolling, again, for the second time, failed to put the balancing test into court records.

2. The Indictment Needs toi be Dismissed for Legal Impossibility, and for Violation of Due Process, because the Defendant Appears to be Irrelevant to the Crimes he Was Charged

The indictment should be dismissed not barely because the fatal mistakes in technicality and in procedural posture.   As matter of substantive law, this case for its entirety should be dismissed because of the legal impossibility in the government's criminal charge, which has appeared to have completely collapsed.

As the undersigned counsel pinpointed to the Court, at about 10:30 am, Ronda Dixon, Esq. raised the issue to the Court, alleging the Defendant was a danger to the community because he imported "more than 100 tons of" "illegitimate substance" into Mexico, knowing those would be finally ended up in the United States.  At exactly 10:50 am, the same prosecutor specifically alleged to the Court that the so-called "illegitimate chemical substance" brought into Mexico by the Defendant is N-Acytal-Pseudoephedrine".  Ms. Dixon's accusation was specifically corroborated by the Indictment's sole supporting Affidavit issued by DEA Officer Eduardo Chavez, who claimed that the Defendant imported 87 tons of N-Acytal-Pseudoephedrine.  Assuming, arguendo, what Defendant imported and transacted is N-Acytal-Pseudoephedrine, as matter of law, N-Acytal-Pseudoephedrine is NOT a controlled substances. Therefore, as matter of law, N-Acytal-Pseudoephedrine is not an illegitimate chemical substance under controlled list.  There is completely an absence of probative evidence, or there is severe missing link, indicating that the Defendant has ever "converted" such a legitimate substance into an illegitimate one.  Chemical conversion, in organic chemistry, upon which the scientific essence of forensic chemistry builds, is a big deal, which involves complicated technical procedures.  To make such a statement does not mean, that the Defendant wants to have the critical issues "pre-tried".  However, he is entitled to rebut all these unfounded, ever-changing, fancy and speculative charges on the spot.

 "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." Bordenkircher v. Hayes, 434 US 357, 363 (1976), the foregoing authority may be the case the Defendant is now permitted with the time to provide this Honorable Court.  Accumulated evidence in exculpatory nature has

3

clearly indicated that the Defendant was punished because he has done the law plainly allows him to do, i.e., as the Government alleged, importing and selling the N-Acytal-Pseudoephedrine, with clear records of going through all necessary legal procedures, including, but not limited to, going through COFEPRIS, Customs, and Mexican Diplomatic envoys.  To keep him in the open-ended pretrial detention without bailing on the one hand, while in complete disregard of his constitutional/statutory rights under Speedy Trial Clause/Act, may be the multiple violations of the Due Process.

Therefore, the Indictment should be dismissed not only for explicit violation of STA, but also for the violation of Due Process in punishing a citizen without legal basis.

III. The Government's Oral Opposition to Court's Consideration of Motion for Bill of Particulars should Be Denied

The Bill of Particulars is needed because the Government's statement made in different places and different time frame appears inconsistent, hence little credible.  The following are selected examples cited from Government proffer made today in comparison to its Response to Defendant's Renewed Motion for Bail.

The Government's Response to the Court's addressing the issue of the Motion for Bill of Particulars does not appear to have reinforced its hollow grounds upon which the clay feet of prosecution are standing.  In today's proffer presenting the fact patterns formed by the Government, or numerical statistics cited by the Prosecutors, did not appear more coherent, more consistent, or of more probative value in comparison to its prior proffer, even though the Government was not requested to provide "new evidence".  On the contrary, it appears more inconsistent, self-contradictory and hence, incredible, in comparison to Government's repeated prior statement of the facts:

A.  The time frame of the alleged "illicit drug activities": In the Government's Indictment, the Defendant's alleged "criminal" activities" covered the period stretching from year 1999 through year 2007.  In the most recent version of Government's alleged time frame covering the alleged "illicit drug activities" has shrunk such time period from January 2004 through December 2006.  A 7-year length in Government's Indictment has now shrunk into a mere 3-year span in Government latest version of allegation.  Statistic wise, the government's most

4

recent version of its fancy drug story has shredded 60% water and bubbles from the substance of the ingredients forming that Indictment concerning the element of timing;

B. The concept employed by the Government, i.e., "January 2004" appears erroneous on its very surface. As the most recent evidence demonstrates, that Mexican Government's COFEPRIS conducted its auditing on Unimed's licensed, legitimate ephedrine and pseudoephedrine transaction in February 2005, it has clearly indicates that the validity of Ye Gon's government issued legitimate ephedrine and pseudoephedrine license covers the year of 2004. Therefore, the government may probably need to "fine tune" its time frame from "January 2004" into "January 2005", to keep consistent with the tone of its most important patron on the West Hemisphere"; However, if so fine-tuned, the inaccuracy rate left in the Government's Indictment has now climbed up to 75% . Assuming arguendo the Government's latest version is true, statistically, little probative value has been left for the related key information the Indictment, out of the same author.

C. Quantity of "ephedrine, pseudoephedrine, or products from which pseudoephedrine could be *manufactured*": There are at least four different versions:

   i. 100,000 kilograms: (100 metric tons even), the latest version;
   ii. 80 something tons: Officer Eduardo Chavis' sole Affidavit in support of the Indictment presented before the Grand Jury;
   iii. Hundreds and hundreds of Tons, the Mid-term version made to the Honorable Court by Prosecutor Paul Laymon, Esq. on November 14, 2007, in order for the Court to believe that the defendant "is a significant threat to this society". (Please refer to Transcript of Status Hearing dated 11/14/2007)
   iv. "more than 100 tons", Ms. Dixon's presentation today.

   Who knows which version were the right one. The answer seems none of all the above.

While dangerously using such term as "or products from which pseudoephedrine could be manufactured", seemingly including "N-Acytal-Pseudoephedrine", which is

5

a legitimate chemical agents.  Something as stating "nitrogen based chemical fertilizer from which explosive TNT for terrorism could be manufactured".

F. "A sampling of the substance (labeled as "Hydroxy-Benzyl-N-Menthyl-Acetethamine"--added) conducted by Mexican Customs' Central Laboratory identified it as N-Acetylpseudoephedrine" (p-3) The fact that Mexican Authority had committed obvious fraud in conducting these forensic testing *had been well documented*, pinpointed by independent, detached FCs, and debriefed by the Defendant's counsels to the U.S. Department of Justice well before the lousy Indictment was ever made. Moreover, a parallel forensic testing by the National Forensic Laboratory under the Attorney General's Office went even further to prove that Hydroxy-Benzyl-N-Menthyl-Acetethamine, as what the U.S. prosecutors unscientifically characterized as "chemical cousin", was not psychotropic or narcotic drug, neither was it controlled substance.   The quantum leap from Hydroxy-Benzyl-N-Menthyl-Acetethamine into what is called "dangerous Schedule II substance as Methamphetamine" does not seem to be accomplished by Defendant's alleged "criminal activities", it may only have been completed in the prosecutors' fantasy world.

G. While mentioning the $207 M found out in Defendant's Mexican residence, the Government takes it as proof that the currency found in Ye's place is the denomination of U.S. currency, that indicates the proceeds are from U.S.. Further speculation went even wilder:  the money are U.S. currency, therefore, the money were coming from sale of Methamphetamine in the U.S. market in exchange of U.S. dollars.  The logical relationship between U.S. currency and U.S. Meth sale seems too remote to take it seriously.  U.S. currency is worldly circulated money.  That fact does not support "drug money" finding at all.  While the fact that the money was actually printed and made in USA does not mean such money can only be used for illegal trade of drugs while it cannot be used for under-table trading of souls for Mexican politicians.

I.  "Defendant has admitted his association with drug dealers"? (page 6) Don't have to be surprised while reading such government's "groundbreaking discovery".

      This is not first time. Months before, the same party declared to this Honorable Court that Defendant's wife had been convicted and sentenced by Mexican Court, even though the irrelevant housewife has not even been tried as of today.

J. "Defendant told a source of information (hereinafter SOI) that in March 2006, a Mexican organized crime group began blackmailing Ye Gon in Mexico." (p-6) Our understanding that what the SOI told is that a *"Mexican organized ruling political party"* through its liaison conduit, began blackmailing Ye Gon. It is unknown how such a name change has happened. May it be possible that the U.S. Government does not believe to differentiate these two Mexicans being significant? Or Government's such confusion of different groups of people have supported Defense Counsel Martin McMahon's ironic statement made in the Honorable Court on November 14, 2007, that if there is any co-defendant, co-conspirator absentia in this Court room, it should be Mexican Government, which had long enabled and legitimized the Defendant's business transactions, now being pursued.

K. It appears that the said SOI repeatedly denied that she had ever made implication that the Defendant's money was "dirty" and was the "proceeds of narcotic trafficking". Her denial may be corroborated with Mexican Attorney General Office's forensic lab report conclusion that Hydroxy-Benzyl-N-Menthyl-Acetethamine is *NOT* narcotics. If it is not narcotics in he State of Mexico, it will not be Narcotics in the US, either.

    L.    What appears really scary is government's finding of so-called "Amigos" Note, talking about "flour" and "book"(p-4). Government may have such "flour" and "books" notes evidence in almost all drug related cases they pursue. But as we have pinpointed in our prior Briefing, the "Amigos note" is note number II, appearing to be the transfigured replica of Note #I. Note number I, handwritten by a different "Amigos", appeared in DEA Officer K. Hooton's Affidavit Statement issued in March 2007, talking about a recipe on how to convert such a different chemical "cousin", namely safrole, instead of Hydroxy-Benzyl-N-Menthyl-Acetethamine , in the quantity of twenty

7

|   |   |
|---|---|
|   | metric tons, into narcotic MDMA. Note number I later vanished, for unknown reasons, because the fact that Defendant has never touched any single particle of Safrole through out his life may have been learned by U.S. DEA officers. It remains unknown as whether Note Number I will be re-emerging in this case or in another one. |
| M. | Log Book.  Government persistently refuses to release such critical exculpatory evidence as the log book to defendant no matter how many times defendant has made the request.  On the contrary to Government's allegation that the Log Book was not found.  It had been found, for its cover page and the unreadable contents after the cover page from the Scanned  DVD.  What was not found is its part of full contents after the clearly readable cover page. If the most important part of the scanned log book appears simply blackened for being unreadable, it is by no means that the book itself is physically not found Government completely failed to explain why it is scanned by part, blackened by part. |
| N. | FC Report on Forensic examination on "04/26/2007 residues.  The Government refused to disclose such complete package as to testing reagents, testing facilities, notes by testing handlers, even though the FC Handbook clearly requires the Government to do so. |

If there is no bill of particulars, the quality and credit of the Government's prosecution in this high profile case will suffer a disgraceful, irreparable failure, to simply put, a miscarriage of justice.

IV. **Section 3292 uder 18 USC is ot Applicale**

Another point is that Section 3292 tolling under 18 USC, STA, is not applicable. Because the Government's first Motion to toll was first made on August 13, 2007, weeks after the Indictment, it was not made "before the return of the indictment" as the Statute requires..

V.. Conclusion

Rule 48(b), Fed. R. Crim. P. authorizes the trial court to dismiss indictment if there is "unnecessary delay" in presenting the charge to a grand jury, in filing an information, or **in bringing a defendant to trial**. (emphasis added). This instant case precisely fits the category of such dismissal given to the fact that irreparable and dismissible failures have already been made in the records, consequently, the indictment and information should be dismissed with prejudice, even without touching the more broad-based dismissible errors that have demonstrated more frivolous in nature.

In U.S. v. Brown, the 11th Circuit held, while reversing the lower court's conviction and sentencing for its finding of the latter's violation of STA:

"18 USC 3161 (h)(8) sets forth stringent requirement…or if the court could ignore its obligation to set a timely trial date, there would nothing left of the requirement of Section 3161(h)(8) and no teeth in the Speedy Trial Act as a whole." In U.S. v. Brown, 11th Cir. DC docket 00-1407-CR- (2002)

For obvious reason, as matter of law, this instant case should now be dismissed for violation of STA, and also for violation of Speedy Trial clause under the Sixth Amendment, in addition to other more severe violations.

Wherefore, based upon the foregoing, Defendant respectfully moves that this Honorable Court summarily dismiss this instant case via dismissing the "Information or Indictment" for Government's violation of Speedy Trial Act, in addition to other violations in alleged bad faith.

The Defendant also respectfully prays that this Honorable Court schedule oral argument sessions to adjudicate Defendant's other important pending motions, opposed or unopposed by the Government, if it finds it still necessary and appropriate.

Respectfully submitted by:

/s/ Ning Ye, Esq._____
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
ynyale@aol.com
*Counsels for Defendant Ye Gon*

*Certificate of Service*

*The undersigned counsel hereby certifies that the above motion for reconsideration has been transmitted to the counsels representing through the Court's electronic publishing systems accordingly.*

/s/ Ning Ye, Esq.
Ning Ye, Esq., DC BAR Number: MD 26804
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
ynyale@aol.com
*Counsels for Defendant Ye Gon*

Case 1:07-cr-00181-EGS   Document 38   Filed 12/20/2007   Page 10 of 11