# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| The United States of America | ) | |
| | ) | |
| | ) | File: 07-181 |
| | ) | Hon. Emmit G. Sullivan |
| v. | ) | |
| | ) | |
| Zhenli Ye Gon, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

### DEFENDANT'S RENEWED MOTION FOR RECONSIDERATION
### OF THE ORDER OF DETENTION

The Defendant Zhenli Ye Gon (hereinafter "Defendant"), by and through his undersigned counsel, respectfully seeks reconsideration of the December 20, 2007 Order continuing his detention at D.C. Jail.[1] Mr. Gon seeks reconsideration based on the new evidence addressed herein, and the manifest injustice of keeping Mr. Gon in jail without evidence linking him to the charges.

A Memorandum of Points And Authorities is respectfully attached hereto.

Respectfully Submitted,

/s/  Martin F. McMahon, Esq.
Martin McMahon, Esq., D.C. Bar # 196642
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com

*Counsel for Defendant Ye Gon*

---

[1] At the most recent hearing on February 5, 2008, the Court invited submission of this renewed motion for reconsideration which supplants the motion for reconsideration filed shortly after the December 2007 hearing.

*Of counsel:*

James M. Ludwig, Esq., D.C. Bar # 427884
1150 Connecticut Ave. N.W.
Suite 900
Washington, D.C.  20036
(202) 862-4343

## CERTIFICATE OF SERVICE

I hereby certify that, on this 10th day of March, 2008, I electronically filed the foregoing

Renewed Motion for Reconsideration with the Clerk of Court using the CM/ECF system, which

will send a notification of such filing (NEF) to the following:

Paul Laymon, Esq.
U.S. Dept. of Justice
1400 New York Avenue, NW
Bond Bldg. 8th Fl
Washington, DC 20530


/s/  Christine Hilgeman

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The United States of America | ) | |
| | ) | |
| | ) | File: 07-181 |
| | ) | Hon. Emmit G. Sullivan |
| v. | ) | |
| | ) | |
| Zhenli Ye Gon, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANT'S MOTION FOR RECONSIDERATION**
**OF THE ORDER OF DETENTION**

## INTRODUCTION

New evidence warrants this Court's reconsideration of its December 20, 2007, order continuing Mr. Gon's pretrial detention (now in its eighth month).[1]  This evidence – recently uncovered in translating the thousands of Spanish documents the defense has received – flatly contradicts the Government's portrayal of Mr. Gon as an international drug lord.  At the same time, it tilts the "weight of the evidence" even more steeply in Mr. Gon's favor in the Bail Reform Act analysis, particularly in view of the complete *absence* of any evidence linking Mr. Gon to the manufacturing of methamphetamine in Mexico, let alone its importation into the United States.  The new evidence discussed herein confirms that Mr. Gon is neither a flight risk nor any danger to anyone.

---

[1] To avoid burdening the record, Mr. Gon's previous (Dec. 2007) Memorandum in Support of his Renewed Motion for Reconsideration on the detention issue is incorporated herein by reference.

The DEA agent's affidavit on which the indictment rests states that "all legitimate pharmaceutical laboratories operating in Mexico must go through COFEPRIS [the Mexican Federal Commission for Protection against Health Risks] to obtain permits to buy and/or sell pseudoephedrine/ephedrine." The new evidence demonstrates not only the extent of COFEPRIS's close regulation of Mr. Gon's pharmaceutical company (Unimed) with respect to pseudoephedrine/ephedrine, but also Unimed's scrupulous compliance with COFEPRIS requirements in every detail. That evidence includes:

- A June 7, 2004 letter from Mr. Gon to Mexican authorities (Ex. 1 hereto) recounting Unimed's authorized importation of 440 bags of pseudoephedrine sulfate;

- A March 2006 COFEPRIS Audit of Unimed's procedures and pseudophedrine inventory (Ex. 2), giving Unimed the highest grade of "full compliance" in all audited categories, including maintenance of the *log book* ;

- Another COFEPRIS Audit three months later (July 2006 (Ex. 3)), again giving Unimed the highest grades across the board, and reciting all of the *permits* Unimed had obtained for its inventory of pseudoephedrine hydrochlorate.

This new evidence – coupled with the fact that the log books have not been produced nearly eight months after Mr. Gon's arrest – calls this prosecution into serious question, and supports dismissal of the indictment. More importantly for purposes of this motion, it undermines the Government's portrayal of Mr. Gon as a flight risk and a danger to the community. He is neither, and he should be released under the condition of release to the custodian previously proposed with electric monitoring, which is more than sufficient to reasonably assure his appearance throughout this case.

There is, moreover, no merit to the Government's contention that removing Mr. Gon from D.C. jail and placing him under house arrest would risk is being seized (and his electronic monitor removed) by Immigration authorities. No deportation proceedings are

underway; indeed, Mr. Gon has petitioned for asylum in the U.S.  Nor has an extradition

request been filed by Mexico.  Even if deportation or extradition were to be formally

pursued, the Government has cited no authority in its earlier filings suggesting that either

proceeding would effectively interrupt this Court's jurisdiction during the pendency of

this criminal proceeding.  If Mr. Gon were under house arrest, he would be no less

subject to the jurisdiction of this Court than he is now at D.C. jail – which Immigration

authorities (or other Executive agencies) would not be at liberty to interrupt in either

circumstance.


**ARGUMENT**

I.     NEWLY-UNCOVERED EVIDENCE SUPPORTS RECONSIDERATION
       OF THIS COURT'S DECEMBER 20, 2007 DETENTION ORDER

       Reconsideration of a pretrial order is justified when a movant can "demonstrate

that there . . . is 'new evidence,' or there is a need to . . . prevent manifest injustice.'"

*U.S. v. Libby,* 429 F. Supp. 2d 46, 46-47 (D.D.C. 2006) (citation omitted).  Both of these

factors apply here.  Based on the new evidence discussed below, the concomitant absence

of any evidence connecting Mr. Gon in any way to the methamphetamine trade, and the

"snail's pace" of discovery – *e.g.*, the Government's stated plan to take depositions in

Mexico in July 2008 – Mr. Gon respectfully requests that the Court reconsider its earlier

detention order, and release him under house arrest to prevent the manifest injustice of a

virtually-indefinite pretrial confinement at D.C. jail.

A.     New Evidence Conclusively Contradicts the Chavez Affidavit
       on Which Probable Cause for Arrest and the Indictment are Based

As the Court is aware, the Affidavit of DEA Agent Eduardo Chavez served as the

basis for probable cause for Mr. Gon's arrest, and, indeed, for the Indictment itself.

Agent Chavez concludes in that Affidavit that:

> . . . it is clear that YE GON and UNIMED intentionally imported and
> manufactured pseudoephedrine/ephedrine for illegal purposes due to the fact that
> 1) UNIMED did not have the proper authority to import, export, distribute, or
> possess any such product and 2) no legitimate pharmaceutical manufacturer
> would risk criminal liability in purchasing such products from UNIMED.

Chavez Aff. Para. 12 (Ex. 4 hereto).   Both of these propositions are demonstrably false,

as shown by the following three, recently-translated documents – each of which is flatly

inconsistent with the Government's portrayal of Mr. Gon as an international drug lord.

1.     Mr. Gon's June 7, 2004 Letter:  Exhibit 1 hereto is a formal letter from

Mr. Gon to Mexican authorities explaining in detail, *inter alia*, (a) the procedures by

which UNIMED imported pseudoephedrine sulfate from Chifeng Arker Pharmaceutical

Technology Co., Ltd. ("Chifeng Arker"), the *Chinese Government-owned* pharmaceutical

export company;  (b) that "[t]he legality of importing the PRIME MATERIAL

PSEUDOEPHEDRINE SULFATE remains indisputably accredited and is duly validated

by the entry of this same material into MEXICO CITY, FEDERAL DISTRICT"; (c) that

Unimed had imported, with permit, "440 bags" of pseudeophedrine sulfate, weighing

"12,524,000 kgs," in April 2004; (d) that Unimed had imported the pseudoephedrine

sulfate as an agent for its *customer*, "the laboratory LIOMONT," which "IS PLANNING

TO MANUFACTURE MEDICATIONS WHOSE PRIMARY SUBSTANCE IS

PSEUDOEPHEDRINE SULFATE"; and (e) that "[u]pon performing the corresponding

inspection and labeling, we became aware that five bags, with airway bill M 125-

4

55113380, were missing, which I assume (without affirming), were illicitly removed from the [Mexican] Customs warehouses." (Ex. 1.)

The letter contradicts both prongs of the Chavez Affidavit quoted above – that Unimed could not legally import pseudoephedrine, and that "no legitimate pharmaceutical manufacturer would risk criminal liability in purchasing such products from UNIMED."   Mr. Gon's exhaustive recitation of import/permit procedures, acknowledgement of an import discrepancy, and stated concern about pseudoephedrine disappearance are simply irreconcilable with the Government's portrayal of him as an international methamphetamine conspirator.

2.     The March 2006 COFEPRIS Audit:  Exhibit 2 hereto is an accurate translation of an exhaustive March 6, 2006 audit of the Unimed Pharm Chem (warehouse) facility conducted by COFEPRIS.[2]  Not only does the audit establish that Unimed was authorize to handle "pseudoephedrine sulfate and hydrochlorate," but it also confirms beyond question the existence of the Unimed log books (which defense counsel have been requesting since this case began, yet which remain unproduced).

The stated objective of the audit was:

> To inspect and obtain a) legal documentation of the establishment and its clients, such as its list of clients, b) invoices for purchases and sales of medications that are or contain narcotics and psychotropics, including those that contain pseudoephedrine, c) normalized operating procedure (PNO), specifically, to inspect and review the part corresponding to the delivery of controlled medications and, at random, obtain their proofs of delivery, d) to <u>review the log</u>

_____

[2] The warehouse ("Unimed Pharm Chem") audited by COFEPRIS was the only Unimed facility in operation; the new Unimed factory was still in the process of being built when the raid took place in March 2007.   The new factory, located in Toluca next to the Marriott on the highway to the airport, is depicted in the visual renderings and photographs contained in Exhibit 4 hereto.  Here again, it is impossible to reconcile the state-of-the-art pharmaceutical facility depicted in the pages of Exhibit 4 with the Government's characterization of Unimed as a "front" for the meth trade.

book and e) to take stock of the balance of controlled medications including those containing pseudoephedrine.

Ex. 2 at 2 (emph. added)).   The audit found Unimed to be "in full compliance" –

meriting the highest grade of "2" – on every issue, including specifically:

- "The establishment has signs indicating its purpose" (refuting the Government's characterization of the warehouse as an "unmarked building");

- "The PNO [standard operating procedures] includes specific measures to guarantee the commercialization and delivery of medications containing narcotics and psychotropics, including those that contain pseudoephedrine, to accredited clients such as pharmacies and drugstores authorized to supply these type of medications to the public";

- "They have log books for the handling of medications" (emph. added);

- "The log books are found to be:
    a.    filed
    b.    authorized
    c.    updated
    d.    correctly filled-out in ink
    e.    signed by the health compliance manager";

- "The original text of the log books for medications and/or controlled primary materials is free of strikeouts and erasures/alterations"; and

- "The controlled products are accompanied by invoices of acquisition."

(Ex. 2.)

The COFEPRIS audit goes on to note that between February 23, 2005 and March

6, 2006, Unimed had not imported any additional pseudoephedrine/ephedrine, but that

Unimed maintained an inventory (from February 2005) of 9,000 kg. of pseudoephedrine

hydrochlorate, and 806.01 kg. of pseudoephedrine sulfate.  (Ex. 2 at 8.)   That this

inventory was audited and approved by COFEPRIS contradicts the Chavez Affidavit (at

3, Para. 11: ". . . after 2005, UNIMED PHARMACEUTICAL did not have any authority

to . . . possess any pseudoephedrine or ephedrine related material.").

6

3.    The July 2006 COFEPRIS Audit:  Three months later, COFEPRIS audited Unimed again, with the same results (this audit is attached as Ex. 3 hereto).  Unimed again received the highest grade of "full compliance" in every category, including its maintenance of the closely-scrutinized log book recording all controlled substance transactions.  In taking stock of the pseudoephedrine inventory, the July 2006 Audit noted that Unimed continued to hold the same quantities of pseudoephedrine sulfate (806 kg) and pseudoephedrine hydrochlorate (9,000 kgs.) found in the March 2006 Audit.  (*see* Ex. 3 at 8).   In addition, the July 2006 Audit recited, under "Additional Comments," a list of the *permits* Unimed had obtained for its 9,000 kg inventory of pseudoephedrine hydrochlorate:

> Attached are 5 original permits for acquisition of chemical precursors (attachments)- No. 009/06 dated April 19, 2006 for 2660 kg; 012/06 dated April 21, 2006 for 3,000 kg; 013/06 dated April 21, 2006 for 1,000 kg; 017/06 dated May 23, 2006 for 2040 kg; 021/06 dated April 19, 2006 for 300 kg [9,000 total]. All the permits are for acquisition of pseudoephedrine hydrochlorate.  Likewise attached are 3 photocopies of delivery notes with their respective invoices (attachment 6), previously selected as receipts/proofs of delivery of pseudoephedrine hydrochlorate.

(Ex. 3 at 7.)

Throughout this case, the defense has protested that Mr. Gon's pharmaceutical company was authorized by the Mexican government to import and sell the very quantities of  pseudoephedrine/ephedrine that formed the basis for this prosecution.  The defense has also represented repeatedly that the COFEPRIS-mandated log books will show in precise detail each controlled substance transaction that Unimed engaged in. The foregoing evidence corroborates the defense at every turn, refuting the Government's conclusory assumptions reflected in the Chavez Affidavit, and seriously undermining the validity of this prosecution.  Most importantly for present purposes, this evidence exposes

the weakness of the Government's case, tipping the "weight of the evidence" factor decisively in Mr. Gon's favor under the Bail Reform Act analysis.  The Government's portrayal of Mr. Gon as a kingpin in the meth trade is a fiction that this new evidence further serves to expose.  Far from representing a flight risk or a danger to the community, this businessman has every reason to look forward to trial in this case to re-establish his good name.

      B.      The FDA-Certified Chinese Exporter Chifeng Arker, From Which Unimed Imported its Pseudoephedrine and Other Chemicals, Is An Arm of <u>the Chinese Government That Did Not Mislabel Its Shipments</u>

The Chavez Affidavit on which this prosecution rests is also demonstrably wrong in alleging that other chemicals Unimed imported from China in 2005 and 2006 were "mislabel[ed] shipments" from which Mr. Gon intended to "manufactur[e] pseudoephedrine/ ephedrine."  Chavez Aff. Paras. 6-7, 11.  Chifeng Arker, the company from which Unimed imported all of its pharmaceuticals (including raw material chemicals) is owned and operated by the Chinese Government.   Chifeng Arker is also, importantly, an  FDA-certified facility, which is scrupulously accurate in its labeling and shipping practices.  *See* Aug. 21, 2003 letter (Ex. 5 hereto) from FDA Compliance Officer, Foreign Inspection Team, to Chifeng Arker General Manager; Photographs of FDA Inspection (Ex. 6 hereto).   In or around March 2007, Chifeng Arker was visited by U.S. DEA agents in connection with this case, which resulted in no evidence or accusation of any wrongdoing – by mislabeling or otherwise.

As explained at the December 20, 2007 hearing, moreover, the 2005-06 multi-ton shipments in question were chemicals that Mr. Gon intended to use *not* in manufacturing pseudoephedrine, but in manufacturing phenylephrine – the new decongestant to which

the entire U.S. market turned in 2005 (when tight pseudoephedrine controls led to

restrictions in its over-the-counter sale).   As Mr. Gon accurately predicted, the U.S.

would prove to be gigantic market for this new decongestant, which is why he imported

many tons of the raw material chemicals from which to manufacture it.   Those chemicals

were at the Unimed warehouse at the time of the March 2007 raid, because the new

Unimed factory (depicted in Ex. 4), at which the conversion to phenylephrine would take

place, was not yet up and running.  The proposition that Mr. Gon intended to use his new,

high-profile, state-of-the art facility (next to the Toluca Marriott) for the clandestine

manufacturing of pseudophedrine simply makes no sense – any more than does the

suggestion that the Chinese government would openly mislabel chemical shipments.

## II.     PLACING MR. GON IN HOUSE ARREST WOULD NOT JEOPARDIZE THIS COURT'S CONTINUING JURISDICTION

### A.     The Threat of Deportation Proceedings Does Not Justify Mr. Gon's Continued Detention at D.C. Jail

At the December 20, 2007, hearing, the Government apparently gave the Court

the impression that releasing Mr. Gon under any conditions from D.C. jail – including

house arrest – would trigger his being "picked up" by Immigration authorities, followed

by his deportation, and thereby preventing (or interrupting) the resolution of this

prosecution.[3]   The Court found, accordingly, that "[i]f indeed there is an ICE detainer, if

I were to release him he wouldn't be released."  Dec. 20, 2007 Tr. at 77.

---

[3] At the December 20, 2007 hearing, the Government stated (Tr. at 27).:

> MS. DIXON:  . . . There is an ICE detainer in place, an immigration detainer, so if he were released they get to pick him up.  He's [sic] visa's been revoked.
> THE COURT:  They get to pick him and deport him to where, Mexico?
> MS. DIXON:  Well, your Honor, Mexico or China.  That would be a decision for them to determine.

Mr. Gon respectfully requests that the Court's ruling continuing Mr. Gon's detention be reconsidered, because the Government's argument is false – that an ICE detainer would trigger Mr. Gon's detention by INS during the pendency of this case, even if he were placed under what amounts to house arrest with electronic monitoring.  As the court observed in United States v. Buscemi, 2004 U.S. Dist. LEXIS 27134, **28-29 (W.D.N.Y. 2004):

> [W]here a detainer lodged by the INS merely requests the prison officials to notify the INS of the defendant's impending release or transfer and expresses only the INS's intention to make a determination as to whether the defendant is subject to removal from the United States, but the INS has not actually commenced deportation proceedings with regard to the defendant, the detainer is insufficient to place the defendant within INS custody.

In fact, it is "the clear majority view that an INS detainer constitutes (1) a notice that future INS custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction, and (2) a request for prior notice regarding the termination of that confinement, and thus does not result in present confinement by the INS."  Roldan v. Racette, 984 F.2d 85, 88 (2d Cir. 1993).  The D.C. Circuit employed a similar view in the pre-trial context and reversed an order of detention without bail in United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996) ("The fact that a detainer has been lodged does not mean appellant [defendant] necessarily will be taken into custody.").

As Roldan shows, even if deportation proceedings were to be during the pendency of this case, Immigration authorities would no more be at liberty to "pick up" Mr. Gon if he were under house arrest than they would be to remove him from D.C. jail.   Mr. Gon would remain under the jurisdiction (and custody) of this Court under either circumstance.

B.     The Threat of Extradition Does Not Support Mr. Gon's Continued
       Confinement at D.C. Jail

While the Government stated in an earlier filing that "[t]he United States has

received a request from the Government of Mexico for the defendant's provisional arrest

pending extradition,"[4] at the December 20 hearing – just days later – the Government

conceded that "Mexico is prepared to file its provisional arrest warrant in this case."

(Dec. 20, 2008 Tr. at 31.)   It has not done so, presumably, because this Court's

jurisdiction over Mr. Gon continues throughout this prosecution – the salient

"practicality" referenced by the Government at the December 20 hearing as to why

extradition proceedings have not been initiated.[5]

Although the Government represented that the threat of extradition alone

warranted Mr. Gon's ongoing pretrial detention at D.C. jail, (*id.*), the Government

provided no authority for the proposition that this Court must detain Mr. Gon simply

because Mexico ***may*** seek extradition.  Indeed, the law is to the contrary.  In Wright v.

Henkel, 190 U.S. 40 (1903) – a case previously cited by the Government for the

proposition that pending extradition requires the Court to detain the defendant – the court

---

[4] Gov't Opp. To Renewed Motion for Reconsideration, at 11.

[5] The December 20, 2007 hearing transcript reflects the following (at 27):

> THE COURT:  Has Mexico filed a detainer?
> MS. DIXON:  Your Honor –
> THE COURT:  Have they put up some sort of detainer?
> MS. DIXON:  They stand ready to file a detainer.  We have representatives today
> in the courtroom, I've seen on the detainer, it's ready to go, but they just haven't
> filed it because of the practicalities of their filing their proceeding while we're in
> the middle of our proceeding.

(Emphasis added).

found this obligation to exist only after the nation seeking extradition had gone through the formal process set out in the treaty. Id. at 62 ("The demanding government, *when it has done all that the treaty and the law require it to do*, is entitled to delivery of the accused) (emphasis added). Since Mexico has not even made an official extradition request, there could not be a more tenuous and unfair basis for Mr. Gon's continuing detention at D.C. Jail.[6]

Even if a formal extradition request were filed, moreover, this Court would not be obligated to keep him behind bars as he awaits trial. In United States v. Ramnath, 2008 U.S. Dist. LEXIS 2251 (D. Tex. 2008), the court held that release on bail can be appropriate even in extradition proceedings, when "a special circumstance or a combination of factors that, in the aggregate, constitute a special circumstance that creates a compelling case for release on bail." Id. at **7-8. "[T]he determination of when such conditions exist is left to the sound discretion of federal trial judges." Id. at *8.

This case would readily qualify as "special circumstances" warranting removing Mr. Gon to house arrest (with electronic monitoring) even if an extradition request were to be filed. The more evidence the defense is able to uncover through translation of the tens of thousands of documents the Government has produced, the clearer it becomes that Mr. Gon is the furthest thing from an international drug lord. There is simply no evidence that he was involved in the methamphetamine trade in any way, much less the importation of methamphetamine into the United States. He should be removed from

---

[6] Wright v. Henkel is also inapposite ecause it was decided long before the Bail Reform Act was enacted, and at a time (1903) when electronic monitoring was not available (the only alternative to jail was release on bail). It thus does not inform the analysis whether house arrest with electronic monitoring constitute a "combination of conditions" under the Bail Reform Act that would reasonably assure Mr. Gon's continuing appearance.

D.C. jail not only to put an end to this pretrial punishment, but also to facilitate his

participation in his defense.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Mr. Gon's previous

Renewed Motion for Reconsideration on the detention issue, Mr. Gon respectfully

requests that the Court reconsider its ruling of December 20, 2007, and release Mr. Gon

on the condition of house arrest, with release to the custodian previously proposed and

electric monitoring.

Respectfully Submitted,

/s/  Martin F. McMahon, Esq.
Martin McMahon, Esq., D.C. Bar # 196642
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com

*Counsel for Defendant Ye Gon*

*Of counsel:*

James M. Ludwig, Esq., D.C. Bar # 427884
1150 Connecticut Ave. N.W.
Suite 900
Washington, D.C.  20036
(202) 862-4343

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on this 10th day of March, 2008, I electronically filed the

foregoing Memorandum of Points and Authorities in Support of the Renewed Motion for

Reconsideration of the Order of Detention with the Clerk of Court using the CM/ECF

system, which will send a notification of such filing (NEF) to the following:

Paul Laymon, Esq.
U.S. Dept. of Justice
1400 New York Avenue, NW
Bond Bldg. 8th Fl
Washington, DC 20530

                    <u>/s/  Christine Hilgeman</u>

QuickTime™ and a
TIFF (LZW) decompressor
are needed to see this picture.

**Bates no. NDDS004317**

**PRELIMINARY INVESTIGATION**
**PGR/SIEDO/VEIDCS/138/2004**

**P.G.R**
**S.I.E.D.O.**
**Special Unit for Investigation**
**of Crimes Against Health**

*with attachment* (handwriting & signature)

**Attention**
**Señor Licenciado Ivan Aaron Zeferin Hernandez**
**Present**

    **Zhenli Ye**, as representative and sole administrator of the company designated UNIMED PHARM CHEM MEXICO, S.A. DE C.V., a legal personality accredited under the terms of registry number 30,670, BOOK SIX NINETY-THREE OF THE YEAR 1997, UNDERSIGNED IN THE PRESENCE OF PUBLIC NOTARY NUMBER NINETY-SIX OF THE FEDERAL DISTRICT, LICENCIADO MAURICIO MARTINEZ RIVERA, the same person who added a copy of the petition to the present document, I appear before you, with due respect, to present:

    That by means of the present document, I come to explain the relationship between each and every procedure that should be carried out upon purchasing psychotropics, as much before the Ministry of Health and Assistance as before the C. Agent of the Federal Office of the Public Prosecutor.

**PHASE ONE (SALE OF THE PRIMARY MATERIAL)**

**A)**  First, the undersigned seeks out potential clients for the merchandise that he intends to import.
**B)**  The laboratories that produce medication from the imported prime material are then located in the dictionary of pharmaceutical specialties P.L.M.
**C)**  An appointment is made with the client, and one verifies that they possess the permits necessary for the manufacture of medications intended for market consumption.
**D)**  One makes the corresponding bid – in the case at hand, to LIOMONT LABORATORIES

**PHASE TWO (IMPORTATION OF THE PRIMARY MATERIAL)**

    **1)** A request is made to the company called "CHIFENG ARKER PHARMACEUTICAL TECHNOLOGY CO., LTD."

**Bates no. NDDS004318**

    **2)** Prior to this, the company I represent must have an import permit granted by the MINISTRY OF HEALTH AND ASISSTANCE
    **3)** The government of CHINA verifies the information in MEXICO, through the Ministry of Health.
    **4)** The government of CHINA authorizes the importation of the prime material to MEXICO.
    **5)** Once the aforementioned has occurred, the Mexican embassy in China verifies the information with the intent to free the prime material. It verifies the quantity, price, country of origin, as well as the airline in which it must be transported to the receiving country – Mexico.

EX 1

The legality of importing the PRIME MATERIAL PSEUDOEPHEDRINE SULFATE remains indisputably accredited and is duly validated by the entry of this same material into MEXICO CITY, FEDERAL DISTRICT.

**PHASE THREE (RELEASE OF PRIME MATERIAL FROM THE CUSTOMS HOUSE OF MEXICO CITY, FEDERAL DISTRICT)**

a) Through information from the telephone hotline of British Airways, we are notified of the arrival of our merchandise on the APRIL FOURTEENTH, 2004.

b) On April 20th, 2004, the customs agent Sonia Prieto Flores is notified of the arrival of the prime material, thus revalidating the prime material, and on the 23rd of the same month and year, the request for labeling of the merchandise is made.

c) On April 27th of the same year, the prime material is inspected and labeled. On behalf of the enterprise I represent and on behalf of the customs agency SONIA PRIETO FLORES. ASSERTING THAT I HAD PHYSICAL AND VISUAL CONTACT WITH THE MERCHANDISE IN THAT MOMENT.

d) Once the prime material is labeled, the documentation requested by the FEDERAL OFFICE OF THE PUBLIC PROSECUTOR and THE MINISTRY OF HEALTH AND ASSISTANCE (ATTACHMENTS 1 and 2) is presented.

e) The originals are compared to the copies, canceling the IMPORT permit.

Bates no. NDDS004319

f) With the approval of the MINISTRY OF HEALTH AND ASSISTANCE, one goes to the FEDERAL OFFICE OF THE PUBLIC PROSECUTOR, to provide the required documentation, and they inform us when the prime material will be released, which may be the same day or the day following its presentation.

g) With the corresponding authorization, the system is crossed, and the physical inspection of the prime material proceeds, as much by the FEDERAL OFFICE OF THE PUBLIC PROSECUTOR AND MINISTRY OF HEALTH AND ASSISTANCE, AS BY THE CUSTOMS AGENCY.

h) Samples are taken from each batch of the prime material imported, the respective reports are produced, and the second system is crossed.

i) In this manner, the material is released from the CUSTOMS AGENCY OF MEXICO CITY, FEDERAL DISTRICT.

Exactly as indicated in the above lines, the company I represent has access to the imported prime material until April 27th, 2004, date on which the inspection of this SAME MATERIAL is authorized.

PHASE FOUR (SALE AND DELIVERY OF PRIME MATERIAL)

1.1 Once the material arrives at the warehouses of the company I represent, UNIMED PHARM CHEM MEXICO, S.A. DE C.V. located at AVENIDA MORELOS NO. 24, COLONIA CENTRO, DELEGACION CUAUHTEMOC. C.P. 06040, FEDERAL DISTRICT, each batch is sampled and taken for analysis to a third-party laboratory, authorized by the MINISTRY OF HEALTH AND ASSISTANCE.

1.2 The third-party laboratory indicates the delivery date of the results, delivering them and the certification of each batch to the MINISTRY OF HEALTH AND ASSISTANCE.

1.3 Once that the Ministry of Health and Assistance approves the analysis of the prime material, one proceeds to its sale.

IMPORTANT FACTS

Bates no. NDDS004320

I bring to your attention the following facts.

COUNTRY OF ORIGIN OF THE PRIME MATERIAL          CHINA
EXPORTING COMPANY          "CHIFENG ARKER PHARMACEUTICAL TECHNOLOGY CO., LTD."
DATE OF INVOICING          April 8, 2004
INVOICE NUMBER          04/04RKUPC001C
REQUEST number          3102-4000454
Imported substance is PSEUDOEPHEDRINE SULFATE
Quantity is 440 bags, weighing 12,524,000 kgs.

Cosigner is          UNIMED PHARM CHEM MEXICO, S.A. DE C.V.
TRANSPORTING AIRLINE          British Airways
AIR WAYBILL MASTER number          125-5511 3380
Date of lading          APRIL 9, 2004
Entry file          243140441
Date of arrival in MEXICO CITY, FEDERAL DISTRICT          APRIL 14, 2004

      On April 14, 2004, 400 bags of PSEUDOEPHEDRINE SULFATE arrived in Mexico City, Federal District, from China, the company that I represent being informed of the date on which the aforementioned merchandise arrived. Starting from that day, we began the processes necessary for the release of the material, attaching the list of documentation required by the Ministry of Health and Assistance, as well as the Federal Office of the Public Prosecutor. In order to collect the merchandise, on April 23rd of the present year, the Customs Agent SONIA PRIETO FLORES requested that we be granted access to label the 440 bags belonging to the principal, since, as a security precaution, said substance arrives without a visible label, for its own protection.

      Upon performing the corresponding inspection and labeling, we became aware that five bags, with airway bill M 125-55113380, were missing, which I assume (without affirming), were illicitly removed from the Customs warehouses. Because of this, I am informed that on May 3, 2004, Preliminary Investigation no. VC-3T3/1434/04-05 commenced, in which the responsible suspects declared that they received the 440 bags that arrived in the shipment.

---

Bates no. NDDS004320

      **Bringing to your attention and affirming UNDER OATH, that the Company I represent, through the LICENCIADA SANDRA RODEA REYES, had access to the merchandise on April 27 of the present year, not knowing  (because the principal was not involved), how the merchandise was managed in the Warehouse from the date of arrival (April 14, 2004) to April 27th of the same month and year, that we – as much the Customs Agency as LICENCIADA SANDRA RODEA REYES – noticed the absence of the aforementioned merchandise.**

      Because of this, I assure in irrefutable manner that my principal does not know who could have stolen the aforementioned substance, since there was no access to it until April 27 of the present year. As I mentioned earlier, we had to complete each and every process required by the dependent Government Agencies of the Government of the Federal District, for the importation of the substance PSEUDOEPHEDRINE SULFATE, which is still held in the Customs warehouses.

      <u>Due to the above, and that my principal has not been legally implicated in the offense committed against me, I very sincerely request that the 435 bags of pseudoephedrine sulfate held in the Customs Agency warehouses be deposited with the Company I represent, since, as has been duly accredited, my principal is the legitimate owner of the material, having acquired it through legitimate purchase and sale, which is properly demonstrated in the accompanying invoice.</u>

      I bring to your attention that there are serious implications for the delay in the delivery of the PRIME MATERIAL, that is currently the property of my principal. In the first place, there is a penalty for non-compliance of delivery of the merchandise. Second, upon not delivering the merchandise on time, the order must be cancelled, as there is no other buyer, which causes my principal serious economic problems.

EX 1

Given the cascade of information that I've cited to present the truth of events, my principal does not have any legal implication whatsoever. Because of not having any contact with the prime material until April 27th of the present year, a situation which has been properly documented, and as a result, reliably accredited.

**Bates no. NDDS004322**

The Preliminary Investigation number VC 3T3/1434/04-05, that commenced on May 3, 2004 for consummated aggravated robbery, affirms that the same warehouse personnel admit to having received all of the merchandise, and do not know at what moment it was stolen, since, like I mentioned, I had access to the material until April 27, 2004.

It is the case, that by not permitting me to release the prime material, it has proven impossible to complete phases three and four of the cited procedure. Reiterating my petition on this particular, given that the principal is the victim of the crime committed within the warehouse of the Customs Agency, which has caused me serious economic and commercial problems, first because of the misplacement or theft of the prime material, and currently because of its retention, since the aforementioned merchandise has reached its expiration date, thus restricting its ability to be sold. In this manner, the laboratory LIOMONT, IS PLANNING TO MANUFACTURE MEDICATIONS WHOSE PRIMARY SUBSTANCE IS PSEUDOEPHEDRINE SULFATE. Due to the permits that much be requested by both the company I represent, as well as the purchasing laboratory, upon not completing the sale of the product, we open ourselves up to penalization.

On the other hand, I also request that the established in Article 29 of the CUSTOMS LAW cease to be applied to the case at hand, since it states "THE MERCHANDISE DEPOSITED WITH THE CUSTOMS AGENCY SHALL BE TURNED OVER TO THE FEDERAL TAX AUTHORITIES IN THE FOLLOWING CASES"

I . . .
II – TACITLY, WHEN THEY ARE NOT RELEASED WITHIN THE TIME PERIOD INDICATED AS FOLLOWS

    a)   . . .
    b)   . . .
    **c)   TWO MONTHS IN THE OTHER CASES**

The prime material imported by my principal arrived at the Customs Agency of MEXICO CITY, FEDERAL DISTRICT on APRIL 14, 2004, **in other words <u>54 days ago</u>**, time that has passed without receiving any response from the authorities and to the detriment of the holdings of the company I represent.

**Bates no. NDDS004323**

I thus request the <u>**IMMEDIATE**</u> deposit of the 435 bags of prime material called PSEUDOEPHEDRINE SULFATE, being legal and in accordance with the law, and given that the events that occurred in the warehouses of the Customs Agency of the Mexico City airport, Federal District, are unrelated to my principal - the victim in the current proceedings. Before the corresponding authorities, <u>for this and for the purpose of not causing any more damage to my principal, I once again repeat my request</u>, supplying the following information:

NAME OF THE DEPOSITARY -   UNIMED PHARM CHEM MEXICO, S.A. DE C.V.
LEGAL REPRESENTATIVE -     ZHENLI YE.
RESIDENCE OF THE DEPOSITARY -     AVENIDA MORELOS 24 "A", COLONIA CENTRO, DELEGACION CUAHUTEMOC, C.P. 06040, FEDERAL DISTRICT.

In addition to the aforementioned, I have a well-founded fear that the prime material PSEUDOEPHEDRINE SULFATE may continue disappearing. For security reasons and in order to keep my petition in accordance with the law, I solicit the release of the same material and its deposit with the company I represent.

EX 1

Because of the aforementioned;
I sincerely request;

**EXCLUSIVELY -** Holding as true the declarations found in the body of the present petition, and soliciting that the substance pseudoephedrine sulfate, property of the company I represent, UNIMED PHARM CHEM MEXICO, S.A. DE C.V., be placed in the custody of my principal, all this conducted through its legal representative, Mr. ZHENLI YE, going through the corresponding legal channels.


Mexico, Federal District, June 7, 2004

(signature)
---------------------------

ZHENLI YE

EX 1

(seal)
United States of Mexico
Ministry of Health

Bates no. NDDS005879

**Federal Commission for Protection
Against Health Risks
Health Authorization Commission**

| | |
|---|---|
| **Communication No.** | **06-CF-09-0095-HA** |
| **Entry No.** | **N/A** |
| **Proceeding No.** | **14S.15.4** |

**Monterrey No. 33, 6th floor, Col. Roma, C.P. 06700,
Delegación Cuauhtémoc, Mexico, Federal District**

**Regarding: Order for Health Inspection Visit (Federal)**

Mexico, Federal District, on **06 March 2006** (stamp)

To the C. Owner, Manager, Legal Representative, Caretaker, or Occupant of:

Name of Owner or Company:        **Unimed Pharm Chem Mexico, S.A. de C.V.**

Name of the Establishment:        **Unimed Pharm Chem Mexico, S.A. de C.V.**

Type of Enterprise:        **Warehouse for deposit and distribution of primary materials for the
production of medications or biological products for human use**

Location:        **Morelos No. 24, Col. Centro, Deleg. Cuauhtémoc, C.P. 06040, Mexico, D.F.**

Based on Article 4, paragraph 3, Article 14, and Article 16 of the Political Constitution of the United States of Mexico; Article 2, section 1, Articles 26 and 39 of the Fundamental Law of Federal Public Administration; Articles 1, 3, 4, section III, Article 13, subheading A, sections II, IX, and X, Bis Article 194, Articles 234, 235, 244, 245, 247, 255, 258, 283, 289, 393, 395 to 401 Bis, Article 402 to 404 and Article 431 of the General Health Code; Articles 1 and 3, section IV, and Article 18, section I of the Federal Law for the Control of Chemical Precursors, Essential Chemical Products, and Machinery for the Manufacture of Capsules, Tablets, and/or Pills; Articles 1, 6, 218, and 225 of the Health Supplies Regulation; Article 2, subsection C, paragraph X, and Article 36 of the Interior Regulations of the Ministry of Health; Articles 1, 2 sections II and XI, Article 3, section I, subsection j, Article 4, section II, subsection c, Article 11, section XI, Article 14, section VI, in relation to Article 15, section VI of the Regulations of the Federal Commission for Protection Against Health Risks, and considering that health legislation is for the public order and common good, the present order for a health inspection visit is here dispatched, to be conducted in the establishment cited in the label, to be conducted by the C. Inspector(s)

| | | |
|---|---|---|
| photo | photo | photo |
| **Q.F.B. Carlos Rodríguez Valtierra** | **I.Q.I. Alfonso Rubio Ruiz** | **Q.F.B. Virgilio Miranda Rojas** |

**Who will conduct the visit jointly or individually**

EX. 2

**The visit has the following objective and scope:**    To inspect and obtain **a)** legal documentation of the establishment and its clients, such as its list of clients, **b)** invoices for purchases and sales of medications that are or contain narcotics and psychotropics, including those that contain pseudoephedrine, **c)** normalized operating procedure (PNO), specifically, to inspect and obtain the part corresponding to the delivery of controlled medications and, at random, obtain their proofs of delivery; **d)** to review the log book and **e)** to take stock of the balance of controlled medications including those that contain pseudoephedrine.

In the case of informing you of violations of the law, out of the necessity to protect health, and avoid the dangers and harm to health that may be caused by violation of the precepts established in the General Health Code and the current Health Regulations, they will remain authorized, pending instructions from your superior, to apply and execute the preventive security measures referred to in Articles 402 to 415 of the General Health Code.

In accordance with Article 400 of the General Health Code, the owners, managers, caretakers, or occupants of the establishments subject to inspection are obligated to permit access and surrender facilities and reports to the cited inspectors, so that they may exercise their function.

In like manner, the owners, managers, caretakers, or occupants of the establishments subject to verification are warned that, in the case the inspector fails to present valid identification, if the written order does not bear an official signature from the responsible authority, or if personnel not mentioned in this document present themselves at the establishment, access should not be granted.

**Nota:**    For any clarification, please contact telephone number **50 80 53 36**


**Sincerely**

**Health Authorization Commissioner**

(signature)

Dr. Miguel Gerardo Lombera González

(seal)
United States of Mexico
Ministry of Health
COFEPRIS

EX. 2

Bates no. NDDS005880

Record No. <u>06-CF-09-0095-HA</u>

# Ministry of Health
## Federal Commission for Protection Against Health Risks (COFEPRIS)
## Health Authorization Commission

Record of health inspection visit for:      warehouse for storage and distribution of medications or biological produces for human consumption / warehouse for storage and distribution of raw materials (only chemical precursors)

### Category of Medication

| | |
|---|---|
| Narcotics | ( ) |
| Psychotropics | ( √ ) |
| Chemical precursor | ( ) |

In the city of <u>Mexico, Federal District</u> at <u>10:30</u> of the <u>6th of March</u> of <u>2006</u> the undersigned(s) C. <u>Q.F.B. Carlos Rodríguez Valtierra and Q.F.B. Virgilio Miranda Rojas</u> health inspector(s) assigned to this health authorization commission, identify themselves by credential number(s) <u>CAS/EPQ/020106/002 and CAS/EPQ/020106/013</u> valid until <u>April 3, 2006</u>, processed by the federal commission for protection against health risks, the same that presents itself to the interested party, based on visit order number <u>06-CE-09-0095-HA</u> dated <u>March 6, 2006</u>. I presented myself at the establishment named <u>Unimed Pharm Chem Mexico S.A. de C.V.</u> located at Calle <u>Morelos</u> No. <u>24,</u> Colonia <u>Centro</u>, <u>Mexico City, Federal District</u>, delegation or municipality <u>Cuauhtémoc</u>, postal code <u>06040,</u> telephone number <u>55-18-81-89</u>  property of C. <u>Unimed Pharm Chem Mexico S.A. de C.V.</u>, being attended by C. <u>Q.F.B. Bernardo Mercado Jiménez</u>, who identifies himself by <u>credential IFE no. 131503758931</u> in his function as health compliance manager

---

Bates no. NDDS005881

Record No. <u>06-CF-09-0095-HA</u>

who is informed that based on Articles 4, 14, and 16 of the Constitution, Article 39, sections XV, XVII, and XXI of the fundamental law of federal public administration; Article 1 and 2, section X, Articles 36 and 37 of the internal regulations of the Ministry of Health; Articles 1 and 3, sections XXII, XXIV and XXVIII, Article 13 subsection A, paragraph II, Article 17 until Sections II and V, Article 194, last paragraph, Article 194 to 197, Article 257, sections V, VI, and VII, Articles 258, 393, 395, 396, 397, 398, 399, 400, 401, and 401 until the General Health Law; Article 14 section VI of the regulations of the Federal Commission for Protection Against Health Risks; Articles 1 and 3, section VI, and Article 18 section I of the Federal Law for the Control of Chemical Precursors, Essential Chemical Products, and Machinery to Manufacture Capsules, Tablets, and/or Pills; And in compliance with the cited order, the health inspection visit is thus carried out according to the terms outlined in Article 401 of the General Health Law in relation to the established in Articles 62 and 69 of the Federal Law of Administrative Procedure, with the objective of: <u>Inspecting and obtaining 21 legal documentations of establishment and its clients, as well as its client list. b) Invoices of the purchase and sale of medications that are or contain narcotics and psychotropics including those containing pseudoephedrine. c) standard operating procedures (PNO), specifically review and obtain the part corresponding to the delivery of controlled medications and obtain, at random, delivery receipts of these. d) review control log and e) determine the balance of controlled medications including those containing pseudoephedrine.</u> presenting the original order respective to C. <u>Q.F.I. Bernardo Mercado Jiménez</u> with whom the proceeding is performed, who signs as receipt, leaving en your power a simple copy of the same, exercising his right to name two attending witnesses, who should be present during the entire visit, designating for this purpose C. <u>Estela Ramírez</u>

          EX. 2

Flores, who identifies herself by <u>credential IFE no. 3633010545430</u> and who declares residence at <u>Calle 17 no. 14,</u> <u>Col. Las Aguilas, C.P. 57900, Nezahualcoyotl, Mexico,</u> and C. <u>Martín Lopez Castillo,</u> who identifies himself by <u>credential IFE no. 194706035332</u> and declares residence at <u>Calle Sabinos No. 40, Col. Santa Anita, C.P. 08300,</u> <u>Iztacalco, D.F.</u> who will testify to what is here established. In the event that no witnesses are designated, they will be named by the authority conducting the inspection visit. Making this circumstance clear in the present record: _____ From the practice of the inspection visit, the following is observed:

Description of activities in the establishment: <u>Warehouse for storage and distribution of raw materials for the</u> <u>manufacture of medications or biological products for human use.</u>

---

**Bates no. NDDS005882**

**Record no. <u>06-CF-09-0095-HA</u>**

**Qualification:**

**2 = in full compliance     1 = in partial compliance     0 = not in compliance     N/A = not applicable**

**Administrative Inspection. Rate in the blank spaces**

| Point | I. Administrative Inspection | Rating |
|---|---|---|
| 1 | Health License No.:        <u>09 006 07 0001</u><br>Date issued:        <u>Nov. 13, 2001</u><br>Type:    <u>Warehouse for storage and distribution of raw materials for the manufacture of medications and biological products for human use.</u> | 2 |
|  | The operations of the establishment correspond to the type of activities authorized | 2 |
| 2 | Notice of functioning No.: (only applies to warehouses for storage and distribution of heliotropine)<br>Entry No. -------------    dated -----------<br>Type of activity: ----------------------------<br>The type of activity corresponds to the functions of the establishment ---------------- | N/A |
| 3 | Responsible party No.:    <u>ARM-035-01</u><br>Name:   <u>Q.F.I. Bernardo Mercado Jimenez</u><br>Entry No.        <u>22AM22-100730</u    dated:    <u>January 22, 2001</u><br>Schedule of Attendance:   <u>Monday through Friday from 8:00-17:00 hrs</u> | 2 |
| 3.1 | The health compliance manager was present during the proceedings | 2 |
| 3.2 | There is an assistant designated by the health compliance manager | N/A |
| 4 | Date of the last health inspection visit made with purpose and authority<br><u>February 23, 2005</u><br>Balance of psychotropic raw materials. Legal documentation<br>Record No.:        <u>05-CF-09-0124-MA</u> |  |
| 5 | Note the Federal Taxpayer Registry no. of the establishment:<br><u>UPC-970324-GPO</u> |  |
| 6 | The establishment has signs indicating its purpose | 2 |
| 7 | It has PNOs (normalized operating procedures) authorized by the health compliance manager, that guarantee the good operative practices of the | 2 |

EX. 2

establishment in relation to the processing of medications containing narcotics
and psychotropics, including those that contain pseudoephedrine

---

**Bates no. NDDS005883**

| Point | I. Administrative Inspection | Rating |
|---|---|---|
| 7.1 | The PNO includes specific measures to guarantee the commercialization and delivery of medications containing narcotics and psychotropics, including those that contain pseudoephedrine, to accredited clients such as pharmacies and drugstores authorized to supply these type of medications to the public | 2 |
| 8 | They possess a valid supplement to the FEUM for establishments dedicated to the sale and provision of medications and other health supplies | 2 |
| 8.1 | Issue No.: <u>1898</u> | |

**Comments**
**(Detail health anomalies noting the section number to which it corresponds)**

| Point | II. Narcotics & Psychotropics | Rating |
|---|---|---|
| 1 | In accordance with Art. 226 of the General Health Law, indicate the groups of medications or raw materials handled: <u>pseudoephedrine sulfate & hydrochlorate</u><br>**Group I (   )      Group II (   )      Group III (   )** | 2 |
| 2 | The reception, registry, storage, handling, and control of medications and/or primary material for narcotics or psychotropics are registered or supervised by the health compliance manager | 2 |
| 3 | They have log books for the handling of medications and/or primary materials | 2 |
| 3.1 | The log books are found to be:<br>a.      filed<br>b.      authorized<br>c.      updated<br>d.      correctly filled-out in ink<br>e.      signed by the health compliance manager | 2<br>2<br>2<br>2<br>2 |
| 4 | The original text of the log books for medications and/or controlled primary materials is free of strikeouts and erasures/alterations | 2 |
| 5 | In the authorized books of medications and/or primary material, the record of purchases-sales-balance is correct and up-to-date | 2 |
| 6 | There is a drawer or safe for the storage of medications and/or primary materials, narcotics or psychotropics | 2 |
| 6.1 | The drawer or safe has a key or security system for the protection of primary material and/or medications, narcotics and psychotropics | 2 |
| 7 | There are no medications or psychotropics outside of the secured area that are available for sale | N/A |

Bates no. NDDS005884

Record No. <u>06-CF-09-0095-HA</u>

| | | |
|---|---|---|
| 8 | The controlled products are accompanied by invoices of acquisition | 2 |
| 8.1 | Number of acquisition invoices attached to the present document: ----------- | |
| 8.2 | The controlled products have sales invoices/receipts | 2 |
| 8.3 | Number of sales invoices attached to the present document: -------------- | |
| 9 | The sale of controlled products is conducted in establishments possessing the health permits accrediting them as pharmacies, shops or drugstores authorized to sell medications that are or contain psychotropic substances or narcotics. In the case of heliotropine in establishments with a Health License or Notice of Operation | N/A |
| 10 | Attach client list ------------ | |

### III. Medications Containing Pseudoephedrine

| | | |
|---|---|---|
| 11 | They possess a registry of medications containing pseudoephedrine | N/A |
| 12 | The medications containing pseudoephedrine are in a secured area | N/A |
| 13 | Attach a list of pseudoephedrine-containing medications for sale | |
| 14 | They possess invoices/receipts of acquisition | N/A |
| 15 | Number of acquisition invoices/receipts attached to the present document: ----------- | N/A |
| 15.1 | Specify the average monthly purchase of medications containing pseudoephedrine ------------------- | |
| 15. 2 | They have sales invoices/receipts | N/A |
| 15.3 | Number of sales invoices/receipts attached to the present document: -------------- | |
| 15.4 | The log: purchases-sales-balance is correct and up-to-date. Indicate the present existence of the medications in the corresponding attached document | N/A |
| 16 | The sale of medications containing pseudoephedrine is conducted in establishments possessing a Health License accrediting them as pharmacies, shops, or drugstores authorized to sell these types of medications | N/A |
| 17 | They've obtained documentation accrediting the legality of their clients before the Ministry of Health | N/A |
| 18 | Attach list of clients ------------ | |

EX. 2

**Comments**
**(Detail health anomalies noting the section number to which it corresponds)**

Points 7, 9, 9.1 and 10 do not apply, because the establishment does not handle medications and has not marketed primary materials, since the last balance to date. Points 11 to 18 do not apply, because they do not market medications containing pseudoephedrine.

---

Bates no. NDDS005885

Record No. <u>06-CF-09-0095-HA</u>

**Additional Comments**

In compliance with the order to conduct an inspection visit No. 06-CF-09-0095-HA dated March 6, 2006. With the purpose and authority indicated in this document, we present valid identifications along with the inspection order. A) Attached is a copy of the Health License and Notice of the Health Compliance Manager. A client list is not attached, because there has been no change since the last balance to date. B) Invoices of the purchase-sale of pseudoephedrine sulfate, pseudoephedrine hydrochlorate, and ephedrine hydrochlorate are not attached, because of none was marketed from (illegible) no balance to date. C) Reviewed copies of the PNO's are attached. D) The dutifully authorized log-book with registry No. 0134, dated January 28, 2002 is reviewed, bringing about the notations made in it. E) The balance of the aforementioned primary materials was calculated from February 23, 2005 to date, without any entries or departures of controlled primary materials. The physical existence was verified as recorded in the corresponding attachment. In the area of security, not being any more acts to mention, the present proceedings are hereby closed. -----------------------

---

Bates no. NDDS005886

Record No. <u>06-CF-09-0095-HA</u>

**IV. Attachments**

| | | |
|---|---|---|
| 1 | Specify number of attachments to this document | 21 attachments |
| 2 | The attached documents were compared with their respective originals | **<u>YES</u>**    NO |

The above was read to C. <u>Q.F.I. Bernardo Mercado Jiménez and Witnesses</u> informing them of their right to declare, according to their right established in Article 401, section IV of the General Health Law. In this manner, they can formulate their observations and offer proofs in relation to the acts contained in the present document, or rather, exercise this right in writing within five working days following the completion of this report, in accordance with Article 68 of the Federal Law of Administrative Procedure, because of which I declare:

<u>I agree with the established in this document, and request that the health authority indicate to me in writing how I can market the physical stock of the controlled primary materials indicated in this document. ---------------------------</u>

(Bernardo Mercado Jiménez's signature)

---

Bates no. NDDS005887

Record No. <u>06-CF-09-0095-HA</u>

<u>Mexico, Federal District</u>    on    <u>March 06, 2006</u>

EX. 2

Being 15:00 hrs, the inspection visit is hereby finished, and not having anything to add, the present document is thus read for verification before the participants, with their full knowledge of the contents of the document and their awareness of the crime that is false declaration before a non-judicial authority (Article 247, first section of the Federal Penal Code), with the participants signing below and at the margin, for all legal effects it may incur, leaving a simple copy of this document with the person who attended the inspection visit.

**Interested Party**

(signature)

**name & signature**

Q.F.I. Bernardo Mercado Jiménez

**Health Inspector(s)**

(signature)

**name & signature**

Q.F.I. Carlos Rodríguez Valtierra
Q.F.I. Virgilio Miranda Rojas

**Witness**

(signature)

**name & signature**

C. Estela Ramírez Flores

**Witness**

(signature)

**name & signature**

C. Martin Lopez Castillo

---

Bates no. NDDS005888

Attachment to Report No. <u>06-CF-09-0095-HA</u>        Page No. <u>1/2</u>

**Balance of Primary Materials**

In terms of the established in the present report, the undersigned(s) health inspector(s), in the presence of the interested party and witnesses proceeded to revise the log book of narcotics and psychotropics, whose existence compared with the balances noted in the book, are recorded below, in the following table:

Date of the previous balance <u>February 23, 2005</u>. Period of the balance conducted <u>February 23, 2005</u> to <u>March 06, 2006</u>.

| Name of narcotic & psychotropic | Import & acquisition permit | Prior existence | Quantities & date acquired | Totals | Exits by weight | Balance | Stock | Difference |
|---|---|---|---|---|---|---|---|---|
| pseudoephedrine hydrochlorate | | 9,000 kg | - 0 - | 9,000 kg | - 0 – | 9,000 kg | 9,000 kg | - 0 - |
| pseudoephedrine sulfate | | 806.010 kg | - 0 – | 806.010 kg | | | | |

8

EX. 2

- 0 –
                        806.010 kg

---

Bates no. NDDS005889

Attachment to Report No. **06-CF-09-0095-HA**        Page No. **2/2**

| Name of narcotic & psychotropic | Import & acquisition permit | Prior existence | Quantities & date acquired | Totals | Exits by weight | Balance | Stock | Difference |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | 806.0 kg | |
| | | | | | | | | 0.01 kg |
| ephedrine hydrochlorate | - 0 – | | | | | | | |
| | | | - 0 – | | | | | |
| | | | | - 0 – | | | | |
| | | | | | - 0 - | - 0 - | - 0 - | - 0 – |

Mexico, Federal District on March 06 of 2006

(signature)                                      (signature)        (signature)
_____              _____

Q.F.I. Bernardo Mercado Jiménez              Q.F.B. Carlos Rodríguez Valtierra
                                             Q.F.B. Virgilio Rojas

**Name & signature of the Interested Party**    **Name(s) & signature(s) of the Health Inspector(s)**


(signature)                                      (signature)
_____              _____

C. Estela Ramírez Flores                     C. Martín López Castillo

**Name & signature of witness**                 **Name & signature of witness**

EX. 2

Bates no. NDDS005931

(seal)
UNITED STATES OF MEXICO
MINISTRY OF HEALTH

| | |
|---|---|
| **FEDERAL COMMISSION FOR PROTECTION AGAINST HEALTH RISKS** | |
| **HEALTH AUTHORIZATION COMMISSION** | |
| Doc. No. **06-CF-0381-GA** | |
| Section | **EXECUTIVE DIRECTORATE FOR REGULATION OF NARCOTICS, PSYCHOTROPICS, AND CHEMICAL SUBSTANCES** |
| Entry No.N/A | |
| Proceeding No. | **14S.15.4** |
| **Monterrey No. 33, 6ᵗʰ floor, Col. Roma, C.P. D6700, Delegación Cuauhtémoc, Mexico, Federal District** | |

REGARDING: **ORDER FOR HEALTH INSPECTION VISIT (FEDERAL)**

Mexico, Federal District – **28 July, 2006** (stamp)

To the C. Owner, Manager, Legal Representative, Caretaker, or Occupant of:

Name of Owner or Company:        **Unimed Pharm Chem Mexico, S.A. de C.V.**

Name of the Establishment:        **Unimed Pharm Chem Mexico, S.A. de C.V.**

Type of Enterprise:        **Warehouse for deposit and distribution of primary materials for the production of medications or biological products for human use**

Location:        **Morelos No. 24, Col. Centro, Deleg. Cuauhtémoc, C.P. 06040, Mexico, D.F.**

Based on Article 4, paragraph 3, Article 14, and Article 16 of the Political Constitution of the United States of Mexico; Article 2, section 1, Articles 26 and 39 of the Fundamental Law of Federal Public Administration; Articles 1, 3, 4, section III, Article 13, subheading A, sections II, IX, and X, Bis Article 194, Articles 234, 235, 244, 245, 247, 255, 258, 283, 289, 393, 395 to 401 Bis, Article 402 to 404 and Article 431 of the General Health Code; Articles 1 and 3, section IV, and Article 18, section I of the Federal Law for the Control of Chemical Precursors, Essential Chemical Products, and Machinery for the Manufacture of Capsules, Tablets, and/or Pills; Articles 1, 6, 218, and 225 of the Health Supplies Regulation; Article 2, subsection C, paragraph X, and Article 36 of the Interior Regulations of the Ministry of Health; Articles 1, 2 sections II and XI, Article 3, section I, subsection j, Article 4, section II, subsection c, Article 11, section XI, Article 14, section VI, in relation to Article 15, section VI of the Regulations of the Federal Commission for Protection Against Health Risks, and considering that health legislation is for the public order and common good, the present order for a health inspection visit is here dispatched, to be conducted in the establishment cited in the label, to be conducted by the C. Inspector(s)

| photo | photo | photo | photo | photo |
|---|---|---|---|---|
| Dr. Victor Rioja Urbina | Dr. Ezequiel Vázquez Arroyo | Q.F.B. Virgilio Miranda Rojas | Q.F.B. Ricardo González Vargas | Q.F.B. Agustín Palao Carmona |

EX. 3

**Who will conduct the visit jointly or individually**

**The visit has the following objective and scope:**     To review and obtain **a)** legal documentation of the establishment and its clients, as well as its client list, **b)** invoices for purchases and sales of prime materials for narcotics or psychotropics, **c)** normalized operating procedures (PNO), specifically, to review the part corresponding to the delivery of controlled prime materials, and to review a random sample of these delivery receipts, **d)** to take stock of the balance of controlled prime materials, and **e)** to secure expired prime materials for their subsequent destruction.

In the event you are found violating legal statutes, out of the necessity to protect health, and avoid the dangers and harm to health that may be caused by violation of the precepts established in the General Health Code and the current Health Regulations, the Health Inspector(s) will remain authorized, pending instructions from his superior, to apply and execute the preventive security measures referred to in Articles 402 to 415 of the General Health Code.

In accordance with Article 400 of the General Health Code, the owners, managers, caretakers, or occupants of the establishments subject to inspection are obligated to permit access and surrender facilities and reports to the cited inspectors, so that they may exercise their function.

In like manner, the owners, managers, caretakers, or occupants of the establishments subject to verification are warned that, in the case the inspector fails to present valid identification, if the written order does not bear an official signature from the responsible authority, or if personnel not mentioned in this document present themselves at the establishment, access should not be granted.

**Note:**     For any clarification, please contact telephone number **50 80 53 36**

**SINCERELY**

**THE EXECUTIVE DIRECTOR**

(signature)

**M. en C. Victor M. Luna Villarreal**
As established in Article 21, paragraph 3 of the Regulations
of the Federal Commission for Protection Against Health Risks

(seal)
UNITED STATES OF MEXICO
MINISTRY OF HEALTH – COFEPRIS
HEALTH AUTHORIZATION COMMISSION

**Bates no. NDDS005920**

**Record No. 06-CF-09-0381-GA**

# Ministry of Health
## Federal Commission for Protection Against Health Risks (COFEPRIS)
## Health Authorization Commission

**Record of health inspection visit for:     Warehouse for storage and distribution of medications or biological produces for human consumption / warehouse for storage and distribution of raw materials (only chemical precursors)**

**Category of Medication**

Narcotics                      (    )
Psychotropics                  ( √ )
Chemical precursor             (    )

In the city of <u>Mexico, Federal District</u> at <u>12:45</u> on the <u>28</u><sup>th</sup> of <u>July</u> of <u>2006</u>, the undersigned(s) C. <u>Q.F.B. Ricardo González Vargas and Dr. Ezequiel Vazquez Arroyo</u>, health inspector(s) assigned to this Health Authorization Commission, present identification with credential number(s) <u>CAS/EPQ/040706/007 and CAS/EPQ/040706/008</u> valid until the <u>29</u><sup>th</sup> <u>of December, 2006</u>, issued by the Federal Commission for Protection Against Health Risks, the same commission that presents itself to the interested party, and based on visit order No. <u>06-CF-09-0381-GA</u> dated <u>28/07/2006</u>, we presented ourselves at the establishment named <u>Unimed Pharm Chem Mexico, S.A. de C.V.</u> located at Calle <u>Morelos</u> No. <u>24</u>, Colonia:  <u>Centro</u>, City: <u>Mexico, Federal District</u>, Delegation or Municipality: <u>Cuauhtémoc</u>, postal code: <u>06040</u>, telephone No. <u>55181881 to 88</u>, property of C. <u>Unimed Pharm Chem Mexico, S.A. de C.V.</u>, being assisted by C. <u>Q.F.B. Estela Ramirez Flores</u>, who identifies herself by <u>cred. IFE No. 363301054543</u> in her function as <u>assistant manager</u>,

---

**Bates no. NDDS005921**

**Record No. <u>06-CF-09-0381-GA</u>**

who is informed that based on Articles 4, 14, and 16 of the Constitution, Article 39, sections XV, XVII, and XXI of the fundamental law of federal public administration; Article 1 and 2, section X, Articles 36 and 37 of the internal regulations of the Ministry of Health; Articles 1 and 3, sections XXII, XXIV and XXVIII, Article 13 subsection A, paragraph II, Article 17 until Sections II and V, Article 194, last paragraph, Article 194 to 197, Article 257, sections V, VI, and VII, Articles 258, 393, 395, 396, 397, 398, 399, 400, 401, and 401 until the General Health Law; Article 14 section VI of the regulations of the Federal Commission for Protection Against Health Risks; Articles 1 and 3, section VI, and Article 18 section I of the Federal Law for the Control of Chemical Precursors, Essential Chemical Products, and Machinery to Manufacture Capsules, Tablets, and/or Pills; And in compliance with the cited order, the health inspection visit is thus carried out according to the terms outlined in Article 401 of the General Health Law in relation to the established in Articles 62 and 69 of the Federal Law of Administrative Procedure, with the objective of: <u>inspecting and obtaining</u> **a)** <u>legal documentation of the establishment and its clients, as well as a client list,</u> **b)** <u>invoices for purchases and sales of prime material for narcotics or psychotropics,</u> **c)** <u>normalized operating procedures (PNO), specifically to review and obtain the part corresponding to the delivery of controlled prime materials, and to review and obtain a random sample of these delivery receipts,</u> **d)** <u>to take stock of the balance of controlled prime materials,</u> **e)** <u>to secure expired prime material for its subsequent destruction.</u>

The original order is presented to C. <u>Q.F.B. Estela Ramirez Flores</u>, with whom the proceeding is conducted, who signs in confirmation of receipt and keeps a simple copy, as she is informed of the right to name attending witnesses, who should be present throughout the entire visit. Designated for this purpose are C. <u>Sonia Galicia Villar</u> who presents identification <u>cred. IFE No. 060889026279</u> and who declares residence at <u>Calle 5, Cerrada de Manuela Cañizares No. 4, U. CTH. Culhuacan, Zona 14, Federal District</u>; and C. <u>Analia Zetina Hernández</u> who presents identification <u>cred. IFE. No. 3036090951842</u> and declares residence at <u>Calle Acocotl No. 3, Col. Atacaxo, Deleg. Magalena Contreras, D.F. C.P. 10378</u>, both of whom will confirm the here established. In the case that no witnesses are designated, they shall be appointed by the authority conducting the inspection visit, affirming the circumstances in the present record:

During the inspection visit, the following is observed:
Description of activities in the establishment: <u>Warehouse for the storage and distribution of prime materials for the production of medications or biological products for human use.</u>

Bates no. NDDS005922

Record No. <u>06-CF-09-0381-GA</u>

**Qualification:**

**2 = in full compliance      1 = in partial compliance     0 = not in compliance     N/A = not applicable**

**Administrative Inspection.** Rate in the blank spaces

| Point | I. Administrative Inspection | Rating |
|---|---|---|
| 1 | Health License No.:     <u>09 006 07 0001</u>              photocopy attached (appendices)<br>Date issued:          <u>13/11/2001</u><br>Type of Activity:      <u>Warehouse for the deposit and distribution of prime materials for the production of medications or biological products for human use.</u> | 2 |
| | The type of activity authorized corresponds to the functions of the establishment : | 2 |
| 2 | Notice of functioning No.: (only applies to warehouses for deposit and distribution of heliotropine)<br>Entry No.:        --------         Date:     -----------<br>Type of Activity:         -------------<br>The type of activity authorized corresponds to the functions of the establishment: ------ | N/A |
| 3 | Manager Notice No.:     w/o number – photocopy attached (appendix 1)<br>Name:              Q.F.I. Bernardo Mercado Jimenez<br>Entry No.           w/o number      Date:     Jan. 18, 2005<br>Schedule of Attendance:   from 16:00 to 18:00 hrs | 2 |
| 3.1 | The health compliance manager was present during the proceedings | 0 |
| 3.2 | There is an assistant designated by the health compliance manager | 2 |
| 4 | Date of the last health inspection visit conducted with purpose and scope:<br><u>March 6, 2006</u><br><u>Legal documentation of the establishment and its clients, balance of primary Materials</u><br>Record No.:     <u>06-CF-09-0095-HA</u> | |
| 5 | Note the Federal Taxpayer Registry no. of the establishment:  <u>UPC970324GP0</u> | |
| 6 | The establishment has signs indicating its purpose | 2 |
| 7 | It has PNOs (normalized operating procedures) authorized by the health compliance manager, that guarantee the good operative practices of the establishment in relation to the processing of medications containing narcotics and psychotropics, including those that contain pseudoephedrine | 2 |

Bates no. NDDS005923

EX. 3

Record No. <u>06-CF-09-0381-GA</u>

| Point | I. Administrative Inspection | Rating |
|---|---|---|
| 7.1 | The PNO includes specific measures to guarantee the commercialization and delivery of medications containing narcotics and psychotropics, including those that contain pseudoephedrine, to accredited clients such as pharmacies and drugstores authorized to supply these type of medications to the public <u>(attachment 2)</u>. | 2 |
| 8 | They possess a valid supplement to the FEUM for establishments dedicated to the sale and provision of medications and other health supplies. | 2 |
| 8.1 | Issue No.: <u>1898</u> | |

**Comments**
**(Detail health anomalies noting the section number to which it corresponds)**

| Point | II. Narcotics & Psychotropics | Rating |
|---|---|---|
| 1 | In accordance with Art. 226 of the General Health Law, indicate the groups of medications or raw materials handled:   <u>pseudoephedrine sulfate & hydrochlorate</u>             **Group I ( )        Group II ( )        Group III ( √ )** | 2 |
| 2 | The reception, registry, storage, handling, and control of medications and/or primary material for narcotics or psychotropics are registered or supervised by the health compliance manager | 2 |
| 3 | They have log books for the handling of medications and/or primary materials | 2 |
| 3.1 | The log books are found:<br>a.      filed<br>b.      authorized<br>c.      updated<br>d.      correctly filled-out in ink<br>e.      signed by the health compliance manager | 2<br>2<br>2<br>2<br>2 |
| 4 | The original text of the log books for medications and/or controlled primary materials is free of strikeouts and erasures/alterations | 2 |
| 5 | In the authorized books of medications and/or primary material, the record of purchases-sales-balance is correct and up-to-date | 2 |
| 6 | There is a drawer or safe for the storage of medications and/or primary materials, narcotics or psychotropics | 2 |
| 6.1 | The drawer or safe has a key or security system for the protection of primary material and/or medications, narcotics and psychotropics | 2 |
| 7 | There are no medications or psychotropics outside of the secured area that are available for sale | N/A |

Bates no. NDDS005924

Record No. <u>06-CF-09-0381-GA</u>

EX. 3

| | | |
|---|---|---|
| 8 | The controlled products are accompanied by invoices of acquisition | 2 |
| 8.1 | Number of acquisition invoices attached to the present document: ----------- | |
| 8.2 | The controlled products have sales invoices/receipts   <u>(attachment 3)</u> | 2 |
| 8.3 | Number of sales invoices attached to the present document: <u>11 copies (attachment 3)</u> | |
| 9 | The sale of controlled products is conducted in establishments possessing the health permits accrediting them as pharmacies, shops or drugstores authorized to sell medications that are or contain psychotropic substances or narcotics. In the case of heliotropine in establishments with a Health License or Notice of Operation <u>4 photocopies attached (attachment 4)</u> | 2 |
| 9.1 | Documentation is obtained accrediting the legality of its clients before the Ministry of Health | 2 |
| 10 | Attach client list ------------- <u>referred to in (illegible) attachments</u> | |

### III. Medications Containing Pseudoephedrine

| | | |
|---|---|---|
| 11 | They possess a registry of medications containing pseudoephedrine | N/A |
| 12 | The medications containing pseudoephedrine are in a secured area | N/A |
| 13 | Attach a list of pseudoephedrine-containing medications for sale | |
| 14 | They possess invoices/receipts of acquisition | N/A |
| 15 | Number of acquisition invoices/receipts attached to the present document: ----------- | |
| 15.1 | Specify the average monthly purchase of medications containing pseudoephedrine -------------------- | |
| 15.2 | They have sales invoices/receipts | N/A |
| 15.2 | Number of sales invoices/receipts attached to the present document: -------------- | |
| 15.3 | Specify the average monthly sale of medications containing pseudoephedrine | |
| 15.4 | The log: purchases-sales-balance is correct and up-to-date. Indicate the present stock of medications in the corresponding attachment | N/A |
| 16 | The sale of medications containing pseudoephedrine is conducted in establishments possessing a Health License accrediting them as pharmacies, shops, or drugstores authorized to sell these types of medications | N/A |
| 17 | They've obtained documentation accrediting the legality of their clients before the Ministry of Health | N/A |
| 18 | Attach list of clients ------------- | |

### Comments
**(Detail health anomalies noting the section number to which it corresponds)**

Bates no. NDDS005925

Record No. <u>06-CF-09-0381-GA</u>

### Additional Comments

Attached are 5 original permits for acquisition of chemical precursors (attachments) - No. 009/06 dated April 19, 2006 for 2660 kg; 012/06 dated April 21, 2006 for 3000 kg; 013/06 dated April 21, 2006 for 1000 kg; 017/06 dated May 23, 2006 for 2040 kg; 021/06 dated April 19, 2006 for 300 kg. All the permits are for acquisition of pseudoephedrine hydrochlorate. Likewise attached are 3 photocopies of delivery notes with their respective invoices (attachment 6), previously selected as receipts/proofs of delivery of pseudoephedrine hydrochlorate.

Bates no. NDDS005926

Record No. <u>06-CF-09-0381-GA</u>

### IV. Attachments

| | | | |
|---|---|---|---|
| 1 | Specify number of attachments to this document | 6 | |
| 2 | The attached documents were compared with their respective originals | **<u>YES</u>** | NO |

The above was read to C. <u>Q.F.B. Estela Ramirez Flores and Witnesses</u> informing them of their right to declare, as is accorded to them in Article 401, section IV of the General Health Law. In this manner, they can formulate their observations and offer evidence in relation to the acts contained in the present document, or rather, exercise this right in writing within five working days following the completion of this report, in accordance with Article 68 of the Federal Law of Administrative Procedure, because of which they declare:

<u>I am in agreement with the contents of the record.</u>

(signature)

Bates no. NDDS005927

Record No. <u>06-CF-09-0381-GA</u>

<u>Mexico, Federal District</u> on the <u>28</u>th of <u>July</u> of <u>2006</u> and

Being <u>16:30</u> hrs., the inspection visit is hereby finished, there being nothing more to add, and pending reading of the present document for verification before the participants, with their full knowledge of the contents of the document and their awareness of the crime that is false declaration before a non-judicial authority (Article 247, first section of the Federal Penal Code), with the participants signing below and at the margin, for all legal effects it may incur, leaving a simple copy of this document with the person who attended the inspection visit.

| **Interested Party** | **Health Inspector(s)** | |
|---|---|---|
| (signature) | (signature) | (signature) |
| Q.F.B. Estela Ramírez Flores | Q.F.B. Ricardo Gonzalez Vargas | |

EX. 3

|  |  | Dr. Ezequiel Vazquez Arroyo |
|---|---|---|

**name and signature**
**Witness**

(signature)

C. Sonia Galicia Villar

**name and signature**

**name and signature**
**Witness**

(signature)

C. Analia Zetina Hernandez

**name and signature**

---

**Bates no. NDDS005928**

**Record No. <u>06-CF-09-0381-GA</u>     Page No. <u>1</u>**

**<u>Balance of Primary Materials</u>**

In terms of the established in the present report, the undersigned(s) health inspector(s), in the presence of the interested party and witnesses proceeded to revise the log-book of narcotics and psychotropics, whose inventory compared with the balances noted in the book, is recorded below, in the following table:

Date of the previous balance <u>March 6, 2006</u>. Period of the balance conducted <u>March 6, 2006</u> to <u>July 28, 2006</u>.

| Name of narcotic & psychotropic | Import & acquisition permit | Prior existence | Quantities & date acquired | Totals | Exits by weight | Balance | Stock | Difference |
|---|---|---|---|---|---|---|---|---|
| pseudoephedrine hydrochlorate |  | 9,000 kg |  |  |  |  |  |  |
|  |  |  | - 0 – |  |  |  |  |  |
|  |  |  |  | 9,000 kg |  |  |  |  |
|  |  |  |  |  | 021/06 19-04-06 300 kg |  |  |  |
|  |  |  |  |  | 009/06 19-04-06 2,660 kg |  |  |  |
|  |  |  |  |  | 013/06 21-04-06 3,000 kg |  |  |  |
|  |  |  |  |  | 017/06 23-05-06 2,040 kg |  |  |  |
|  |  |  |  | Total | 9,000 kg |  |  |  |
|  |  |  |  |  |  | - 0 – |  |  |
|  |  |  |  |  |  |  | - 0 – |  |
|  |  |  |  |  |  |  |  | - 0 - |

EX. 3

Bates no. NDDS005929

Record No. **06-CF-09-0381-GA**     Page No. **2**

| Name of narcotic & psychotropic | Import & acquisition permit | Prior existence | Quantities & date acquired | Totals | Exits by weight | Balance | Stock | Difference |
|---|---|---|---|---|---|---|---|---|
| pseudoephedrine sulfate | | 806 kg | - 0 – | 806 kg | - 0 – | 806 kg | 806 kg | - 0 - |

---

Bates no. NDDS005930

Record No. **06-CF-09-0381-GA**     Page No. **3**

| Name of narcotic & psychotropic | Import & acquisition permit | Prior existence | Quantities & date acquired | Totals | Exits by weight | Balance | Stock | Difference |
|---|---|---|---|---|---|---|---|---|

*(blank)*

Mexico, D.F. on the 28th of July, 2006

(signature)

Q.F.B. Estela Ramirez Flores

**name and signature of the Interested Party**

Dr. Ezequiel Vazquez Arroyo     (signature)

Q.F.B. Ricardo Gonzalez Vargas     (signature)

**name(s) and signature(s) of the Health Inspector(s)**

(signature)

C. Sonia Galicia Villar

**name and signature of Witness**

(signature)

C.P. Analia Zetina Hernandez

**name and signature of Witness**

EX. 3

EX. 3



DEFENDANT'S
EXHIBIT
4
PENGAD-Bayonne, N.J.

# The HEARTBEAT of pharma packaging

**Project Unimed Mexico /**

 Uhlmann





Cartoner for Hormone Line 1



Uhlmann





**Cartoner for Hormone Line 2**



**Uhlmann**





**BEC 500 cartoner for Antibiotic Line**



Uhlmann

# Solida hormone line 1 (in production)



- Time table

  FAT with test tooling provided by Uhlmann, week 20 (May 14th – 16th)

  Delivery ex works Laupheim, week 23 (June 08th)



Uhlmann

# Solida hormone line 2 (in production)



- Time table

FAT with test tooling provided by Uhlmann, week 25 (June 20th – 22st)

Delivery ex works Laupheim, week 28 (July 13th)





■ ◆
■ ◆ Uhlmann



Format proposal for the "standard" hormone lines 1 & 2

■■◆■ Uhlmann

Output up to 630
blister per minute

Output up to 270
blister per minute

Output up to 270
blister per minute

# Solida Antibiotic line 1 & 2 (in production)

Blister Express Center 500

B 1550 Thermoformer    C 2504 Cartoner    E3040 Strechbander    E4046 Case Packer



approx. 22907

- Time table line 1

  FAT with test tooling provided by Uhlmann, week 19 (May 09th – 11th)

  Delivery ex works Laupheim, week 22 (June 01th)

- Time table line 2

  FAT with test tooling provided by Uhlmann, week 41 (October 08th – 10th)

  Delivery ex works Laupheim, week 43 (October 26th)

■■◆■ Uhlmann



**BEC 500 Thermoformer for Antibiotic Line**



**Uhlmann**

# Format proposal for the Atibiotica lines 1 & 2



Output up to 300 - 350
blister per minute

Output up to 200 - 230
blister per minute



■■◆■ Uhlmann

# Liquida hormone line 1 (in production)

| UPS 5 | C 2205 | Garvens | E 3040 | E 4046 |
|---|---|---|---|---|
| Blister Machine | Cartoning Machine | Checkweigher | Stretchbander | Case Packer |



feeding system for syringes and needles, not in production yet.

approx. 28760

- Time table liquida hormone line 1
  FAT **no test tool available**, week 27 (July 04th – 06th)
  Delivery ex works Laupheim, week 31 (August 03rd)



■■
■◆■ Uhlmann

# Format proposal for the liquida hormone line



Output up to 300 blister per minute

travel direction
View from lidding top side
all dimensions in mm



## Uhlmann

# Open items for lines in production

- Solida lines (Hormone & Antibiotica)

  Format clarification for the complete lines

  - Tablet dimension, blister layout, number of different products
  - Carton dimension, booklet dimension, leaflet dimension
  - Bundle layout
  - Case layout
  - Test material for test tooling
  - Actual floor plan
  - Decision plastic case yes or no?
  - Standardization of the blister dim., carton dim., leaflet dim., booklet dim., bundle configuration, case dimension etc.



Uhlmann

# Open items for lines in production

- Liquida hormone line

  Format clarification for the complete line

  - Syringes design and dimension, needle design and dimension
  - Carton dimension, leaflet dimension
  - Bundle layout
  - Case layout
  - FAT (no test tool available)
  - Actual floor plan







**DEPARTMENT OF HEALTH & HUMAN SERVICES**    Public Health Service

Food and Drug Administration
Rockville, MD 20857

August 21, 2003

Zhang Jianyi
General Manager
Chifeng Arker Pharm Tech Co., Ltd.
North Section Qinghe Road
Hongshan District
China

Dear Mr. Jianyi:

We have completed our review of the Establishment Inspection Report (EIR) for the inspection conducted at your Active pharmaceutical Ingredient facility in Hongshan, China on October 2-9, 2002 by FDA Investigator George Flynn, Chemist Dennis Cureillage, and Investigator Gary Coody of the Office of Enforcement. Based on this review, we are classifying your facility as acceptable.

Additionally we enclose a copy of the EIR for the inspection. This report is being provided to you for information purposes. The Agency is working to make sure its regulatory process and activities more transparent to the regulated industry. Releasing this EIR to you is part of this effort. The copy being provided to you comprises the narrative portion of the report; it may reflect redactions made by the Agency in accordance with the FOIA and C.F.R. Part 20. This, however, does not preclude you from requesting and possibly obtaining any additional information under FOIA.

You may contact me at Montrose Metro II, Rockville Pike, HFD-325, Rockville, MD, 20852. You may also contact my office by telephone at (301) 827-8042 or by fax at (301) 827-8909.

Sincerely,

Anthony A. Charity
Compliance Officer
Foreign Inspection Team, HFD-325

Enclosure



ALL-STATE LEGAL®

I 0



DEFENDANT'S
EXHIBIT
5



# 赤峰艾克制药科技股份有限公司
## CHIFENG ARKER PHARMACEUTICAL TECHNOLOGY CO.,LTD.

中文



ALL-STATE LEGAL®

_11_

About us     Quality_system     Product     Responsibility     Contract_manufacture     R & D

Pseudoephedrine Series, Dirithromycin, Balsalazide Disodium

| News | GMP witness |
|------|-------------|



### Company Tenet

Join hands with our supplier, purchaser and all parties who are interesting in cooperating with Arker form a strategic alliance and initiate prosperous future.

### Company Aim

Try to be an approved supplier of every purchaser.




FDA Inspectors inspect water system



FDA Inspectors review documentation




GSK auditors inspect facility

SFDA inspectors inspect QC



QC



Warehouse

Copyright (C) 2000 http://www.arker.com.cn/ All Rights Reserved

Chifeng Arker Pharmaceutical Technology Co.,Ltd ©

email:cfarker@public.hh.nm.cn xs@arker.com.cn



DEFENDANT'S EXHIBIT

6