IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| The United States of America ) | |
| ) | File: 07-181 |
| ) | Hon. Emmit G. Sullivan |
| v. ) | |
| Zhenli Ye Gon, ) | |
| Defendant ) | |

## DEFENDANT'S STATUS REPORT

For purposes of the upcoming status conference on March 18, 2008, the Defendant, Mr. Zhenli Ye Gon, respectfully informs this Court of the following discovery-related concerns which the defense seeks to address at the status conference:

1. <u>The Seized Money:  No Chain of Custody or Link to Methamphetamine</u>:  The Government admitted at the December 20, 2007 hearing (Tr. at 21) that it considers its strongest evidence to be the large quantity of U.S. dollars seized from Mr. Gon's home, based on the assumption that such dollars in Mexico must be from sales of methamphetamine in the U.S. (!).  Yet the Government apparently cannot produce the seized money, or even establish its whereabouts.  It appears, in other words, that the Government intends to rely on this seized money without providing the defense an opportunity to inspect the bills or its packaging, nor any access to chain-of-custody documentation necessary for admissibility.  The defense has served a subpoena on the Bank of America branch in New York, NY (where the money was allegedly sent), which remains pending.  The defense seeks disclosure of all information and documents the

Government may have regarding the handling, location, and disposition of the seized funds.

2. <u>The Seized Chemical Shipment: Missing</u>: Similarly, while the Government alleges that a chemical shipment to Unimed seized by Mexican Customs in December 2006 was "mislabeled,"[1] that shipment also appears to be missing. Despite repeated requests, the Government has failed to: (1) produce original samples of that shipment to the defense for independent testing; (2) produce the testing results from the alleged Mexican Customs' laboratory sampling; (3) disclose the location of the seized shipment so that samples may be taken for independent testing; or (4) produce chain-of-custody documentation needed vis-à-vis tampering concerns.

3. <u>Unimed Log Books: Existence Confirmed, But Still Not Produced</u>: Recently-translated documents conclusively confirm the existence of the Unimed log books, which record all transactions in controlled chemicals, and which the defense has been requesting for eight months. <u>See</u> COFEPRIS audits from March and July 2006 (Exs. 2, 3 to Def. Renewed Mtn. to Reconsider) (establishing log books' existence and full compliance with recording requirements under Mexican law). No Unimed log books have been produced, however, even though the defense informed the Government both (a) what the books looked like, and (b) where they were located at the Unimed warehouse. Indeed, the Government has persisted in questioning the log books' existence.

4. <u>Another 25,000 Pages Of Documents From Mexico: Still Not Produced</u>: At the February 5, 2008 status conference, the Government represented that the second batch of approximately 25,000 pages of documents would be produced within 30 days of that

---

[1] <u>See</u> Gov. Opp. Renewed Bond Motion and Dec. 20, 2007 Tr. at 11.)

2

hearing (i.e., by March 5, 2008). As of March 13, 2008, these documents remain unproduced. The Government had previously represented that a team would be traveling to Mexico to scan the documents almost five months ago.

     5. <u>Computer-Derived DVDs: Massively Corrupted</u>: On January 8, 2008, the Government produced 48 DVDs of data from the laptop seized in the Wheaton arrest and 21 DVDs of data from Mr. Gon's desktop, and, on February 5, 2008, 13 DVDs (which replaced the 48 DVDs for the laptop). All of these DVDs contained portions of forensic data images from the two seized computers, and were created using expensive Encase software (which defense counsel discussed sharing with the Government). At the February 5, 2008 hearing, the Court instructed the parties to reach an agreement within one week regarding access to the computer files.

     Defense counsel then discovered, however, that mere access to Encase software (as proposed by the Government) was not feasible, as its use requires training and technical expertise. The defense then retained a computer expert to view the DVDs, and he determined (a) that the laptop had been operational as of July 21, 2007, and (b) its files have been severely corrupted since. <u>See</u> Ex. A (Decl. of expert J. Gross). The desktop DVDs were also substantially corrupted, making the files unreadable. (<u>Id.</u>) The defense counsel requested access to the computers, which the Government denied. The Government has also declined to produce chain-of-custody information as to how the computers were manipulated and the imaging was performed. Moreover, the Government has not responded to defense counsel's request to reimage the computers. <u>See</u> <u>e.g.</u> Ex. B (Letters sent to Government regarding access to computers and Government letter in response.)

6. <u>Government Plans Depositions In Mexico In July 2008</u>:  At a February 5, 2008 meeting between counsel following the status conference, Mr. Laymon disclosed the Government's intention to commence depositions in Mexico in July 2008 – one year after Mr. Gon's arrest.  The Government has not disclosed any parties to be deposed or, indeed, why it expects to initiate such discovery at such a late date.

7. <u>Cell Phones Seized 8 Months Ago: Still Not Produced</u>:  The Government still has not produced (or made available for inspection) the cell phones seized from Mr. Gon's person and residence in July 2007, nor produced any data from these cell phones, despite defense counsel's requests.

8. <u>Still No Formal Discovery Requests to China or Mexico?</u>:  A pressing concern – given the Government's use of purported evidence in foreign countries to seek Speedy Trial Act extensions (even as Mr. Gon sits in D.C. jail) – is the Government's apparent ongoing delay in submitting formal requests to China and Mexico.  The only country to which the Government acknowledges sending a formal request is Germany, where no relevant evidence can possibly be located (the defense having stipulated to Mr. Gon's purchase of German pharmaceutical equipment and machinery).   If the defense is correct that formal requests still have not yet been made to China and Mexico eight months after Mr. Gon's arrest, it would be all the more clear (in view of all the other instances of delay discussed herein) that the Government has no principled basis for expecting yet another extension under the Speedy Trial Act, nor for expecting that Mr. Gon continue to sit in D.C. jail.  Moreover, the Government should be willing (a) to explain why it has delayed submitting its formal requests for so long; (b) to disclose specifically what requests have

been made to China and Mexico; and (c) to provide to the defense all potentially-exculpatory evidence already obtained from China and Mexico.

                Respectfully Submitted,

                /s/ Martin F. McMahon, Esq.
                Martin McMahon, D.C. Bar # 196642
                Martin McMahon & Associates
                1150 Connecticut Ave., N.W.
                Suite 900
                Washington, D.C. 20036
                (202) 862-4343
                mfm@martinmcmahonlaw.com

                *Counsel for Defendant Ye Gon*

*Of counsel:*

James M. Ludwig, D.C. Bar # 427884
Martin McMahon & Associates
1150 Connecticut Ave. N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343

**CERTIFICATE OF SERVICE**

   I hereby certify that, on this 13th day of March, 2008, I electronically filed the foregoing Status Report with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Paul Laymon, Esq.
U.S. Dept. of Justice
1400 New York Avenue, NW
Bond Bldg. 8th Fl
Washington, DC 20530

               /s/ Christine Hilgeman
               Martin McMahon & Associates
               1150 Connecticut Ave., N.W.
               Suite 900
               Washington, D.C. 20036
               (202) 862-4343

## DECLARATION OF JEFFREY R. GROSS

1. I am over 18 years of age and have personal knowledge of the matters discussed herein.

2. I am the founder and owner of Computer Forensic Associates, Inc. I have longstanding expertise in the field of computer forensic examination, based on my many years of experience in this field. I have been specifically trained in (and have extensive experience using) the software known as "Encase," the forensic computer program used by the Government in creating the data images on the DVD's I viewed. This required, in other words, loading all of the DVD's into the Encase program on my computer in order to view the contents of the DVD's.

3. The McMahon law firm asked me to prepare this declaration for purposes of the March 18, 2008 status hearing, to summarize my current findings and opinions regarding the various DVD's provided to me as set forth below.

4. On February 15, 2008 I received from the McMahon law firm the following media for forensic examination:

- A set of 48 DVD's of the defendant's laptop dated received on 1-8-08 and indicated to have been created on 1-2-08

- A set of 13 DVD's of the defendant's laptop dated received on 2-5-08 and indicated to have been created on 1-10-08 (described as being made using compression and without the corruption or damage indicated to be on the first set in item #1 above).

- A set of 19 DVD's of the defendant's desktop dated received on 1-8-08 and indicated to have been created on 1-3-08.

- A total of 80 DVD's were received consisting of approximately 376 GB of data (4.7 GB X 80).

4. I was informed by defense counsel that problems with the media were expressed by the Government upon delivery of the initial 48 DVD's to defense counsel. This included apparent references to corruption and or damage resulting from some sort of incident. Two sets of DVD's were provided for the laptop computer with one set being described as having damage and the second set (item #2 above) as being undamaged.

5. Whereas I have performed hundreds of forensic media examinations from evidentiary content on large quantities of DVD media from varied sources, I have never seen the level of errors, corruption and unreadable files that exist on these DVD's provided by the Government.

7. Upon initial attempts to transfer and access the forensic image files, it was apparent that there were problems with the DVD's which prohibited full and complete

Pg. 1


DEFENDANT'S EXHIBIT A

## DECLARATION OF JEFFREY R. GROSS

access. Many of the disks and/or individual Encase image files were not readable. Some of the files would fail to transfer/copy and others required multiple attempts for a valid copy to be made. These efforts were replicated on several different computers which further supports the likelihood of the corruption and or damage being inherent to the DVD's and/or the process of their creation. It is clear that the integrity of the images on the DVD's I received was compromised, making much of the data on these DVD's inaccessible or unreliable as to comprehensiveness and/or accuracy.

8. In particular, the laptop image files indicated that 5.25% of the hard drive was corrupted. This is a sufficiently high level of corruption on a hard drive that it cannot be in operable condition when presenting this level of corruption. However, according to the physical data captured in the data image file, I can be certain that the laptop was operational as of 7-21-07, which I am told is only two days before Mr. Gon's arrest.

9. To determine the nature, extent and cause of the corruption to Mr. Gon's computer files, and to determine how to remedy the problem, I need to access the computers and personally conduct a forensic examination of them.

I swear upon the pains and penalties of perjury that the foregoing is true.

_____          March 13, 2008
Signature of Jeffrey R. Gross                Date

## MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTINE M. HILGEMAN
Associate
Admitted in Virginia

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

February 15, 2008

SENT VIA FACSIMILE AND ELECTRONIC MAIL
Paul Laymon, Esq.
U.S. Department of Justice
1400 New York Avenue,
Suite 8124
Washington, D.C. 20005
Email: Paul.Laymon@usdoj.gov
Fax: (202) 305-9825

      Re: U.S. v. Ye Gon, 1:07-CR-00181

Dear Paul:

      I am writing to follow-up on Item Number 8 on our most recent status report filed February 1, 2008 in which we indicated that we are awaiting open dates for the inspection of the laptop.

      You represented to me that you were aware that when the DEA arrested Mr. Zhenli Ye Gon on July 23, 2007, the agents took possession of Mr. Ye Gon's dark brown briefcase which was on his person at the time of his arrest. Further, you indicated to me that the DEA retains possession of the contents of the briefcase, including but not exclusive to a Sony laptop computer. As it has been almost seven months since the seizure of this item, we request that you permit our computer forensic examiner, Jeffrey Gross, to examine the contents of the laptop at the DEA facility next week. Mr. Gross will be available February 18-22, 2008.

      Specifically, we demand that you immediately provide us with the name and contact information of the DEA's primary examiner so that Mr. Gross may arrange to conduct one full day of examination next week. Before the appointment, Mr. Gross needs to dialogue with the DEA examiner to obtain the production of the media analysis report, a copy of the examiner's work notes, and the evidence seizure report indicating the chain of custody of the laptop.


DEFENDANT'S EXHIBIT B

During the appointment, Mr. Gross will need to meet with the technician(s) who conducted the original analysis. Mr. Gross wants to generate a new image of the computer onto a blank USB hard drive. Accordingly, we request that the government determine whether they prefer whether Mr. Gross 1) provide his own blank hard drive; or 2) utilize a government blank hard drive and provide a replacement as reimbursement to the government.

Very Truly Yours,

Martin F. McMahon, Esq.

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTINE M. HILGEMAN
Associate
Admitted in Virginia

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

February 20, 2008

SENT VIA FACSIMILE AND ELECTRONIC MAIL
Paul Laymon, Esq.
U.S. Department of Justice
1400 New York Avenue,
Suite 8124
Washington, D.C. 20005
Email: Paul.Laymon@usdoj.gov
Fax: (202) 305-9825

      Re: U.S. v. Ye Gon, 1:07-CR-00181

Dear Paul:

      This letter serves as a follow up to our letter dated February 15, 2008 (copy attached hereto). We send this letter with a great sense of urgency given our computer expert's review of the Encase files produced by the Government.[1] It is now crucial for our expert to physically inspect both computers at Lorton and it is also crucial that both computers be re-imaged under his observation. Furthermore, it is urgent that our expert have access to the computers this week, as he will need time to prepare his findings for the March 18, 2008 hearing – at which the Government previously stated its intention to present a computer expert.

      Physical inspection and re-imaging of both computers is necessary because of the high level of corruption of the files we were provided by the Government. First, the disks which purportedly contain the data image files of the desktop computer were corrupted to an extent that the entire file structure was unreadable. Secondly, 5.25% of the laptop's hard drive is missing and/or corrupted, and the level of corruption is so extensive in the laptop's data image file that the laptop simply could not have been functional if this level of corruption existed at the time the

---

[1] Our computer expert owns the Encase software and has extensive training and experience in the use and operation of Encase. As a result of further research, we determined that the Government's offer to share the costs of purchasing the Encase software was an inadequate means of providing Defense counsel with access to all of the data contained on the computers, as the Encase software requires considerable training in order to be used properly.

laptop was seized on July 23, 2007. However, the laptop must have been functional at the time it was seized as the data image file even indicates recent usage prior to the seizure.

In addition to rendering the majority of files unreadable, this level of corruption raises another concern, specifically the fact that the image files provided to us were not made until January 3, 2008, despite DEA protocol which requires imaging of the computer immediately after seizure. If proper protocol had been followed in this case, we should have received image files from July 2007, when Mr. Gon was arrested and the laptop was initially seized. Moreover, it is now absolutely essential, due to these irregularities, that the Encase reports and the examiner's notes[2] be provided to us immediately, as well as all chain of custody documents relating to the seizure of the computers. Specifically, the following information must be produced: (1) every occasion when the computer was analyzed or accessed, (2) every agent who examined or accessed the computers, and each agent's examiner's report, (3) every Encase report generated since the date of the seizure, and (4) all documents indicating a transfer of custody of the computers from the time and date of seizure until the present.

For these reasons, arrangements must be made for our computer expert to visit Lorton this Thursday or Friday to inspect both computers and observe the re-imaging of both computers. Please contact us immediately to discuss how these arrangements may be made.

Very Truly Yours,

Martin F. McMahon, Esq.

---

[2] While Government counsel may not be familiar with these documents, the DEA forensic analysts will be knowledgeable of these documents as they are required protocol. If the Government intends to contest whether these documents were required protocol, then all DEA forensic handbooks in effect in 2007-2008 must be produced to Defense counsel.



U.S. Department of Justice

Criminal Division
Narcotic and Dangerous Drug Section
1400 New York Avenue NW

Washington, DC 20530

February 21, 2008

Martin F. McMahon
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036

Re: <u>United States v. Ye Gon</u>, Case No. 1:07-cr-181

Dear Martin:

    I write in response to your letters of February 15 and February 20, 2008. In those letters you make certain requests in regards to the laptop and desktop computers seized from the Maryland home where your client was temporarily residing at the time of his arrest.

    At the outset, let me note that the laptop does appear to be the property of your client. The desktop computer, however, appears to be the property of the young woman who lived in the home. An initial review of the desktop computer shows that it appeared to be used only by this young woman, and not by your client.

    First, as to the desktop computer, this item was not obtained from your client nor does it appear to belong to him. The government has not determined whether we will use this item (that is, the information contained therein) in our case-in-chief at trial. The desktop computer does not appear, at this time, to be material to preparing a defense. Accordingly, the government is not required to permit the defense to inspect and copy the desktop. We note, though, that in the spirit of cooperation, we previously provided you with disks which contained the contents of the desktop. You write in your letter of February 20, 2008 that the disks were "corrupted" and the "entire file structure was unreadable". Although we do not believe the contents of the desktop are required to be disclosed, we would like to get you working disks (containing the contents of the desktop) which are readable. Please return the nonworking disks to me and we will ask the DEA lab to review them and determine why they are not readable. The quickest solution at that point may be for the lab to recopy the disks for you.

Second, in regards to the laptop computer. The laptop computer appeared to belong to the defendant. We have previously provided you with two sets of DVD's which contained the contents of the laptop. You write in your letter of February 20, 2008, that "5.25% of the laptop's hard drive is missing and/or corrupted." While that means to me that you believe you were able to access or read 95% of the contents of the laptop, we want you to be certain that you have been able to access 100% of the contents of the DVD's. As we understand it, there could be several reasons why your expert concluded that you could only read 95% of the DVD's. One explanation is that you actually do have access to the entire contents, but have not taken into account the physical size of the DVD's versus the logical size of the DVD's. Another explanation would involve what is called the "recovery partition" that is present in Sony laptops. If the hash values match on the DVD's, then you should not have a problem. You will recall that we gave you two sets of DVD's in regards to the laptop. Are you saying that both sets have missing or corrupted parts, just the first set, just the second set? If you will tell me what specific DVD or DVD's you had problems with, we will ask the DEA lab to look into that particular DVD. We believe this issue can be quickly resolved.

In your letter of February 15, 2008, you request that a Mr. Jeffrey Gross, a "computer forensic examiner", be permitted to meet with the DEA examiner, "to conduct one full day of examination" of the laptop, and "to dialogue with the DEA examiner to obtain the production of the media analysis report, a copy of the examiner's work notes, and the evidence seizure report indicating the chain of custody of the laptop". In that same letter you also request that Mr. Gross be permitted to "generate a new image of the computer onto a blank USB computer hard drive." In your letter of February 20, 2008, you ask for significantly more information about the DEA's examination of the computer.

We decline to permit Mr. Gross to meet with the DEA examiner or to conduct "one full day of examination of the laptop." We will arrange for defense counsel and their expert to inspect, that is, physically look at the laptop in my office. However, the laptop cannot be powered on and examined by the parties because to do so would alter the data on the laptop. Mr. Gross can transfer the information on the DVD's to a hard drive; he does not need access to the laptop to put the information contained in the laptop onto a hard drive. In regards to your request for copies of various reports and notes, we decline to turn over the DEA examiner's work notes. Those notes are not subject to discovery. If you have authority to the contrary, please let me know and we will review it. As to the DEA examiner's report setting out his findings, we have not yet received such a report, but will turn it over to the defense as soon as we get it.

In your letter of February 20, 2008, you write that the government intended to present a computer expert at the hearing scheduled for March 18, 2008. Given that you have access to the Encase software and can access the DVD's, there is no reason for the government to present such a witness at the March 18 hearing. Also, you write in your letter of February 15, 2008, that I had previously represented to you that agents seized a dark brown briefcase from the possession of the defendant. I do not recall saying this and do not remember whether such a briefcase was

2

seized. I will check on this though.

                    Sincerely,

                    Paul W. Laymon
                    Wanda Dixon
                    Trial Attorneys
                    U.S. Department of Justice

cc: Rob Stapleton; Mary Mogavero