IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The United States of America | ) | |
| | ) | |
| Plaintiff | ) | File: 07-181 |
| | ) | Hon. Emmet G. Sullivan |
| v. | ) | |
| | ) | |
| Zhenli Ye Gon | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT'S MOTION TO COMPEL DISCOVERY AND MOTION FOR *IN CAMERA* REVIEW OF GOVERNMENT'S FOREIGN DISCOVERY REQUESTS**

Mr. Zhenli Ye Gon, by and through undersigned counsel, respectfully moves this Honorable Court, pursuant to Fed. R. Crim. P. 16 and for good cause shown, to compel the Government to produce discovery necessary for the preparation of the defense, and to produce exculpatory evidence pursuant to the rule in Brady.

Additionally, because defense counsel has ascertained that "container samples" had actually been taken by Mexican authorities on December 3, 2006, Mr. Ye Gon respectfully requests that this Court review *in camera* all requests made by the Government to obtain evidence abroad, including any and all requests made pursuant to mutual legal assistance treaties (hereinafter "MLAT Requests"). The two-fold purpose here is to determine whether (a) the Government has acted diligently in light of the Speedy Trial Act, and; (b) has made reasonable efforts to obtain Brady[1] materials requested by Mr. Ye Gon, as further discussed in the Memorandum of Points and Authorities attached hereto. *Query: If the Mexican authorities had "container samples" as of 20 months ago, why have they not been produced?*

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

Alternatively, if the Government will not produce the above requested discovery materials, Mr. Ye Gon respectfully requests, pursuant to Fed. R. Crim. P. 16(d), that the Government not be permitted to present evidence relating to or derived from the following: (1) the seized December 2006 Unimed container shipment, (2) the March 15, 2007 raids on Mr. Ye Gon's residence and Unimed's warehouse and factory including the money and documents seized in that raid, (3) the seized cell phones and laptop of Defendant Ye Gon, and (4) in the absence of production of the log book, any witnesses purporting to claim that: (a) Unimed did not comply with COFEPRIS or other Mexican Health Department regulations in conducting its pharmaceutical business, or (b) that in 2006 Unimed did not sell its inventory with permission from the Mexican government.

WHEREFORE, Defendant Ye Gon respectfully requests that this Court compel the Government to produce for inspection, copying and/or photographing the following: (1) the Unimed shipment seized in December 2006, including any and all samples taken from this shipment and the records of the 82nd Battalion where the shipment was stored, including all entry, exit, custodial and security records, and anything related to security breaches at that facility; (2) samples taken by Chifeng Arker pursuant to Chinese law, whether or not subsequently inspected by the U.S. Government; (3) the "Libro de Controle" aka "Log Book," maintained by the Mexican Department of Health, and COFEPRIS; (4) the COFEPRIS-issued log books seized from Mr. Ye Gon's warehouse, (4) the cell phones seized from Mr. Ye Gon at the time of his arrest and all documentation relating to inspections of the cell phones, including examiners' handwritten reports; (5) the laptop and desktop computers seized from Mr. Ye Gon and all documentation relating to inspections of the computers, including examiners' handwritten reports; (6) all chain of custody documents relating to the seizure, inspection, counting,

2

transportation, storage, and distribution of the $207,000,000 seized from Mr. Ye Gon's home; (7)

all chain of custody documents relating to the seizure, testing, transportation, storage, and

distribution of the Unimed shipment that was seized in December 2006, including all reports of

tests and inspections conducted on the seized Unimed shipment and specifically including the

documents identified in official Mexican reports attached hereto as Exhibits 1 and 2.[2]

In addition, Defendant Ye Gon respectfully requests that the Government be compelled

to comply with the following related discovery requests: (1) production of any and all documents

concerning the DEA's visit and interview of Alan Pfitzenmaier, the pharmaceutical expert who

traveled with Mr. Ye Gon to visit various pharmaceutical executives; (2) production of any and

all documents concerning, and samples of, all shipments referenced in paragraph six of DEA

Agent Chavez's affidavit (dated on or around December 2005, January 6, 2006, August 28,

2006, September 2, 2006); (3) production of all documents pertaining to Official Communication

563 (item number 8 in the report attached hereto as Exhibit 2) which pertains to a proposal that

the seized shipment be destroyed; (4) all receipts and contracts and licenses seized from the

Unimed warehouse offices during the March 15, 2006 raid; (5) production of the four individuals

referenced in the report attached hereto as Exhibit 2 for depositions; and, (6) an index to the

---

[2] (i) Official Communication Number 3362, dated December 2, 2006; (ii) Forensic Chemistry
Manual (MA-QF-01); (iii) Official Communication Number 563, dated February 26, 2007; (iv)
Initiation Order for Detailed Report Number AC/PGR/MICH/LC/148/2006, dated December 2,
2006; (v) Order dated December 2, 2006 "through which the Social Representation of the
Federation resolves to add detailed report number AC/PGR/MICH/LC/148/2006 to criminal
investigation number AP/PGR/MICH/LC/1_8/06; (vi) Security Order regarding container
number PONU 424478, dated December 2, 2006; (vii) Ocular Inspection Proceeding and
Authorization, dated December 2, 2006 and signed by forensic chemists Guillermo Amezcua
Camarillo and Jose A. Montes Duenas; (viii) Official Communication Number 348/CRS/2006,
dated December 8, 2006 and signed by Head of Jurisdiction No. 8, Lazaro Cardenas of the
Health Services of Michoacan; (ix) Official Communication 326-SAT-A51-ADM-1114, dated
December 12, 2006 signed by Victor Manuel Monraz Ponca, Customs Administrator at Lazaro
Cardenas.

documents produced by the Government thus far, and the translations of all documents that the

Government has translated for use in its case against Mr. Ye Gon;

WHEREFORE, Defendant further respectfully requests that this Court review *in camera*

any and all requests for evidence made by the Government in this case.

Dated August 12, 2008

Respectfully Submitted,

/s/  Martin F. McMahon, Esq.
Martin McMahon, Esq., D.C. Bar Number: 196642
Martin McMahon & Associates
1150 Connecticut Ave., N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4343
mfm@martinmcmahonlaw.com
*Counsel for Defendant Ye Gon*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 12TH day of August, 2008, I electronically filed the foregoing

Motion to Compel Discovery and Motion for *In camera* Review of Government's Foreign

Discovery Requests with the Clerk of Court using the CM/ECF system, which will send a

notification of such filing (NEF) to the following:

Paul W. Laymon, Esq.
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, NW
Suite 8414
Washington, DC 20005
(202) 514-1286
Email: paul.laymon@usdoj.gov

Wanda J. Dixon, Esq.
U.S. ATTORNEY'S OFFICE
1400 New York Avenue, NW
Room 8414
Washington, DC 20530
(202) 307-0377
Email: wanda.dixon@usdoj.gov

/s/  Martin F. McMahon, Esq.
Martin McMahon, Esq.,

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The United States of America | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | File: 07-181 |
| | ) | Hon. Emmet G. Sullivan |
| v. | ) | |
| | ) | |
| Zhenli Ye Gon | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY AND MOTION FOR *IN CAMERA* REVIEW OF GOVERNMENT FOREIGN DISCOVERY REQUESTS**

Over the past year, the Government has established a pattern of denying Mr. Ye Gon's requests for specific discovery materials. Virtually since the commencement of this case, the Government has failed to produce requested documents and objects which are discoverable under Fed. R. Crim. Pro. 16. Now that Mr. Ye Gon has been incarcerated in excess of one year while the Government continues to search for evidence against him, Mr. Ye Gon respectfully requests that this Court compel the Government to produce the crucial and potentially exculpatory documents and objects he has requested, as well as any other documents, objects or statements which may be exculpatory.

**FACTUAL BACKGROUND**

Counsel for Mr. Ye Gon has contacted the Government on several occasions regarding production of discovery which is crucial to the development of the defense case, and which will help to prove Mr. Ye Gon's innocence. Among other in-person requests, defense counsel has made the following written requests to the Government: (1) to produce the log book maintained

by the Mexican Department of Health,[3] (2) to produce the log books seized from Mr. Ye Gon's

warehouse,[4] (3) to produce the seized chemical shipment, and/or samples from the shipment and

chain of custody documentation establishing how it was handled and transported from the time

of seizure, as well as any testing methods, results, reports, and/or findings,[5] (4) to produce for

inspection the laptop computer, desktop computer and cell phones seized from Mr. Ye Gon at the

time of his arrest and later from the house where he was residing, including the forensic testing

reports related to these seized items,[6] and (5) to produce all documentation pertaining to the

money seized from Mr. Ye Gon's home and warehouse in Mexico.[7]

Now, ten months after defense counsel's first written request to the Government, none of

the requested discovery has been produced. In response to most of defense counsel's requests,

the Government has repeatedly claimed its inability to produce the requested discovery on the

ground that the Mexican government did not provide it to the prosecution.[8] On the other hand,

the Government has also repeatedly stated that it is conducting a joint investigation with

---

[3] See Exhibits 3, 4, 5, and 6; see also Defendant's Status Report Item 5 dated February 1, 2008; Defendant's Status Report Item 3 dated March 13, 2008.

[4] Id.

[5] See Defendant's Status Report Item 9 dated February 1, 2008; see also Defendant's Status Report Item 2 dated March 13, 2008.

[6] See Exhibit 6, 7, 8, 9, and 10; Defendant's Status Report Items 6-8 dated February 1, 2008; see also Defendant's Status Report Items 5 and 7 dated March 13, 2008.

[7] See Defendant's Status Report Item 9 dated February 1, 2008; see also Defendant's Status Report Item 1 dated March 13, 2008.

[8] See November 14, 2007 Hrg. Trans. 6:4-18 (stating that the prosecution has been unable to locate the logbook) attached hereto as Exhibit 11; see also December 20, 2007 Hrg. Trans. 44-45 (stating that documents are in Mexico waiting to be picked up and that "Now, if we haven't turned over the item that you have specifically requested, it is because we don't have it.") attached hereto as Exhibit 12; March 18, 2008 Hrg. Trans. 11:3-14 (stating that prosecution does not have the actual samples of the substances and are awaiting processing of the outstanding Mexican MLAT request) attached hereto as Exhibit 13; March 18, 2008 Hrg. Trans. 16-18 (stating that the Mexican authorities have not turned over all the documents due to their use in Mexican Court proceedings) attached hereto as Exhibit 14.

Mexican authorities,[9] DEA agents participated in on-site investigation of Mr. Ye Gon's

warehouse and factory,[10] and the prosecution admits working in a cooperative manner with the

Mexican government,[11] which in fact was the Government's stated reason for not filing an

official MLAT request with the Mexican government until many months *after* Mr. Ye Gon's

indictment.[12] Indeed, the Government even produced blank pages of the log book ("libro de

controle")[13] which Mr. Ye Gon has been requesting production of since October 18, 2007,[14] all

the while maintaining that the log book could not be found.[15]

     Similarly, the laptop and cell phones seized from Mr. Ye Gon at the time of his arrest –

---

[9] See Exhibits 15 and 16 (stating that in March 2006 DEA agents stationed in Mexico and the Mexican Authorities launched a joint investigation concerning defendant).

[10] See Exhibit 16 (stating that on April 26, 2007 DEA Special Agent Eduardo Chavez and an unidentified DEA Forensic Chemist(s) traveled to the UNIMED manufacturing plant to test for chemical residue) ); see also Exhibit 17 (stating that the prosecution has spoken with the DEA special agent who began reviewing the original evidence shortly after the seizure); Exhibit 18 (stating that the prosecution has spoken with the DEA special agent who, pursuant to Mr. Laymon's request, went back to UNIMED in November 2007 to search again for the log book).

[11] See Exhibit 19 (stating that a team from the U.S. will travel to Mexico in early November to scan, copy, and transport documents which may take several weeks.); see also November 14, 2007 Hrg. Trans. 5:22-25 (stating that prosecution has consulted with the 2 Mexican prosecutors and the DEA agent who was in Mexico) attached hereto as Exhibit 20; December 20, 2007 Hrg. Trans. 38:1-2  (In response to Court's inquiry as to the level of cooperation and diligence by the foreign authorities concerning the MLAT requests, the government responded "It's been positive.") attached hereto as Exhibit 21; December 20, 2007 Hrg. Trans. 47-48 (stating that U.S. government has the opportunity to look through the 20 boxes in Mexico which have not yet been transported to the U.S.) attached hereto as Exhibit 22; December 20, 2007 Hrg. Trans. 52:15-16 (stating that members of the prosecution team have recently traveled in connection with the case) attached hereto as Exhibit 23; March 18, 2008 Hrg. Trans. 11:20-22 ("We are in constant communication with officials in the Mexican government.") attached hereto as Exhibit 24; March 18, 2008 Hrg. Trans. 27:  (stating government is in communication with China and "...we are hopeful that our requests will be fruitful.") attached hereto as Exhibit 25; March 18, 2008 Hrg. Trans. 33:  (the request to China is pending different channels) attached hereto as Exhibit 26.

[12] See December 20, 2007 Hrg. Trans. 36:10 (stating that formal MLAT requests were made to Mexico) attached hereto as Exhibit 27.

[13] See Exhibit 4 (8 blank pages of log book included in "Tomos" production).

[14] See Exhibit 3 ("On numerous occasions we have asked the Government to produce our client's "log book"").

[15] See Exhibits 17, 18, and 19.

materials which the Government admits are in the possession of the DEA – also have not been produced for inspection despite repeated requests. Although the Government produced disks purportedly containing the contents of the seized computers, the content of these disks was so highly corrupted that the desktop files were rendered unreadable.[16] When defense counsel sought to inspect the computers, this request was denied.[17] Moreover, the Government has *never* given the defense an opportunity to inspect the cell phones, even though the cell phones have been in the Government's possession, custody and control since Mr. Ye Gon's arrest over one year ago.

Additionally, in reviewing the many Mexican "tomos" which constitute the prosecution's sole discovery production thus far and which document the *Mexican* government's investigation, defense counsel has discovered documents confirming that at least six samples were taken from the Unimed shipment seized in December 2006 and tested by the Michoacan Chemical Laboratory and the Central Laboratory of Mexico.[18] Since these reports are in fact inherently contradictory, the defense seeks production of these samples as well as all testing results from both the Michoacan Chemical Laboratory and the Central Laboratory, and all other documents referencing any alleged testing of the seized shipment.

Specifically, the December 3, 2006 the Michoacan Chemical Laboratory report indicates that the scientist conducting the test, Martha Guzman Catañeda, a certified forensic chemist, obtained the samples herself and determined that the seized chemical belonged to the "AMIDES" family, and although she was unable to conclusively determine the precise identity

---

[16] See Defendant's Status Report Item 5 dated March 13, 2008; see also Declaration of Jeffrey R. Gross Item 5, Defendant's Exhibit A to Status Report dated March 13, 2008; December 20, 2007 Hrg. Trans. 60:14—61:2 (ordering government to turn over or permit inspection of the laptop within 14 days) attached hereto as Exhibit 28.
[17] See Exhibit 29.
[18] See Exhibits 1 and 2 (Mexican reports regarding seized shipment)

of the chemical, she *was* able to determine that it was *not* one of the over 60,000 chemicals

contained in her spectragraph database, *i.e.*, controlled substances. Thus we learn from this

report that the chemical substance she tested could not have been ephedrine or pseudoephedrine

for two reasons: (1) neither ephedrine or pseudoephedrine or its salts and isomers are in the

"AMIDES" family,[19] and (2) her database of over 60,000 substances must have included

ephedrine, pseudoephedrine and their salts and isomers, so in finding that the chemical did not

match those in her database, she also determined that the chemical was neither ephedrine or

pseudoephedrine. However, the February report from the Central Laboratory of Mexico claims

that the six samples were tested there and a report was issued on December 2, 2006, one day

*before* Ms. Guzman Catañeda's report, stating that the samples contained ephedrine acetate, a

salt of ephedrine. However, since Ms. Guzman Catañeda's report indicates that she took the

initial samples, and *then* recommended transfer of the samples to the Central Laboratory on

December 3, 2006, there is no way to reconcile how the Central Laboratory had the samples one

day before she recommended the samples be transferred.

   Despite the contradictory nature of the Michoacan Chemical Laboratory and Central

Laboratory reports, the Mexican Government apparently relied on the results of the Central

Laboratory reports in securing a search warrant to raid Mr. Ye Gon's residence, factory and

warehouse on March 15, 2007.[20] Thus, it is crucial for preparation of the defense, in particular a

motion to suppress, that all Mexican law enforcement documents related to the March 15, 2007

raids, including the Mexican search warrant and underlying affidavit, if any, as well as the

---

[19] See Exhibit 33
[20] See Exhibit 16 (listing that the seizure of the December 5, 2006 shipment as one of the bases
for probable cause to arrest defendant because "A sampling of the substance conducted by the
Mexican Customs' Central Laboratory identified it as N-Acetylpseudoephedrine, a derivative of
pseudoephedrine/ephedrine.").

documents referenced in the conflicting reports,[21] be produced.

Finally, defense counsel has reason to believe that the Government obtained, or at a minimum inspected, samples from the seized Unimed shipment which were taken by the supplier, Chifeng Arker, prior to shipment of the chemicals. Defense counsel's belief that these samples exist and were obtained, or were at least *obtainable*, by the Government is based on international/Chinese regulations requiring that all international chemical shipments be sampled before shipping.[22] Defense counsel is also aware that the Government has visited Chifeng Arker on at least 2 occasions in 2007, and as recently as July of this year. Not only has the

---

[21] (i) Official Communication Number 3362, dated December 2, 2006; (ii) Forensic Chemistry Manual (MA-QF-01); (iii) Official Communication Number 563, dated February 26, 2007; (iv) Initiation Order for Detailed Report Number AC/PGR/MICH/LC/148/2006, dated December 2, 2006; (v) Order dated December 2, 2006 "through which the Social Representation of the Federation resolves to add detailed report number AC/PGR/MICH/LC/148/2006 to criminal investigation number AP/PGR/MICH/LC/1_8/06; (vi) Security Order regarding container number PONU 424478, dated December 2, 2006; (vii) Ocular Inspection Proceeding and Authorization, dated December 2, 2006 and signed by forensic chemists Guillermo Amezcua Camarillo and Jose A. Montes Duenas; (viii) Official Communication Number 348/CRS/2006, dated December 8, 2006 and signed by Head of Jurisdiction No. 8, Lazaro Cardenas of the Health Services of Michoacan; (ix) Official Communication 326-SAT-A51-ADM-1114, dated December 12, 2006 signed by Victor Manuel Monraz Ponca, Customs Administrator at Lazaro Cardenas.

[22] See Law of the People's Republic of China on Import and Export Commodity Inspection, (adopted at the Sixth Meeting of the Standing Committee of the Seventh National People's Congress on Feb. 21, 1989, amended according to the Decision on Amending the Law of the People's Republic of China on Import and Export Commodity Inspection of the 27th Meeting of the Standing Committee of the Ninth National People's Congress on April 28, 2002, effective Aug. 1, 1989), art. 6, *original and translation available at* http://www.lawinfochina.com/law/display.asp?db=1&id=2307&keyword=inspection%20export (last visited Aug. 11, 2008) ("The assessment procedures shall include: sampling, inspecting and checking; evaluating, validating and qualification guaranteeing; registering, recognizing and approving, and the combination of them."); see also Provisions on Inspection Samples of Import and Export Commodities (promulgated by the State Administration of Import and Export Commodity Inspection on Nov. 12, 1988, effective Nov. 12, 1988), *original and translation available at* http://www.lawinfochina.com/law/display.asp?db=1&id=778&keyword=inspection%20export (last visited Aug. 11, 2008) (detailing sampling procedures and ordering with respect to exports that a certain quantity of representative samples should be retained until the validity of time of claim stipulated in the contract expires, or if not stipulated a period of six months).

Government failed to produce the samples taken by Chifeng Arker, but it has produced no documents, statements or other discovery related to its visits to Chifeng Arker in Inner Mongolia, despite Mr. Ye Gon's request for this information.[23]

<strong>ARGUMENT</strong>

The discovery materials sought by Mr. Ye Gon are crucial to development of the defense case – and thus are discoverable under Rule 16 of the Federal Rules of Criminal Procedure – because, as discussed below, these materials will help demonstrate that the charges against Mr. Ye Gon are founded on inaccuracies and invalid inferences. United States v. Libby, 429 F. Supp.2d 1, 5 (D.D.C. 2006) ("Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody or control and . . . the item is material to preparing the defense") (quoting Fed. R. Crim. P. 16(a)(1)(E)). Moreover, due to their exculpatory nature, the discovery materials sought by Mr. Ye Gon are also subject to disclosure under Brady v. Maryland, 373 U.S. 83 (1963).

I.    THE REQUESTED MATERIALS ARE DISCOVERABLE UNDER RULE 16
      BECAUSE THEY ARE WITHIN THE GOVERNMENT'S POSSESSION, CUSTODY
      OR CONTROL AND ARE MATERIAL TO PREPARING THE DEFENSE

"The language and spirit of [Rule 16] are designed to provide to a criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case." Libby, 429 F. Supp.2d at 5 (D.D.C. 2006) (quoting United States v. Poindexter, 727 F. Supp. 1470, 1473

---

[23] See December 20, 2007 Hrg. Trans. 70:11-14 (Mr. McMahon states that no documents have been produced to the defense team concerning the DEA agents' visit to Chifeng Arker in Inner Mongolia) attached hereto as Exhibit 30.

(D.D.C. 1989)).  Discovery must be produced by the Government when the Rule's two-prong

test is met: (1) the documents or objects are within the Government's possession, custody or

control, and (2) the documents or objects are material to the preparation of the defense.  See Rule

16(a)(1)(E).  Both prongs of this test are met in the instant case.

In determining whether the first prong is met – that documents are within the possession,

custody or control of the government – "courts have in the main been more concerned with

fairness to the defendant, on the one hand, and the government's ease of access to the documents

sought, on the other, than with the issue whether the documents are actually within the physical

possession of the prosecutor." Libby, 429 F. Supp.2d at 5-6.  Despite this concern for fairness,

the Government's grounds for denying Mr. Ye Gon's discovery requests thus far, have been

squarely based on their claims that the materials are not in their possession, but instead in the

possession of the DEA or the Mexican government.  However, this misapplies the operative test,

which is one of fairness and ease of access, particularly in light of the close cooperative

relationship that the prosecution has maintained with both of these entities.  Id. at 6 (relying on

United States v. Brooks, 966 F.2d 1500, 1503 (D.C.Cir. 1992), and United States v. Ehrlichman,

559 F.2d 31, 74 (D.C.Cir. 1976), in finding that "documents maintained by other components of

the government which are closely aligned with the prosecution must be produced"); see also

United States v. Karake, 281 F.Supp.2d 302, 309 (D.D.C. 2003) (finding defendants were

entitled to the disclosure of evidence that might demonstrate cooperation between the U.S. and

foreign governments sufficient to reveal an agency relationship including but not limited to

information that defendants were held at U.S. officials' request or questioned at their direction

because such information was crucial to motions to suppress statements made abroad).

As in Karake, where the defendants were entitled to discover evidence demonstrating that

the Rwandan government acted as an agent of the United States government so that the

defendants could raise constitutional challenges to the evidence, there is substantial evidence in

the instant case indicating that the U.S. government not only cooperated with Mexican

authorities in their investigation of Mr. Ye Gon, but that the U.S. government even exercised

control over the process.[24]   Thus, not only were the two governments aligned in their

investigation, but the U.S. government's role in the investigation may implicate violations of Mr.

Ye Gon's constitutional rights.

II.    THE REQUESTED MATERIALS ARE SUBJECT TO DISCLOSURE UNDER
       BRADY BECAUSE THEY ARE EXCULPATORY IN NATURE

      Under Brady, materials which are exculpatory, i.e., "evidence favorable to an accused . . .

where the evidence is material either to guilt or to punishment, irrespective of the good faith or

bad faith of the prosecution," must be disclosed to the defendant.  See United States v. Johnson,

519 F.3d 478, 488 (D.C. Cir. 2008) (quoting Brady, 373 U.S. at 87).  Brady also imposes an

obligation on the Government to search sources which may contain exculpatory materials, in

particular, when those documents and/or sources are specifically identified by the defendant.

United States v. Safavian, 233 F.R.D. 12, 19 (D.D.C. 2005) ("It is insufficient for the Justice

Department merely to state that while documents are not currently in its (or the FBI's) possession

it is continuing to make inquires of GSA employees….  While this certainly is a helpful step to

obtain some relevant documents, it is not the systematic response that is required of the

government under Rule 16 and Brady.); Brooks, 966 F.2d at 1504 ("Where, as here, however,

there is an explicit request for an apparently very easy examination, and a non-trivial prospect

that the examination might yield material exculpatory information, we think the prosecution

should make the inquiry.").

---

[24] See Exhibits 31 and 32.

The discovery sought by the Defendant comes within the Brady doctrine because defense counsel has good reason to believe it contains information which is exculpatory. First, the log books demonstrate that Mr. Ye Gon's pharmaceutical business was conducted entirely under the watch and control of the regulating agency, COFEPRIS, thus demonstrating the historical legitimacy of Unimed's pseudoephedrine importation and countering paragraph 26 of DEA Agent Chavez's affidavit. The log books will also demonstrate that four major Mexican pharmaceutical companies purchased pseudoephedrine from Unimed in 2006 *with the blessing of COFEPRIS* – a transaction that Unimed would not have engaged in if it was in the business of selling pseudoephedrine on the black market at substantially higher prices, as claimed by DEA Agent Chavez. Second, the seized chemicals and the samples taken from them, as well as all of the testing reports and findings made by the Michoacan Chemical Laboratory in Morelia and the Mexican Central Laboratory will demonstrate the seized chemical was not in fact a controlled substance, and instead was the non-controlled, non-psuedoephedrine-derived cold medicine precursor Mr. Ye Gon intended to import. Third, the underlying reports indicating that the seized chemical contained ephedrine, along with the warrant and underlying affidavit(s), will indicate that the raids on Mr. Ye Gon's residence, factory and warehouse were based on corrupted test samples, and consequently false reports, thus creating a basis to suppress all evidence derived from those searches. Fourth, the computers and cell phones will help demonstrate Mr. Ye Gon's business plan and legitimate pharmaceutical endeavors.

Due to the important exculpatory nature of these discovery materials, the Government must search the Mexican files to produce the sought documents and not merely claim a lack of possession. "[A] prosecutor's office cannot get around Brady by keeping itself in ignorance, or compartmentalizing information about different aspects of a case." Brooks 966 F.2d at 1502

10

(quoting <u>Carey v. Duckworth</u>, 738 F.2d 875, 878 (7th Cir. 1984).

III.    THIS COURT SHOULD REVIEW *IN CAMERA* THE GOVERNMENT'S
REQUESTS FOR EVIDENCE ABROAD BECAUSE THE GOVERNMENT'S
BRADY OBLIGATIONS EXTEND TO THESE REQUESTS

Since "[u]nder <u>Brady</u>, the prosecutors have an affirmative duty to search possible sources

of exculpatory information, including a duty to learn of favorable evidence known to others

acting on the prosecution's behalf," the Government's requests for evidence abroad, including

but not limited to MLAT requests, should be drafted in a way that exculpatory materials will be

produced.  See <u>Safavian</u>, 233 F.R.D. at 17.  For this reason, the Defendant requests that this

Court review *in camera* all requests for evidence abroad made by the Government, to include:

(1) MLAT requests, (2) informal requests to Mexico, referenced by Government counsel during

hearings on the Government's motions for extension of the Speedy Trial Act; (3) transcripts of

the depositions which were taken in Germany, and any other depositions taken abroad.  Given

the Government's affirmative duty to search for exculpatory information, and Mr. Ye Gon's

repeated requests for very specific materials, it is crucial that this Court ensure, through *in

camera* review, that these requests and depositions reflect the Government's efforts to obtain

<u>Brady</u> materials.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to compel should be granted, and the

Government compelled to produce the discovery sought.  If the Government fails to produce this

discovery, it should be prevented from introducing any evidence which may have been rebutted

or otherwise undermined by the discovery sought, but not produced.  Further for the foregoing

reasons, this Court should review the requests for evidence abroad made by the Government,

including but not limited to all MLAT requests and depositions, to ensure that appropriate efforts

have been made to obtain <u>Brady</u> materials.

Dated August 12, 2008

> Respectfully Submitted,
>
> /s/ Martin F. McMahon, Esq.
> Martin McMahon, Esq., D.C. Bar Number: 196642
> Martin McMahon & Associates
> 1150 Connecticut Ave., N.W.
> Suite 900
> Washington, D.C. 20036
> (202) 862-4343
> mfm@martinmcmahonlaw.com
> *Counsel for Defendant Ye Gon*

## TABLE OF EXHIBITS

1.  Expert Chemist Report of Q.F.B. Martha Guzman Catañeda on Samples Issued re: AP/PGR/MICH/LC/158/2006 at Morelia, Michoacan dated December 3, 2006.

2.  Assistant Office for the Investigation of Organized Crime Report of the United Mexican States, Office of the Attorney General for the Republic

3.  Letter from Defense Counsel Martin McMahon to U.S. Attorney Paul Laymon dated October 18, 2007.

4.  Letter from Defense Counsel Martin McMahon to U.S. Attorney Paul Laymon dated November 2, 2007.

5.  Email from Defense Counsel Martin McMahon to U.S. Attorney Paul Laymon dated November 12, 2007.

6.  Letter from Defense Counsel Martin McMahon to U.S. Attorney Paul Laymon dated November 30, 2007.

7.  Letter from Defense Counsel Martin McMahon to U.S. Attorney Paul Laymon dated November 12, 2007.

8.  Letter from Defense Counsel Martin McMahon to U.S. Attorney Paul Laymon dated January 14, 2008.

9.  Letter from Defense Counsel Martin McMahon to U.S. Attorney Paul Laymon dated February 15, 2008.

10. Letter from Defense Counsel Martin McMahon to U.S. Attorney Paul Laymon dated February 20, 2008.

11. Excerpt November 14, 2007 Hrg. Trans. 6:4-18 (stating that the prosecution has been unable to locate the logbook).

12. Excerpt December 20, 2007 Hrg. Trans. 44-45 (stating that documents are in Mexico waiting to be picked up and that "Now, if we haven't turned over the item that you have specifically requested, it is because we don't have it.").

13. Excerpt March 18, 2008 Hrg. Trans. 11:3-14 (stating that prosecution does not have the actual samples of the substances and are awaiting processing of the outstanding Mexican MLAT request).

14. Excerpt March 18, 2008 Hrg. Trans. 16-18 (stating that the Mexican authorities have not turned over all the documents due to their use in Mexican Court proceedings).

15. Excerpt from Application and Affidavit for Search Warrant by Las Vegas Metropolitan Police Officer K. Hooten dated March 22, 2007.

16. Excerpt from Affidavit in Support of Complaint and Arrest Warrant for Zhenli Ye Gon by DEA Special Agent Eduardo A. Chavez.

17. Letter from U.S. Attorney Paul Laymon to Defense Counsel Martin McMahon dated November 13, 2007.

18. Letter from U.S. Attorney Paul Laymon to Defense Counsel Martin McMahon dated December 1, 2007.

19. Letter from U.S. Attorney Paul Laymon to Defense Counsel Martin McMahon dated October 21, 2007.

20. Excerpt November 14, 2007 Hrg. Trans. 5:22-25 (stating that prosecution has consulted with the 2 Mexican prosecutors and the DEA agent who was in Mexico).

21. Excerpt December 20, 2007 Hrg. Trans. 38:1-2 (In response to Court's inquiry as to the level of cooperation and diligence by the foreign authorities concerning the MLAT requests, the government responded "It's been positive.").

22. Excerpt December 20, 2007 Hrg. Trans. 47-48 (stating that U.S. government has the opportunity to look through the 20 boxes in Mexico which have not yet been transported to the U.S.).

23. Excerpt December 20, 2007 Hrg. Trans. 52:15-16 (stating that members of the prosecution team have recently traveled in connection with the case).

24. Excerpt March 18, 2008 Hrg. Trans. 11:20-22 ("We are in constant communication with officials in the Mexican government.").

25. Excerpt March 18, 2008 Hrg. Trans. 27: (stating government is in communication with China and "…we are hopeful that our requests will be fruitful.").

26. Excerpt March 18, 2008 Hrg. Trans. 33: (the request to China is pending different channels).

27. Excerpt December 20, 2007 Hrg. Trans. 36:10 (stating that formal MLAT requests were made to Mexico).

28. Excerpt December 20, 2007 Hrg. Trans. 60:14—61:2 (ordering government to turn over or permit inspection of the laptop within 14 days).

29. Letter from U.S. Attorney Paul Laymon to Defense Counsel Martin McMahon dated February 21, 2008.

30. Excerpt December 20, 2007 Hrg. Trans. 70:11-14 (Mr. McMahon states that no documents have been produced to the defense team concerning the DEA agents' visit to Chifeng Arker in Inner Mongolia).

31. Affidavit of Tomoiyi Marx Yu dated October 9, 2007.

32. Affidavit of Francisco Javier Zertuche Vazquez dated October 9, 2007.

33. Chemical structure chart for Acetethamtne, Pseudoephedrine Hcl, Ephedrine.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

The United States of America    )
                                )
                                )
                 Plaintiff       )      File: 07-181
                                )      Hon. Emmet G. Sullivan
         v.                      )
                                )
Zhenli Ye Gon                    )
                                )
                 Defendant       )
                                )

## ORDER

Upon consideration of the Defendant's Motion to Compel Discovery, it is this _____

day of _____ 2008 hereby

**ORDERED** that the Defendant's Motion to Compel Discovery is **GRANTED**.

Upon consideration of the Defendant's Motion for *In Camera* Review of Government's

Foreign Discovery Requests, it is this _____ day of _____ 2008 hereby

**ORDERED** that the Defendant's Motion for *In Camera* Review of Government's

Foreign Discovery Requests is **GRANTED**.

_____
The Hon. Emmet G. Sullivan,
United States District Court Judge

[illegible]
00082

[Seal: UNITED MEXICAN STATES, ATTORNEY GENERAL OF THE REPUBLIC]

DEPUTY ATTORNEY GENERAL OF REGIONAL CONTROL, CRIMINAL PROCEDURES, AND PROTECTION.

STATE DELEGATION OF MICHOACAN

STATE COORDINATION OF EXPERT SERVICES

SPECIALTY: FORENSIC CHEMISTRY

Folio number: 2993.

Investigation Number: AP/PGR/MICH/LC/158/2006

Regarding: Report on samples issued.
Morelia, Michoacan, December 3, 2006

Dear Mr. SERGIO DE LEON AZÚA:
OFFICER OF THE ATTORNEY GENERAL'S OFFICE OF
THE [illegible] OF THE INVESTIGATING AGENCY
CD. LÁZARO CARDENAS, MICHOACAN

In order to comply with the request included in official communication number 3362, dated December 2nd of this year, the undersigned Official Chemistry Expert of this institution does hereby provide the following:

REPORT

Background of the Problem.- I was asked to take samples of a substance related to the above-mentioned Investigation, with the objective of determining if said substance is a narcotic or psychotropic agent listed in articles 234 and 245, respectively, of the General Health Law, and/or is an essential chemical substance and/or precursor listed in article 4 of the Materials Law.

After completing analyses as indicated by the methods and techniques in the Forensic Chemistry Manual (MA-QF-01) of this institution, I determined that the substance belongs to the chemical group of the AMIDES. The next step for identification was not executed, due to the technical impossibility of completing the comparative study without an essential database that allows for the clear and unquestionable identification of the substance, since in this State laboratory, the file of spectrums generated is limited to infra-red spectrometry of substances relative to narcotics and is a paper document. Because of this, thousands of chemical substances for general and industrial use are excluded.

Page 1 of 2

Rev.: 0                    Ref.: IT-CE-QF-01                    FO-CE-QF-01



DEFENDANT'S EXHIBIT

AP/PGR/MICH/LC/158/2006
[illegible] 83

In the electronic files that we have access to, a comparison was done to approximately 60,000 infra-red spectrums and gas chromatography results coupled with mass spectrometry of products for pharmaceutical, industrial, and fiber use. However, this extensive comparison did not provide conclusive results.

Due to the facts expressed above, and given the impediment to determining the identity of the substance analyzed, it is suggested that the respective request be sent to the Central Laboratory of General Coordination of Expert Services in Mexico City.

[Illegible – obscured by seal] samples, perfectly packed, are included with this report for [illegible – obscured by seal] that are deemed necessary.
[Seal: STATE DELEGATION OF MICHOACAN, [illegible] LABORATORY, MORELIA, MICH.]

SINCERELY,
THE EXPERT CHEMIST
[illegible signature]
Q.F.B. MARTHA GUZMAN CASTAÑEDA.

Page 2 of 2

Rev.: 0                    Ref.: IT-CE-QF-01                    FO-CE-QF-01

# ABC Translation Services, LLC

P.O. Box 1242, Vienna, VA 22183 ❑   1-800-284-2468 ❑ FAX (540)-338-7276 ❑   e-mail
info@translationsabc.com

July 27, 2008

## TO WHOM IT MAY CONCERN

We certify that the attached ***Reports regarding Investigation Number AP/PGR/MICH/LC/158/2006*** for ***Law Offices of Ning Ye, ESQ*** is an accurate Spanish into Spanish translation of said document as presented to ABC Translation Services.

We also certify that the translator is both fluent in *English* and *Spanish*.

Sincerely,

Jodi S. Castro
President/CEO

DE LAS AMÉRICAS. DON BENITO JUÁREZ GARCÍA".

J0082



**SUBPROCURADURÍA DE CONTROL REGIONAL,
PROCEDIMIENTOS PENALES Y AMPARO.**

**DELEGACIÓN ESTATAL EN MICHOACÁN**

**COORDINACIÓN ESTATAL DE SERVICIOS
PERICIALES.**

**ESPECIALIDAD DE QUÍMICA FORENSE.**

Número de Folio: **2993.**

Número de Averiguación Previa:
**AP/PGR/MICH/LC/158/2006.**

Asunto: Se emite Informe de toma de muestras.

Morelia, Michoacán, 03 de diciembre de 2006.

PROCURADURÍA GENERAL
DE LA
REPÚBLICA

Licenciado:
SERGIO DE LEÓN AZÚA.
AGENTE DEL MINISTERIO PÚBLICO DE LA
FEDERACIÓN TITULAR DE LA AGENCIA
INVESTIGADORA.
CD. LÁZARO CÁRDENAS, MICHOACÁN.

La suscrita Perito Química Oficial de esta Institución; para dar cumplimiento a la petición con número de oficio 3362 de fecha 02 de diciembre del año en curso, ante Usted rindo el siguiente:

### I N F O R M E

**Planteamiento del Problema.-** Se me solicitó recabar muestras de la sustancia relacionada con la Averiguación Previa al rubro citada, con la finalidad de determinar si corresponde a alguno de los estupefacientes o psicotrópicos de los considerados como tales en los artículos 234 y 245 respectivamente de la Ley General de Salud y/o sustancias químicas esenciales y/o precursores de los señalados en el artículo 4 de la Ley de la Materia.

Una vez efectuados los análisis mediante métodos y técnicas señalados en el Manual de Química Forense (MA-QF-01) de esta Institución; fue posible llegar hasta la etapa de caracterizar el grupo químico de la sustancia que resulta ser las AMIDAS.
El siguiente paso de identificación no se lleva a cabo por la imposibilidad técnica que significa el no contar con un banco de datos indispensable para el estudio comparativo que lleve a la identificación plena e incuestionable de la sustancia, toda vez que en este laboratorio Estatal el archivo de espectros generado está limitado a espectrofotometría de Infra-rojo de sustancias relativas a narcóticos y es de tipo documental impreso; de tal suerte que quedan excluidas millares de sustancias químicas de uso general e industrial.

Página 1 de 2

Rev.: 0                    Ref.: IT-CE-QF-01                    FO-CE--QF-01

AP/PGR/MICH/LC/158/2006.

FOJA 83

En los archivos electrónicos a los que se tiene acceso, se realizó una comparación con aproximadamente 60,000 espectros en infra-rojo y cromatografía de gases acoplado a espectrometría de masas de sustancias de uso farmacéutico, industrial y de fibras; no obstante esta amplia comparación no arrojó resultados concluyentes.

Por lo antes expuesto y dado el impedimento de llegar a la identidad de la sustancia analizada, se sugiere enviar la petición respectiva al Laboratorio Central de la Coordinación General de Servicios Periciales en la Ciudad de México D.F.

Las 6 (seis) muestras, perfectamente embaladas, se anexan al presente informe para los efectos que se juzguen necesarios.

ATENTAMENTE
LA PERITO QUIMICA

Q.F.B. MARTHA GUZMÁN CASTAÑEDA.

DELEGACION ESTATAL
EN MICHOACAN
LABORATORIO QUIMICO
MORELIA, MICH.
'dlc/EPR.

Página 2 de 2

Rev.: 0                    Ref.: IT-CE- QF-01                    FO-CE-QF-01

<Pg 2>

<seal: UNITED MEXICAN STATES,
OFFICE OF THE ATTORNEY GENERAL
FOR THE REPUBLIC>
ASSISTANT OFFICE FOR THE INVESTIGATION OF
ORGANIZED CRIME

<handwritten: 334>
<handwritten: 2>
17326

GEORGINA AGUILLON ORTIZ, JUAN JOSE ESCANDON PAZ, and any others who are responsible for the crimes in VIOLATION OF THE FEDERAL LAW AGAINST ORGANIZED CRIME and CRIMES AGAINST HEALTH and those that result in offense to society.

2. - Official communication number 563, dated the twenty-sixth day of February, year two thousand seven, signed by Atty. Sergio Alberto de Leon Azua, an official from the Office of the Public Prosecutor for the Federation, by means of which criminal investigation number AP/PGR/MICH/LC/150/06 was remitted to the SIEDO due to INCOMPETENCE, and by which the disposition of container number PONU 1424478, with tracking number 51139587, containing the white-colored, granular substance evaluated by institutional scientists, who concluded that it contained ACETAMINE and EPHEDRINE ACETATE, was left in the facilities of the 82nd Infantry Battalion.

3. – Initiation Order for detailed report number AC/PGR/MICH/LC/148/2006, dated the second of December of the year two thousand six.

4. – Order dated the second of December of the year two thousand six, through which the Social Representation of the Federation resolves to add detailed report number AC/PGR/MICH/LC/148/2006 to criminal investigation number AP/PGR/MICH/LC/1-8/06 <missing digit obscured by markings on document>.

5. – Security Order dated the second day of December of the year two thousand six regarding container number PONU 424478, which contains a white, granular substance.

6. – Ocular inspection proceeding and authorization, dated the second day of December of the year two thousand six, signed by forensic chemists Guillermo Amezcua Camarillo and Jose A. Montes Dueñas, in which they form the following CONCLUSIONS: FIRST.- The six (6) samples of the previously described white, granular substance in this report consist of a mixture of ACETAMINE, N-(2-(acetyloxy)-1-methyl-2-phenylethyl)-N-methyl- and EPHEDRINE ACETATE . SECOND.- ACETAMIDE, N-(2-(acetyloxy)-1-methyl-2-phenylethyl)-N-methyl- is NOT considered by The General Health Law to be a psychotropic and/ or narcotic drug, NOR is it a chemical precursor or essential chemical according to the Federal Law for Control of Chemical Precursors, Essential Chemical Products, and Machines for the Manufacture of Capsules, Tablets, and/ or Compressed Tablets. THIRD.- EPHEDRINE ACETATE is a chemical derivative of EPHEDRINE, which is considered by the General Health Law to be a Psychotropic drug, and is considered a Chemical Precursor by the Federal Law for Control of Chemical Precursors, Essential Chemical Products, and Machines for the Manufacture of Capsules, Tablets, and/ or Compressed Tablets.

8. – Official communication number 348/CRS/2006, dated the 8th (eighth) of December of the year 2006 (two thousand six), signed by the Head of Jurisdiction No. 8, Lazaro

DEFENDANT'S
EXHIBIT
2

Cardenas, of the Health Services of Michoacan, by which it is expressed that the Clerk of Court has no interest in giving a licit use to the EPHEDRINE ACETATE related to criminal investigation AP/PGR/MICH/LC/158/06, therefore, there exists no impediment to proceeding with the destruction of the aforementioned psychotropic.

9. – Official communication 326-SAT-A51-ADM-1114, dated the twelfth of December of the year two thousand six, signed by Victor Manuel Monraz Ponca, Customs Administrator at Lazaro Cardenas <second half of line cut off>

<End Pg 2>

# **ABC** Translation Services, LLC

*Exhibit #3*

P.O. Box 1242, Vienna, VA 22183 ❑    1-800-284-2468  ❑ FAX (540)-338-7276  ❑    e-mail
info@translationsabc.com

June 18, 2007

## <u>TO WHOM IT MAY CONCERN</u>

We certify that the attached **_Lab Reports_** for **_Law Offices of Ning Ye, ESQ_** are accurate
Spanish into English translations of said documents as presented to ABC Translation
Services.

We also certify that the translator is both fluent in *Spanish* and *English*.

Sincerely,

Jodi S. Castro
President/CEO

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

———————

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

JACQUELYN GLUCK
Of Counsel
Admitted in District of Columbia

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

October 18, 2007

**SENT VIA ELECTRONIC MAIL ONLY**

Paul Layman, Esq.
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, NW
Suite 8414
Washington, DC 20005
(202) 514-1286
Email: paul.laymon@usdoj.gov

Re:   <u>U.S. v. Ye Gon</u>
       1:07-cr-181

Dear Paul:

On numerous occasions we have asked the Government to produce our client's "log book." While we appreciate the boxes of documents the Government has started to produce, of paramount importance is the immediate production of our client's "log book." The reason our client's "log book" is important, is that it contains all the controlled substance transactions our client's company Unimed Pharmaceuticals was involved in from 2000-2006. The Mexican authorities had to have seized this book in their March 2007 raid of our client's office and warehouse. Because you have stated on at least two occasions that the Mexican Government is cooperating with the U.S. Government to produce documents for this case, we ask that you contact the appropriate officials in Mexico and have them produce our client's "log book" immediately.

As you know, the Asset Forfeiture Division of the U.S. Department of Justice has initiated a proceeding against our client in Hong Kong. A hearing is set for November 21, 2007. Because our client's "log book" will show clearly, the legitimacy of his pharmaceutical transactions, we ask that you expedite the production of this *one item* as it will prove our client's innocence both in the U.S. and abroad.


DEFENDANT'S EXHIBIT
3

We appreciate your assistance and cooperation as always.

Very Truly Yours,

Martin F. McMahon, Esq.

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

JACQUELYN GLUCK
Of Counsel
Admitted in District of Columbia

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

November 2, 2007

**BY FAX**
Paul Laymon, Esq.
U.S. Department of Justice
1400 New York Avenue, N.W.
Suite 8124
Washington D.C. 20005

Re: <u>U.S. v. Ye Gon</u>, 1:07-cr-181

Dear Paul:

I am writing in response to your letter of October 21, 2007, and to follow up on discovery you have produced subsequently, to renew our urgent request for expedited production of the UNIMED "log book," which we have since learned is called the "Libro de Control." The Libro de Control is apparently a record of the company's controlled substance transactions that is mandated by the Mexican Health Department. We have completed a preliminary review of the various CDs and eight boxes of documents you produced to us last week – as best we could, given that almost all of these materials are in Spanish – and have found what we believe to be a miscopied (unreadable) excerpt from the Libro de Control, which is attached hereto. (The lines on the pages, together with the stamp, are consistent with the Libro de Control.)

To further assist you in locating and/or identifying this important document, we understand that there were two copies of the Libro de Control maintained at the UNIMED warehouse in Mexico City. One was kept in the "safety box" (or safe) in the first floor computer server room on the first floor. The other was kept in Mr. Ye Gon's second-floor office under a white table. Both copies are undoubtedly in the custody of the Mexican authorities.

In view of the above, you should be able to obtain and produce the complete Libro de Control, in legible form, without further delay. As I informed you last week, unless we receive this complete document promptly we will have no choice but to file a motion to compel.



DEFENDANT'S
EXHIBIT
4

I would also like to notify you of additional problems we have had in reviewing the various materials you have produced solely in CD format (i.e., without corresponding hard copy). We have found that a number of the documents on CD have been corrupted and are thus unreadable. There is also, as you know, no index for the CD materials – nor, for that matter, for any of the documents you have produced. Are indices available? Also, are there hard copies of the documents that have been produced solely on CD? Please call me at your earliest convenience to discuss these issues.

Very Truly Yours,

Martin F. McMahon, Esq.

2



**Martin F. McMahon**

| | |
|---|---|
| **From:** | Martin F. McMahon [mfm@martinmcmahonlaw.com] |
| **Sent:** | Monday, November 12, 2007 1:27 PM |
| **To:** | 'Laymon, Paul' |
| **Cc:** | 'langelo@martinmcmahonlaw.com'; 'ynyale@aol.com' |
| **Subject:** | FW: USA v. Ye Gon, 1:07-cr-181 |
| **Attachments:** | Ltr to Laymon 11.2.07.pdf |

Dear Paul,

Are we going to get an update on the log book before the hearing on Wednesday?

Best regards,

Martin F. McMahon, Esq.
Martin F. McMahon & Associates
1150 Connecticut Ave. N.W.
Suite 900
Washington, DC  20036
(202) 862-4343 office
(202) 828-4130 fax
www.martinmcmahonlaw.com

**From:** Martin F. McMahon [mailto:mfm@martinmcmahonlaw.com]
**Sent:** Friday, November 02, 2007 1:19 PM
**To:** 'Laymon, Paul'
**Cc:** 'ynyale@aol.com'; 'langelo@martinmcmahonlaw.com'
**Subject:** USA v. Ye Gon, 1:07-cr-181

Dear Paul,

Please find attached a letter regarding your production of documents and CD-ROMs.

Best regards,

Martin F. McMahon, Esq.
Martin F. McMahon & Associates
1150 Connecticut Ave. N.W.
Suite 900
Washington, DC  20036
(202) 862-4343 office
(202) 828-4130 fax
www.martinmcmahonlaw.com

DEFENDANT'S
EXHIBIT
5

8/7/2008

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTINE M. HILGEMAN
Associate
Admitted in Virginia

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

November 30, 2007

**BY FAX**

Paul Laymon, Esq.
U.S. Department of Justice
1400 New York Avenue, N.W.
Suite 8124
Washington D.C. 20005

Re: U.S. v. Ye Gon, 1:07-cr-181

Dear Paul:

As you know, we have sent you letters dated November 2, November 12 and November 13 regarding discovery of particular, important information. In light of that correspondence, and in view of your comments on the record at the latest hearing before Judge Sullivan and your representations to me in court this morning, I am writing one last time to renew our request that the Government produce *immediately* two critical sources of information – the Unimed "Libro de Control" (Control Book) and Mr. Ye Gon's Sony Vaio laptop. As explained below, there can be no legitimate excuse for the continuing delay in production of these materials, both of which are extremely important to Mr. Ye Gon's defense.

First, the Control Book. Although you informed Judge Sullivan that the Government's search for the Libro de Control was like searching for "a needle in a haystack," I have to say, with all due respect, that that is the furthest thing from the truth. There are two volumes of the Libro de Control; they are black, bound books with brown spines; they are uniform, standard-issue books *issued by COFEPRIS* (the governing Mexican Health Agency) to Unimed, with entries made by COFEPRIS' representative (by law) regarding Unimed's transactions in controlled substances. We understand they are approximately 12 inches by 18 inches in size. One volume was in the safe at the Unimed Pharm Chem warehouse in Mexico City, and the other volume was locked in Mr. Ye Gon's desk in his office at that warehouse. These books, in other words, are hardly "needles in a haystack." The Mexican authorities obviously know *exactly* what these



volumes look like, who removed them from the safe and Mr. Ye Gon's locked desk, and where they are kept now. This refutes your representation to me today that the person(s) who searched Mr. Ye Gon's office did not find a log book. Although it seems patently incredible that Unimed's safe and/or Mr. Ye Gon's locked desk were not already invaded and their contents seized, we demand that the safe and desk be opened and the log books produced.

Moreover, in view of the much-touted cooperation between the Mexican and American authorities in this case, a complete, legible copy of the pages of these two volumes (each page of which bears a governmental stamp) is merely a phone call away. Please make that phone call to Mexico, and have the scanned pages of these two volumes e-mailed to you, so you can produce them to us without further delay (without prejudice to our right to review the actual books themselves at a later time).

Second, Mr. Ye Gon's Sony Vaio laptop. Today in court you represented to me that you were aware that when the DEA arrested our client on July 23, 2007, the agents took possession of Mr. Ye Gon's dark brown briefcase, which he had with him at the time of his arrest. Further, you represented that the DEA retains possession of the briefcase and its contents, including the Sony laptop. In short, as this laptop is plainly here in the Washington area, and it has been in the Government's possession for over four months, there can be no legitimate excuse for the Government's purported inability to produce the briefcase and its contents (including the laptop) to us. As with the Libro de Control, the laptop contains a wealth of information confirming the legitimacy and scope of Mr. Ye Gon's pharmaceutical business, and it is therefore crucial to Mr. Ye Gon's defense.

We need these sources of information in order to prepare for the upcoming December 20 hearing. Please do not force us to file a motion to compel to obtain these readily available materials. I look forward to hearing from you very soon.

Sincerely,

Martin F. McMahon, Esq.

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

JACQUELYN GLUCK
Of Counsel
Admitted in District of Columbia

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

November 12, 2007

**BY FAX AND EMAIL**
Paul Laymon, Esq.
U.S. Department of Justice
1400 New York Avenue, N.W.
Suite 8124
Washington, D.C. 20005

Re: <u>U.S. v. Ye Gon</u>, 1:07-CR-181

Dear Paul:

I am writing a to follow-up on our discovery letter of November 2, 2007, with an additional discovery issue, this time related to the raid on the Wheaton, Maryland house. Specifically, I am requesting the production of additional items our client believes are in the government's possession as a result of that raid. These include a laptop computer and its files, in addition to a CD-Rom disc which is inside the laptop, which will aid in our client's defense. Our review of the documents on the series of "Wheaton" CDs your office previously provided us did not turn up any such file. We are therefore requesting production of the laptop computer.

To assist you in locating and/or identifying this computer and file, we understand that the laptop computer is a black Sony Vaio computer which was located in Mr. Ye Gon's briefcase in the Wheaton house, which he was brought back to after being arrested at a nearby restaurant. Mr. Ye Gon claims to have witnessed a female DEA agent remove his computer from the briefcase, and therefore believes this computer and its file contents are still in possession of the government.

Please call me at your earliest convenience to discuss this issue and the issues raised in our letter of November 2.

Very Truly Yours,

Martin F. McMahon, Esq.

DEFENDANT'S
EXHIBIT
7

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTINE M. HILGEMAN
Associate
Admitted in Virginia

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

January 14, 2008

**VIA FACSIMILE**

    *Re: Zhenli Ye Gon's seized computer files*

Mr. Paul Laymon
Trial Attorney
Narcotic & Dangerous Drugs Section
1400 New York Avenue, NW
Bond Building, 8th Floor
Washington, DC 20530

Dear Paul:

    As we discussed recently, while we are in receipt of the 48 DVD's containing files from Mr. Gon's laptop and desktop, these files are inaccessible unless accessed on a computer with the Encase operating system installed. Since we do not have this expensive program, and the government is unwilling to release the computers to us, we are unable to view any of the content on the DVD's given to us at this time. Consequently, we ask that an indexed list of the files contained on these DVD's be produced.

    We understand from our recent conversation that the computers cannot be produced at our offices or at your offices, but instead must be maintained at the DEA offices in Lorton, VA, in order to avoid any unintentional destruction or manipulation of the data. Since the DEA technicians obviously took measures to document and preserve the chain of custody of the contents of the computers they analyzed, this chain of custody documentation need simply be produced. Specifically, we are seeking a list of all files on the laptop and desktop, including full details regarding the type of file, when it was created, who it was created by, when it was last modified, a brief description of the contents of each file, and an index indicating which DVD's contain which files.

    This list is important for two reasons:



(1) This list will allow us to confirm, once we have access to Encase, that the contents of the DVD's match the files viewed by the DEA during the analysis.

(2) An indexed list will enable us to determine where to focus our efforts once we are able to view the contents of the DVD's.

Since we anticipate that most of the data we have requested has already been documented by the DEA during its analysis of the computers, we would like to receive the documentation as soon as possible, preferably within the next week.  If there is any information that we are seeking which the DEA is unable to provide for any reason, please ask the DEA technicians to provide a written explanation for why the specific data cannot be provided.

Thank you very much for your cooperation in this matter.

Sincerely,


Martin F. McMahon, Esq.

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTINE M. HILGEMAN
Associate
Admitted in Virginia

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

February 15, 2008

SENT VIA FACSIMILE AND ELECTRONIC MAIL
Paul Laymon, Esq.
U.S. Department of Justice
1400 New York Avenue,
Suite 8124
Washington, D.C. 20005
Email: Paul.Laymon@usdoj.gov
Fax: (202) 305-9825

Re: U.S. v. Ye Gon, 1:07-CR-00181

Dear Paul:

I am writing to follow-up on Item Number 8 on our most recent status report filed February 1, 2008 in which we indicated that we are awaiting open dates for the inspection of the laptop.

You represented to me that you were aware that when the DEA arrested Mr. Zhenli Ye Gon on July 23, 2007, the agents took possession of Mr. Ye Gon's dark brown briefcase which was on his person at the time of his arrest. Further, you indicated to me that the DEA retains possession of the contents of the briefcase, including but not exclusive to a Sony laptop computer. As it has been almost seven months since the seizure of this item, we request that you permit our computer forensic examiner, Jeffrey Gross, to examine the contents of the laptop at the DEA facility next week. Mr. Gross will be available February 18-22, 2008.

Specifically, we demand that you immediately provide us with the name and contact information of the DEA's primary examiner so that Mr. Gross may arrange to conduct one full day of examination next week. Before the appointment, Mr. Gross needs to dialogue with the DEA examiner to obtain the production of the media analysis report, a copy of the examiner's work notes, and the evidence seizure report indicating the chain of custody of the laptop.

DEFENDANT'S EXHIBIT 9

During the appointment, Mr. Gross will need to meet with the technician(s) who conducted the original analysis.   Mr. Gross wants to generate a new image of the computer onto a blank USB hard drive.  Accordingly, we request that the government determine whether they prefer whether Mr. Gross 1) provide his own blank hard drive; or 2) utilize a government blank hard drive and provide a replacement as reimbursement to the government.

Very Truly Yours,

Martin F. McMahon, Esq.

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTINE M. HILGEMAN
Associate
Admitted in Virginia

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

February 20, 2008

<u>SENT VIA FACSIMILE AND ELECTRONIC MAIL</u>
Paul Laymon, Esq.
U.S. Department of Justice
1400 New York Avenue,
Suite 8124
Washington, D.C. 20005
Email: <u>Paul.Laymon@usdoj.gov</u>
Fax: (202) 305-9825

Re: <u>U.S. v. Ye Gon</u>, 1:07-CR-00181

Dear Paul:

This letter serves as a follow up to our letter dated February 15, 2008 (copy attached hereto). We send this letter with a great sense of urgency given our computer expert's review of the Encase files produced by the Government.[1] It is now crucial for our expert to physically inspect both computers at Lorton and it is also crucial that both computers be re-imaged under his observation. Furthermore, it is urgent that our expert have access to the computers this week, as he will need time to prepare his findings for the March 18, 2008 hearing – at which the Government previously stated its intention to present a computer expert.

Physical inspection and re-imaging of both computers is necessary because of the high level of corruption of the files we were provided by the Government. First, the disks which purportedly contain the data image files of the desktop computer were corrupted to an extent that the entire file structure was unreadable. Secondly, 5.25% of the laptop's hard drive is missing and/or corrupted, and the level of corruption is so extensive in the laptop's data image file that the laptop simply could not have been functional if this level of corruption existed at the time the

---

[1] Our computer expert owns the Encase software and has extensive training and experience in the use and operation of Encase. As a result of further research, we determined that the Government's offer to share the costs of purchasing the Encase software was an inadequate means of providing Defense counsel with access to all of the data contained on the computers, as the Encase software requires considerable training in order to be used properly.


DEFENDANT'S EXHIBIT 10

laptop was seized on July 23, 2007.  However, the laptop must have been functional at the time it was seized as the data image file even indicates recent usage prior to the seizure.

In addition to rendering the majority of files unreadable, this level of corruption raises another concern, specifically the fact that the image files provided to us were not made until January 3, 2008, despite DEA protocol which requires imaging of the computer immediately after seizure.  If proper protocol had been followed in this case, we should have received image files from July 2007, when Mr. Gon was arrested and the laptop was initially seized.  Moreover, it is now absolutely essential, due to these irregularities, that the Encase reports and the examiner's notes[2] be provided to us immediately, as well as all chain of custody documents relating to the seizure of the computers.  Specifically, the following information must be produced: (1) every occasion when the computer was analyzed or accessed, (2) every agent who examined or accessed the computers, and each agent's examiner's report, (3) every Encase report generated since the date of the seizure, and (4) all documents indicating a transfer of custody of the computers from the time and date of seizure until the present.

For these reasons, arrangements must be made for our computer expert to visit Lorton this Thursday or Friday to inspect both computers and observe the re-imaging of both computers. Please contact us immediately to discuss how these arrangements may be made.

Very Truly Yours,

Martin F. McMahon, Esq.

---

[2] While Government counsel may not be familiar with these documents, the DEA forensic analysts will be knowledgeable of these documents as they are required protocol.  If the Government intends to contest whether these documents were required protocol, then all DEA forensic handbooks in effect in 2007-2008 must be produced to Defense counsel.

# MARTIN F. MCMAHON & ASSOCIATES

1150 CONNECTICUT AVENUE, N.W.
SUITE 900
WASHINGTON, D.C. 20036

MARTIN F. MCMAHON
Managing Partner
Admitted in District of Columbia, New York
and U.S. District Court of Maryland

LISA D. ANGELO
Associate
Admitted in District of Columbia and
California

CHRISTINE M. HILGEMAN
Associate
Admitted in Virginia

Established 1978

TELEPHONE (202) 862-4343
FACSIMILE (202) 828-4130

www.martinmcmahonlaw.com

JASON A. DZUBOW
Of Counsel
Admitted in District of Columbia and
Maryland

CHRISTOPHER D. BROWN
Of Counsel
Admitted in District of Columbia and
Maryland

ROBERT MANCE
Of Counsel
Admitted in District of Columbia and
Maryland

February 15, 2008

SENT VIA FACSIMILE AND ELECTRONIC MAIL
Paul Laymon, Esq.
U.S. Department of Justice
1400 New York Avenue,
Suite 8124
Washington, D.C. 20005
Email: Paul.Laymon@usdoj.gov
Fax: (202) 305-9825

Re: U.S. v. Ye Gon, 1:07-CR-00181

Dear Paul:

I am writing to follow-up on Item Number 8 on our most recent status report filed February 1, 2008 in which we indicated that we are awaiting open dates for the inspection of the laptop.

You represented to me that you were aware that when the DEA arrested Mr. Zhenli Ye Gon on July 23, 2007, the agents took possession of Mr. Ye Gon's dark brown briefcase which was on his person at the time of his arrest. Further, you indicated to me that the DEA retains possession of the contents of the briefcase, including but not exclusive to a Sony laptop computer. As it has been almost seven months since the seizure of this item, we request that you permit our computer forensic examiner, Jeffrey Gross, to examine the contents of the laptop at the DEA facility next week. Mr. Gross will be available February 18-22, 2008.

Specifically, we demand that you immediately provide us with the name and contact information of the DEA's primary examiner so that Mr. Gross may arrange to conduct one full day of examination next week. Before the appointment, Mr. Gross needs to dialogue with the DEA examiner to obtain the production of the media analysis report, a copy of the examiner's work notes, and the evidence seizure report indicating the chain of custody of the laptop.

During the appointment, Mr. Gross will need to meet with the technician(s) who conducted the original analysis. Mr. Gross wants to generate a new image of the computer onto a blank USB hard drive. Accordingly, we request that the government determine whether they prefer whether Mr. Gross 1) provide his own blank hard drive; or 2) utilize a government blank hard drive and provide a replacement as reimbursement to the government.

Very Truly Yours,

Martin F. McMahon, Esq.

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,   .

      Plaintiff,     .
               . CR No. 07-181
  v.            .

ZHENLI YE GON,      . Washington, D.C.
               . November 14, 2007
     Defendant.    . At about 9:56 a.m
               .

. . . . . . . . . . . . . . .


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
                   ROB STAPLETON, ESQ.
                   United States Deparment of Justice
                   1400 New York Avenue, NW
                   Washington, D.C.  20005
                   202-514-1286

For the Defendant:    MARTIN McMAHON, ESQ.
                   LISA ANGELO, ESQ.
                   NING YE, ESQ.
                   Martin F. McMahon & Associates
                   1150 Connecticut Avenue, NW
                   Suite 900
                   Washington, DC  20036
                   202-514-1286



DEFENDANT'S
EXHIBIT
11

Court Reporter:      JACQUELINE M. SULLIVAN, RPR
Official Court Reporter
U.S. Courthouse, Room 6720
333 Constitution Avenue, NW
Washington, D.C. 20001
202-354-3187

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

Jacqueline Sullivan, RPR
Official Court Reporter

6

1    original documents not long after they were seized, and I've

2    also consulted with our agents that have been to -- have been

3    with the translators as they review the 26,000 pages of

4    documents.  We have so far not been able to locate, if it even

5    exists, I'm not saying it exists, but we have not been able to

6    locate what the defense has described as a logbook, per se.  I

7    did present the defense this morning with a letter in which we

8    have apparently found a number of pages, not many, perhaps ten,

9    that look like they might have been from a logbook from the year

10   2002 from the early part of 2002, but those pages are apparently

11   mostly blank, so I'm not certain that that's what they are at

12   all, but the bottom line is is that though we have been looking,

13   we haven't been able to find, search an item as the defense has

14   described.  As I say that, I don't mean to say that it exists or

15   doesn't exist.  That doesn't mean that we won't eventually be

16   able to find it, but it's a little bit like looking for a needle

17   in a haystack.  We'll continue to look, and if we find it before

18   they do then we'll certainly turn over that information.

19          And this week the defense has asked me about a

20   computer that was seized from the defendant's possession.

21    Apparently it was at the home in Maryland, the home to which he

22    had been staying briefly, and I haven't had an opportunity yet

23    to determine the status of that.  I believe we have that

24    computer but I'm still checking on it.  They only made that

25    request to me this week, so I guess, Judge, in sum, that's what


Jacqueline M. Sullivan, RPR
Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,    .

        Plaintiff,      .

                . CR No. 07-181

   v.           .

ZHENLI YE GON,      . Washington, D.C.
               . December 20, 2007
    Defendant.    . At about 10:40 a.m
               .

. . . . . . . . . . . . . .  .

      ***SEALED bench conference redacted.

         TRANSCRIPT OF HEARING
    BEFORE THE HONORABLE EMMET G. SULLIVAN
        UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
                 ROB STAPLETON, ESQ.
                 WANDA DIXON, ESQ.
                 MARY MAGAVARO, ESQ.
                 United States Department of Justice
                 1400 New York Avenue, NW
                 Washington, D.C.  20005
                 202-514-1286

For the Defendant:     MARTIN McMAHON, ESQ.
                 LISA ANGELO, ESQ.
                 NING YE, ESQ.
                 Martin F. McMahon & Associates
                 1150 Connecticut Avenue, NW
                 Suite 900



DEFENDANT'S
EXHIBIT
12

Washington, DC  20036
202-862-4343

Court Reporter:          JACQUELINE M. SULLIVAN, RPR
                         Official Court Reporter
                         U.S. Courthouse, Room 6720
                         333 Constitution Avenue, NW
                         Washington, D.C. 20001
                         202-354-3187


Jacqueline Sullivan, RPR
Official Court Reporter

44

1    the defendants have been talking about for months?

2        MS. DIXON:  Your Honor, I'm glad you brought that up

3    because let me do the logbook first.  They've asked us for a

4    specific logbook, and if you notice, their requests have come in

5    different ways.  It appears that in some of their documents they

6    say that we in fact turned over the logbook.  They say that,

7    however, we blacked out the entries.  In some of the requests

8    they say we haven't turned it over at all.  What we say is this:

9    We've turned over everything that we have been able to come

10   across in that vein.  Now, if we haven't turned over the item

11   that you have specifically requested, it is because we don't

12   have it.

13       THE COURT:  Let me ask you this:  Has the government

14   turned over to defense counsel copies of all evidence or any

15   evidence that it's recovered from Mexico?

16       MS. DIXON:  Not all of it yet, your Honor.

17       Well, let me say it another way.  The first set of

18   evidence that we'd already talked about at the September hearing

19   that we talked about having gotten from Mexico and copied, they

20   have that.  We've identified more evidence, more boxes, and

21   we've discussed that with the court.  Those things haven't been

22    turned over yet because they haven't been copied and everything

23    yet.  We do intend to --

24          THE COURT:  What counsel copied and everything?

25          MS. DIXON:  In other words, they are in Mexico.


Jacqueline M. Sullivan, RPR
Official Court Reporter

45

1          THE COURT:  So you don't have them in your possession

2     then?

3          MS. DIXON:  No, no, no.  But again, I don't --

4          THE COURT:  When do you plan to get -- are they

5     available for the government to possess, to take possession of?

6          MS. DIXON:  Yes.  What has to happen, and again this

7     is a government thing, it's a large job, this amount of copying.

8     As you can imagine it's quite expensive.  We had to contract

9     out.  We got a contractor, the contractor is getting a

10     subcontractor.  Those are things that are far beyond my pay

11     grade.

12          THE COURT:  Bid contest or something?

13          MS. DIXON:  They're far beyond my pay grade and I

14     don't know how that goes.

15          THE COURT:  There are boxes of evidence that the

16     government's identified as evidence in Mexico?

17          MS. DIXON:  Yes.

18          THE COURT:  That you've identified, and they're just

19     waiting for the government to pick them up?

20          MS. DIXON:  I think so, yes, but what I want to say to

21    the Court is that we searched through those boxes and so far

22    have not come across anything like this logbook that they are

23    asking for, so I don't want to stand here and say it doesn't

24    exist, you know.  Like sometimes I've had cases where people

25    have stolen cars and then the car's recovered and then they come

Jacqueline M. Sullivan, RPR
Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,   .

      Plaintiff,     .

                . CR No. 07-181

   v.        .

ZHENLI YE GON,     . Washington, D.C.
              . March 18, 2008
    Defendant.   . At about 11:16 a.m

. . . . . . . . . . . . . . .

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
                    WANDA J. DIXON, ESQ.
                    ROBERT STAPLETON, ESQ.
                    MARY MAGAVARO, ESQ.
                    United States Department of Justice
                    1400 New York Avenue, NW
                    Washington, D.C.  20005
                    202-514-1286

For the Defendant:     MARTIN McMAHON, ESQ.
                    CHRISTINE HILGEMAN, ESQ.
                    NING YE, ESQ.
                    Martin F. McMahon & Associates
                    1150 Connecticut Avenue, NW
                    Suite 900
                    Washington, DC  20036


DEFENDANT'S
EXHIBIT
13

202-862-4343

Court Reporter:          JACQUELINE M. SULLIVAN, RPR
                         Official Court Reporter
                         U.S. Courthouse, Room 6720
                         333 Constitution Avenue, NW
                         Washington, D.C. 20001
                         202-354-3187

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

                         Jacqueline Sullivan, RPR
                         Official Court Reporter

11

1    samples of the item that was taken from the shipment of Mr. --

2    from the shipment that was stopped by Mexican customs in 2006.

3    It was a shipment to UniMed from Chifing Arker. They've asked

4    for an opportunity to examine the actual samples of the

5    substance that the Mexican laboratories analyzed. Well, that is

6    something that we don't have. That is something that we have to

7    wait for Mexico's formal response to our MLAT in order to

8    receive. We cannot comply with that request. Defense makes

9    other requests along that nature, your Honor, but I think that

10    it illustrates the fact that the Mexican MLAT remains

11    outstanding and that there is nothing that we can do short of

12    the, of course, informal cooperation that we've received, and we

13    have been sharing those documents with the defense as we get

14    them.

15         THE COURT: Let me ask you this: Do you periodically

16    inquire about the status of that formal request?

17         MS. DIXON: I'm sorry. Say that again.

18         THE COURT: Do you periodically inquire of the Mexican

19    authorities about that status of that formal request?

20         MS. DIXON: Yes, your Honor. Yes, your Honor. We are

21   in constant communication with officials in the Mexican

22   government.  The issue, however, or part of it, is that Mexico

23   has proceedings itself concerning this issue, not so much

24   against the defendant at this time, but there are others who

25   were arrested in connection with offenses that were violation of


Jacqueline M. Sullivan, RPR
Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    .

    Plaintiff,    .

. CR No. 07-181

   v.      .

ZHENLI YE GON,    . Washington, D.C.

. March 18, 2008

    Defendant.    . At about 11:16 a.m

. . . . . . . . . . . . . . .

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
        WANDA J. DIXON, ESQ.
        ROBERT STAPLETON, ESQ.
        MARY MAGAVARO, ESQ.
        United States Department of Justice
        1400 New York Avenue, NW
        Washington, D.C.  20005
        202-514-1286

For the Defendant:    MARTIN McMAHON, ESQ.
        CHRISTINE HILGEMAN, ESQ.
        NING YE, ESQ.
        Martin F. McMahon & Associates
        1150 Connecticut Avenue, NW
        Suite 900
        Washington, DC  20036



DEFENDANT'S
EXHIBIT
14

202-862-4343

Court Reporter:       JACQUELINE M. SULLIVAN, RPR
Official Court Reporter
U.S. Courthouse, Room 6720
333 Constitution Avenue, NW
Washington, D.C. 20001
202-354-3187

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

Jacqueline Sullivan, RPR
Official Court Reporter

16

1    understanding that the scanned documents or the documents that

2    have been scanned in Mexico are all the documents that are

3    relevant to this case?

4         MS. DIXON:  I'm reluctant to say that.  I think that

5    our requests have been thorough to the Mexican government.  I

6    think that they have been diligent in their desire to assist us,

7    and I am hopeful that this would be the bulk of the documents.

8    However, I have to be a little equivocal because --

9         THE COURT:  I mean, if the Mexican authorities said

10    this is everything we have.

11         MS. DIXON:  No, because there are certain things that

12    are with the courts in Mexico having to deal with the other

13    prosecutions that are pending with regard to the search warrants

14    that occurred in Mexico in this case and the charges that have

15    been brought against others in Mexico in this case.

16         THE COURT:  So what are you saying?  Are you saying

17    that there's some other evidence and/or documents that are

18    indeed in the possession of the Court that the government --

19         MS. DIXON:  Yes.

20         THE COURT:  -- does not have and cannot turn over to

21    you?

22          MS. DIXON:  That's right.  That's exactly what I'm

23    saying.

24          THE COURT:  They can't make copies, they can't get

25    permission to make copies of that evidence and/or documents and


                    Jacqueline M. Sullivan, RPR
                    Official Court Reporter

17

1    turn it over to you?

2        MS. DIXON:  Their system is a little different than

3    ours, your Honor.  They do things differently.  Once it goes

4    into possession of the court it doesn't come back out of the

5    court's possession very lightly, but those are avenues that we

6    are exploring, and we are hopeful, we are only asking the Court

7    for an additional ninety-day period.  We know what we need to

8    have happen within that ninety-day period, and we know the

9    consequences of those things not happening within the ninety-day

10    period, so I can't answer the Court's question by yes, we can

11    just ask the Mexican courts to give us things, but I will say

12    that we are working on avenues to have some kind of a happy

13    medium.  Clearly they have their prosecutions and we do too.

14    They have their time limits and we do too.

15        THE COURT:  Well, what is the avenue that exists, if

16    there is one, wherein a judicial officer in the United States

17    can request of a judicial officer in Mexico whatever this

18    information is that will assist the government in proceeding

19    with this prosecution?  Is there such a procedure as opposed to

20    government to government?  I mean, there is a government-to-

21    government procedure?

22          MS. DIXON:  I understand the Court's question, but I

23    don't think anything other than the MLATs, that's the only kind

24    of procedure that's in place to make this kind of government-to-

25    government exchange happen.  I guess they were concerned about,


                    Jacqueline M. Sullivan, RPR
                    Official Court Reporter

18

1    you know, various individual courts around the United States

2    making requests to various individual courts around the United

3    States and Mexico and they wanted to have one, I guess,

4    centralized procedure, so the MLATs are what we use and I am

5    hopeful that they will work.

6          THE COURT:  That's the diplomatic procedure, right?

7          MS. DIXON:  That's right.

8          And we understand the consequences of what may happen

9    if ninety more days passed and the process has not worked.

10         THE COURT:  What's the time limitation pursuant to the

11   speedy trial clock?

12         MS. DIXON:  One year.  Yes, your Honor, and we are, I

13   think, nine months at this point, so we are very mindful of our

14   situation at this point.

15         THE COURT:  All right.  Anything further?

16         MS. DIXON:  Not with regard to the speedy trial

17   issues, your Honor.  I can deal with the bond issue at this time

18   or I can wait.  I'm at the Court's pleasure.

19         THE COURT:  I'll hear from defense counsel.

20         MS. DIXON:  Thank you.

21          MR. McMAHON:  Your Honor, thanks.  I'll try to address

22    what the arguments were I heard from the government.

23          THE COURT:  Do you know what?  When I came back on the

24    bench I made some references to Mr. Hemenway and proceeded.  I'm

25    not sure that I ever got a response.  Did you want to proceed

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

STATE OF NEVADA   )
                   ) ss:
COUNTY OF CLARK   )

Officer K. Hooten, P# 4675, being first duly sworn, deposes and states that he is the affiant herein, and that he is a Police Officer with the Las Vegas Metropolitan Police Department (LVMPD), having been employed by the Department for 13 years. Affiant is currently assigned to LVMPD narcotics section, having been so assigned for a period of nine years. Affiant is also a federally deputized Task Force Officer with the DEA Group 1 Federal Narcotics Task Force, having been so assigned for a period of four years.

That there is probable cause to believe that certain property hereinafter described will be found at the following described premises, to-wit: (1) **3298 Dove Run Creek Drive, Las Vegas, Nevada 89135**, further described as a single story residence, brown in color stucco, with a grey tile roof and off-white colored trim. The front door of the residence faces west. The residence has a black security door covering the front door. The numbers 3298 are affixed to the bottom of the mailbox, which is located in front of the residence and to the south of the driveway, (2) **400 Proud Eagle Lane, Las Vegas, Nevada 89114**, further described as a two story residence, off-white in color stucco, with a grey tile roof and beige colored trim. The front door of the residence faces west. The numbers 400 are affixed to a lighted box, which is located on the front house to right of the front door. (3) **2290 Casa Bella Court, Las Vegas, Nevada 89117**, further described as a single story residence, off-white in color stucco, with a reddish-brown tile roof and tan colored trim. The front door of the residence faces west and is a double door with glass inserts. The residence has a three-car garage with one double garage door and one

1

DEFENDANT'S
EXHIBIT
15

The property hereinbefore described constitutes evidence which tends to demonstrate that the criminal offenses of Trafficking of Controlled Substance have been and continue to be committed in violation of Chapter 453 of the NRS and Money Laundering in violation of Chapter 207 of the NRS.

The statements contained in this affidavit are based upon my personal participation in this investigation and information received from other law enforcement sources, subpoenas, physical surveillance, electronic surveillance, telephone toll records, pen register and trap and trace devices, confidential sources, records checks and my knowledge, training and experience, as well as that of other Special Agents and local law enforcement officers also familiar with narcotics and money laundering investigations

In support of your affiant's assertion to constitute the existence of probable cause, the following facts are offered: That Officer K. Hooten, P# 4675, working with DEA Special Agents Daniel Holcomb and David Behar and agents from DEA Mexico City office learned the following information;

1.      In March 2006, the DEA's Mexico City Country Office (MCCO) initiated a joint investigation with Mexico's Agencia Federal de Investigacion (AFI) that targeted Zhenli YE Gon, aka: Zhenli YEGON; aka: Zhenli YE. This investigation targeted the illegal importation of pseudoephedrine from China and other countries into Mexico by YE Gon, using his business, UNIMED

4

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT
## FOR ZHENLI YE GON

I, Eduardo A. Chávez, Special Agent, Drug Enforcement Administration, United States
Department of Justice, being duly sworn, do depose and state:

1.      I have been employed as a Special Agent (SA) with the Drug Enforcement

Administration (DEA) since July 2000 and am presently assigned to the Drug Enforcement

Administration, México City Country Office in México City, México.  I am a law enforcement

officer of the United States within the meaning of Title 18, United States Code §2510(7), who is

empowered to conduct investigations of, and make arrests for, narcotic offenses enumerated in

Title 18, United States Code §2516.  I have successfully completed a sixteen (16) week DEA

Basic Agent Training Academy at the DEA Academy in Quantico, Virginia.  This training

included instruction in the investigation of federal drug and money laundering crimes, including,

but not limited to Title 21, United States Code §§841, 846, and 959, and Title 18, United States

Code §§2, 1956 and 1957.  I have discussed with numerous law enforcement officers,

defendants, and informants, the methods and practices used by chemical and narcotic

distributors.  I have acted in an undercover capacity conducting multiple chemical and

methamphetamine transactions and have been the affiant on numerous federal and state search

warrants, complaints, and wiretap affidavits and have testified in court in the area of narcotics on

several occasions.

2.      The facts set forth in this Affidavit are known to me as a result of my investigation and

interview with agents and law enforcement officers.  These are not all the facts known to me

throughout the course of this investigation, but rather only those which are essential to establish

probable cause for charging a complaint against Zhenli YE GON for the federal violations listed

here.

## CHEMICALS AND DRUGS INVOLVED

3.      Pseudoephedrine/ephedrine are legitimate pharmaceutical chemicals which are

commonly used in cold and allergy medicines.  In the United States, pseudoephedrine/ephedrine,

its salts, isomers, and salts of isomers are considered List I chemicals as defined by 21 USC

§802(34) and 21 CFR §1310.02(a)(3)(11) .  List I chemicals are those which are deemed

important to the clandestine manufacture of controlled substances, including methamphetamine.



DEFENDANT'S
EXHIBIT
16

N-Acetylpseudoephedrine is a derivative of pseudoephedrine and while not controlled in the United States, it is controlled in México by the Mexican General Law of Health. N-Acetylpseudoephedrine can be converted back into pseudoephedrine/ephedrine through a chemical process.

4.      Methamphetamine is a Schedule II controlled substance as defined by 21 USC §811(a) and 21 CFR §1308.12(d)(2). Methamphetamine is an addictive synthetic stimulant that affects the central nervous system and can be ingested orally, by smoking, snorting, or injecting. Methamphetamine releases high levels of dopamine which stimulate brain cells and enhances body mood and movement.

## PROBABLE CAUSE

5.      The DEA México City Country Office (referred to as the DEA MCCO) in joint cooperation with the Mexican Attorney General's Office Organized Crime Unit (referred to by its Spanish acronym "PGR/SIEDO") has been investigating the illicit importation and diversion of precursor chemicals, particularly pseudoephedrine, by a pharmaceutical wholesaler company named UNIMED PHARMCHEM MEXICO, SA DE CV (referred to as UNIMED) and its owner, Zhenli YE GON, located in México City, México.

6.      Investigation revealed that UNIMED had imported approximately 20 and 29.4 metric tons of "N-Methyl-Acetylamino" on December 12, 2005, and January 6, 2006, respectively; and 37.485 metric tons of "Hydroxy-Benzyl-N-Methyl-Acetethamine" on both August 28, 2006, and September 2, 2006, into México.

7.      According to documentation provided to Mexican Customs by UNIMED, N-Methyl-Acetylamino is a pharmaceutical intermediate chemical used in analgesic product manufacture. Hydroxy-Benzyl-N-Methyl-Acetethamine was also identified as a pharmaceutical intermediate; however documents did not describe any specific use.

8.      However, according to conversations with DEA Forensic Chemists (FC), N-Methyl-Acetylamino can be considered a partial chemical name; however, the chemical does not exist as it was listed on UNIMED's shipping manifests nor can it be identified as an intermediate product for analgesic production. DEA FCs also stated that Hydroxy-Benzyl-N-Methyl-Acetethamine does not correspond to any known chemical.

9.      On December 5, 2006, UNIMED once again attempted to import 19.797 metric tons of Hydroxy-Benzyl-N-Methyl-Acetethamine which was flagged for inspection by Mexican

Customs at the Pacific seaport of Lázaro Cárdenas, México. A sampling of the substance conducted by the Mexican Customs' Central Laboratory identified it as N-Acetylpseudoephedrine, a derivative of pseudoephedrine/ephedrine. This substance is controlled by Mexican federal health law as well as Mexican federal precursor law making it illegal for UNIMED to import.

10.     On April 26, 2007, DEA FC and I traveled to the UNIMED manufacturing plant to analyze any chemicals or residues still present. This plant had been secured by Mexican authorities since the execution of their federal search warrant on March 15, 2007, to be discussed in detail herein. DEA FCs took samples of chemical residue found in equipment and locations throughout the site, including samples which tested positive for the presence of ephedrine. It is believed the plant was used for the production of pseudoephedrine/ephedrine using an N-Acetyl derivative as the starting material.

11.     I know based on my conversations with Mexican federal prosecutors and health officials that after 2005, UNIMED pharmaceutical did not have any authority to import, manufacture, distribute, or possess any pseudoephedrine or ephedrine related material. Based on the expert conclusions drawn by the DEA FCs and the importation records of the N-Methyl-Acetylamino and the Hydroxy-Benzyl-N-Methylacetethamine, I believe based on the mislabeling of shipments and positive results for the presence of ephedrine, that YE GON willfully intended to import a restricted chemical into México, violating Mexican law, for the express purpose of manufacturing pseudoephedrine/ephedrine, a listed chemical, as defined by Title 21 United States Code Section 802(34).

12.     In consultation and interviews with current and former advisors to the Mexican Federal Commission for the Protection Against Sanitary Risks (hereafter referred to by its Spanish acronym, "COFEPRIS"), they stated that UNIMED, as a pharmaceutical wholesaler, did not have any legal authority to import, export, manufacture, or distribute and product containing pseudoephedrine or ephedrine. COFEPRIS also indicated that all legitimate pharmaceutical laboratories operating in México must go through COFEPRIS to obtain permits to buy and/or sell pseudoephedrine/ephedrine. This Commission is charged with oversight and regulatory control over all pseudoephedrine/ephedrine, imports, exports, and distribution within Mexican territory.

13.     Based on the aforementioned information, it is clear that YE GON and UNIMED



**U.S. Department of Justice**

Criminal Division
Narcotic and Dangerous Drug Section
1400 New York Avenue N.W.

_____

*Washington, D.C. 20530*

November 13, 2007

Martin F. McMahon
Martin F. McMahon and Associates
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036

    Re: <u>United States v. Ye Gon,</u> 1:07-cr-181

Dear Martin:

    I write in response to your requests for information concerning what you have described as a UNIMED log book. You have also referred to this same item as the "Libro de Control". You have characterized this item as "apparently a record of the company's controlled substance transactions that is mandated by the Mexican Health Department". You have described this item as having been kept at the UNIMED offices in Mexico City, with one copy being in a safe on the first floor and another copy being in the defendant's second floor office.

    I do not know if such an item exists, or has ever existed. However, the United States has been unable, so far, to locate such an item in the material seized from the UNIMED offices in Mexico City. I have been in touch with the prosecutors in Mexico who assisted in the search and they do not recall seeing or seizing such an item as you have described. I have spoken with the DEA special agent who began reviewing the original evidence shortly after the evidence was seized, and he does not recall seeing such an item. In addition, we are in our second week of having Spanish translators review the 20,000 plus pages of material we have now in the case, and so far their review has not uncovered information of the type you have described.

    We will continue to gather discovery materials in this case and turn them over to you as soon as possible.

                                      Sincerely,

                                      Paul W. Laymon
                                      Trial Attorney

**DEFENDANT'S EXHIBIT**

17



**U.S. Department of Justice**

Criminal Division
Narcotic and Dangerous Drug Section
1400 New York Avenue N.W.

_____

*Washington, D.C. 20530*

Department of Justice



**U.S. Department of Justice**

Criminal Division
Narcotic and Dangerous Drug Section
1400 New York Avenue N.W.

_____

*Washington, D.C.  20530*

December 1, 2007

Martin F. McMahon
Martin F. McMahon and Associates
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036

    Re: <u>United States v. Ye Gon,</u> 1:07-cr-181

Dear Martin:

    I write in response to your letter of November 30, 2007, in which you ask for the immediate production of what you describe as a UNIMED log book, also referred to by you as the "Libro de Control". You have made previous requests for this item and I have previously responded to those requests. In addition, you have asked for immediate production of a Sony Vaio laptop computer in the possession of your client at the time of his arrest.

    As to the so called log book, the United States has been unable, so far, to locate such an item in the material seized from the UNIMED offices in Mexico City. Since my last written response to you about this item, I phoned the DEA agent in Mexico City and asked her to again check with the Mexican prosecutors in the case. The agent phoned later that day and had the two prosecutors with her. Through her I asked about the item you describe, and they responded that they did not remember seeing such an item at UNIMED or in the evidence seized. Since you had advised me that one volume of the item could have been in a safe and another volume of the item could have been locked up in the defendant's desk, I asked them to go back to UNIMED and check the safe and desk again. I was later told by the agent that after going back to UNIMED and looking again, no such item or items were found.

    I may be traveling to Mexico before the hearing on December 20. If I do, I will inquire about and look for the item you describe. It is possible that a so called log book, assuming that it ever existed, was not present at UNIMED on the day of the search. The defendant has apparently told at least one media outlet that he fled Mexico in September 2006, and except for sneaking back into Mexico briefly in October 2006, was not in Mexico from September 2006 to March 15, 2007 when UNIMED was raided by law enforcement authorities. That would appear to be true, as we know the defendant was in Las Vegas and Los Angeles for much of the time between

**DEFENDANT'S EXHIBIT**

18



**U.S. Department of Justice**

Criminal Division
Narcotic and Dangerous Drug Section
1400 New York Avenue N.W.

---

*Washington, D.C. 20530*

September 2006 and March 15, 2007. If true that he was not in Mexico or at UNIMED throughout that time, and again assuming that a log book was in fact being kept, the defendant would have no personal knowledge as to where it was located at the time of the raid.

It is also possible that the contents of the log book, again assuming that it existed, are contained in the more than 25,000 pages of documents we each have. It could also be contained in the thousands of pages of documents still awaiting copying in Mexico. As you indicated to me on November 30, you (like me) have not been able to go through all 25,000 plus pages. As I told you before, we had a team of translators reviewing the 25,000 plus pages. When there work is done and they have debriefed us on their findings, I will be in a better position to know if a copy of the item you describe could be in those pages.

As to the laptop, I can confirm that at least one laptop was seized from the custody or control of the defendant. I do not now know if it was a Sony Vaio. That laptop is currently being examined by DEA technicians. I will check on Monday on the status of that review and will let you know when that review may be completed. I do not know what, if anything, is contained in the laptop, but you will certainly have access to its contents.

Sincerely,

Paul W. Laymon



**U.S. Department of Justice**
Criminal Division

Narcotic and Dangerous Drug Section
1400 New York Avenue, N.W.
Suite 8124
Washington, D.C. 20005

October 21, 2007

**SENT VIA ELECTRONIC MAIL ONLY**

Martin F. McMahon, Esq.
MARTIN F. MCMAHON AND ASSOCIATES
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036
Email: www.martinmcmahonlaw.com

Re: United States v. Ye Gon

Dear Martin:

        I write in response to your letter of October 18, 2007, requesting expedited production
of what you describe as a "log book" maintained by your client and/or his company.

        I do not know if a "log book" exists. However, I will certainly seek to identify it and
locate it, if one exists. In order to do that, though, you would need to provide me with more
information about this "log book". The defendant maintained a home, an office with a
warehouse, and a sizeable manufacturing plant. Evidence was seized from all three locations.
Thousands of pages of documents, perhaps as much as 30,000 pages of documents, were seized
by Mexican authorities. Given the voluminous amount of material seized, it would help me if
you could provide the following information:

1. At which location do you believe it was seized? Home, office, warehouse, or the
   manufacturing facility?
2. Based on what you know, was it in hard paper form or in electronic form, or
   both?
3. If in hard paper form, was it contained in any kind of binder or filing system, or
   were the documents loosely maintained? If in binder or notebook form, please
   describe the binder/notebook (color, size, lettering, etc).
4. If in electronic form, on whose computer was the file maintained?
5. Based on what you know, who maintained the "log book"? Who was the
   custodian of the "log book"?

DEFENDANT'S
EXHIBIT
19

6. Any other information that would assist me in finding what you describe.

There are seven more boxes of documents to bring you. This will bring to eight, the number of boxes of documents we have gotten from Mexico. Perhaps the information you seek is in these boxes. In addition, I have been informed that the Mexican authorities have more documents which we have not seen yet. A team from the United States is traveling to Mexico in early November to scan these additional documents so that the documents can be returned to the United States for copying. It will take a week or more to scan the additional documents and several more weeks to copy them. So, any additional information you can provide me to help locate what you are looking for would be helpful, especially given the relative closeness of the hearing on November 21 that you mentioned in your letter.

Sincerely,

Paul W. Laymon
Trial Attorney
NDDS

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,    .

       Plaintiff,     .

              . CR No. 07-181

    v.          .

ZHENLI YE GON,       . Washington, D.C.

              . November 14, 2007

     Defendant.    . At about 9:56 a.m

. . . . . . . . . . . . . . .


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
                  ROB STAPLETON, ESQ.
                  United States Deparment of Justice
                  1400 New York Avenue, NW
                  Washington, D.C.  20005
                  202-514-1286


For the Defendant:    MARTIN McMAHON, ESQ.
                  LISA ANGELO, ESQ.
                  NING YE, ESQ.
                  Martin F. McMahon & Associates
                  1150 Connecticut Avenue, NW
                  Suite 900
                  Washington, DC  20036
                  202-514-1286


DEFENDANT'S
EXHIBIT
20

Court Reporter:       JACQUELINE M. SULLIVAN, RPR
Official Court Reporter
U.S. Courthouse, Room 6720
333 Constitution Avenue, NW
Washington, D.C. 20001
202-354-3187

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

           Jacqueline Sullivan, RPR
           Official Court Reporter

5

1    Germany, and we've mentioned this before.  We have completed our

2    official request to Germany for the various documents and

3    various information in Germany.  It's going to require us to go

4    over there and interview some people, but first we have to ask

5    permission to do that as well as ask permission for the various

6    documents they possess.  That request from us has gone through

7    our office of international affairs, which is our liaison with

8    the German government.  They've approved our request.  It's now

9    at the translator's being translated into German, and I think

10    probably when that's completed, which I expect will be about

11    another week, that will officially be presented to the German

12    government for action.

13           Since our last hearing the defense has specifically

14    requested from the government a couple of items of information.

15    One concerns the first item of information that the defense I

16    think is most concerned about, is what they have described as a

17    logbook, and they I think have mentioned it at previous

18    hearings.  The defense was kind enough to provide me with what

19    they believed to be a description of this logbook and where it

20    might have been located at the time that the Mexican authorities

21    searched the defendant's warehouse in Mexico, business actually.

22    It's his corporate headquarters in Mexico City.  I have

23    consulted with the 2 prosecutors in Mexico who are really

24    working the case.  I've also consulted with the DEA agent who

25    was in Mexico and actually had an opportunity to review the


                  Jacqueline M. Sullivan, RPR
                  Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,     .

      Plaintiff,         .
                  . CR No. 07-181
   v.           .

ZHENLI YE GON,          . Washington, D.C.
               . December 20, 2007
      Defendant.        . At about 10:40 a.m
               .

. . . . . . . . . . . . . . .


***SEALED bench conference redacted.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:     PAUL W. LAYMON, ESQ.
                  ROB STAPLETON, ESQ.
                  WANDA DIXON, ESQ.
                  MARY MAGAVARO, ESQ.
                  United States Department of Justice
                  1400 New York Avenue, NW
                  Washington, D.C.  20005
                  202-514-1286


For the Defendant:     MARTIN McMAHON, ESQ.
                  LISA ANGELO, ESQ.
                  NING YE, ESQ.
                  Martin F. McMahon & Associates
                  1150 Connecticut Avenue, NW
                  Suite 900


DEFENDANT'S
EXHIBIT

Washington, DC  20036
202-862-4343

Court Reporter:          JACQUELINE M. SULLIVAN, RPR
                         Official Court Reporter
                         U.S. Courthouse, Room 6720
                         333 Constitution Avenue, NW
                         Washington, D.C. 20001
                         202-354-3187


Jacqueline Sullivan, RPR
Official Court Reporter

38

1          MS. DIXON:  Yes, I think I understand the Court's

2     question, and it's been positive.  It's been positive.  We

3     expect that -- that's why we're asking for ninety more days.  We

4     expect that the things that we have done will bear fruit.  We

5     expect that we'll be able to get the evidence that we've

6     identified as a result of these requests of a less compelling

7     reason.  But I think also compelling is of course the fact that

8     these are the countries that are not in the United States where

9     they speak languages other than English, so the items that we

10    get, a lot of them are going to have to be translated into

11    English.  That just takes time.

12         THE COURT:  Anything else?

13         MS. DIXON:  If the Court will indulge me.

14         I don't think I need to repeat to the court that of

15    course these things will involve novel interpretations of law

16    and we think that they're complex for that reason.

17         THE COURT:  Let me ask you this:  Is it the

18    government's view that the request for foreign diplomatic

19    channels pursuant to 3292 is in and of itself sufficient for

20    this Court to exclude time from the speedie trial clock?

21          MS. DIXON:  That the request through the different

22    channels?

23          THE COURT:  Right.

24          MS. DIXON:  Yes, your Honor.  I think the statute

25    supports that interpretation, the fact that we made the request


                    Jacqueline M. Sullivan, RPR
                    Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    .

    Plaintiff,      .
                . CR No. 07-181
  v.          .

ZHENLI YE GON,      . Washington, D.C.
              . December 20, 2007
    Defendant.    . At about 10:40 a.m
               .

. . . . . . . . . . . . . . .

***SEALED bench conference redacted.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
                    ROB STAPLETON, ESQ.
                    WANDA DIXON, ESQ.
                    MARY MAGAVARO, ESQ.
                    United States Department of Justice
                    1400 New York Avenue, NW
                    Washington, D.C. 20005
                    202-514-1286

For the Defendant:     MARTIN McMAHON, ESQ.
                    LISA ANGELO, ESQ.
                    NING YE, ESQ.
                    Martin F. McMahon & Associates
                    1150 Connecticut Avenue, NW
                    Suite 900


DEFENDANT'S
EXHIBIT
22

Washington, DC  20036
202-862-4343

Court Reporter:          JACQUELINE M. SULLIVAN, RPR
Official Court Reporter
U.S. Courthouse, Room 6720
333 Constitution Avenue, NW
Washington, D.C. 20001
202-354-3187

Jacqueline Sullivan, RPR
Official Court Reporter

47

1          THE COURT:  All right.  Of the boxes that are sitting

2     in Mexico, the government in Mexico has indicated that the

3     United States can have those boxes?

4          MS. DIXON:  That's right.

5          THE COURT:  They've been searched already?

6          MS. DIXON:  Searched?

7          THE COURT:  You've looked, the government's looked

8     through the boxes?

9          MS. DIXON:  Not each and every one of the boxes, but

10    we've looked through most of them or someone has looked through

11    most of them, and at this point that's what I'm saying.  We

12    haven't found it yet.  Now, I'm not saying that it might not

13    turn up in some of the other things that have to be gone

14    through.

15         THE COURT:  It's somewhat troubling that if there are

16    boxes of what may contain evidence still in evidence, I still

17    think if the government in Mexico has identified those boxes as

18    being potential evidence in this country's prosecution, I think

19    that you should start looking through them.  Don't you have the

20    right to start looking through them?

21          MS. DIXON:  We have started looking through them.  I

22    don't want to use the word we have the right to.

23          THE COURT:  Opportunity.

24          MS. DIXON:  Opportunity, and we have started looking

25    through them and with people who speak Spanish with Mexicans who


                     Jacqueline M. Sullivan, RPR
                     Official Court Reporter

48

1    are there, so we're not standing idle in regard to those boxes,

2    and not only were we looking through them.

3          THE COURT:  How many more boxes are there in Mexico

4    that haven't been transported here that at least you have a

5    right to look through?

6          MS. DIXON:  That's a good question, and let me just

7    consult with one of my colleagues, because there's a lot of...

8          (There was a pause in the proceedings.)

9          MS. DIXON:  Your Honor, the evidence is in what's

10   called tomas.  Tomas are just books or binders, if you will, of

11   items.  We have another 57 tomas -- 53, I'm sorry, tomas, and we

12   estimate that those 53 tomas could fit in --

13         MR. STAPLETON:  Twenty.

14         MS. DIXON:  Twenty boxes.

15         THE COURT:  And besides, what size boxes are we

16   talking about?

17         MS. DIXON:  I think we're talking about, you know, how

18   the ream of paper comes in the Xerox machine.  I imagine the

19   boxes are about -- actually they're 11-and-a-half --

20         THE COURT:  By 8, right?

21         MS. DIXON:  Yes, exactly.  It's longer than eight

22   because clearly you might --

23         THE COURT:  12 by 12 or so?

24         MS. DIXON:  I think that that's accurate, 12 by 12.

25         THE COURT:  Why shouldn't it trouble me that they're


         Jacqueline M. Sullivan, RPR
         Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,    .

        Plaintiff,    .

              . CR No. 07-181

    v.        .

ZHENLI YE GON,      . Washington, D.C.
             . December 20, 2007
    Defendant.    . At about 10:40 a.m

. . . . . . . . . . . . . . .

***SEALED bench conference redacted.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
                    ROB STAPLETON, ESQ.
                    WANDA DIXON, ESQ.
                    MARY MAGAVARO, ESQ.
                    United States Department of Justice
                    1400 New York Avenue, NW
                    Washington, D.C.  20005
                    202-514-1286

For the Defendant:    MARTIN McMAHON, ESQ.
                    LISA ANGELO, ESQ.
                    NING YE, ESQ.
                    Martin F. McMahon & Associates
                    1150 Connecticut Avenue, NW
                    Suite 900



DEFENDANT'S EXHIBIT 23

Washington, DC  20036
202-862-4343

Court Reporter:          JACQUELINE M. SULLIVAN, RPR
                    Official Court Reporter
                    U.S. Courthouse, Room 6720
                    333 Constitution Avenue, NW
                    Washington, D.C. 20001
                    202-354-3187


Jacqueline Sullivan, RPR
Official Court Reporter

52

1    that's troubling.  It's not the scenario for the person I just

2    described who speaks a certain dialect and there are only two or

3    three in the world.

4         MS. DIXON:  What I'm saying, the fact that an

5    interpreter has to be used slows the process.  There are

6    interpreters.  I don't mean to imply that we don't have any.

7         THE COURT:  Spanish-speaking interpreter.

8         MS. DIXON:  And we have that.

9         THE COURT:  There's no shortage of Spanish-speaking

10   interpreters.

11        MS. DIXON:  No, I'm not trying to say that there is.

12   I'm just saying that that slows the process.

13        THE COURT:  If there's no shortage, why does that slow

14   the process?

15        MS. DIXON:  For example, I haven't been to Mexico.  My

16   colleagues were able to travel recently.  For example a document

17   that's five pages long, if I were to read this document that

18   might take me, oh, gosh, I guess about ten minutes, but if

19   someone has to read it, comprehend it who is not necessarily a

20   person who is an attorney or familiar with the case comprehends

21    it, summarizes it and then explains it to me, taking it from one

22    language to another, as you can imagine, that's going to add a

23    considerable length of time to the process of understanding what

24    a five-page document, and what we're saying to you is that we

25    have 57 of these, 53 of these tomas and that just takes more

Jacqueline M. Sullivan, RPR
Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    .

    Plaintiff,   .

            . CR No. 07-181

  v.        .

ZHENLI YE GON,      . Washington, D.C.
           . March 18, 2008
    Defendant.    . At about 11:16 a.m

. . . . . . . . . . . . . . .

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
           WANDA J. DIXON, ESQ.
           ROBERT STAPLETON, ESQ.
           MARY MAGAVARO, ESQ.
           United States Department of Justice
           1400 New York Avenue, NW
           Washington, D.C.  20005
           202-514-1286

For the Defendant:    MARTIN McMAHON, ESQ.
           CHRISTINE HILGEMAN, ESQ.
           NING YE, ESQ.
           Martin F. McMahon & Associates
           1150 Connecticut Avenue, NW
           Suite 900
           Washington, DC  20036


DEFENDANT'S
EXHIBIT
24

202-862-4343

Court Reporter:        JACQUELINE M. SULLIVAN, RPR
                       Official Court Reporter
                       U.S. Courthouse, Room 6720
                       333 Constitution Avenue, NW
                       Washington, D.C. 20001
                       202-354-3187

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

                       Jacqueline Sullivan, RPR
                       Official Court Reporter

11

1    samples of the item that was taken from the shipment of Mr. --

2    from the shipment that was stopped by Mexican customs in 2006.

3    It was a shipment to UniMed from Chifing Arker.  They've asked

4    for an opportunity to examine the actual samples of the

5    substance that the Mexican laboratories analyzed.  Well, that is

6    something that we don't have.  That is something that we have to

7    wait for Mexico's formal response to our MLAT in order to

8    receive.  We cannot comply with that request.  Defense makes

9    other requests along that nature, your Honor, but I think that

10   it illustrates the fact that the Mexican MLAT remains

11   outstanding and that there is nothing that we can do short of

12   the, of course, informal cooperation that we've received, and we

13   have been sharing those documents with the defense as we get

14   them.

15         THE COURT:  Let me ask you this:  Do you periodically

16   inquire about the status of that formal request?

17         MS. DIXON:  I'm sorry.  Say that again.

18         THE COURT:  Do you periodically inquire of the Mexican

19   authorities about that status of that formal request?

20         MS. DIXON:  Yes, your Honor.  Yes, your Honor.  We are

21    in constant communication with officials in the Mexican

22    government.  The issue, however, or part of it, is that Mexico

23    has proceedings itself concerning this issue, not so much

24    against the defendant at this time, but there are others who

25    were arrested in connection with offenses that were violation of


Jacqueline M. Sullivan, RPR
Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,   .

     Plaintiff,   .

             . CR No. 07-181

  v.   .

ZHENLI YE GON,   . Washington, D.C.

            . March 18, 2008

     Defendant.   . At about 11:16 a.m

. . . . . . . . . . . . . . .

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:   PAUL W. LAYMON, ESQ.
               WANDA J. DIXON, ESQ.
               ROBERT STAPLETON, ESQ.
               MARY MAGAVARO, ESQ.
               United States Department of Justice
               1400 New York Avenue, NW
               Washington, D.C.  20005
               202-514-1286

For the Defendant:   MARTIN McMAHON, ESQ.
               CHRISTINE HILGEMAN, ESQ.
               NING YE, ESQ.
               Martin F. McMahon & Associates
               1150 Connecticut Avenue, NW
               Suite 900
               Washington, DC  20036



DEFENDANT'S
EXHIBIT
25

202-862-4343

Court Reporter:      JACQUELINE M. SULLIVAN, RPR
Official Court Reporter
U.S. Courthouse, Room 6720
333 Constitution Avenue, NW
Washington, D.C. 20001
202-354-3187

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

Jacqueline Sullivan, RPR
Official Court Reporter

27

1          THE COURT:  Thank you.  You can have a seat.

2          MR. McMAHON:  So we oppose the extension, your Honor,

3     obviously.

4          THE COURT:  Let me hear from the government with

5     respect to the other inquiries.  There were some representations

6     made early on about the government's inquiries of other

7     countries.

8          MS. DIXON:  Yes, your Honor, and the government has in

9     fact made inquiries of other countries.  With regard to China,

10    your Honor, we do not wish to at this time go into every detail

11    about our negotiations and our discussions with China.  We will

12    inform the Court as we have informed the Court and counsel that

13    we are in communication with China.  We are attempting to obtain

14    relevant evidence from the Chinese.  We have made the necessary

15    and requisite efforts to do so and we await the necessary

16    information.  We are well aware, however, that the time is

17    trickling by.  We're well aware that there will be some point

18    after which we are precluded from making this request to the

19    Court and asking for additional time to have certain things

20    happen, but we have made requests and we are hopeful that our

21    requests will be fruitful.

22          THE COURT:  When does the twelve months expire, what's

23   the date?

24          MS. DIXON:  Today is March the 18th.  It's a date in

25   June, but I'm not sure what the date is.


                   Jacqueline M. Sullivan, RPR
                   Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    .

      Plaintiff,    .
               . CR No. 07-181
  v.    .

ZHENLI YE GON,    . Washington, D.C.
              . March 18, 2008
     Defendant.    . At about 11:16 a.m

. . . . . . . . . . . . . . .


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
               WANDA J. DIXON, ESQ.
               ROBERT STAPLETON, ESQ.
               MARY MAGAVARO, ESQ.
               United States Department of Justice
               1400 New York Avenue, NW
               Washington, D.C.  20005
               202-514-1286


For the Defendant:    MARTIN McMAHON, ESQ.
               CHRISTINE HILGEMAN, ESQ.
               NING YE, ESQ.
               Martin F. McMahon & Associates
               1150 Connecticut Avenue, NW
               Suite 900
               Washington, DC  20036


DEFENDANT'S
EXHIBIT
26

202-862-4343

Court Reporter:          JACQUELINE M. SULLIVAN, RPR
                         Official Court Reporter
                         U.S. Courthouse, Room 6720
                         333 Constitution Avenue, NW
                         Washington, D.C. 20001
                         202-354-3187

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

          Jacqueline Sullivan, RPR
          Official Court Reporter

33

1          MS. DIXON:  Yes.  But with regard to Mexico, the

2     request has been made and we in fact stated that at the last

3     hearing.

4          THE COURT:  He needs to clarify that.  You've made a

5     request of Mexico.  You say it's pending with respect to China.

6     I'm not sure I understand that.  What does that mean?

7          MS. DIXON:  There are protocols that these requests

8     have to go through.  That's what I mean.

9          THE COURT:  This request has not been made of China,

10    then; is that correct?

11         MS. DIXON:  I cannot say at this time because it's

12    still pending the different channels it has to go through.

13         And if I might also say, your Honor, apparently the

14    date that the Court just stated, December --

15         THE COURT:  No, June the 17th.

16         MS. DIXON:  June 17th, thank you, my colleagues will

17    be in trial on that date.  We're reluctant to ask the Court to

18    go later so we could ask the Court to go a couple of days

19    earlier.

20         THE COURT:  Sure.  Absolutely.  The 16th.  Actually,

21    what about the 12th at ten o'clock, counsel?

22         MS. DIXON:  I think the 12th would be the better date,

23    your Honor, if the Court will please.

24         THE COURT:  We'll do it at 9:30.  I have a matter at

25    eleven.  June the 12th at 9:30.


                    Jacqueline M. Sullivan, RPR
                    Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,     .

     Plaintiff,       .

               . CR No. 07-181
    v.          .

ZHENLI YE GON,      . Washington, D.C.
               . December 20, 2007
     Defendant.    . At about 10:40 a.m
                .

. . . . . . . . . . . . . .


***SEALED bench conference redacted.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
                ROB STAPLETON, ESQ.
                WANDA DIXON, ESQ.
                MARY MAGAVARO, ESQ.
                United States Department of Justice
                1400 New York Avenue, NW
                Washington, D.C.  20005
                202-514-1286

For the Defendant:    MARTIN McMAHON, ESQ.
                LISA ANGELO, ESQ.
                NING YE, ESQ.
                Martin F. McMahon & Associates
                1150 Connecticut Avenue, NW
                Suite 900


DEFENDANT'S EXHIBIT 27

Washington, DC 20036
202-862-4343

Court Reporter:          JACQUELINE M. SULLIVAN, RPR
                         Official Court Reporter
                         U.S. Courthouse, Room 6720
                         333 Constitution Avenue, NW
                         Washington, D.C. 20001
                         202-354-3187


Jacqueline Sullivan, RPR
Official Court Reporter

36

1          MS. DIXON:  That's right, and there's more than one.

2     There's one with Germany, your Honor, there's one with Mexico

3     that was being complied with.  We had one with Hong Kong.  That

4     one has been completed, and we've in fact --

5          THE COURT:  Hong Kong has been completed?

6          MS. DIXON:  That's correct.

7          THE COURT:  You've made requests pursuant to MLAT?

8          MS. DIXON:  That's right.

9          THE COURT:  With Mexico and China?

10         MS. DIXON:  No, your Honor.  With Mexico and Germany.

11         THE COURT:  Mexico and Germany?

12         MS. DIXON:  That's right.

13         THE COURT:  What's the status of those requests?

14         MS. DIXON:  Your Honor, they're being acted upon.

15    Again, like I said, their formal cooperation is ongoing, but as

16    the court knows, in order to get anything official we have to

17    use the MLATs and that's what we're waiting on.  It's just a

18    process, it goes through different agencies, it gets translated

19    into different languages, they say come get it; that kind of

20    thing.

21        THE COURT:  Any other countries involved?

22        MS. DIXON:  Your Honor, we're having negotiations with

23   other countries.  They've not been completed.

24        THE COURT:  You say you've had negotiations.  Have you

25   made requests pursuant to MLAT with those countries?


                    Jacqueline M. Sullivan, RPR
                    Official Court Reporter

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,    .

      Plaintiff,    .

              . CR No. 07-181

    v.    .

ZHENLI YE GON,    . Washington, D.C.
            . December 20, 2007
     Defendant.    . At about 10:40 a.m

. . . . . . . . . . . . . . .

***SEALED bench conference redacted.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
              ROB STAPLETON, ESQ.
              WANDA DIXON, ESQ.
              MARY MAGAVARO, ESQ.
              United States Department of Justice
              1400 New York Avenue, NW
              Washington, D.C. 20005
              202-514-1286

For the Defendant:    MARTIN McMAHON, ESQ.
              LISA ANGELO, ESQ.
              NING YE, ESQ.
              Martin F. McMahon & Associates
              1150 Connecticut Avenue, NW
              Suite 900


DEFENDANT'S EXHIBIT 28

Washington, DC  20036
202-862-4343

Court Reporter:        JACQUELINE M. SULLIVAN, RPR
Official Court Reporter
U.S. Courthouse, Room 6720
333 Constitution Avenue, NW
Washington, D.C. 20001
202-354-3187


Jacqueline Sullivan, RPR
Official Court Reporter

60

1    If she would read her own documents, your Honor, in that

2    transaction we were importing pseudoephedrine for somebody else

3    who did have a license.

4         THE COURT:  Nonetheless, he admits he was importing

5    pseudoephedrine?

6         MR. McMAHON:  No, your Honor.  What he admits to, and

7    I don't know if they've read the papers, COFERES, your Honor,

8    you must now that the inference that for sixty months COFERES

9    made every pseudoephedrine transaction that came into Mexico.

10   Everything is legal.  The reason why they don't want to produce

11   the logbook, and you should know, your Honor, just ask them,

12   Mexican law requires that the --

13        THE COURT:  Let me stop you for one second.

14        How much more time do you need with the laptop?

15   You've had the laptop for some time.  How much more time do you

16   need to investigate that?

17        MS. DIXON:  Your Honor, I do think that they'll be

18   done with it in a couple of weeks.  I don't think it will be

19   much longer than that, and it might very well be before that.

20   It's just that we're going into the holidays.

21        THE COURT:  I'm going to direct that that laptop be

22    turned over within 14 days unless there's some compelling

23    reason.

24          MS. DIXON:  Yes, your Honor.

25          THE COURT:  When you start talking about holidays


          Jacqueline M. Sullivan, RPR
          Official Court Reporter



**U.S. Department of Justice**

Criminal Division
Narcotic and Dangerous Drug Section
1400 New York Avenue N.W.

_____

*Washington, D.C. 20530*

February 21, 2008


Martin F. McMahon
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036


Re: <u>United States v. Ye Gon</u>, Case No. 1:07-cr-181


Dear Martin:

I write in response to your letters of February 15 and February 20, 2008. In those letters you make certain requests in regards to the laptop and desktop computers seized from the Maryland home where your client was temporarily residing at the time of his arrest.

At the outset, let me note that the laptop does appear to be the property of your client. The desktop computer, however, appears to be the property of the young woman who lived in the home. An initial review of the desktop computer shows that it appeared to be used only by this young woman, and not by your client.

First, as to the desktop computer, this item was not obtained from your client nor does it appear to belong to him. The government has not determined whether we will use this item (that is, the information contained therein) in our case-in-chief at trial. The desktop computer does not appear, at this time, to be material to preparing a defense. Accordingly, the government is not required to permit the defense to inspect and copy the desktop. We note, though, that in the spirit of cooperation, we previously provided you with disks which contained the contents of the desktop. You write in your letter of February 20, 2008 that the disks were "corrupted" and the "entire file structure was unreadable". Although we do not believe the contents of the desktop are required to be disclosed, we would like to get you working disks (containing the contents of the desktop) which are readable. Please return the nonworking disks to me and we will ask the DEA lab to review them and determine why they are not readable. The quickest solution at that point may be for the lab to recopy the disks for you.

Second, in regards to the laptop computer. The laptop computer appeared to belong to the

DEFENDANT'S EXHIBIT
29

defendant. We have previously provided you with two sets of DVD's which contained the contents of the laptop. You write in your letter of February 20, 2008, that "5.25% of the laptop's hard drive is missing and/or corrupted." While that means to me that you believe you were able to access or read 95% of the contents of the laptop, we want you to be certain that you have been able to access 100% of the contents of the DVD's. As we understand it, there could be several reasons why your expert concluded that you could only read 95% of the DVD's. One explanation is that you actually do have access to the entire contents, but have not taken into account the physical size of the DVD's versus the logical size of the DVD's. Another explanation would involve what is called the "recovery partition" that is present in Sony laptops. If the hash values match on the DVD's, then you should not have a problem. You will recall that we gave you two sets of DVD's in regards to the laptop. Are you saying that both sets have missing or corrupted parts, just the first set, just the second set? If you will tell me what specific DVD or DVD's you had problems with, we will ask the DEA lab to look into that particular DVD. We believe this issue can be quickly resolved.

In your letter of February 15, 2008, you request that a Mr. Jeffrey Gross, a "computer forensic examiner", be permitted to meet with the DEA examiner, "to conduct one full day of examination" of the laptop, and "to dialogue with the DEA examiner to obtain the production of the media analysis report, a copy of the examiner's work notes, and the evidence seizure report indicating the chain of custody of the laptop". In that same letter you also request that Mr. Gross be permitted to "generate a new image of the computer onto a blank USB computer hard drive." In your letter of February 20, 2008, you ask for significantly more information about the DEA's examination of the computer.

We decline to permit Mr. Gross to meet with the DEA examiner or to conduct "one full day of examination of the laptop." We will arrange for defense counsel and their expert to inspect, that is, physically look at the laptop in my office. However, the laptop cannot be powered on and examined by the parties because to do so would alter the data on the laptop. Mr. Gross can transfer the information on the DVD's to a hard drive; he does not need access to the laptop to put the information contained in the laptop onto a hard drive. In regards to your request for copies of various reports and notes, we decline to turn over the DEA examiner's work notes. Those notes are not subject to discovery. If you have authority to the contrary, please let me know and we will review it. As to the DEA examiner's report setting out his findings, we have not yet received such a report, but will turn it over to the defense as soon as we get it.

In your letter of February 20, 2008, you write that the government intended to present a computer expert at the hearing scheduled for March 18, 2008. Given that you have access to the Encase software and can access the DVD's, there is no reason for the government to present such a witness at the March 18 hearing. Also, you write in your letter of February 15, 2008, that I had previously represented to you that agents seized a dark brown briefcase from the possession of the defendant. I do not recall saying this and do not remember whether such a briefcase was seized. I will check on this though.

2

Sincerely,


Paul W. Laymon
Wanda Dixon
Trial Attorneys
U.S. Department of Justice


cc: Rob Stapleton; Mary Mogavero

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,   .

     Plaintiff,       .
                 . CR No. 07-181
   v.          .

ZHENLI YE GON,       . Washington, D.C.
                . December 20, 2007
     Defendant.    . At about 10:40 a.m
                .

. . . . . . . . . . . . . . .

***SEALED bench conference redacted.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    PAUL W. LAYMON, ESQ.
                     ROB STAPLETON, ESQ.
                     WANDA DIXON, ESQ.
                     MARY MAGAVARO, ESQ.
                     United States Department of Justice
                     1400 New York Avenue, NW
                     Washington, D.C.  20005
                     202-514-1286

For the Defendant:    MARTIN McMAHON, ESQ.
                     LISA ANGELO, ESQ.
                     NING YE, ESQ.
                     Martin F. McMahon & Associates
                     1150 Connecticut Avenue, NW
                     Suite 900
                     Washington, DC  20036



DEFENDANT'S
EXHIBIT
30

202-862-4343

Court Reporter:          JACQUELINE M. SULLIVAN, RPR
                         Official Court Reporter
                         U.S. Courthouse, Room 6720
                         333 Constitution Avenue, NW
                         Washington, D.C. 20001
                         202-354-3187


Jacqueline Sullivan, RPR
Official Court Reporter

70

1       Now, the government does not address an obvious fact

2    when he comes here, your Honor.  He directs us to meet with the

3    Justice Department and DEA.

4       THE COURT:  We've been over that.  Any new evidence?

5    You've already been over that in your previous submissions.

6    Anything new?

7       MR. McMAHON:  The new part, your Honor, is that I've

8    never heard of an indictment coming down and then an

9    investigation starts.  And this trip to Detroit, I thought these

10    folks were supposed to be looking at documents but they had time

11    to go to Detroit to intimidate our witness.  After the raid on

12    the warehouse, your Honor, March 16th and all over, no drugs

13    found, they take a trip in Mongolia, right, what comes of that?

14    We have no documents.  They then go back to the warehouse on the

15    26th, they find some residue explained by the polarization.

16    They go to check down the wife.

17       THE COURT:  The government has in good faith told me

18    that it has in good faith made requests to foreign countries for

19    evidence pursuant to federal code.  Under the federal code I

20    have the authority to extend time off the speedie trial clock up

21    to a year and I'm very sensitive to that and have not done so.

22    What would be the authority for me to deny the government's

23    request to extend time?  What is the authority you want me to

24    take a look at?  Do you deny that they've made -- do you dispute

25    that they've made requests in good faith for evidence?


                    Jacqueline M. Sullivan, RPR
                    Official Court Reporter

AFFIDAVIT

TOMOIYI MARX YU, being duly sworn, deposes and says, under penalty of perjury:

I am a Citizen of Mexico currently being incarcerated at Dormitory # 5, at Santiaguito Jail, located at Almoloya de Juarez, Estado de Mexico by the law enforcement of Mexican Authorities for ungrounded, totally irrelevant criminal charges of alleged crimes against health, pending court proceedings. I am wife to Mr. ZHENLI YE GON, also a naturalized Mexican Citizen of Chinese origin. I am a loving and caring mother of two sons, both of whom were born in the United States. I had been a housewife before I was wrongfully arrested and detained by the Government of Mexico on March 15, 2007, at the wrong place and wrong time.

On August 29, 2007, at about two o'clock, I was called up by the warden of the facilities into an office of interrogation, where a group of law enforcement officers who identified themselves as prosecutors from the United States. There were approximately five people; the district attorney, two assistant lawyers, two translators and other persons. One of them, a middle aged, thin and tall male identified himself as PAUL LAYMON, a U.S. Attorney from U.S. Department of Justice. These U.S. interrogators interrogated me for two and half hours. When I told them that I was represented by my Defense counsel Mr. Rogelio de la Garza, and I pleaded to them that I need to call my lawyer and have Mr. Rogelio de la Garza to be present during the interrogation, these U.S. interrogators prohibited me to make any communication with my lawyer.

The interrogation went very oddly and uncivilized to say the least. Though I understand that at this instant this case has nothing to do with sex related offenses, these interrogators, at the very beginning of the interrogation, spent hours to present me with great number of photographs taken out of a computer of numerous different women to me, alleging that my husband had betrayed me, had adulterous relations with all these women of different races, different colors and different ages. Being a woman, a wife and a mother, I was deeply hurt and offended when I was presented with such a galaxy of "Ye Gon Mistress". They said the justice system in Mexico is corrupt and in other words they had the power to take me to the United States and set me free. They asked me which credit cads I have, I told them American Express. They insisted in how many and which ones. They asked me for one that it is very exclusive. They showed me a list of phone numbers from Zhenli's cellular, the day he was arrested, and asked me which ones I knew. They also asked me how many cellulars



DEFENDANT'S
EXHIBIT
NO. 31

any diplomatic relations; I told them I did not know. They had information about my person and about my sons. They asked me how I paid my expenses, if I use dollars or pesos; I told them pesos. They also asked me about my son's school and if I knew about the money. After I was awakening from my traumatizing, tearful shock, I was then induced to frame up my husband for what these interrogators had prepared for me: a formed answers leading to conclusion that I had witnessed my "alienated" husband to have done such heinous criminal activities as massive drug trafficking and massive manufacturing of precursor drugs. When I told these interrogators that these pre-framed "my testimony" was too distant from the truth, and had completely violated the truth, they immediately became irritated and viciously rude to me. This was the most "civilized part" of the interrogation, because when I tried to lay out the factual truth to them that neither I, nor my husband, to the best of my observation, of my knowledge, had involved in any illicit drug trafficking. Whenever I mentioned this ultimate truth of the fact, these U.S. interrogators became angered and viciously nasty to me. They interrupted my answers all the time whenever I tried to present what I knew of the factual truth to them, and yelled at me with all sort of unsophisticated threats. It appeared that had well prepared and pre-done version of "my" confession, implicating my husband to have engaged what they claimed as massive illicit drug trafficking. They did not come to pick me up for questioning, but to put their well prepared words into my mouth. Using inducements and crude threats, these U.S. interrogators finally presented me with the deal they had brought to me: "If you follow our track and testify as witnessing your husband's illicit drug operations, we can set you and the rest of the people you were arrested with out free immediately. Then you can reunify with your children and your parents. If you don't cooperate with us, we can have you end up in jail for the rest of your life!" This is the words these U.S. interrogators dropped for me before the interrogation was ended in tension. I told them I desperately hope to reunify with my children, with my family, but even if I had been given such a sweet incentive by these U.S. Interrogators for me to lie against my "adulterous husband", I was not born to be such type of well trained liar who lied of everything that she completely did not know.

The interrogation was so ended, and I am now still behind bars, awaiting what the U.S. prosecutor promised my destiny: ending up in jail for the rest of my life. Further affiant sayth naught.


TOMOMI MARX YU
Dated: October 9, 2007

Fax from : 0115255593658     10/10/07   11:59   P9 : 2

AFFIDAVIT

Francisco Javier Zertuche Vazquez, being duly sworn, deposes and says, under penalty of perjury:

I am a citizen of Mexico currently being incarcerated at modulo # VI, file 1882, at Altiplano Maximum Security Jail, located at Rancho la Palma s/n, Santa Juana, C.P. 50900, Almoloya de Juarez, Estado de Mexico by the law enforcement of Mexican Authorities for ungrounded, totally irrelevant criminal charges of alleged crimes against health, pending court proceedings.

The afternoon of September 1st or 2nd I was taken to the court area, around 5:00 PM. After we past the last search before the court area I heard we could not have any communication between each other, therefore we had to be kept separated also from the door of court room #1. At the moment I arrived to the corridor everyone that was arrested with me was already there. Alejandro was inside court room #1 talking to some people, they all spoke English and they had a person translating to Spanish. They were two men and four women. I was able to hear what they were asking Alejandro. They asked if he knew the occupation of Mr. Ye Gon; he answered the pharmaceutical industry because he had a laboratory in Toluca State of Mexico. They asked if he had seen the suit cases before; he answered yes but empty, because they kept them where he slept. They asked him the location of the children's school, he answered Tecamachalco. They asked him several times and in different ways making an n emphasis, that he wanted to be absolutely sure if Rubio and I knew Mr. Ye Gon, and he wanted to be very clear the amount of time that Rubio and I had worked at the house. I could not hear the next questions. It was then when I told Yovani and everyone else not to say anything because our Lawyer, Rogelio de la Garza, was not present. When Alejandro came out of the room they called me in (Zertuche). They introduced themselves as District Attorneys from United States and they were here to help us and give us support. What we talked about was not going to be taken into account in any trial; the main purpose was to clarify as much as possible the case and the legal situation of Mr. Ye Gon. I told them I would gladly cooperate if my Lawyer was present. This person told me my lawyer did not know about this visit, that the person who gave them authorization for the interview was the Director of this Maximum Security Jail (Altiplano); to this I answered that the Director could not make these decisions on my behalf, he only is responsible for my custody and safekeeping. He told me I was correct, and that I had the right to abstain, but he insisted, and if I answered what the wanted to hear they would set me free. He asked the following:

1. - If I knew Mr. Ye Gon, my answer no.
2. - How many times did I take him to the factory in Toluca, I answered never
3. - How long have I been working at the house at the moment of the arrest, I responded 3 or 3 1/2 months.
4. - What type of job you held at the house, answered domestic specifically Mrs. Ye Gon and her children's driver.
5. - Where did you take them, answered to their school and other schools to train or play football.
6. — They asked how many times I saw strange people at the home or family members, answered strange people never, family members once or twice.

He suggested other things but I told him I could not answer anymore questions until my Lawyer, Rogelio de la Garza, was present, he said it was not necessary his presence. He sigh, made a face and said, too bad but it is your right.

Francisco Javier Zertuche Vazquez

Dated: October 9, 2007

. FRANCISCO JAVIER ZERTUCHE VAZQUEZ.

DEFENDANT'S
EXHIBIT
32

AFFIDAVIT

Alejandro Becerra Turral, being duly sworn, deposes and says, under penalty of perjury:

I am a citizen of Mexico currently being incarcerated at modulo # VII, file 1884, at Altiplano Maximum Security Jail, located at Rancho la Palma s/n, Santa Juana, C.P. 50900, Almoloya de Juarez, Estado de Mexico by the law enforcement of Mexican Authorities for ungrounded, totally irrelevant criminal charges of alleged crimes against health, pending court proceedings.

Approximately at the beginning of September the warden told me I had to go to court room No.1. I was the first one there, I noticed foreign people. I asked what this was about. A person from the Mexican District Attorneys office without identifying himself told me they were people from the USA. He said there was no problem, that if I wanted, he could leave because he only brought them to ask me a few questions not related to our situation here in Mexico. An older lady walked up to me, she was an interpreter for a blonde man, who identified himself as a U.S. Attorney from U.S. Department of Justice, in charge of Mr. Zhenli's case in the United States. I asked the interpreter if my Lawyer, Rogelio de la Garza, had knowledge of this visit, the man said he did not know. I asked for my Lawyer's presence, but they said it saw not necessary. They said they had come to Mexico just to find out more about the situation of Mr. Zhenli. I answered I only worked for Mrs. Tomolyi, and I got my job through an agency, and my coworkers Francisco, Arturo and Jovany have not even meet Mr. Zhenli. A color lady sat beside me and started to flirt trying to distract me. I told the man that in reference to the questions I would like to know them beforehand. I did not want to damage our situation. He responded they were simple. I told him to continue. The first question was: How long have you known Mr. Zhenli? I answer since I began working for Mrs. Ye Gon. He asked what kind of relation do I have with Mr. Zhenli? I said none. He asked if I knew of abnormal activities. I answer not to my knowledge; I only had to wait for the children to take them to school. The color person asked me, through the interpreter, if I knew about the money. To that I answer that if I had known about the money I would not be poor anymore. They laugh and I realized some knew Spanish, well most of them. I told the translator I would not answer any more questions. The color lady asked me: Alex how you knew about the money? I laugh and said, with all respect I never saw any money just the one they showed at the SIEDO when it was broadcasted for the first time on Television. He asked how much money I earned. I said 5,000 pesos every two weeks. He asked Dollars? I responded I did not know dollars. He said Alex do you have any doubts about the money they found in the house? I responded they never showed the money they found, they just asked us, while we were in the garden, if we had any empty suit cases, I answered they were in the storeroom. The man with curiosity asked me: Alex how can you prove to me that the suit cases located in the room you slept did not contain any money? I laugh and answered, please, if they had been full of money I would not be in Mexico. Also the maids had just arranged the whole storeroom because I told them Mr. Zhenli was about to come back from his trip. I notice this question, how did they know that was my room? Another tall lady got close to me and said: Alex we want to help you we do not believe your county's news; look Mr. Zhenli is not saying anything we want to clarify this problem, help us and if you do so we will give you your freedom. A young man showed me some pictures of Mr. Ye and Fu with Mr. Zhenli, he asked me if I knew them. I answered two of them I had just seen in the corridor and that the other one was the one on the news. He showed me two more pictures of young Chinese women. I said I did not know them. The older blonde man asked me if I wanted to say anything about the kind of people that visited the house. What did Mrs. Tomolyi do? I answered; she only took care of the children, their homework and their football games. She also had dinner at the restaurant with her parents. The tall lady insisted; Alex could you have been distracted and people came in without you knowing? I answer; I regularly played in the garden with the children, and never saw strange people. They asked me about military people in the house I said Mr. Rubio is a retired officer and there was another officer but that did not last because he had family problems. The lady said; Alex I notice you are nervous is there something you want to tell us? I responded, Mrs. There are laws in my country and none of them force me to answer your questions I did so in attention to them.

Alejandro Becerra Turral

Dated: October 9, 2007

| Name of Product | Acetethamine | Pseudoephedrine Hcl | Ephedrine |
|---|---|---|---|
| Molecular Structure | $C_{12}H_{17}O_2N_1$ | $C_{10}H_{16}ClNO$ | $C_{10}H_{15}NO$ |
| Chemical Structure |  |  |  |
| Molecular Weight | 207 | 201 | 165.23 |

DEFENDANT'S
EXHIBIT
33