## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT FOR ZHENLI YE GON

I, Eduardo A. Chávez, Special Agent, Drug Enforcement Administration, United States Department of Justice, being duly sworn, do depose and state:

1.     I have been employed as a Special Agent (SA) with the Drug Enforcement Administration (DEA) since July 2000 and am presently assigned to the Drug Enforcement Administration, México City Country Office in México City, México. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code §2510(7), who is empowered to conduct investigations of, and make arrests for, narcotic offenses enumerated in Title 18, United States Code §2516. I have successfully completed a sixteen (16) week DEA Basic Agent Training Academy at the DEA Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug and money laundering crimes, including, but not limited to Title 21, United States Code §§841, 846, and 959, and Title 18, United States Code §§2, 1956 and 1957. I have discussed with numerous law enforcement officers, defendants, and informants, the methods and practices used by chemical and narcotic distributors. I have acted in an undercover capacity conducting multiple chemical and methamphetamine transactions and have been the affiant on numerous federal and state search warrants, complaints, and wiretap affidavits and have testified in court in the area of narcotics on several occasions.

2.     The facts set forth in this Affidavit are known to me as a result of my investigation and interview with agents and law enforcement officers. These are not all the facts known to me throughout the course of this investigation, but rather only those which are essential to establish probable cause for charging a complaint against Zhenli YE GON for the federal violations listed here.

## CHEMICALS AND DRUGS INVOLVED

3.     Pseudoephedrine/ephedrine are legitimate pharmaceutical chemicals which are commonly used in cold and allergy medicines. In the United States, pseudoephedrine/ephedrine, its salts, isomers, and salts of isomers are considered List I chemicals as defined by 21 USC §802(34) and 21 CFR §1310.02(a)(3)(11). List I chemicals are those which are deemed important to the clandestine manufacture of controlled substances, including methamphetamine.



DEFENDANT'S EXHIBIT 16

N-Acetylpseudoephedrine is a derivative of pseudoephedrine and while not controlled in the United States, it is controlled in México by the Mexican General Law of Health. N-Acetylpseudoephedrine can be converted back into pseudoephedrine/ephedrine through a chemical process.

4. Methamphetamine is a Schedule II controlled substance as defined by 21 USC §811(a) and 21 CFR §1308.12(d)(2). Methamphetamine is an addictive synthetic stimulant that affects the central nervous system and can be ingested orally, by smoking, snorting, or injecting. Methamphetamine releases high levels of dopamine which stimulate brain cells and enhances body mood and movement.

### PROBABLE CAUSE

5. The DEA México City Country Office (referred to as the DEA MCCO) in joint cooperation with the Mexican Attorney General's Office Organized Crime Unit (referred to by its Spanish acronym "PGR/SIEDO") has been investigating the illicit importation and diversion of precursor chemicals, particularly pseudoephedrine, by a pharmaceutical wholesaler company named UNIMED PHARMCHEM MEXICO, SA DE CV (referred to as UNIMED) and its owner, Zhenli YE GON, located in México City, México.

6. Investigation revealed that UNIMED had imported approximately 20 and 29.4 metric tons of "N-Methyl-Acetylamino" on December 12, 2005, and January 6, 2006, respectively; and 37.485 metric tons of "Hydroxy-Benzyl-N-Methyl-Acetethamine" on both August 28, 2006, and September 2, 2006, into México.

7. According to documentation provided to Mexican Customs by UNIMED, N-Methyl-Acetylamino is a pharmaceutical intermediate chemical used in analgesic product manufacture. Hydroxy-Benzyl-N-Methyl-Acetethamine was also identified as a pharmaceutical intermediate; however documents did not describe any specific use.

8. However, according to conversations with DEA Forensic Chemists (FC), N-Methyl-Acetylamino can be considered a partial chemical name; however, the chemical does not exist as it was listed on UNIMED's shipping manifests nor can it be identified as an intermediate product for analgesic production. DEA FCs also stated that Hydroxy-Benzyl-N-Methyl-Acetethamine does not correspond to any known chemical.

9. On December 5, 2006, UNIMED once again attempted to import 19.797 metric tons of Hydroxy-Benzyl-N-Methyl-Acetethamine which was flagged for inspection by Mexican

Customs at the Pacific seaport of Lázaro Cárdenas, México. A sampling of the substance conducted by the Mexican Customs' Central Laboratory identified it as N-Acetylpseudoephedrine, a derivative of pseudoephedrine/ephedrine. This substance is controlled by Mexican federal health law as well as Mexican federal precursor law making it illegal for UNIMED to import.

10. On April 26, 2007, DEA FC and I traveled to the UNIMED manufacturing plant to analyze any chemicals or residues still present. This plant had been secured by Mexican authorities since the execution of their federal search warrant on March 15, 2007, to be discussed in detail herein. DEA FCs took samples of chemical residue found in equipment and locations throughout the site, including samples which tested positive for the presence of ephedrine. It is believed the plant was used for the production of pseudoephedrine/ephedrine using an N-Acetyl derivative as the starting material.

11. I know based on my conversations with Mexican federal prosecutors and health officials that after 2005, UNIMED pharmaceutical did not have any authority to import, manufacture, distribute, or possess any pseudoephedrine or ephedrine related material. Based on the expert conclusions drawn by the DEA FCs and the importation records of the N-Methyl-Acetylamino and the Hydroxy-Benzyl-N-Methylacetethamine, I believe based on the mislabeling of shipments and positive results for the presence of ephedrine, that YE GON willfully intended to import a restricted chemical into México, violating Mexican law, for the express purpose of manufacturing pseudoephedrine/ephedrine, a listed chemical, as defined by Title 21 United States Code Section 802(34).

12. In consultation and interviews with current and former advisors to the Mexican Federal Commission for the Protection Against Sanitary Risks (hereafter referred to by its Spanish acronym, "COFEPRIS"), they stated that UNIMED, as a pharmaceutical wholesaler, did not have any legal authority to import, export, manufacture, or distribute and product containing pseudoephedrine or ephedrine. COFEPRIS also indicated that all legitimate pharmaceutical laboratories operating in México must go through COFEPRIS to obtain permits to buy and/or sell pseudoephedrine/ephedrine. This Commission is charged with oversight and regulatory control over all pseudoephedrine/ephedrine, imports, exports, and distribution within Mexican territory.

13. Based on the aforementioned information, it is clear that YE GON and UNIMED