UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Crim. No. 07-181 (EGS) |
| | ) | |
| ZHENLI YE GON, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR RELEASE OF FUNDS**

The United States of America, by and through the undersigned Department of Justice Trial Attorneys, hereby files its response to Defendant's Motion for Release of Funds. For the reasons set forth below, Defendant's Motion is without merit and should be denied.

INTRODUCTION

A.    Procedural History

A federal grand jury in the District of Columbia indicted the defendant, Zhenli Ye Gon, on July 26, 2007 for conspiring to aid and abet in the manufacture of 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, knowing that it would be unlawfully imported into the United States from Mexico, and elsewhere, outside of the United States in violation of 21 U.S.C. §§ 959, 960 and 963 and 18 U.S.C. § 2. The indictment contains a forfeiture allegation seeking forfeiture of all money and property belonging to the defendant constituting, or derived from, any proceeds which Defendant obtained, directly or indirectly, as the result of the crimes committed and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the alleged criminal violations. The forfeiture allegation also included a money judgment against Defendant.

1

On August 24, 2007, this Court issued civil seizure warrants for accounts and properties belonging to Defendant and others, including a 2004 Lamborghini Murcielago, $6,100.00 in United States currency, a 2007 Mercedes Benz S-550, a 2007 Mercedes Benz GL 450, Citibank Checking Account #151875564 containing approximately $2,569.04, plus interest, Citibank Checking Account #152070827 containing approximately $485,952.00, plus interest, a Wells Fargo Check 0648300450 for $191,971.74 from Account 6294596132, Bank of America Account # 004968432606 containing approximately $406,855.05, and Wells Fargo Account #9397156952 containing $12,511.48. On November 2, 2007, a court in the United States District Court for the Central District of California, Western Division issued civil seizure warrants for $599,985.00 in United States currency, $318,655.30 in two Bank of America accounts and a 2007 Rolls Royce Phantom. On January 29, 2008, a court in the United States District Court for the Central District of California, Western Division issued civil seizure warrants for $58,772.31 in United States currency and $50,615.89 in an East West Bank account. The United States Marshals Service is in possession of all funds and property. On August 12, 2008 Defendant filed a Motion for Release of Funds.

B.   Legal Standard

A criminal defendant has no Sixth Amendment right to use property subject to forfeiture to pay attorney's fees, *Caplin & Drysdale, v. United States*, 491 U.S. 617, 624-33 (1989) ("[T]here is strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense"), and the "pre-trial restraint of a criminal defendant's assets does not violate the Constitution as long as the assets are restrained based

upon a finding of probable cause that they are subject to forfeiture." *United States v. Farmer*, 274 F.3d 800, 802-03 (4th Cir. 2001) (citing *United States v. Monsanto*, 491 U.S. 600, 615-16 (1989)).

The seizure of property subject to civil forfeiture is authorized by 18 U.S.C. § 981(b)(2), which provides that "[s]eizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure." Accordingly, seizures of property under section 981 must be made upon a showing of probable cause that the property sought for seizure is subject to forfeiture. Generally, once the Government files its civil complaint against the property subject to seizure, direct notice of the forfeiture action is provided to potential interested parties. Upon receiving notice, those parties may file a verified statement of interest pursuant to Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Cases, which govern civil forfeiture actions. Thereafter, a claimant to the property may file a motion for release of the property pursuant to 18 U.S.C. § 983(f).

But a motion for return of seized property under section 983(f) cannot properly be brought if the seized property "is contraband, currency, or other monetary instrument, or electronic funds, unless such currency or other monetary instrument or electronic funds constitutes *the assets of a legitimate business which has been seized*." 18 U.S.C. § 983(f)(8)(A) (emphasis added).

Nevertheless, because of the parallel criminal case and Defendant's allegations that the funds seized for civil forfeiture are necessary for criminal proceedings (defense costs), it is appropriate for the Court to follow the procedure that has developed governing the post-

indictment restraint of property in the criminal context. *See United States v. Michelle's Lounge (Michelle's Lounge I)*, 39 F.3d 684, 693 (7th Cir. 1994); *United States v. Michelle's Lounge (Michelle's Lounge II)*, 126 F.3d 1006, 1008-09 (7th Cir. 1997); *United States v. Farmer*, 274 F.3d 800, 804-05 (4th Cir. 2001).

          1.       Defendant's Required Showing To Obtain A Hearing

Recently, the Untied States Court of Appeals for the District of Columbia Circuit held that the due process clause requires an opportunity to hold a hearing to determine probable cause for the seizure of funds when the defendant has demonstrated the inability to retain the counsel of his/her choice without access to the seized assets. *United States of America v. E-Gold, Ltd., et al*, 521 F.3d 411 (D.C. Cir. 2008). But, the court in *E-Gold* did not address how a defendant can demonstrate his/her inability to retain the counsel of his/her choice, so we must look to other jurisdictions for guidance.

While there is some variation among other Circuits regarding whether and under what circumstances a defendant may challenge the pre-trial restraint of assets after it has been issued, most courts follow what has emerged as the "*Jones-Farmer* rule," which allows the defendant a post-restraint, pre-trial hearing if s/he makes the following two threshold showings: (1) that s/he has no assets other than those subject to a restraining order (or seizure) with which to exercise his or her Sixth Amendment right to counsel or to pay for living expenses; and (2) that there is a bona fide reason to believe that the grand jury (or court, in cases of seizure warrants) erred in finding probable cause to believe that the restrained property should be subject to forfeiture if the defendant is convicted. *United States v. Jones*, 160 F.3d 641, 647-48 (10th Cir. 1998); *United States v. Farmer*, 274 F.3d 800, 804-05 (4th Cir. 2001). Notably, the defendant's burden to

establish his or her lack of available funds must be met before the Court conducts an inquiry into the second factor. *See E-Gold*, 521 F.3d at 415; *United States v. Wingerter*, 369 F. Supp. 2d 799, 808 (E.D. Va. 2005).

While these divergent views exist regarding the issue of a post-restraint hearing, the *Jones-Farmer* rule is widely recognized as the established rule, and balances both the defendant's interest in being heard regarding his or her restrained property and the Government's interest in not exposing its case beyond what is required in pre-trial discovery. Accordingly, the Court should follow the broadly-accepted practice and apply the *Jones-Farmer* rule.

    2.    Scope of a Hearing

If a defendant satisfies the *Jones-Farmer* requirements, s/he is entitled to what is generally referred to as a *Monsanto* hearing based upon the Supreme Court's decision in *United States v. Monsanto*, 491 U.S. 600 (1989). At this hearing, the Government must establish probable cause to believe the property will be forfeited if the defendant is convicted, *see Farmer*, 274 F.3d at 805; *Jones*, 160 F.3d at 647, but, if probable cause is established, the property remains restrained even if the defendant needs the money to retain counsel. *See Monsanto*, 491 U.S. 600; *United States v. Yusuf*, 199 Fed. Appx. 127, 132 n.3 (3d Cir. 2006) (holding property remains restrained if Government establishes probable cause; defendant's Sixth Amendment right to obtain counsel of his choice applies only to the use of his own legitimate, nonforfeitable funds); *United States v. Thomas*, 2004 WL 3059794, at *11-12 (S.D. Ind. 2004) (court grants defendant probable cause hearing but finds Government has met its burden; therefore property remains under restraint even if defendant has no other funds to hire counsel). If a district court finds that probable cause is lacking, the restraining order must be vacated as to the asset needed

for that purpose. *See United States v. Riley*, 78 F.3d 367, 370-71 (8th Cir. 1996); *United States v. Wittig*, 333 F. Supp. 2d 1048, 1054 (D. Kan. 2004).

Further, courts generally consider the scope of the hearing to be limited to determining if there is probable cause *as to the forfeiture of the property*, and do not allow the defendant to challenge the grand jury's (or, in this case, Court's) probable cause as to the underlying criminal offense. *See Jones*, 160 F.3d at 647-48; *United States v. Moya-Gomez*, 860 F.2d 706, 729 (7th Cir. 1988); *United States v. 250 Lindsay Lane*, 2005 WL 1994762, at *6 (W.D. Ky. 2005); *United States v. Jamieson*, 189 F. Supp.2d 754  *But see United States v. Monsanto*, 924 F.2d 1186, 1200 (2d Cir. 1991) (allowing district court to reconsider grand jury's finding of probable cause as to the offense). The Federal Rules of Evidence do not apply in a *Monstanto* hearing, and the Government may rely on hearsay to establish probable cause. *Monsanto*, 924 F.2d 1186, 1199 (2d Cir. 1991); *Jamieson*, 189 F. Supp. 2d 754, 757-58 (N.D. Ohio 2002); *Wittig*, 2004 WL 1490406, at *3 (D. Kan. June 30, 2004).

### ARGUMENT

1. **Defendant Has Not Met His Burden To Establish That He Is Without Assets To Pay For The Counsel Of His Choice**

In his motion, Defendant does not demonstrate that he is without access to any funds nor does he state that he cannot gain access to funds via relatives, friends or business associates. He simply states that certain funds he earned through Unimed are legitimate and that he is entitled to them. Forfeiture is sought in the civil case encompassing multiple accounts and property at issue here based upon 21 U.S.C. § 881, which provides for forfeiture of *all* property and money used, intended for use, used to facilitate, or traceable to any violation of Title 21, and 18 U.S.C. § 981, which provides for forfeiture of *all* property involved in a violation of 18 U.S.C. § 1956 (money

laundering). Taking the finding of probable cause by two district courts that these crimes were committed, upon conviction, the forfeiture would encompass all assets of Defendant.

In *E-Gold, Ltd.,* the court held that the defendants were entitled to a pre-trial, post-restraint hearing to determine if the seizure of the defendants' assets impeded their Sixth Amendment right to counsel. *See id*. at 421. The court in *E-Gold* relied upon *Monsanto v. United States*, 924 F.2d 1186 (2d Cir. 1991) as a guide in arriving at its decision. As in *Monsanto*, the court in *E-Gold* said that a defendant is entitled to a hearing, ". . . in a case in which [the defendant has] demonstrated the inability to retain counsel of their choice without access to the seized assets." *E-Gold* at 415.

Defendant is not entitled to a hearing because he has not shown that he is without access to assets that he would use to hire the counsel of his choice. One major difference between *E-Gold* and the instant case is that in *E-Gold*, "a magistrate judge [] found that the defendants are not financially capable of retaining counsel of choice without seized property." *Id*. at 417. Neither this Court nor a magistrate judge in this district has found that Defendant is without the financial means to retain the counsel of his choice. Defendant has never provided the government nor this Court with any documentation of his holdings worldwide, whether a government has seized them or left them available to him, to prove that he is without access to funds, nor has he shown that his friends, family or business associates are without means to assist him. Given that Defendant has real property in China and Mexico, businesses in Mexico and Hong Kong, passports from Mexico and China, has traveled throughout the world, and sent money to various family members in China and friends in the United States and possibly elsewhere, there is a likelihood that Defendant has access to funds or property elsewhere or

7

through friends and relatives.  Therefore,  Defendant does not meet the first factor of the *Jones-Farmer* rule.

Even assuming that Defendant is able to meet the first standard under the *Jones-Farmer* rule, Defendant has not demonstrated a *bona fide* reason to believe that this Court and the District Court for the Central District of California erred in finding probable cause to believe the restrained property is subject to forfeiture upon his conviction.  Unlike in the *E-Gold* case, two U.S. District Court judges have found probable cause to restrain assets related to Defendant's illegal activities, whereas the court in *E-Gold* focused on the fact that the restraining order against the defendants' properties was based on a grand jury's finding of probable cause.  There was only scant mention of a civil seizure warrant.  In fact, the *E-Gold* court focused on the secrecy and *ex parte* nature of the grand jury process and the protections the court could impose to avoid disclosing material before the government provides discovery.  *Id*. at 421.  The court in *E-Gold* was concerned that the civil seizure warrants were issued after indictment and the defendants did not have an opportunity to challenge the grand jury's findings.  But in the parallel civil proceedings to this case, Defendant and others are challenging the seizures.  Defendant has even filed of a motion to dismiss the civil case, which this court has not yet decided.

In this case, the government did not get a post-indictment restraining order to seize Defendant's assets.  The government instead filed an *in rem* action against Defendant's assets, as well as assets belonging to other individuals.  Thus, Defendant's assets were seized pursuant to orders of judges in the District Court for the District of Columbia and the District Court for the Central District of California, who found probable cause to restrain the assets.  The *in rem* action is now before this Court, and to hold a hearing to determine probable cause to restrain the assets

would duplicate efforts already expended by this Court. More importantly, Defendant has not yet shown that the probable cause findings by this Court and the District Court for the Central District of California, were in error.

        2.    <u>The Properties Seized To Date Are Proceeds Defendant Directly Or Indirectly Obtained As A Result Of Criminal Violations Defendant Committed</u>

Defendant argues that he is entitled to the release of funds the government has lawfully seized because the funds he has identified are legitimate. Defendant completely ignores the fact that all "legitimate" funds he may have earned through Unimed are directly or indirectly obtained as a result of his illegal activities. Rather, Defendant simply states and tries to show through exhibits that some of what his company Unimed imported and/or sold was not related to pharmaceuticals or chemicals, and is therefore legitimate. According to 21 U.S.C. § 853(a), the government can forfeit "any property constituting, or derived from any proceeds the person obtained, directly or indirectly, as the result of such violation"; and "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." Therefore, any money he earned from any activities Unimed conducted were directly or indirectly obtained as the result of the offenses he committed and is subject to forfeiture.

If this Court decided that Defendant is entitled to a hearing to determine probable cause, the government would show that Defendant is the sole owner of Unimed, which Defendant used to import pseudoephedrine and ephedrine, or chemicals Defendant converted into pseudoephedrine and ephedrine, for use in the manufacture of methamphetamine destined for the United States, and which generated hundreds of millions of dollars in illicit proceeds for

Defendant. Defendant claims that Unimed imported and sold $2,697,430.84 worth of products to companies that are not pharmaceutical companies and he is therefore entitled to those funds because they had nothing do to with the crime for which he was indicted. The exhibit Defendant attached to his motion shows that Unimed earned this money between 2001-2004, but it does not mention how much Defendant spent on maintaining Unimed nor how much the products he imported and sold cost him. It is difficult to believe that Defendant did not spend any of these funds to pay for the cost of importing the materials he claims to have sold, nor does he provide this Court with any documentation as to the cost of those items.

Furthermore, Defendant claims that the government conceded that Unimed had a legitimate gross income of $90,000 per month, and, therefore, the government ought to release $2.1 million. What Defendant fails to address is that, even if the government conceded this point, which it has not, this is gross income and there were expenses that Defendant had to pay to maintain Unimed, i.e., employees' salaries, imports of various goods, the equipment he purchased for his facility in Toluca, Mexico, and other bills and expenses that come with running a business, legitimate or otherwise. Defendant also fails to address how much money he personally spent on property and gambling. Given the amount of money Defendant earned from his illicit activities coupled with the relatively small amount he may have earned from Unimed's appearance as a legitimate business, it is difficult to believe that Defendant did not use illicit funds in addition to possible legitimate funds to maintain Unimed so that he could continue his illegal activities. Therefore, all of the "legitimate" money Defendant claims he earned through Unimed is "directly or indirectly derived" from illicit proceeds because, without the use of illicit proceeds, Unimed could not continue to operate and appear to be legitimate.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the United States respectfully asks the Court to deny Defendant's motion to release funds.

                    RESPECTFULLY SUBMITTED,

                    RICHARD WEBER, CHIEF
                    ASSET FORFEITURE AND
                    MONEY LAUNDERING SECTION

                    WAYNE RAABE, ACTING CHIEF
                    NARCOTIC AND DANGEROUS DRUG SECTION

                    _____/s/_____
                    Robert Stapleton
                    Wanda Dixon
                    Paul W. Laymon
                    Trial Attorneys
                    Criminal Division, Department of Justice
                    1400 New York Avenue, NW
                    Washington, DC 20530
                    (202) 514-1263

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2008, I electronically filed the foregoing response to Defendant's Motion for Release of Funds with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

David S. Zapp
7 East 94th Street
New York, NY 10128
(212) 410-3351
Email: davidzapp@aol.com

Martin F. McMahon
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036
(202) 862-4343
Fax: (202) 828-4130
Email: mfm@martinmcmahonlaw.com

_____/s/_____
Robert Stapleton, Esq.
Trial Attorney
Criminal Division, Department of Justice
1400 New York Avenue, NW
Washington, DC 20530
(202) 514-1263