UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>V. )<br>)<br>ZHENLI YE GON )<br>) | Crim. No. 07-181 (EGS) |

**RESPONSE TO MOTION**

  **COMES NOW** the United States of America, by and through the undersigned attorney, and hereby responds to the motion to compel discovery.

  Defendant filed a motion to compel discovery, a memorandum of points and authorities, and numerous pages of attachments. All together, the motion, memorandum and attachments total 138 pages.

  Pursuant to Federal Rules of Criminal Procedure 16(d), the government moves the court to refer this and all other discovery motions to the United States District Court Magistrate Judge, who can hold hearings, hear testimony if necessary, and make appropriate recommendations to the District Court. These discovery matters are complex matters which are not easily answered in pleadings, and may require witness testimony to fully understand.

  However, the government will endeavor to respond to the requests raised by defense counsel. The government would note that the defense counsel who filed this motion to discover was removed from the case by the defendant and has not represented the defendant for several months. The government believes this is relevant to any defense counsel claim that the

government has not responded to *his* motions concerning discovery.

The defendant seeks disclosure of the following. The government will use the defense counsel's numbering.

1. Samples from a December 2006 seizure by Mexican authorities of a chemical ordered by the defendant from a company in China. Also, records relative to the place where the seized chemicals were stored.

2. Samples taken by Chifeng Arker, the company in China from which the defendant purchased tons of precursor chemicals and an intermediate chemical, which are used in the manufacture of methamphetamine.

3. A log book allegedly kept at the headquarters of the defendant's company.

4. Log books allegedly kept at the "warehouse" of the defendant's company.

4a. Cell phones seized from defendant at the time of his arrest, along with documents relating to the inspection of the cell phones, including the examiner's handwritten notes. (Defendant has two number fours in his request. For the sake of conforming to the motion, the government will continue to number both items as number four, but refer to the second number four as 4a.)

5. Laptop computer and documents relating to the inspection of the laptop, including the examiner's handwritten notes.

6. Chain of custody documents related to the more than $200 million dollars seized from the defendant's home in March 2007.

7. Lab reports concerning the testing of the December 2006 shipment noted in number one above.

In addition, the defendant has requested disclosure of the following:

1. Production of documents related to an alleged DEA interview with an "Allen Pfitzenmaier".

2. Documents and samples of shipments noted in paragraph six of an affidavit of a DEA agent.

3. Documents related to "Official Communication 563", which defendant alleges pertains to a proposal that a seized shipment be destroyed.

4. Receipts, contracts, and licenses seized from the warehouse of defendant's company.

5. Production of four individuals for depositions.

6. Index of the documents disclosed by the government so far, and translations of all documents that the government has translated for use in its case.

The government will respond to each numbered item as it is set out in the defendant's motion.

1. Beginning in 2002 and ending in 2006, defendant acquired tons of the precursor chemicals used to make methamphetamine and tons of an intermediate chemical from which he easily made the precursor chemicals. He acquired these chemicals from a company called Chifeng Arker, located in Inner Mongolia, China. Chifeng Arker is one of the world's largest manufacturers and exporters of ephedrine and pseudoephedrine, precursor chemicals used to manufacture methamphetamine. Chifeng Arker typically shipped these chemicals to Mexico via cargo ships. In December 2006, the Mexican government seized one shipment of the intermediate chemical when the chemical arrived at a Mexican seaport. Mexican customs and/or law enforcement officials seized the shipment, took samples of the chemicals, and tested the samples. The shipment and the samples are not "within the government's possession, custody, or control", and therefore are not discoverable. See Rule 16(a)(1)(E). However, the government has attempted to locate and acquire portions of the samples taken from this seized shipment. Should the

government acquire possession, custody, or control of the samples, it will comply with the rule.

2. As noted in number one above, Chifeng Arker is a business in Inner Mongolia which manufactures and exports large quantities of ephedrine and pseudoephedrine. Chifeng Arker sold extremely large quantities of ephedrine and pseudoephedrine to the defendant, along with extremely large quantities of an intermediate chemical from which ephedrine and pseudoephedrine could be made. The government does not know if the company kept samples of its many shipments to the defendant. In any case, any such samples are not "within the government's possession, custody, or control".

3. Defendant has claimed at past hearings that Mexican authorities seized a "log book" from the defendant's headquarters. The government has turned over to the defense counsel thousands and thousands of pages of documents seized from the defendant's company. The defense claims that the discovery contains no log book. The government has several times asked Mexican authorities about the alleged log book, and have been repeatedly told that no such log book was seized. Unless the log book is somehow contained within the voluminous discovery given to the defense counsel, the government does not have a log book "within its possession, custody, or control". Defendant also asks for the log book maintained by COFEPRIS, the Mexican agency responsible for regulating the defendant's importation and distribution of ephedrine and pseudoephedrine. There are documents from COFEPRIS in the voluminous discovery provided to the defendant. The government does not have any other COFEPRIS documents not already disclosed.

4. Defendant now claims that log books were seized from the defendant's warehouse. Unless the alleged log books are contained in the voluminous discovery, the government does not have any

such items "within its possession, custody, or control."

4a. When the defendant was arrested, agents seized several cell phones from either his person or his possessions. Those cell phones have been examined by the DEA lab. If it has not already done so, the government will disclose a copy of any lab report. The government will not disclose the handwritten notes of the examiner. See Rule 16(a)(2).

5. Defendant's laptop computer was seized at the time of his arrest. The government has previously provided the defense with the contents of the laptop. The government will not disclose the examiner's handwritten notes. A computer was seized from a woman the defendant was staying with. It does not belong to the defendant and appears to have no relevance to him. The government will not use her computer in its case in chief. It is not discoverable. See Rule 16(a)(1)(E)(i, ii, iii).

6. In March 2007, Mexican authorities seized more than $200 million dollars from defendant's Mexico City home. There are documents related to that seizure in the voluminous discovery already provide by the government. Otherwise, the government has no other documents related to the chain of custody of the money.

7. The government will identify for the defense any Mexican lab reports it has which relate to the December 2006 seizure of the intermediate chemical.

      The government responds as follows to the defense's additional requests:

1. Rule 16 does not require the government to disclose the names of any potential witnesses or to provide any reports summarizing interviews of its witnesses. The government is aware of its other disclosure obligations pursuant to *Brady, Giglio,* and the Jencks Act.

2. Defendant appears to be requesting documents (and samples) related to four shipments of the

intermediate chemical in 2005 and 2006. There may be documents related to those shipments in the voluminous discovery provided to the defense. The government will have to determine if any of those shipments were seized or examined by Mexican customs or Mexican law enforcement. Even if they were, the government does not have any of the samples within its "possession, custody, or control".

3. Defendant requests all documents related to "Official Communication 563 (sic, 348)", mentioned at paragraph 8 in a Mexican report bearing no discernible date, and included as Exhibit 2 in the defendant's motions packet. Until the filing of defendant's motion, the government had never heard of "Official Communication 348" (or 563). It is described in the Mexican document as a document issued by the Health Services office of Michoacan, stating that the Clerk of the Court has no interest in "giving a licit use" to a quantity of ephedrine acetate. The government is not sure what this document is, and is not sure if document 348 is included in the discovery materials received from the Mexican government and disclosed to the defense. The government will have to determine what the document is and try to determine if it has a copy o f it.

4. The defense seeks all receipts, contracts, and licenses seized from the defendant''s warehouse. Again, documents seized from defendant are included in the voluminous material already disclosed to the defendant. The government has no other such documents.

5. The defendant apparently seeks to depose "four individuals referenced in" Exhibit 2 of its motion. Rule 15 covers depositions. Should the defense move under Rule 15 to depose any prospective witness, the government will respond. However, the United States has no power to produce a Mexican citizen for a deposition by the defense.

6. The government is working on an index of the documents contained in the voluminous discovery. If the government comes up with such an index, it will be inclined to provide a copy to the defense. Defendant has also asked for a copy of all translations of all documents that the government has translated for use in its case. The government will eventually disclose translations of any documents which it seeks to use at trial, but the government is not prepared to do so at this time.

The defendant appears to believe that the government has the responsibility to find evidence that proves the rather convoluted theories he puts forward in his defense. Yet defendant has his own means to identify and locate evidence. Defendant is represented by civilian defense counsel in Mexico, and one of his American lawyers is from China. One of his other American counsel has gone to China (Hong Kong) on behalf o f the defendant. The defendant could also ask the court to issue a request for foreign evidence. Courts have essentially required the defense to make an effort to obtain foreign evidence. See, e.g., *United States v. Yousef,* 327 F.3d 56, 112-13 (2d Cir. 2003) ("The defendants focus the bulk of their due process complaints on the United States Government's alleged failure to help them obtain cooperation from Philippine authorities, which they allege significantly hindered their defenses...The defendant cannot now be heard to complain about his inability to obtain (a videotape) when he did not use the tools at his disposal to seek the tape."). See also *United States v. Sensei,* 879 F.2d 888, 899 (D.C.Cir. 1989) (affirming the lower court's rejection of a motion for a new based on the Sixth Amendment where defendant failed to "use all the means at his disposal to obtain the needed testimony").

At least one court has held that the United States cannot be compelled to gather evidence for the defendant from third parties. See, e.g., *United States v. Steurer,* 942 F.Supp.

1183, 1188-90 (N.D.Ill. 1996). While the United States recognizes that in some instances it will be better situated than the defense to acquire evidence, the defense also has an obligation to search for its own evidence. But the United States has worked hard to gather evidence in this case, whether that evidence is exculpatory or inculpatory. The United States recognizes its obligations under *Brady* and *Giglio,* and has attempted to uncover all relevant evidence that relates to the case, not just evidence that incriminates the defendant.

The United States has made both oral and written requests for evidence from several nations, most significantly China, Mexico, and Germany. In that regard, the defense asks the court to review *in camera* the various written requests for evidence made to these countries. The defense offers no authority for this proposition, and indeed there is no reason for the court to review the requests.

**WHEREFORE**, the United States respectfully asks the Court to assign this motion to the United States District Court Magistrate Judge, for further recommendation and disposition by the Magistrate Judge.

Respectfully submitted,

\_\_\_/s/_____
Paul W. Laymon
Trial Attorney
Criminal Division, Department of Justice
1400 New York Avenue, Suite 8410
Washington, DC 20005
(202) 514-1286
paul.laymon@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing motion was emailed to Mr. Martin McMahan, counsel for defendant, on August 26, 2008.

                                                              Paul W. Laymon
                                                              Trial Attorney, DOJ