UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | Crim. No. 07-181 (EGS) |
| ) | |
| ZHENLI YE GON ) | |
| ) | |

**SUPPLEMENT TO THE GOVERNMENT'S MOTION TO DISMISS**

**COMES NOW** the United States of America, by and through Paul O'Brien, Chief, Narcotics and Dangerous Drug Section, and supplements its motion to dismiss filed on June 22, 2009.

I.   Introduction

The defendant is charged in Mexico in a scheme to import and manufacture precursor chemicals and to launder drug proceeds. That case has the personal attention of the Mexican Attorney General. In its motion to dismiss, the government explained that the Mexican government has formally requested extradition of the defendant, who is a Mexican national, and that an extradition proceeding is now pending. We further explained why the interests of justice and the ongoing collaborative efforts between the United States and the Government of Mexico in combating international drug trafficking would be best served by giving precedence to Mexico's prosecution of the defendant.

The purpose of this supplement to the government's motion to dismiss is to address the factual and legal questions raised by the court at the June 22, 2009 status hearing concerning the government's compliance with its discovery obligations in this case. As explained in the attached declaration of Assistant U.S. Attorney Paul Laymon, the government has produced to

the defense more than 75 volumes of discovery materials, including forensic reports, reports of interviews, banking records, gambling records, shipping records, and so on. Those materials were produced to the defense beginning in 2007. The Court has suggested that, despite the fact that we are four months before the scheduled trial in this case, the government's compliance with a court-ordered deadline for producing *Brady* material nonetheless constitutes a failure to turn over *Brady* material. The court's suggestions are not supported by the law. Indeed, courts have uniformly rejected the notion that *Brady* disclosures need to be made in pretrial proceedings, let alone immediately, as the Court appears to suggest; due process is satisfied as long as the material is disclosed in time for the accused to make effective use of it at trial. *See, e.g., United States v. Andrews*, 532 F.3d 900, 907-08 (D.C. Cir. 2008); *United States v. Coppa*, 267 F.3d 132, 142-44 (2d Cir. 2001); *United States v. Wilson*, 160 F.3d 732, 741-42 (D.C. Cir. 1998); *see also* p. 5 n.2, *infra* (citing cases from other circuits); *cf. Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably."). We are not aware of any precedent holding that the government violates *Brady v. Maryland*, 373 U.S. 83 (1963), by disclosing information four months before the start of trial in a case which it then moves to dismiss.

     As explained more fully below, the government submits that it has fully complied with its *Brady* obligations.

     II.     The Prosecution's *Brady* Obligations

     In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that due process requires the prosecution to disclose "evidence favorable to an accused . . . where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.[1] That obligation arises from the defendant's right to a fair trial. *See United States v. Ruiz*, 536 U.S. 622, 628-29 (2002). A "true *Brady* violation" requires three showings: (1) that the evidence in question was favorable to the accused; (2) that the prosecution suppressed the evidence; and (3) that the evidence was material to the establishment of his guilt or innocence. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *accord United States v. Andrews*, 532 F.3d 900, 905 (D.C. Cir. 2008) (quoting *Strickler*).

"Favorable" evidence under *Brady* includes "[i]mpeachment evidence, . . . as well as exculpatory evidence." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

Under the suppression prong, an individual prosecutor must disclose materially favorable information known to him, and "has a duty to learn of [and disclose] any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995); *accord Strickler*, 527 U.S. at 280-81; *In re Sealed Case*, 185 F.3d 887, 892 (D.C. Cir. 1999). The prosecutor, however, does not have an affirmative obligation to search for and disclose materially favorable information that is not in the possession of the prosecution team. *See, e.g.*, *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1703 (2008); *United States v. Earnest*, 129 F.3d 906, 610 (7th Cir. 1997). Nor does the prosecutor violate *Brady* by failing to disclose materially favorable information when circumstances of which the defendant is aware suggest that the evidence is available to the

---

[1] The government's disclosure obligation runs to the defendant. We are not aware of any requirement under *Brady* that the government disclose the materially favorable information to the court.

defense from other sources in the exercise of reasonable diligence.  *See, e.g.*, *United States v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005) (noting "the well-established principle that the government is not obliged under *Brady* to furnish a defendant with information which he already had or, with any reasonable diligence, he can obtain himself") (internal quotation marks omitted), *cert. denied*, 546 U.S. 1137 (2006); *United States v. Hicks*, 848 F.2d 1, 4 (1st Cir. 1988) (no *Brady* violation where the defense knew of and had access to the potential witness, and therefore was "on notice of the essential facts required to enable him to take advantage of [the] exculpatory testimony") (quoting *United States v. Ruggiero*, 472 F.2d 599, 604 (2d Cir.), *cert. denied*, 412 U.S. 939 (1973)).

Further, because a defendant's rights under *Brady* and *Giglio* are "trial-related rights," *Ruiz*, 536 U.S. at 631, *Brady* does not require disclosure of materially favorable evidence in pretrial proceedings.  *See id.* at 628-31 (holding that prosecution was not required to disclose impeachment information prior to guilty plea because *Brady* doctrine relates to fairness of trial, not earlier, plea-bargaining stage); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."); *United States v. Bowie*, 198 F.3d 905, 912 (D.C. Cir. 1999) (expressing doubt that *Brady* requires disclosure of impeachment information with respect to pretrial suppression hearing).  Courts have uniformly rejected the notion that *Brady* disclosures must be made before trial, let alone immediately when the government comes into possession of the material in question; the government satisfies its *Brady* obligations by furnishing materially favorable information in time for the defendant to use it at trial.  *See Andrews*, 532 F.3d at 907-908 (rejecting *Brady* challenge because defendant received information in time to make effective use of it at trial); *United States*

v. *Tarantino*, 846 F.2d 1384, 1417 (D.C. Cir. 1988) (holding that "nothing approaching a *Brady* violation occurred," despite defendant's claim that production was too late, because earlier disclosure would not have appreciably enhanced the effectiveness of the defendant's use of the information at trial); *United States v. Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988) (no *Brady* violation when a defendant receives exculpatory evidence "in time to make effective use of it").[2]

Finally, evidence is "material" within the meaning of *Brady* if "'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289 (quoting *Kyles*, 514 U.S. at 434); *accord United States v. Brodie*, 524 F.3d 259, 268 (D.C. Cir. 2008), *cert. denied*, 129 S. Ct. 1396 (2009). A "'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678).[3]

---

[2] Other circuits agree that *Brady* does not require pretrial disclosure and that its requirements are satisfied if the information is provided in time for the defendant to use it at trial. *See, e.g.*, *Bielanski v. County of Kane*, 550 F.3d 632, 645 (7th Cir. 2008); *United States v. Smith*, 534 F.3d 1211, 1223 (10th Cir.), *cert. denied*, 129 S. Ct. 654 (2008); *United States v. Mangual-Garcia*, 505 F.3d 1, 5-6 (1st Cir. 2007); *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005); *United States v. Williams*, 132 F.3d 1055, 1060-1061 (5th Cir. 1998); *United States v. Woodley*, 9 F.3d 774, 777 (9th Cir. 1993); *United States v. Higgs*, 713 F.2d 39, 43-44 (3d Cir. 1983); *United States v. Kubiak*, 704 F.2d 1545, 1550 (11th Cir. 1983); *see also Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001).

[3] In *United States v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005) (Friedman, J.), the court concluded that "the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed – with the benefit of hindsight – as affecting the outcome of trial," *id.* at 16, and ordered the government, before trial, immediately to disclose *Brady* material. That view of *Brady*, we submit, does not reflect the scope of the government's disclosure obligations, nor has that view been adopted by other courts. *See, e.g.*, *Coppa*, 267 F.3d at 142-44, 146 (vacating district court order requiring production of all favorable information immediately upon demand by defendant). In any event, the government's disclosure in this case was timely, as it occurred four months

III.     The Government Has Complied With Its *Brady* Obligations In This Case.

As the foregoing precedents demonstrate, the government has fully complied with its *Brady* obligations in this case. On May 22, 2009, the government notified the defense in writing of *Brady* and *Giglio* information in its possession, including information that one potential government witness in this case denied making previous inculpatory statements about the defendant; that one Escandon Paz (an incarcerated defendant in the Mexican case whom the government did not intend to call as a witness in this case) recanted his previous statement that he had obtained quantities of ephedrine from defendant Ye Gon and had sold them on behalf of defendant; and that Michelle Wong, defendant's girlfriend and a defendant in a related case, recanted statements she had made incriminating him. The government's May 22nd disclosure predated the start of trial by four months, giving the defense more than sufficient time to investigate the information and prepare for its possible use at trial. The defendant did not even request a continuance in light of the government's disclosure. *See Andrews*, 532 F.3d at 907 (noting that the defendant did not request a continuance in order to have sufficient time to make use of impeaching material disclosed during trial). Therefore, even assuming *arguendo* that the information was materially favorable to defendant, he has no viable claim of a *Brady* violation because the government did not suppress the information at all. Moreover, any claim by defendant that an earlier disclosure would have affected his willingness to engage in plea negotiations (which, in any event, did not result in a plea agreement) is unavailing, as the Supreme Court has made clear that *Brady* and *Giglio* are "trial-related rights," *Ruiz*, 536 U.S. at 631, and the information disclosed in the May 22nd notice does not contain exculpatory evidence

---

before the scheduled start of trial.

of his actual innocence.

As set forth in detail in our motion to dismiss, the government has concluded, after balancing the relative strengths and weaknesses of the American and Mexican prosecutions as well as the strong interest of Mexico in pursuing its charges against its own citizens for conduct occurring in Mexico, that it is preferable to defer to Mexico's extradition request and allow that country's case to take precedence. In reaching this decision, and in setting forth in full the basis for the government's motion to dismiss these charges, we have in no way meant to suggest that we have any doubts about the defendant's guilt or that we believe we do not have a provable case. We submit only that, as between the two countries' prosecutions, there are sufficient reasons -- including a less complicated set of charges and the prospect of a very lengthy sentence -- to defer to Mexico's request for the return of its citizens for trial there.

Nor is there any reason to believe that the government has purposely delayed its motion to dismiss so as to needlessly prolong the defendant's incarceration. He is charged in both countries with very serious offenses; the risk of flight has already been determined to be real; and the filing of an extradition complaint separately gives rise to a presumption of detention pending a determination of extraditability and an eventual decision by the Secretary of State, *see Wright v. Henkel*, 190 U.S. 40, 61-62 (1903). In short, there are ample reasons for defendant's continued incarceration and no basis for a suggestion that either the United States or Mexico is knowingly detaining innocent people. Therefore, we respectfully ask that the court dismiss this criminal case without prejudice.

Respectfully submitted,

___/s/_____

                                      Paul O'Brien
                                      Chief, Narcotics and Dangerous Drug Section

                                      Paul W. Laymon
                                      Wanda Dixon
                                      Trial Attorneys
                                      Criminal Division, Department of Justice
                                      1400 New York Avenue, Suite 8410
                                      Washington, DC 20005
                                      (202) 514-1286
                                      paul.laymon@usdoj.gov
                                      wanda.dixon@usdoj.gov

June 24, 2009