UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**          :
                                      :
          **Plaintiff,**              :   Criminal Action
                                      :   No. 07-181
**v.**                                :
                                      :
**ZHENLI YE GON,**                    :   June 30, 2009
                                      :   2:20 p.m.
                                      :
                                      :
          **Defendant.**             :   Washington, D.C.
                                      :
.......................... :


**TRANSCRIPT OF STATUS CALL PROCEEDINGS**
**BEFORE THE HONORABLE EMMET G. SULLIVAN,**
**UNITED STATES DISTRICT JUDGE**


APPEARANCES:

  For the United States:          **Paul M. O'Brien, Chief**
                                  UNITED STATES DEPARTMENT OF
                                  JUSTICE
                                  1400 New York Avenue, NW
                                  Suite 11100
                                  Washington, DC 20005
                                  (202) 514-0165
                                  paul.obrien@usdoj.gov

                                  **Richard Weber, Chief**
                                  UNITED STATES DEPARTMENT OF
                                  JUSTICE
                                  1400 New York Ave., NW Suite 11100
                                  Washington, DC 20005
                                  (202) 514-1263
                                  richard.weber@usdoj.gov

                                  **Paul W. Laymon, Trial Attorney**
                                  U.S. DEPARTMENT OF JUSTICE
                                  1400 New York Ave., NW Suite 8414
                                  Washington , DC 20005
                                  (202) 514-1286
                                  Email: Paul.laymon@usdoj.gov

APPEARANCES: Cont.

**Wanda J. Dixon, Trial Attorney**
U.S. DEPARTMENT OF JUSTICE
Criminal Division, Narcotic &
Dangerous Drug Section
1400 New York Ave., NW, Suite 8000
Washington, DC 20005
(202) 307-0377
wanda.dixon@usdoj.gov

**Robert Stapleton, Trial Attorney**
U.S. DEPARTMENT OF JUSTICE
1400 New York Avenue, NW
Suite 10100
Washington, DC 20530
(202) 514-1263
robert.stapleton@usdoj.gov

For the Defendant:        **A. Eduardo Balarezo, Esq.**
LAW OFFICES OF A. EDUARDO BALAREZO
400 Fifth Street, NW
Suite 300
Washington , DC 20001-2719
(202) 639-0999
Email: Filings@balarezo.net

**Manuel J. Retureta, Esq.**
RETURETA & WASSEM, PLLC
601 Pennsylvania Avenue, NW
South Bldg., Suite 900
Washington , DC 20004-2601
(202) 220-3073
Email: Mjr.rw@verizon.net

**Martin F. McMahon, Esq.**
1150 Connecticut Avenue, NW
Suite 900
Washington , DC 20036
(202) 862-4343
Fax: (202) 828-4130
Email: Mfm@martinmcmahonlaw.com

Also Present:

Interpreter:             **Linda Fang**

```
 Court Reporter:              Scott L. Wallace, RDR, CRR
                             Official Court Reporter
                             Room 6509, U.S. Courthouse
                             Washington, D.C. 20001
                             202.326.0566
                             scottlyn01@aol.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

<u>**AFTERNOON SESSION, JUNE 30, 2009**</u>

(2:21 p.m.)

THE COURTROOM CLERK:  Criminal case 07-181, United States versus Zhenli Ye Gon.  Would counsel please identify yourselves for the record.

MR. O'BRIEN:  Good afternoon, Your Honor.  Paul O'Brien for the United States, and with me at table is Ms. Wanda Dixon and Paul Laymon, Rob Stapleton, and I don't believe the Court knows Mr. Weber, Rich Weber.  He's the supervisor in the Asset, Forfeiture and Money Laundering Section.  Good afternoon.

THE COURT:  Good afternoon to everyone.  I understand Mr. Weber is not a member of the bar of this Court, but he's been aloud to participate in this proceeding if he wants to.  Did you want to move in *pro hac vice*?  It's up to you.  You don't have to.

MR. WEBER:  It's up to you, Your Honor.  That's acceptable.

THE COURT:  I'm fine, I'm fine.  Welcome to the court.

MR. WEBER:  Thank you, Your Honor.

MR. BALAREZO:  Good afternoon, Your Honor.  Eduardo Balarezo on behalf of Mr. Ye Gon, with my co-counsel Manuel Retureta, Martin McMahon, and Christine Hilton.

THE COURT:  Good afternoon, counsel.  Mr. Ye Gon, good afternoon.

THE DEFENDANT:  Good afternoon.

1          THE COURT:  How are you today?

2          THE DEFENDANT:  I'm fine.

3          THE COURT:  You're fine?  All right.  All right, counsel,

4     there are a number of matters that I wish to address this

5     afternoon.  The bottom line is counsel is going to have to do

6     some more work with respect to the pleadings before the Court.

7     There's no disagreement with respect to the motion to dismiss,

8     and at some point I'll grant that motion.  The only question is

9     whether it should be -- the case should be with or without

10    prejudice.  If I defer that issue for a short period of time, is

11    Mr. Ye Gon prejudiced?  There's a pending extradition hearing in

12    August, but I want to be sensitive to this issue.  It's going to

13    be dismissed.

14          One thought that occurred to me is just to dismiss it now

15    and then sort out with prejudice versus without prejudice later.

16    I don't think I want to do that.  I feel somewhat uncomfortable

17    doing it.  If the parties don't disagree about that, I don't want

18    to be divested of jurisdiction.  I don't think I would be, but

19    what are your thoughts about that?  By the same token, I don't

20    want to delay this.

21          Let me tell you what I have in mind.  I have in mind a

22    final hearing on this issue for one of the dates that we had

23    selected for anticipated hearings on motions.  We had selected

24    the 29th with the carry-over date for the 30th.  My intent is to

25    proceed with a final hearing in this case on the 30th and to

1    decide the issue of prejudice versus without prejudice on that

2    date and any other issues that have to be decided on that date in

3    the criminal case.  I know we had also talked very generally

4    about the civil cases.  I can defer addressing issues in those

5    cases at this point.

6         I also want to -- it's my intent to also address the issue

7    of the motion that was filed, I believe, yesterday evening, the

8    motion in the criminal case for return of evidence seized from

9    Mr. Ye Gon which may have an impact on the civil forfeiture

10   cases, I assume.  So that's what I intend to do, but I want to be

11   sensitive to the issue of not addressing prejudice versus not

12   prejudice sooner than the 30th of July.

13        MR. BALAREZO:  Your Honor, if I can answer the Court's

14   initial question, which is how would our client be prejudiced if

15   the Court were to hold off ruling on the motion to dismiss?

16        THE COURT:  Right.

17        MR. BALAREZO:  His extradition matter, the next hearing is

18   in late August, August 24th, I believe.  The government in that

19   matter has filed recently a motion to detain him without bond, to

20   which we have until mid-July to respond.  I believe he has an

21   immigration detainer in place currently, so even if the Court

22   were to dismiss this case here today, I --

23        THE COURT:  He would still be detained.

24        MR. BALAREZO:  He would still be detained, at least under

25   the detainer and possibly thereafter depending on Magistrate

1    Facciola'S ruling on the motion to detain him without bond.

2        THE COURT:  All right.  Let me make it easier.  What's

3    your view with respect to the Court entering an order today

4    dismissing the indictment and then just reserving the issue of

5    prejudice versus without prejudice, for the 30th?  I'll ask the

6    government the same question.  Again, I don't think I'm divested

7    of jurisdiction, but I don't want to knowingly divest myself.

8        MR. BALAREZO:  That was going to be my question.  If the

9    case is dismissed, I'm not sure.  But I don't know how the Court

10   would maintain jurisdiction over the matter.  Clearly we don't

11   object to the dismissal in any case.  It's that one salient

12   issue, and we would be prepared to file anything soon so that

13   doesn't keep dangling around, quite frankly.  Mr. Ye Gon has been

14   detained for several years.

15       THE COURT:  That's not an issue that's integral to

16   dismissal; that is, whether it should be with prejudice or not

17   prejudice.  So, getting back, are you prejudiced by the Court

18   deferring until July the 30th?

19       MR. BALAREZO:  Your Honor, I don't believe we would be

20   prejudiced by that.

21       THE COURT:  All right.  What's the government's view on

22   that?

23       MR. O'BRIEN:  Your Honor, we recognize that the Court set

24   today for a status conference.  We're prepared to go forward.

25   Obviously, if the Court wants this matter to be handled on the

1  30th, we'll be prepared to go forward on the 30th.  I will say,

2  as a preliminary matter, I think it is important for the Court to

3  hear from me on this matter.  I was involved in the decision,

4  particularly the timing of the decision to dismiss this case.

5  Unfortunately, I couldn't be here last -- at the last hearing.  I

6  was out of the district on official business.  So I think, if

7  today was just a status conference to set the matter, we'll be

8  prepared to go forward on the 30th, and on the 30th I would like

9  an opportunity to address the Court concerning the timing of the

10  dismissal.

11      THE COURT:  Sure, sure.  All right.  What about the

12  prejudice versus nonprejudice issue?

13      MR. O'BRIEN:  I think the defense said that they didn't

14  feel they would be prejudiced.  Obviously, we'll be prepared to

15  go forward on the 30th.  In the interim, the motion for return of

16  property was filed yesterday.  We really haven't had an

17  opportunity to review that.  What I would suggest is we can

18  review that, perhaps there are certain categories of property

19  that we can agree to return when the case is dismissed.  We can

20  narrow the issues for the Court.  If there's property that we can

21  agree to return, then we can deal with that issue on the 30th as

22  well.  And I also want to thank the Court for extending the

23  courtesy on giving us additional time to file a response this

24  weekend.

25      THE COURT:  Absolutely.

1    MR. O'BRIEN:  I appreciate that.

2    THE COURT:  Sure.  Let me just put on the record some

3 points that I want both sides to address.  I think that, as it

4 stands now, the defendant has filed his response to the

5 government's motion and supplemental motion to dismiss.  The

6 Court needs a reply to points raised by the defendant, and the

7 Court also needs a response to the defendant's motion for return

8 of evidence seized.

9    I need some time to focus on both sides' best thoughts

10 with respect to the remaining pleadings.  Also, the issue of

11 prejudice versus nonprejudice needs to be addressed.  I don't

12 believe anyone cited any case authority.  There must be some case

13 law that addresses that issue, but I don't think that's been

14 fully briefed, and I'm interested in what your thoughts are and

15 what the controlling authority is from this circuit as well as

16 any Supreme Court authority that might be persuasive to the

17 Court.

18    I'm just thinking out loud now and I want you to respond

19 to what I'm going to say with respect to the timeframe.  You can

20 listen to the points I want you to address first, and then we can

21 talk about an appropriate timeframe.  There's not a lot of time.

22 We have about four weeks between now and the 30th, but I want to

23 resolve these issues on the 30th and at least bring finality to

24 this case.  And if it has an impact on the civil cases, so be it;

25 if not, then I can focus on the civil cases at a later date, but

1    these are the points.  Maybe it's best that I just tell you what

2    points I want you to respond to because both sides are going to

3    have to go back to the drawing board and do some additional work,

4    and on the 30th, Mr. O'Brien, I'll be delighted to hear from you

5    as well.  There's no reason for you to say anything today.

6         MR. O'BRIEN:  Thank you.

7         THE COURT:  It's significant, though, that after nearly

8    two years the government has moved to dismiss without prejudice

9    this case against Mr. Ye Gon.  At the last status hearing held on

10   June 22nd, the day the government filed its motion, the Court

11   directed the government to file an appropriate pleading and

12   declarations as appropriate addressing its revelation that

13   several key witnesses had recanted their testimony and/or refused

14   to testify against Mr. Ye Gon, and that the government had known

15   about this favorable and/or impeachment information for at

16   least -- for more than six months.

17        On June 24th, the government filed a supplemental motion

18   to dismiss on the public docket, as well as a sealed declaration

19   by Paul Laymon.  In its pleading and declaration the government

20   argues that its committed no *Brady*/*Giglio* violations because the

21   information was produced four months prior to trial, and the

22   Constitution only requires that the government, quote, furnish

23   materially favorable information in time for the defendant to use

24   at trial, end quote.  And that's from the supplemental memorandum

25   at page 4.

1    On June 29th, Mr. Ye Gon, through his counsel, filed his

2    response to the government's initial and supplemental motion.  He

3    doesn't, not surprisingly, he does not oppose the government's

4    motion to dismiss the case against him, but maintains that the

5    case should be dismissed with prejudice.  His pleading notes that

6    in November and December of 2008, the case was at that time two

7    weeks from trial and the government had not produced the

8    exculpatory evidence.  And later, when the trial was set for

9    June 22nd, 2009, and as late as May 1st, seven weeks from trial,

10   the government had not produced the exculpatory evidence.  In

11   fact, it's only after a motion for sanctions by the defendant and

12   a court order that the government produced its description of the

13   exculpatory impeachment evidence on May 22nd, and more complete

14   information on June 4th.

15       Further, whether it's two weeks, seven weeks, or four

16   months, given that two of the three witnesses are incarcerated

17   and/or located in a foreign country, arguably this is not in time

18   for the defendant to use it at trial, particularly in the case

19   where the government has argued it's highly complex and required

20   nearly two years' time away from the speedy trial clock because

21   of the foreign nature of the charges and evidence.

22       As Mr. Ye Gon points out, if these complications presented

23   such challenges for the government in preparing for trial, even

24   with the full cooperation of foreign governments and diplomatic

25   and other resources available to the government, those challenges

1    would certainly be even more significant for the defendant.

2         Moreover, the defendant also points out that, in addition

3    to allegedly violating their Constitutional obligations, the

4    government, according to the defendant, misled the defendant and

5    the court on at least two occasions, and those two occasions

6    highlighted in the pleadings are:  One, in August, 2008,

7    Mr. Laymon represented to the Court that, and I'll quote, The

8    United States has worked hard to gather evidence in this case.

9    Whether that evidence is --

10        THE INTERPRETER:  Your Honor, the interpreter asks that

11   you slow down.

12        THE COURT:  Sure, sure.  At what point do I need to slow

13   down?

14        THE INTERPRETER:  From now on.

15        THE COURT:  Okay.  In August 2008, Mr. Laymon represented

16   to the Court that the United States has worked hard to gather

17   evidence in this case.  Whether that evidence is exculpatory or

18   inculpatory, the United States recognizes its obligations under

19   *Brady* and *Giglio* and has attempted to uncover all relevant

20   evidence that relates to that case, not just evidence that

21   incriminates the defendant.  End of quote.

22        Two:  On December 15, 2008, after the Court granted the

23   defendant's motion for a Bill of Particulars, the government

24   filed the Bill of Particulars and stated that the evidence would,

25   quote, specifically, end quote, show that the defendant employed

1    Juan Escandon Paz -- that's P-A-Z -- to divert chemicals into the

2    black market and distribute them and then deliver payment to the

3    defendant.

4         The government stated in its pleading that, quote, the

5    defense has previously been provided with a copy of Escandon's

6    statement which describes the dates and places he interacted with

7    the defendant, end quote.

8         It now appears that at the time the government filed the

9    Bill of Particulars, the government had known for approximately a

10   year that Escandon had recanted that statement.

11        Finally, the defendant argues that the government has

12   failed to explain the timing of its motion to dismiss two years

13   after indictment, more than two years after a search warrant was

14   executed in Mexico and a year after the government of Mexico

15   formalized its interest in prosecuting the defendant in Mexico by

16   filing a notice of extradition.

17        Now, in your supplemental pleadings I want you to address

18   the following other concerns and points that the Court has:  The

19   government claims that it has not violated *Brady/Giglio* because

20   it disclosed the information four months before trial, which the

21   government maintains was sufficient time for the defendant to

22   make effective use of it at trial.  I query whether that argument

23   should be viewed with skepticism for a number of reasons.  First,

24   the case was two weeks from trial in December and seven weeks

25   from trial in June, and the government had not disclosed that

1   information.  Next, according to the government, this case is

2   extraordinarily complex in part because the evidence, witnesses,

3   and events are located and, indeed, occurred in foreign

4   countries, which necessitated two years' time be waived from the

5   speedy trial clock, quote, in the interest of justice, end quote,

6   and yet the government now argues that the defendant could have

7   made effective use of this information in a matter of a few

8   weeks.  One of the witnesses is as of yet unnamed and another is

9   incarcerated and being prosecuted in Mexico.  I query how the

10  defendant was to make effective use of that information that

11  those witnesses had recanted in just a matter of weeks.

12       Moreover, how can the government reasonably argue that

13  those witnesses and/or that information was reasonably available

14  to the defendant through other means or from other sources?  The

15  government's position would mean that the defense was, within two

16  weeks or seven weeks, expected to defend depositions in China,

17  seek to discover the name of an unnamed witness, and seek access

18  to a witness incarcerated and on trial in Mexico, all the while

19  dealing with other discovery belatedly produced by the

20  government; In that regard, referring to key documents produced

21  in foreign languages with no translations.

22       The government made its belated disclosure only after a

23  motion for sanctions for discovery violations and two orders from

24  the Court.  All of this raises legitimate questions about whether

25  or not the government ever intended to abide by its

1   Constitutional obligations to provide that information to the

2   defendant.

3        Now, it's significant that the U.S. Attorneys' Manual

4   available online is, and I quote, Designed as a quick and ready

5   reference for Department of Justice attorneys responsible for the

6   prosecution of violations of federal law.  That manual contains a

7   section entitled "Policy Regarding Disclosure of Exculpatory and

8   Impeachment Information."  It provides information regarding

9   *Brady* and *Giglio* evidence.  That policy provides that, quote,

10  prosecutors generally must take a broad view of materiality and

11  err on the side of disclosing exculpatory and impeaching

12  evidence, end quote, citing the *Kyles* opinion, and I quote, that

13  exculpatory information must be disclosed reasonably promptly

14  after it is discovered, and that under the Manual's, quote,

15  expanded disclosure policy, the government's disclosure will

16  exceed its Constitutionaal obligations, end quote.

17       It raises a question:  How does what the government did in

18  this case comport with the Manual or with Attorney General

19  Holder's repeated statements that "the prosecutors' job is not to

20  win cases, their job ultimately is to do justice."  And that's a

21  quote.

22       In its supplemental motion to dismiss, the government

23  states, "We're not aware of any precedent holding that the

24  government violates *Brady* by disclosing information four months

25  before the start of a trial in a case that it then moves to

1    dismiss."  And that's a quote.

2         This is the second time in less than three months in a

3    high profile case that the Department of Justice has come before

4    this Court and asked it to dismiss an indictment after

5    allegations that *Brady*/*Giglio* information was not timely produced

6    to the defense.

7         It raises another question:  Is the government's approach,

8    withhold information favorable to the defense and, if caught, or

9    the case not result in a plea, in which case the withheld

10   favorable information will never be revealed, then the government

11   dismisses the case?  That would be shocking.  The government

12   suggests in its motion that arguably the defendant did not suffer

13   prejudice by the timing of the exculpatory disclosure because he

14   did not seek a continuance.  On this record, that just is

15   arguably inappropriate.  This Court has granted the government's

16   repeated motions to waive time from the speedy trial clock for

17   two years, each time over the defendant's strenuous objections.

18   This Court has granted those motions, not without reservations,

19   which it has from time to time expressed in no uncertain terms

20   because the defendant has been, essentially, in solitary

21   confinement at the D.C. jail until recently throughout this

22   period.

23         The government's suggestion that he should have to choose

24   between a fair trial and continued incarceration under such

25   difficult conditions because the government chose to belatedly

1    produce information that it was supposed to produce under the

2    government's own policy, not to mention the United States'

3    Constitution, quote, reasonably, promptly, end quote, and quote,

4    in sufficient time for the defendant to make effective use of it

5    at trial, end quote, more than a year after it learned the

6    information is arguably ill-advised.

7         D.C. Rule of Professional Conduct 3.3, "Candor to

8    Tribunal," requires that a lawyer shall not knowingly make a

9    false statement of fact to a tribunal -- and I would add to that

10   or to a judge -- or fail to correct a false statement of material

11   fact or law previously made to the tribunal, or judge, by the

12   lawyer unless correction would require disclosure of information

13   that is prohibited by Rule 1.6, which raises yet and still

14   another question.

15        Does the government's statement in August 2008 and/or its

16   Bill of Particulars violate that rule?  So, those are the points

17   that in the first instance the government needs to address.  You

18   can get a copy of the transcript and address those points on that

19   issue and anything in writing.  And then I want the defense

20   counsel to respond to the government's submission.  So the

21   question is, how much time do you need, recognizing that it's not

22   a lot of time between now and July 30th.  Is ten days sufficient

23   time, counsel?

24        MR. O'BRIEN:  Your Honor, we can have a response to the

25   Court in ten days.  We -- obviously we intend -- we would like to

1    have responded, but due to the filing yesterday, we didn't have

2    an opportunity to --

3         THE COURT:  I know that.  I'm not being critical of that.

4    I recognize that.

5         MR. O'BRIEN:  And I will say also, Your Honor, that the

6    Court has raised a number of questions.

7         THE COURT:  Right.

8         MR. O'BRIEN:  We're prepared to answer those questions.  I

9    believe some of the characterizations may not be accurate, and

10   we'll deal with those in the --

11        THE COURT:  That's fine.  I'm just raising points.  I've

12   not made any findings.  And if anything sounded like a finding

13   I've made, it's not a finding.  I'm just raising points for the

14   consideration of counsel.

15        MR. O'BRIEN:  And I think our response will help educate

16   the Court better as to our position in this case.  I just didn't

17   want my silence to be taken as acquiescence, because the standard

18   before the Court, as we said very clearly in our papers, that we

19   submit that there was not a *Brady* violation in this case, and I

20   think the further briefing will help us hopefully persuade the

21   Court in that regard.

22        THE COURT:  Let me ask you a question.  Could there ever

23   be a *Brady* violation if a trial is not set?

24        MR. O'BRIEN:  *Brady*, Your Honor, relates to trial rights,

25   and *Brady* only relates to trial rights, and the Court and the

1   Supreme Court has been very clear in that regard, and I think we

2   pointed that out in our paper.  It is a trial right that goes to

3   the defendant.  That's why the precedent in this area talks about

4   *Brady* not being implicated in pre-trial proceedings, because at

5   its core it is a trial right, and we will further brief that for

6   the Court if the Court thinks that's necessary.

7         And also I think we can provide further guidance to the

8   Court on the dismissal with prejudice or without prejudice.  We

9   cited the *Poindexter* case, and we can do further briefing on

10  that, but I just didn't want the Court to think that my silence

11  was acceptance of the Court's proposition.

12        THE COURT:  No, I wanted to do all the talking today to

13  put the points on the record and get counsel to respond in

14  writing.

15        MR. O'BRIEN:  Back to your original question.  If the

16  Court gives us ten days, we'll file a supplemental response, and

17  I imagine defense will want five days to respond to it.

18        THE COURT:  How much time do you need, counsel?

19        MR. RETURETA:  Your Honor, just looking at the calendar, I

20  think if we go July 10th for the government's filing and a week

21  for us to respond, I think that would be sufficient.

22        THE COURT:  All right.  Is that all you need?  That's the

23  17th.

24        MR. RETURETA:  We can work with that.

25        THE COURT:  I'm not going to rule out -- It's a very

1    interesting issue before the Court, the *Brady/Giglio* issue and

2    also with prejudice and without prejudice issue.  I'm not going

3    to rule out the possibility that I may at some point want you to

4    weigh in on this --

5         MR. O'BRIEN:  I would ask the Court to do one thing maybe

6    in the interim as the Court is looking at this, because I'm very

7    familiar with the Court's concerns, obviously, on this particular

8    issue.  If the Court looks at the Second Circuit case that we

9    cited in our case, that case deals with many of the issues that

10   the Court has been concerned with, and other cases it's concerned

11   with in this case, and I think that is excellent guidance to help

12   the Court with some of these complex issues.

13        THE COURT:  All right.  Thank you very much.

14        MR. RETURETA:  And, Your Honor, if I may.

15        THE COURT:  Just so the record is clear, I'm giving the

16   government until the 10th.  You just need until the 17th; is that

17   correct, to respond?

18        MR. RETURETA:  That's right.  And Your Honor, just to

19   clarify our argument, our argument essentially focused on what

20   happened in this case.  So when Your Honor asked if there is a

21   *Brady* violation absent a trial date out there, we didn't

22   specifically address that issue because we were specifically

23   addressing the fact that there were three trial dates out there

24   and we came very close to those three trial dates and had not

25   received this information.

1      THE COURT:  I recall that very vividly.  I recall that.

2  You came very close to taking depositions in China, too, didn't

3  you?  Well, the point is, we're very close to that.

4      MR. O'BRIEN:  Judge, I just want to point out one

5  additional thing.  In order to do our response, I think part of

6  that is going to have to be under seal, in fairness to the

7  defendant, talking about the sequencing of certain events.  We'll

8  file it under seal.

9      MR. RETURETA:  Certainly.

10     THE COURT:  Absolutely.  I have no problems with that.

11     Excuse me one second.

12     (Thereupon, there was a brief pause in the proceedings.)

13     THE COURT:  All right.  Anything else, counsel?

14     MR. RETURETA:  Your Honor, in our --

15     THE COURT:  I'm sorry, I'm sorry.  The motion to -- your

16  motion for return.  The ten days should also be sufficient time

17  for the government to file a response to defense counsel's motion

18  to return seized evidence as well, and you'll reply to that by

19  the 17th as well, counsel.

20     MR. RETURETA:  Very well, Your Honor.

21     MR. O'BRIEN:  That's fine, Your Honor.  Thank you.

22     MR. RETURETA:  We filed, in addition to the motion, a

23  proposed order which dealt with some of the documentation and

24  whether or not there should be further documents or perhaps

25  further declarations in the case, and we just ask the Court if

1    the Court had considered anything of that nature?  I know that we

2    had received some of the documentation from government as to the

3    *Brady* release, happened.  We just want to make sure that

4    everything is out there for the Court, so we just highlight that

5    proposed order that we had --

6        THE COURT:  The proposed order that was filed along with

7    your response?

8        MR. RETURETA:  Indeed.

9        MR. O'BRIEN:  Your Honor, could we --

10       THE COURT:  I don't know if I focused on that.

11       MR. O'BRIEN:  We object to the language in the proposed

12   order.  We don't believe its necessary at this juncture.  We

13   strongly object to it, and if the Court is interested in entering

14   that order, we would like an opportunity to brief that.

15       THE COURT:  You know what, in fairness, I didn't focus on

16   the order.  I didn't.  I'll take a look at it right now before

17   you leave, but I didn't take a look at it.

18       MR. RETURETA:  Essentially it was just preserving all of

19   the documentation, any notes, any e-mails, things of that nature.

20   And then also I think the first part of it dealt with any

21   additional documentation, D.E.A. reports, just that would assist

22   in reviewing the dates and the timelines here.

23       MR. BALAREZO:  If I may have a second.

24       (Discussion had off the record.)

25       MR. RETURETA:  Your Honor, part of this stems from the

1    declaration that was provided --

2         THE COURT:  Under seal.

3         MR. RETURETA:  -- by Mr. Laymon.

4         THE COURT:  Right.

5         MR. RETURETA:  And the Court had asked that additional

6    declarations be provided.

7         THE COURT:  As appropriate.

8         MR. RETURETA:  As appropriate.

9         THE COURT:  I'm not trying to micromanage it.  As

10   appropriate, right?

11        MR. RETURETA:  We just want to make sure that if there are

12   going to be further declarations, that we certainly have those

13   far in advance of whatever hearing we have.

14        THE COURT:  Absolutely, sure.  And I'm not trying to tell

15   the government what to do.  Declarations as appropriate.  I'll

16   leave it up to them.

17        MR. O'BRIEN:  Thank you, Your Honor.

18        THE COURT:  So, are you withdrawing the -- I have not

19   taken a look at that order.  I would be happy to do so.  Are you

20   withdrawing the --

21        MR. RETURETA:  I would ask the Court to look at the order,

22   because I think it's just a general "preserve status quo."

23        THE COURT:  Preserve the evidence in this case?

24        MR. RETURETA:  Yeah, yeah.  I would ask the Court to just

25   take a look at it.

1          THE COURT:  Is there some reason why I shouldn't issue

2     such an order preserving the evidence?  Obviously, if I grant

3     your motion to dismiss without prejudice, you're going to

4     preserve the evidence anyway, right?  I assume.

5          MR. O'BRIEN:  Well, obviously, yes.

6          THE COURT:  So, what's the prejudice then?

7          MR. O'BRIEN:  No, I just think that the tone of the order

8     and the language in the pleadings is inappropriate.  It suggests

9     that we need to preserve this because we've engaged in some

10    inappropriate conduct.

11         THE COURT:  No, no.  I'm not making any findings.  To the

12    extent that you're asking me to direct the government to preserve

13    the evidence, I don't think that's ill-advised at all.  I'll do

14    that.  I'm not making any findings of impropriety at all.  I

15    assume -- I don't know.  If I dismiss it with prejudice, you may

16    well preserve the evidence as well.  I just don't know.  I don't

17    see any prejudice to the government if I say, Just preserve the

18    evidence.  I'm not making any finding of impropriety.

19         MR. O'BRIEN:  Well, the case is still -- Obviously, the

20    Court hasn't ruled, and the Court isn't going to rule until the

21    30th.  We're going to preserve the evidence in the case anyway

22    because --

23         THE COURT:  -- you're certainly going to --

24         MR. O'BRIEN:  -- it's still a pending case.

25         THE COURT:  Right.  So, the Court wonders if there's a

1    need for an order.

2         MR. O'BRIEN:  I don't think there is.

3         THE COURT:  I don't think there is either.  I don't think

4    there is.

5         MR. RETURETA:  I would just ask the Court to review that.

6         THE COURT:  Let me take five minutes to take a look at the

7    order because, in fairness, I did not see it.  I looked at your

8    motion and I wanted to respond to your motion.  Most of these

9    orders are standard, and I grant the motion or deny the motion.

10   I didn't take a look at it.  I'll take a look at it right now.

11   So I'll take no more than a five-minute recess.

12        (Thereupon, a break was had from 2:54 p.m. until 3:05

13   p.m.)

14        THE COURT:  Can you hear?  All right.  All right, counsel,

15   thank you.  That order was submitted in connection with a sealed

16   response to a sealed government pleading.  I've considered it.  I

17   see no need to issue such an order at this time, so I won't.

18   Anything further?

19        MR. O'BRIEN:  Thank you for your time, Your Honor.

20        MR. RETURETA:  No, Your Honor, thank you.

21        THE COURT:  What time on the 30th?  Carol is the only one

22   concerned about the time on the 30th here.  Carol, since you're

23   so smart, what time is good for us?  Can I see your calendar?

24        (Discussion had off the record.)

25        THE COURT:  2:00 on the 30th, counsel.  Is that a good

1    time?

2          MR. RETURETA:  Yes, Your Honor.

3          MR. O'BRIEN:  Thank you, Your Honor.

4          MR. BALAREZO:  May I mention one quick issue?

5          THE COURT:  Sure.

6          MR. BALAREZO:  I apologize.  Given the status of the case,

7    I think the Court's indicated that the issue is not the

8    dismissal, it's the nature of the dismissal.  And given that our

9    client has been detained now for so long under, as the Court

10   already indicated, basically solitary confinement, would the

11   Court consider any modification of his conditions of detention?

12         THE COURT:  Not at the present, no.  I'm to going resolve

13   all the issues in my criminal case on the 30th.

14         MR. BALAREZO:  We're not in a position to request release,

15   it's just if the Court could at least once again inquire,

16   perhaps, if he could go to CTF, given that the criminal case

17   which held him in the high security status is, in effect, over,

18   if he could be at CTF for various purposes, for court purposes,

19   for meetings with his attorneys.  As it is now --

20         THE COURT:  That's a good point, but there are other

21   reasons that I don't want to discuss publicly why he was in

22   solitary at the D.C. jail, and I think those other reasons would

23   probably drive the decision of those in charge at D.C. jail to

24   keep him in solitary if he goes back to D.C. jail.  He's in

25   Virginia now?

1      MR. BALAREZO:  He's in the Central Virginia Regional Jail

2  about an hour and a half away each way, and it's just very

3  cumbersome to even meet with him on a regular basis.

4      THE COURT:  I understand.  You raise an interesting point.

5  Look, I'll be happy to speak with Ms. Amato and find out whether

6  there's a change in attitude, because we all agree the case is

7  going to be dismissed, but I think there are other factors, and

8  those other factors are still present, though.

9      MR. BALAREZO:  They are, but I think they're greatly

10  diminished given the time that has passed and -- if we could ask

11  the Court to at least inquire, perhaps.

12      THE COURT:  Sure.  I'll be happy to do so, counsel.

13      MR. BALAREZO:  Thank you, Your Honor.

14      THE COURT:  I just don't have -- I recognize my authority

15  there is limited.  It's up to the Department of Corrections.  I

16  would be happy to broach it, but I'm sure if I do, they're going

17  to state, well, there are other reasons that are still apparent,

18  and then maybe not.  I'll raise the question, though.

19      MR. BALAREZO:  Thank you.

20      THE COURT:  And if the answer is sure, we'll do it, then

21  are you sure you want the marshals to bring him back?

22      MR. BALAREZO:  Not to the D.C. jail in South 1, but CTF, I

23  think, would be a nice alternative.

24      THE COURT:  All right.  I'll raise the question.  I'll be

25  happy to speak with them.

1    MR. BALAREZO:  Thank you.

2    THE COURT:  All right.  Thank you, counsel.

3    MR. O'BRIEN:  Thank you, Your Honor.

4    MR. WEBER:  Thank you, Your Honor.

5    (Proceedings adjourned at 3:10 p.m.)

6

7                    **C E R T I F I C A T E**

8             I, Scott L. Wallace, RDR-CRR, certify that
     the foregoing is a correct transcript from the record of
9    proceedings in the above-entitled matter.

10

11    _____        _____
      **Scott L. Wallace, RDR, CRR            Date**
12        **Official Court Reporter**

13

14

15

16

17

18

19

20

21

22

23

24

25