1              UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA
2
     ------------------------X
3    UNITED STATES OF AMERICA,      Docket No. 07-181
                      Plaintiff,
4
              v.                    Washington, D.C.
5                                   **August 27, 2008**
                                    2:30 p.m.
6
     ZHENLI YE GON,
7                     Defendant.
     ------------------------X
8
                     ***STATUS HEARING***
9         *BEFORE THE HONORABLE EMMET G. SULLIVAN*
               *UNITED STATES DISTRICT JUDGE*
10
     APPEARANCES:
11   For the Plaintiff:    U.S. DEPARTMENT OF JUSTICE
                           By:  Mr. Paul W. Laymon
12                              Ms. Wanda J. Dixon
                                Mr. Robert Stapleton
13                         1400 New York Avenue, N.W.
                           Washington, D.C.  20005
14                         202.514.1286
                           *paul.laymon@usdoj.gov*
15                         *wanda.dixon@usdoj.gov*
                           *robert.stapleton@usdoj.gov*
16
     For the Defendant:    LAW OFFICES OF MARTIN F. MCMAHON
17                         By:  Mr. Martin F. McMahon
                                Ms. Christine Hilgeman
18                         1150 Connecticut Avenue, N.W.
                           Suite 900
19                         Washington, D.C.  20036
                           202.862.4343
20                         *mfm@martinmcmahonlaw.com*
                           *chilgeman@martinmcmahonlaw.com*
21
                           LAW OFFICES OF DAVID S. ZAPP
22                         By:  Mr. David S. Zapp
                           7 East 94th Street
23                         New York, NY  10128
                           212.410.3351
24                         *davidzapp@aol.com*

25

```
 1    APPEARANCES: (CONT'D.)

 2    Court Reporter:          JACKIE SULLIVAN

 3    INTERPRETER:             SOO CHAN KNOWLES

 4    TRANSCRIBED BY:          Catalina Kerr, RPR, CRR
                               U.S. District Courthouse
 5                             Room 6716
                               Washington, D.C.  20001
 6                             202.354.3258
                               catykerr@msn.com
 7
      Proceedings recorded by mechanical stenography, transcript
 8
      produced by computer.
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        P-R-O-C-E-E-D-I-N-G-S

 2               (2:30 P.M.; OPEN COURT; DEFENDANT PRESENT WITH HIS

 3   ATTORNEYS.)

 4               THE DEPUTY CLERK:  Please remain seated.  This

 5   honorable court is again in session.  Please come to order.

 6               This is Criminal Case 07-181, United States of

 7   America versus Zhenli Ye Gon.  I'm going to ask counsel to

 8   please identify themselves for the record, and the interpreter

 9   has been sworn for the record.

10               MS. DIXON:  Your Honor, good afternoon.  Wanda

11   Dixon, Paul Laymon and Robert Stapleton for the United States.

12               THE COURT:  Good afternoon, Counsel.

13               MR. ZAPP:  Good afternoon, Your Honor.  David Zapp

14   for the Defendant.

15               THE COURT:  All right.  Mr. Zapp.

16               MR. McMAHON:  And Martin McMahon, Your Honor, with

17   Christine Hilgeman.

18               THE COURT:  All right.  Good afternoon.  You've

19   entered your appearance again in this case?

20               MR. McMAHON:  Yes, Your Honor, and if you want an

21   affirmation of the fact that Mr. Ye Gon wants us both on the

22   case, he's prepared to come to the podium.  I'll leave that up

23   to you.  I can make the representation on that.

24               THE COURT:  All right.  Good afternoon, Counsel.

25   You've entered your appearance in this case?
```

1          MS. HILGEMAN:  I have not, Your Honor.  Good

2     afternoon, Your Honor.  Mr. McMahon will be filing a motion

3     pro hoc vice for my admission.

4          THE COURT:  Mr. Gon, you want these three attorneys

5     to represent you; is that correct?

6          THE DEFENDANT:  Yes.  Yes, Your Honor.

7          THE COURT:  All right.  All right.  I'll hear from

8     Government counsel.

9          MS. DIXON:  Your Honor, thank you.  The thing that

10    we were prepared to ask the Court would be to, I guess, kind

11    of move to clarify who is in fact representing the Defendant.

12    We do that, Your Honor, for a couple of reasons.  Largely

13    because we're in a situation where we're faced with what

14    appear to be some inconsistent requests or defenses on the

15    part of the Defense attorneys.

16          If -- We would ask the Court, in fact, query the

17    Defendant -- I don't know if you just did that or if there was

18    an exchange, but we would ask that he be queried noting for --

19          THE COURT:  He just told me he wants these three

20    attorneys to represent him.

21          MS. DIXON:  Oh, he said that, Your Honor?  Thank

22    you.

23          THE COURT:  That's what I thought he said.  Isn't

24    that what you said?

25          THE DEFENDANT:  Yes.

```
 1              THE COURT:  That's what I thought.

 2              MS. DIXON:  Yes, Your Honor.  Certainly.  If that's

 3    how we're proceeding, then that's how we're proceeding, Your

 4    Honor.  It's just that -- and I guess at a certain point in

 5    the hearing we'll get to some clarification on some certain

 6    issues, but we would note that for the record.

 7              We would also inform the Court and counsel and the

 8    Defendant as well that we fully expect that there will be a

 9    Mexican extradition petition filed in this case, and that will

10    come within the next 45 days or so.

11              THE COURT:  So Mexico is going to seek Mr. Gon's

12    extradition to Mexico?

13              MS. DIXON:  That's right.

14              THE COURT:  And what position will the Government

15    take?

16              MS. DIXON:  Your Honor, we actually have no position

17    on that.  Mexico is certainly free to do that, and they are

18    free to file their petition.  I mean, we've talked about that

19    before, the fact that they were interested in prosecuting

20    Mr. Ye Gon in Mexico.  We're just letting the Court know that

21    they have informed us that that petition will be filed within

22    the next 45 days.

23              THE COURT:  And what -- Just to be clear, it's

24    unclear what the position of the United States will be, or is

25    it --
```

1            MS. DIXON:  No, it's not that it's unclear.  It's

2     that we don't have a position one way or the other because

3     there's nothing -- in other words, we don't really have a --

4            THE COURT:  So you're not going to -- the

5     Government's not going to oppose it and the Government is not

6     going to consent to it; is that right?

7            MS. DIXON:  It doesn't even really work like that,

8     Your Honor.  It's just that it has to be filed and it goes

9     before either this court or the magistrate judge and they make

10    a decision if the claim is valid.

11           THE COURT:  All right.  Does this country ever --

12    does the United States ever file a position paper on these

13    extradition issues?

14           MS. DIXON:  I don't know that we've done one in the

15    past in any of these kinds of cases.  It's not that it happens

16    often.

17           THE COURT:  It just strikes me as somewhat strange.

18    So, the Government has been fighting very strenuously to keep

19    this man incarcerated for the past year with the threat of

20    ongoing criminal prosecution.  Now that we're winding down

21    from that year, the Government now says that in all

22    likelihood, in response to a motion for extradition, or

23    extradition petition, the Government won't make a response.

24           MS. DIXON:  That's not what I'm saying.  I'm saying

25    our position is that we plan to proceed to trial.  We are

1   preparing for trial.  That's what we're doing.  I'm just

2   letting the Court know that this is something that is

3   happening.  I'm aware of it, and I wanted to put it on the

4   record so that all parties involved could be aware.  For no

5   more than that, Your Honor.  I don't know how it will change

6   the dynamic.  I don't know what will happen.  I just wanted to

7   make sure that the Court is aware that this is something else

8   that is out there.

9          THE COURT:  All right.  So, with respect to this

10  case and the only case before me, insofar as Mr. Gon is

11  concerned --

12         MS. DIXON:  Yes.

13         THE COURT:  -- what's the Government's request at

14  this time?

15         MS. DIXON:  Your Honor, at this time we are at the

16  end of the last speedy trial extension request that the Court

17  has authorized.  September 7th is the actual day that the

18  speedy trial extension that we asked for, based on the fact

19  that we had to obtain evidence from foreign countries, so that

20  the year is September 7th, we set this hearing for now.

21         Basically, Your Honor, we just are here stating to

22  the Court that I think that the next position is again to be

23  in, I guess, a trial posture.  There are motions outstanding.

24  When we were last before the Court, the Court had asked that

25  we file a position paper, which I'm sure you got back in June

1   of this year with regard to how many days remained on the

2   speedy trial calendar with a view toward selecting the trial

3   date or at least knowing where we were.

4          At that time we noted to the Court that we were

5   unsure as to whether the last day of exclusion would be -- I'm

6   sorry, strike that.

7          We were unsure as to the last date to try the case

8   before the Speedy Trial Act ran, would be set -- I'm sorry,

9   October the 29th, 2008 or November the 2nd, 2008, and that

10  uncertainty came because we did not have the transcript for

11  the August the 9th hearing date.  We were unsure as to what

12  had happened at that date and I did not want to misrepresent

13  anything to the Court.  Basically, what I'm telling you now is

14  that I do have the transcript for the October 9, 2007 hearing

15  date.  At that time, Mr. Laymon --

16          THE COURT:  August 9.  You said October the 9th.

17  Oh, I'm sorry, October the 9th.  I'm sorry, go ahead.

18          MS. DIXON:  I said August the 9th of 2007.

19          THE COURT:  Yeah.

20          MS. DIXON:  I was referring to October 29, 2008 as

21  the last date to try this case before the speedy trial clock

22  ran.

23          At any rate, with regard to the August the 9th of

24  2007, having viewed that transcript, we note that Mr. Laymon

25  did in fact make an oral request to exclude time under the

1    Speedy Trial Act at that time as well as the written request

2    which followed.

3            Consequently, Your Honor, based on that, then 56

4    days remain on the speedy trial calendar, and by my

5    calculations, the case must be tried on or before

6    November 2nd, 2008, but since that date falls on a Sunday,

7    of course would fall to the next date, which is November the

8    3rd, 2008.  That was what the Court had asked me to calculate.

9            However, Your Honor, we did note to the Court in our

10   filing and we note to the Court today that there are several

11   motions outstanding.  At that time that we filed our position

12   paper, which was June 18th of 2008, there were four motions to

13   dismiss outstanding as well as the Government's motion to

14   admit expert testimony.  None of those motions have been

15   resolved.  As the Court knows, the pendency of those motions

16   also tolls the speedy trial clock.

17           Since that date and since we now have two additional

18   attorneys in the case, Your Honor, new motions have been

19   filed.  They include a motion by each attorney to release

20   funds.  Mr. Zapp has filed one; Mr. McMahon has filed one.

21   They also include a motion to inspect and examine filed by

22   Mr. Zapp as well as a motion to compel discovery filed by

23   Mr. McMahon.  All of that would act to, I guess, impact on the

24   speedy trial clock as well.

25           Your Honor, and if I might take this opportunity to

1  point out the dilemma that the Government has in proceeding in

2  this case with the different counsel, and that's why we'd ask

3  for some clarification.  When we were in court back in June of

4  this year, 2008, Mr. Zapp said something to the effect of he

5  wasn't interested in anymore discovery, he would try the case

6  with the discovery that had been turned over thus far.

7            Now we have Mr. McMahon entering the case and also

8  filing a motion to compel discovery.  So, it's kind of

9  unwieldy to know what to rely on when one counsel is saying no

10 discovery is necessary, another counsel is filing motions to

11 compel discovery.  That's the kind of a concern that the

12 Government has.

13            Now, again, certainly Mr. --

14            THE COURT:  Is the Government ready to go to trial?

15            MS. DIXON:  Are we ready to go to trial?  What we

16 are ready to do, Your Honor, is discuss the timing of the

17 trial.  I think that's what the Court ordered us to be ready

18 to come in and do today and that's what we are ready to do.

19            THE COURT:  What trial date does the Government

20 recommend?

21            MS. DIXON:  Well, Your Honor, we would note that

22 with the outstanding motions, the first thing that the

23 Government would ask is that the Court set a briefing

24 schedule.  That, of course, will impact the resolution of

25 these motions, will impact on when we are ready to go to

1    trial.  We don't anticipate it being in the far future, but it

2    will have an effect.

3              That's what we came in prepared to ask for today, a

4    briefing schedule to resolve the outstanding motions.

5              THE COURT:  Let me ask you this:  Would the grant of

6    an extradition treaty, or the recognition of an extradition

7    order -- because -- does an extradition order trump

8    proceedings to try a person by the United States?

9              MS. DIXON:  Does the extradition --

10             THE COURT:  I can't imagine that some foreign

11   country's order would interfere with the United States' desire

12   to go to trial, but I don't know.  I may be wrong.  I don't

13   know.

14             MS. DIXON:  Does this -- for example, if the

15   Court --

16             THE COURT:  For instance, sometimes detention orders

17   impact a judge's decision to allow a person to be on personal

18   bond.  I mean, sometimes the orders can impact a judge's

19   decision.  The fact that you tell me that another country is

20   going to file a request to extradite Mr. Gon, what impact, if

21   any, would that have on procedures to try Mr. Gon in the

22   United States?

23             MS. DIXON:  I believe I understand the Court's

24   question.  I don't know that there is a hard-and-fast rule on

25   that.  I can say that often, or should I say sometimes the

```
 1  execution of the extradition can be stayed until the
 2  resolution of the trial in the -- or I should say the
 3  proceedings in the United States, and that's the best I can
 4  say, but I don't think that there is a rule that says it has
 5  to happen this way or it has to happen that way.
 6          THE COURT:  All right.  So the Government's
 7  requesting what?  That the Court put in place a briefing
 8  schedule --
 9          MS. DIXON:  Yes, Your Honor.
10          THE COURT:  -- for any additional motions to be
11  filed by anyone and pick a motions hearing date, and if
12  appropriate, schedule a trial date?
13          MS. DIXON:  Yes, Your Honor.  We're asking that --
14  we're also asking the Court to recognize that it has in fact
15  already found that this case is complex, on several occasions,
16  and that the case remains complex.  We're also noting that, as
17  best we can, we have to try to deal with the different
18  requests by the Defense attorneys, but we want to be very
19  clear and to put it on the record that they have been
20  inconsistent.  And now that we have these two attorneys, we're
21  not clear --
22          THE COURT:  What would be the import of finding that
23  the case remains complex?
24          MS. DIXON:  Well, I think -- I don't necessarily
25  know that it's a matter of finding it again because the
```

1    case -- the Court has already found it, but clearly the case

2    is complex and my point would be that if some issue, in

3    conjunction with the complexity of the case, were to arise, we

4    may find ourselves having to ask for time based on that.

5            For example, in Mr. McMahon's motion to compel

6    discovery, he states a desire to depose some witnesses in

7    Mexico.  I believe that that -- if the Court were to grant his

8    request, for example, that would certainly impact -- it would

9    be yet another aspect of the complexity of the case and it

10   would impact on the date that we ultimately schedule for trial

11   if these depositions have to occur.

12           As we've noted previously, there are depositions

13   that the United States has to take as well in foreign

14   countries, and that, of course, will impact on the date that

15   the trial is to occur.  So, to the extent that there is an

16   impact of the finding of complexity, that would be one aspect

17   of it, and of course, there's several.

18           THE COURT:  All right.  Mr. Zapp, Mr. McMahon, who

19   speaks for Mr. Gon?

20           MR. ZAPP:  I'll speak, bearing in mind that I speak

21   for both of us.

22           THE COURT:  What about the conflicting motions?

23   Your counterpart, Mr. McMahon, is asking for more discovery.

24   You want to go to trial.  Inconsistency.  What should the

25   Court do?

```
1            MR. ZAPP:  I think at this point, one would have to
2    defer to my colleague if he feels that it's in the interest of
3    moving ahead with these motions.
4            THE COURT:  Have you three of you talked about this?
5    I mean, are you on the same --
6            MR. ZAPP:  No, but we've agreed, at least, to stay
7    out of each other's way, and so I think that I'm here to say
8    that his motion trumps.  My motions are over, whatever motions
9    I've had and --
10            THE COURT:  All of you have a common goal to
11    represent your one client to the best of your ability.  That's
12    your common goal, right?
13            MR. ZAPP:  Yeah, I know.  I agree.
14            THE COURT:  I don't see a lot of happy faces on this
15    side of the courtroom.  I mean, is --
16            MR. ZAPP:  Excuse me?
17            THE COURT:  I don't see a lot of smiling or happy
18    faces.  Is everything all right with the Defense team?
19            MR. McMAHON:  Do you want to hear from me, Your
20    Honor, on that?
21            THE COURT:  At some point I'm sure I will hear from
22    you.
23            MR. McMAHON:  It's fine, Your Honor.
24            MR. ZAPP:  Yeah.  I think we're getting to know each
25    other and that's really the best I can say, Judge.  And I
```

think this will be all settled out so that the issue that Your

Honor poses is -- to be decided is whether are we of the mind

to have these motions, the motions that have recently been

filed and may or may not toll the speedy trial clock or not.

I would defer to my colleague.

If he feels that, you know, that these motions

should be filed, then so be it.

THE COURT:  They're already filed.  They're already

filed.

MR. ZAPP:  Right.

THE COURT:  But there is an inherent inconsistency,

so -- I mean, you basically told me you're ready to go to

trial; you don't want discovery.  Your client has filed a

motion that arguably tolls the speedy trial clock, seeks more

discovery, seeks leave to take discovery in foreign countries,

which if granted, is going to delay a trial here.

MR. ZAPP:  I've always been -- I've always been of

the mind that the less evidence there is in a criminal case,

good for the bad guys or good guys, and so I would not rush to

have all this evidence.  And on the other hand, perhaps the

more we know, the better it is.  That is not my visceral

reaction to all of this, but I am prepared, in the interest of

collegiality, to do this.  I know my client, on the other

hand, weighs in and he wants an immediate trial, so we have

these -- this tone of discussion now.

```
 1            THE COURT:  Would it make more sense for the Court
 2   to assemble everyone for another status hearing after the
 3   client and the attorneys, the battery of attorneys, has had a
 4   chance to talk and discuss and agree on strategy?
 5            MR. ZAPP:  You know, I think that's all right
 6   because I think that -- the fact is that this is really a
 7   status conference in which this court really wanted to know
 8   what was going on.
 9            THE COURT:  Absolutely.
10            MR. ZAPP:  You know, and --
11            THE COURT:  If you need some more time to think -- I
12   think, just as a suggestion, I think the attorneys should be
13   on the same wavelength with your common goal, which is to
14   provide excellent representation for your one client.
15            MR. ZAPP:  Right.
16            THE COURT:  I'm not sure whose interests are best
17   served when there's an apparent conflict in strategy on the
18   part of Defense counsel.  I'm not sure.  I'm just sharing a
19   thought with you.  Maybe it makes more sense for the four of
20   you, three of you, how many, maybe there will be eight of you
21   at the table next week, I don't know.  That's happened before.
22            MR. ZAPP:  Well, as many chairs as there are here.
23            THE COURT:  Do you anticipate any other attorneys
24   entering --
25            MR. ZAPP:  I've learned in this case anything can
```

1    happen, Your Honor, so I won't say "yes" or I won't say "no."

2              THE COURT:  I'm looking around the courtroom now.  I

3    know one who can't enter his appearance.  That's the one

4    sitting on the first row who just took his glasses off.  He

5    can't enter his appearance -- well, I'm not going to say

6    "can't."  I'd be surprised if he tried to.

7              MR. ZAPP:  Right, right.  He could come in, for all

8    we know.

9              THE COURT:  But he represents Ms. Wong, I believe.

10             MR. ZAPP:  Yeah.  I just wanted the Court to be

11   aware, because I know the Court's very sensitive to these

12   speedy trial issues.  But I think the Court --

13             THE COURT:  I'm especially sensitive now when I hear

14   that some other country is going to file an application to

15   extradite Mr. Gon after this Government has spent almost a

16   year holding him here incarcerated, you know, at D.C. jail and

17   essentially in solitary confinement, arguably for his own

18   safety, and the Government is not going to take a position or

19   may not take a position.

20             MR. ZAPP:  That's right.  And I think the procedure

21   is that the government asks our government and then our U.S.

22   attorney goes before a judge to ask for it, so--

23             THE COURT:  Some other judge?

24             MR. ZAPP:  No, to a judge, to a federal judge.  In

25   other words, the process is, Government --

1          THE COURT:  So it will go before me?

2          MR. ZAPP:  It could go before you.

3          THE COURT:  It doesn't have to go before me.  It

4    could be before someone else.

5          MR. ZAPP:  No, no, it could go before somebody else,

6    but the U.S. attorney has to ask for it to a judge.  A Mexican

7    lawyer can't come in here and say we want this.  So state

8    department to state department, state department to U.S.

9    attorney, U.S. attorney to federal judge, so when the

10   Government says it doesn't have a position, it by law has a

11   position.  It honors the treaty that it has.

12         Now, what I would alert the U.S. attorney to is that

13   there may be, within the treaty, a double prosecution bar, so

14   I'm sure they also will have to caucus because if in fact they

15   go ahead with this, then they may be depriving Mexican

16   authorities, who, as you know, coincidentally, are asking for

17   this extradition right now.

18         What the meaning is -- what the timing is, I don't

19   know.  I can only speculate that they want this case and they

20   want it now and --

21         THE COURT:  It's not as if they haven't had a year

22   to think about that option.

23         MR. ZAPP:  That's right.  Right.  And now they

24   are -- they are moving ahead, and after this year,

25   coincidentally, is coming to an end, that year-long rule about

1    getting discovery, which was the basis for this, and this is

2    now nearing its completion, and now we have the Mexicans

3    coming in and there may be this double prosecution.  I won't

4    say double jeopardy bar, but a double prosecution bar, so we

5    all have to caucus, it seems to me.

6            I just thought that Your Honor wanted to know, all

7    right, what is the status of the investigation here and I --

8            THE COURT:  Let's set the case down for today

9    because I recognized we're nearing the end of the year and

10   decisions will have to be made.  For all I know, the

11   Government could have come in and dismissed the charges.

12           MR. ZAPP:  Right.

13           THE COURT:  It's something they didn't do, but -- I

14   mean, what makes more sense at this point, if you want to come

15   back next week after you've had a chance to talk with your

16   colleagues and your client, then that's fine.  If you want me

17   to put in place a briefing schedule for motions pending before

18   me, further briefing or for new motions, schedule a motions

19   hearing date, maybe defer a trial date, maybe schedule a trial

20   date, I'm open to any suggestions, but --

21           MR. ZAPP:  Right.  The next adjourn date I believe

22   Your Honor has is September 24th, or is that when you gave

23   the Government the time limit?  I thought it was sometime

24   in --

25           THE COURT:  I'm not sure about that.

1          MS. DIXON:  No, there's no new date.

2          MR. ZAPP:  There's no new date.  So when do you

3   have --

4          THE COURT:  There's a status hearing in Ms. Wong's

5   case on the 23rd.

6          MR. ZAPP:  I'm sorry.

7          THE COURT:  First things first.  Get back to my

8   original question.  Do you need some time to talk with your

9   lawyer colleagues and your client and make a recommendation as

10  to what you would like the Court to do?

11         MR. ZAPP:  Well, then I thought there was a date

12  outstanding and I thought the Government -- I thought the

13  judge -- the Court had tolled the speedy trial to some date in

14  September.

15         THE COURT:  I think it's September the 7th, I

16  believe.  I think it is, but I've been wrong before.  I think

17  it's September the 7th, and that's the reason I don't want

18  to wait until September the 7th to bring you in.  That's the

19  reason why I scheduled it for this date.

20         MR. ZAPP:  Oh, I see.  Okay.  I was --

21         THE COURT:  You know what, another suggestion is do

22  you want some time today?  I have a matter at 3:00 -- a

23  telephone conference with some attorneys that's not going to

24  take more than 15 minutes.  So maybe I should give you some

25  time today to talk with Mr. McMahon and his colleague and your

1    client and bring you back in 15 or 20 minutes as opposed to --

2              MR. ZAPP:  Okay.

3              THE COURT:  -- half-an-hour.

4              MR. McMAHON:  You Honor, we can clarify that

5    discovery issue.

6              THE COURT:  That's fine.

7              MR. McMAHON:  Nice to see you again, Your Honor.

8    First of all, in terms of the discovery issue, I would like

9    the Government to dump all the boxes they have, deliver them

10   to my office immediately.  That's the discovery I'm seeking.

11             We are going to, on the record, withdraw our request

12   to take the depositions of individuals in Mexico.

13             THE COURT:  I'll tell what you I'm going to do, time

14   out.  Time out.  Because I'm getting more inconsistency right

15   now.  Okay.  Let me do this.  Let me take my telephone call at

16   3:00 o'clock.  Let me bring you back at say 3:20, because I'm

17   getting more inconsistency.

18             I'm not saying that I'm not going to honor your

19   request but I want everyone, to the extent you can be, on the

20   same plane, to be on the same plane.  Then I want to hear from

21   counsel with respect to the recent circuit opinion that deals

22   with release of funds because it may well be that I need to

23   schedule a separate hearing on whether or not the Court should

24   allow an expenditure of funds to retain counsel.

25             MR. McMAHON:  One thing I was going to tell Your

1    Honor.  We can combine David's motion and our motion --

2    David's motion for an evidentiary hearing, Mr. Zapp's motion,

3    and our motion for the release of funds so we can combine

4    those and ask you for a date on that.  That would take care of

5    that.

6         But what I'm saying is on discovery, I want those

7    documents.  I'm not going to depose people in Mexico.  We've

8    now found the documents necessary to make our argument.

9         THE COURT:  So you're withdrawing your request to

10   depose anyone in a foreign country?

11        MR. McMAHON:  Yeah.

12        THE COURT:  All right.

13        MR. McMAHON:  But I want all the documents delivered

14   to my office immediately so that it's not going to impact the

15   trial date.  Mr. Ye Gon wants to get a trial date, so David

16   and I have conferred about that and we want a trial date.

17        That doesn't mean you can't schedule a motions date

18   as well as a trial date.

19        THE COURT:  All right.  I'm still going to bring you

20   back.  What I'll do is pass the case, let the four of you

21   talk.  I'll call the case again at 3:30.  I'll be finished

22   with my conference call then, all right, and then we'll talk

23   about a hearing date for at least the motion for withdrawal of

24   funds, so we'll talk again at 3:30.

25        MR. McMAHON:  Can we leave our stuff here?

1     THE COURT:  You can if you want to, yeah.  I'm not

2  guarantor.  If you want to leave it, that's fine.

3     (A RECESS WAS TAKEN.)

4     THE DEPUTY CLERK:  Remain seated.  This honorable

5  court is again in session.

6     THE COURT:  All right.  Mr. Zapp and Mr. McMahon.

7     MR. McMAHON:  Your Honor, we got clarified with our

8  client that we'll get whatever document dump the Government

9  has for us delivered to our office, okay, and we will go

10  through that, and I have every confidence that that will not

11  impede the scheduling of a trial date.

12     No. 2, we will formally withdraw what our request

13  would have been about taking certain depositions in Mexico.

14  We now have discovered the documents, Your Honor, showing that

15  the samples have been doctored, so we don't need to depose

16  those individuals.

17     So, I think the best course of action, Your Honor,

18  would be to schedule kind of an omnibus motions date for oral

19  argument and then schedule a trial date as well.  And as I

20  said, Your Honor, I think we can combine Mr. Zapp's motion for

21  an evidentiary hearing with our motion for release of funds.

22  So the Government -- and I understand some of their concerns,

23  Your Honor, that they've articulated, but that would reduce

24  that -- we'd combine those two motions into one motion.

25     THE COURT:  It's probably a motion I want to resolve

1   sooner than the others.  Let's see, maybe I can give you a

2   date on that now.  What about the 18th -- September the

3   18th at 10:00 o'clock for that motion for motion to address

4   the attorney fee issue?

5          MR. LAYMON:  What date is that?

6          THE COURT:  September the 18th at 10:00?

7          MR. McMAHON:  I thought you might want it in the

8   afternoon.

9          THE COURT:  No, we've got to do it in the morning.

10  I don't have any time in the afternoon.

11          MR. McMAHON:  I believe my colleague is able and I

12  am, Your Honor.

13          THE COURT:  All right.  September the 18th at

14  10:00 o'clock.

15          Now, does anyone anticipate filing any additional

16  motions?  Maybe -- maybe I don't need an answer to that

17  question.  Maybe what I should do, and I think I will do, is

18  just give anyone who wants to file any additional motions a --

19          MR. McMAHON:  Cutoff date?

20          THE COURT:  A certain date to file those motions.

21          MS. DIXON:  Your Honor, I'm sorry, before we leave

22  the date of September the 18th, I'm not available on that

23  date.  I'm out of town the entire month.

24          THE COURT:  Well, there are two other attorneys at

25  the table.  September the 18th at 10:00 o'clock.  There's

1    been enough delay in this case.

2          All right.  How much time do you need to prepare and

3    file whatever additional motions you want to file?  And that's

4    directed to both sides.

5          (PAUSE.)

6          THE COURT:  How much time do you need, Counsel?  I

7    don't want to be arbitrary and just say 30 days.  I don't know

8    what's reasonable.

9          MR. ZAPP:  Your Honor, I would just ask -- you know,

10   I'll abide by whatever date you give us.

11         THE COURT:  I'm trying to be fair about this now.

12   You have some idea of what you may want to file.

13         MR. ZAPP:  Yeah.

14         THE COURT:  The Government has some idea?  I can

15   just pick a date out.  I'd rather not do it, but I can throw a

16   date out there.  Today -- today is the 27th, two weeks from

17   today, the 10th of September to file -- to both sides to file

18   whatever you want to file; two weeks thereafter, the 14th for

19   responses.

20         MS. DIXON:  Your Honor --

21         THE COURT:  I'm sorry, the 24th for responses and

22   I'll give ten days after that.

23         MS. DIXON:  Your Honor --

24         THE COURT:  October the 4th for any reply.  Yes.

25         MS. DIXON:  No.  We were just going to ask that the

1    date for the deadline to file for whatever is outstanding not

2    about two weeks from now but 30 days from now.

3              THE COURT:  No, I can't.  There's been too much

4    delay already.  That's enough time.  Everybody's had enough

5    time with this case.  A year's gone by.  It's time to get on

6    with this case, and the hearing date -- I'm going to be in

7    trial from September the 22nd for maybe four to six weeks in a

8    criminal case.

9              I will give you the earliest hearing date I can, but

10   it's not going to be until -- let's see, actually, do you know

11   what, I can probably give you another week, the 17th.  Let's

12   do this, the 17th for all motions, of September; two weeks

13   thereafter, that's the 1st of October because I can't get to

14   it during the month of October anyway, so -- and the 10th of

15   October for any replies.

16             MS. DIXON:  November?

17             THE COURT:  No, 10th of October for replies.  I'll

18   give you a hearing on November the 7th on pending motions at

19   10:00 a.m., and it's time to set a trial date in this case.

20   Jury selection December 3, 9:00 o'clock.  December 3rd,

21   9:00 o'clock.  Those are firm dates.

22             All right.  Now, with respect to the motion, I don't

23   know if there have been any of my colleagues who presided over

24   any of these hearings to determine whether funds should be

25   released for counsel fees.  There's a recent decision from our

1  circuit, the *E Gold* opinion.

2       Let me hear from the Government.  How would a

3  defendant ever satisfy his burden that he's unable to pay or

4  have family members or friends pay for attorney's fees other

5  than by saying he lacks the means to do that?  What other

6  basis is there?

7       MS. DIXON:  Your Honor, I defer to my colleague.

8       MR. STAPLETON:  Your Honor, it's a tough question,

9  but given that in this instance we know that he has family

10  members who at least own a restaurant and he's claimed he's a

11  successful businessman with friends and colleagues worldwide.

12  We know he owned property overseas.  We know he owns property,

13  for example, in China.  I believe some of the property is

14  owned in Mexico, has been forfeited by the Mexican government,

15  so we can't say for sure that he is without means to pay for a

16  defense.  And he's never --

17       THE COURT:  Has everything been seized, though, that

18  he owns?

19       MR. STAPLETON:  I can't say it has or hasn't.  I

20  think that some of it has been.  I don't know that all of it

21  has been because there is so much in this case that we

22  constantly hear that there may be more property that we don't

23  know about that other governments might not know about.

24       THE COURT:  All right.  I'll tell you what I'm going

25  to do because I don't know the answer to this question either,

1   but I want your respective submissions and I want something

2   filed from both sides that address this, what the parameters

3   of the hearing should be.  I don't want to go into the hearing

4   and just be a free-for-all, so I want the Government's best

5   thoughts about the structure of this evidentiary hearing and

6   what form it should take.

7           MR. STAPLETON:  I'm sorry, Your Honor, is it

8   probably a probable cause hearing for the fees?

9           THE COURT:  I'm sorry.

10          MR. STAPLETON:  I believe it's a probable cause

11  hearing for the fees.  I think the motion needs to be split

12  out, the initial motion that's filed.  I'm a little confused.

13  I know there are two different motions, but if I remember

14  correctly, the first one is for a probable cause hearing.

15  That's what *E Gold* stands for, that the funds -- there's

16  probable cause to detain the funds.  It's not necessarily an

17  evidentiary -- it's not evidentiary in that aspect.

18          THE COURT:  Didn't this circuit address an

19  evidentiary hearing on the --

20          MR. STAPLETON:  It's probable cause, though.

21  Probable cause that the funds are related to the crimes for

22  which the Defendant has committed or alleged to have

23  committed, so it's only for that.  It's not a full-blown

24  evidentiary hearing, I don't believe, and it follows the

25  *Monsanto*, the Second Circuit, D.C. court -- Court of Appeals

1    in the *E Gold* case.  I believe it's the *E Gold* case you're

2    referring to, that it came down in April of this year.  They

3    followed the *Monsanto* hearing of the Second Circuit, so we

4    could probably get some guidance from the Second Circuit on

5    how they conduct their probable cause hearings.

6                THE COURT:  All right.  Well, we have a hearing

7    date.  That's a firm date.  We don't have a lot of time

8    between now and then.  Today's the 27th.

9                So, I'll give the Government until Wednesday the 3rd

10   to focus the Court's attention on what the Government believes

11   the parameters of such a hearing should be and Defense counsel

12   to respond to that by the 10th of September.

13               All right.  Anything else we need to talk about

14   today?

15               MR. ZAPP:  Your Honor, I would just suggest to the

16   Court that I believe the *E Gold* was Judge Collyer's case, and

17   Judge Collyer -- the last time I spoke to the appellate --

18               THE COURT:  The case was remanded to her.

19               MR. ZAPP:  Right.

20               THE COURT:  So there's been a hearing before her?

21               MR. ZAPP:  Oh, it has?

22               THE COURT:  I'm asking you.

23               MR. ZAPP:  Oh, no.

24               THE COURT:  There has not been?

25               MR. ZAPP:  At least -- the last time I spoke to the

1  appellate lawyer and he said to me that there had not been a

2  hearing.

3        THE COURT:  Thank you for telling me because I

4  couldn't figure out who the judge was.  I thought it was

5  actually a magistrate judge.

6        MR. ZAPP:  Exactly.  I think the magistrate judge

7  made some kind of finding that this defendant or the defendant

8  there did not have any assets.  And I agree with Your Honor,

9  you know, he's trying to prove a negative.  "My name is Ye

10 Gon.  I don't have any money.  I don't have access to it.  I

11 want my lawyers."  I don't know of anything else he could

12 possibly say.

13       THE COURT:  All right.  I'm interested in your

14 respective submissions on that point, though.  I don't want to

15 start that hearing off floundering about, you know, how do we

16 proceed?  So I want your best thoughts from both sides about

17 that.

18       MR. ZAPP:  But Judge Collyer may have now had --

19       THE COURT:  Thank you very much.  I'll contact her

20 and I'll contact other colleagues as well.

21       MR. STAPLETON:  Your Honor, just so you know, the

22 case has pled out, yeah, so there's a chance that they didn't

23 have the P.C. hearing after all.  It was a recent -- one like

24 I say the last three to four weeks they reached a plea

25 agreement.

1    THE COURT:  We're at the end of a year.  What's the

2  Government offered in this case?

3    MR. STAPLETON:  Offering in terms of what, Your

4  Honor?

5    MR. ZAPP:  Plea.

6    THE COURT:  To the Defendant.

7    MR. STAPLETON:  What are we --

8    MS. DIXON:  I'm sorry, Your Honor, I don't

9  understand the question.

10    THE COURT:  I was making an observation that after a

11  year, what is the Government, in this case, offering in terms

12  of a plea to the Defendant?

13    MS. DIXON:  Well, Your Honor, we have in fact had

14  discussions.  We've, in fact, documented those discussions

15  with a letter that I recently sent to both counsels.  When the

16  discussions started, there was one attorney, now there are two

17  attorneys.  We haven't had -- we've had discussions with one

18  attorney, not with another attorney.  That highlights the

19  problem that we're having with having these two different

20  counsel.

21    Yes, the discussions have been had.  Yes, the

22  discussions were moving along, but now we have different

23  players, and it just --

24    THE COURT:  Well, maybe the entry of two more

25  attorneys will pave the way for a resolution in this case.  I

1    don't know.  Are you prepared to put on the public record what

2    you're offering?

3            MS. DIXON:  No, Your Honor, we're not.

4            THE COURT:  Would you go so far as to say the

5    discussions up to a certain point were almost fruitful?

6            MS. DIXON:  I thought so.

7            THE COURT:  That's interesting.

8            MS. DIXON:  I thought so but not anymore.

9            THE COURT:  All right.

10           MS. DIXON:  And I will say to the Court, and Your

11   Honor, if I can say a few other things while I'm up here.

12   First of all, I wanted to -- I guess it's appropriate do it at

13   this time, while we're talking about the clarity of

14   representation.  I hate to bring this up, but I have -- I feel

15   compelled to note to the Court that we still have counsel Ning

16   Ye in the case.

17           THE COURT:  No, no, he's not in the case.  His

18   appearance was stricken sometime ago.

19           MS. DIXON:  Your Honor, I understand that.  However,

20   Mr. Ye called Mr. Laymon, I believe, about a week ago and said

21   that he was back in the case, so...

22           THE COURT:  He's not entered his appearance in this

23   case.

24           MS. DIXON:  We just needed clarification, Your

25   Honor.

```
 1              THE COURT:  As far as I know.  I've not seen his
 2    appearance.  He's sitting in the courtroom, but I've not seen
 3    his appearance in this case.
 4              MS. DIXON:  Yes, Your Honor.  We just needed
 5    clarification because of --
 6              THE COURT:  It's not that I've scoured the docket on
 7    all my cases each day, but I've not seen his appearance noted
 8    in this case.
 9              MS. DIXON:  Well, since the date in June -- I
10    believe it was June the 11th, 2008, wherein Mr. Zapp and --
11    wherein Mr. Gon was asked who represents him and he said
12    "Mr. Zapp," and where Mr. Zapp said, "I am the only attorney."
13              THE COURT:  In view of that, I believe the Court
14    issued a minute order, I believe, striking the appearances of
15    everyone else, I believe.
16              MS. DIXON:  Yes, Your Honor.
17              THE COURT:  That's my recollection.
18              MS. DIXON:  Now, the reason that I bring this up is
19    because of the phone call that Mr. Laymon received.
20              THE COURT:  Counsel, I have no control over people
21    using the telephones in this country.  I'm just telling you,
22    as a matter of fact, he's not entered his appearance in this
23    case.
24              MS. DIXON:  Thank you, Your Honor.  We just needed
25    clarification.
```

1          Secondly, while I'm here, I also need to correct the

2    misimpression put forth by the Defense counsel that the

3    Government is saying that we have no position in the

4    extradition.  I believe what I said was it just doesn't work

5    like that.  Clearly the treaty says what it says, and the

6    Government would have negotiated the treaty, so I just wanted

7    to make sure that that was very clear.

8          I also wanted to be very clear that the United

9    States Attorney's office for the District of Columbia is not

10   involved in these proceedings.  Mr. Zapp said that they were.

11   That's incorrect.  In this situation, it would be the

12   Department of State and the Office of International Affairs,

13   not the United States Attorney's Office, so I wanted to make

14   sure that that is --

15          THE COURT:  At some point I assume the U.S.

16   Attorney's office gets involved in the filing of some

17   document.

18          MS. DIXON:  I don't believe they do, Your Honor.

19          THE COURT:  Is that right; all right.

20          MS. DIXON:  I don't believe they do, not in this

21   District, or I should say not for this case.

22          THE COURT:  So, who determines extradition or not?

23   Is it a federal judge or is it the State Department?

24          MS. DIXON:  Well, Your Honor, again, the treaty says

25   what it says.

1           THE COURT:  What does it say?

2           MS. DIXON:  Well, it's very long.  But if I could

3    just briefly state to the Court that, as I understand it, and

4    again, I'm not -- I do not work for the Office of

5    International Affairs, but as I understand it, Mexico has

6    notified us that they wish to pursue their rights under the

7    extradition treaty.  That request will be presented either to

8    a magistrate judge here in the District of Columbia or a

9    district court judge.

10          I believe, Your Honor, and I'm not sure what the

11   rule is as to which one it goes before, I think that it could

12   go before either, and the Court may have some input in that.

13   I don't know.  But that's how it proceeds.

14          Like I know, for example, that some judges will say,

15   okay, the magistrate judge can -- will preside over the

16   discovery in a certain case or this aspect of discovery, and I

17   don't know what the procedure is for the way it proceeds, but

18   I just wanted to make it clear that it is not the U.S.

19   Attorney's office for the District of Columbia.

20          THE COURT:  All right.

21          MS. DIXON:  Thirdly, Your Honor, I wanted to --

22          THE COURT:  Go ahead.

23          MS. DIXON:  -- note that again, Mr. McMahon --

24          THE COURT:  Excuse me one second.

25          (PAUSE.)

1          THE COURT:  All right.  Go ahead.

2          MS. DIXON:  Yes, Your Honor.  Mr. McMahon talked

3     about that his office is the office for the document dump to

4     be dropped off by the Government, but I wanted to make it

5     clear that it's not appropriate to talk about any additional

6     discovery documents, or at least at this point, because what

7     we understood when we left court in June 11 of 2008 was that

8     there were no more outstanding requests for discovery.  We

9     understood at that time that discovery was closed.

10          Mr. McMahon, at this time, is attempting to reopen

11     discovery, I think, by making these requests to compel.

12          THE COURT:  I didn't think discovery was closed.  I

13     never said it's over.

14          MS. DIXON:  No, Your Honor, but with regard to

15     Mr. McMahon said that the Government is going to deliver some

16     boxes or I want the boxes in my office.  That was a reference

17     to boxes of documents coming from Mexico, but when Mr. McMahon

18     left the case and Mr. Zapp entered the case, Mr. Zapp told us,

19     as he told the Court, he didn't want anymore discovery.

20          So, things came to a halt as far as production of

21     those things were concerned.  Now, if we need to reopen them,

22     we certainly can, but I just want to make it clear that it is

23     not a matter of snapping his fingers and Mr. McMahon standing

24     here and saying, "I'm expecting a document dump," because what

25     we understood by counsel of record was that no more documents

1   were necessary with regard to that.

2          THE COURT:  All right.  Let me just say this because

3   it's time to get on with this case.  Whatever discovery the

4   Government is under an obligation to produce in this case has

5   to be produced.  I'm not going to say by the end of today,

6   tomorrow, but it has to be produced and the sooner the better,

7   and it just strikes me that a week from today is not

8   unreasonable.

9          MS. DIXON:  That's when, Your Honor?

10          THE COURT:  The 3rd.  Let me just ask Mr. Zapp.  Did

11   you receive discovery from Mr. McMahon after you entered your

12   appearance?

13          MR. ZAPP:  Yes, I did.

14          THE COURT:  You did.  All right.  So I don't want

15   you to duplicate that.  You know what you gave Mr. McMahon.

16   All right.  And whatever it is that Mr. McMahon has not

17   received, that Mr. Zapp has not received, that's what you have

18   to produce and whatever else -- no, I'll just leave it at

19   that.  Whatever either attorney has not received, that's what

20   you have to produce by the 30th.  You don't have to

21   duplicate your efforts again.

22          MS. DIXON:  Yes, Your Honor.

23          THE COURT:  It should be clear what you said to

24   Mr. McMahon.  I don't know if you said anything separate and

25   apart from what you said to Mr. McMahon to Mr. Zapp at all.  I

 1   don't know.  You know that.

 2              MS. DIXON:  Yes.

 3              THE COURT:  Mr. Zapp knows that.  So, I'm just

 4   directing the Government to produce whatever it's not produced

 5   to whom?  To which one?

 6              MS. DIXON:  That's discoverable.  Yes, Your Honor.

 7              THE COURT:  To Mr. --

 8              MR. ZAPP:  To Mr. McMahon.

 9              THE COURT:  All right.  Anything else?

10              MS. DIXON:  No, Your Honor.

11              MR. McMAHON:  Can I address the Court, Your Honor?

12              You hit the nail on the head with respect to the

13   extradition issue, Your Honor, having been -- had some

14   experience with that.  When a country is alerted that a

15   criminal process is initiated, they have an option of sending

16   a letter through diplomatic channels and saying, "Listen,

17   we're going to be taking this body back because we're going to

18   try him for specific crimes in our county, so put that case on

19   hold, don't do anything and we'll process it."

20              The problem in this case, and I stated this before,

21   Your Honor, it's very political.  What the Government of

22   Mexico has done is sat back and watched you waste 13 months

23   and probably 15 months of judicial resources.  The U.S.

24   Government, like any other government, can turn around and

25   tell Mexico, "Look, we alerted you to the initiation" --

1    THE COURT:  We alerted who?  The State Department,

2  or apparently the U.S. attorney's office knows this, right?

3    MR. McMAHON:  Well, the State Department --

4    MS. DIXON:  The U.S. Attorney's office is not in

5  this case.

6    THE COURT:  Well, how do you know that Mexico is

7  going to do what Mexico says it's going to do?

8    MS. DIXON:  I don't want to split hairs, but it's

9  important, for notification purposes, we are the narcotic and

10  dangerous drug section of the criminal division of the

11  Department of Justice, we're not U.S. Attorney's office, so

12  that's why I keep saying it's not the U.S. Attorney's office

13  because I know that in this case and other cases I've had,

14  people send notices to the U.S. Attorney's office but they're

15  not in the case; we are.

16    THE COURT:  Department of Justice?

17    MS. DIXON:  That's right.

18    THE COURT:  And that's the source of your knowledge

19  about the extradition issue?

20    MS. DIXON:  The source of my knowledge about the

21  extradition issue.  When I say to the Court that Mexico has

22  notified that they wish to proceed with extradition

23  proceedings, I got that from the Office of International

24  Affairs, which is another branch of the Department of Justice.

25    THE COURT:  All right.

1          MR. McMAHON:  Your Honor, they serve us with

2     process, either the client or the attorney or both, but my

3     point is you really hit the nail on the head with respect to

4     judicial resources.

5          The American Government's position should be that,

6     with your knowledge, we spent a considerable amount of time in

7     a criminal trial and we're not about to turn over somebody,

8     and the Government has the option of simply saying, "Look,

9     when we finish with Mr. Ye Gon, we'll give him to you."

10          What's going to happen in this case, Your Honor,

11     much probably to your relief, is Mr. Laymon is going to come

12     in here at some stage and dismiss this case after the process

13     to start extradition has been served on my client.  That's

14     what's going to happen.

15          Two, Your Honor, we have a small housekeeping

16     matter.  My client has asked for a calculator, and I faxed

17     something to D.C. jail and they sent back saying it's

18     approved, and I was going to try to give him the calculator

19     today but maybe that's impossible, but we have permission to

20     take it into the jail now, so I was going to try to avoid --

21          THE COURT:  Why don't you do this.  You got

22     permission from D.C. jail to give --

23          MR. McMAHON:  Yes, Your Honor.

24          THE COURT:  Why don't you deliver it to Ms. Amato's

25     office.  The marshals aren't going to let him take back

```
 1   something.

 2            MR. McMAHON:  Ms. Amato's office?

 3            THE COURT:  Yeah, she's General Counsel.  I assume

 4   she's the one that granted your client permission to have one.

 5   That would be the easiest way to do it.  I don't want to

 6   impose on the marshals.  I mean, he'll be taking something

 7   back.  That could be used.  I'm not going to tell the marshals

 8   to do it.  Give it to Ms. Amato's office.

 9            MR. McMAHON:  Okay.  In another effort to slim down

10   the case, Your Honor, if you're not aware, the indictment goes

11   back to '99, to me, rather preposterous.  I haven't even seen

12   a document that predates 2004, and I think we're the only ones

13   reading documents in this case, Your Honor, with a Spanish

14   translator.  It's very expensive.

15            My point is that maybe the Government will stipulate

16   that from 1999 up to 2002 or so there is none of this activity

17   that he's being charged with, importation of a controlled

18   substance, you know, trying to deceive us, and then two-two,

19   two-three, two-four, it's all licensed for the

20   pseudoephedrine.  What the case is coming down to, Your Honor,

21   is did this man knowingly import during two-five and two-six,

22   these intermediate chemicals with a view towards manufacturing

23   pseudoephedrine?

24            So, I'm just going to give you a head's up.  That

25   motion will be designed to sort of slim down the indictment
```

1    and maybe cut down the trial, too.

2              THE COURT:   Thank you for giving me advance notice

3    of that.

4              MR. McMAHON:   And I saw in the last transcript, Your

5    Honor, which we just procured, that the Government, I thought,

6    was going to update its speedy trial calculation and file a

7    memorandum to that effect.   Am I wrong on that?

8              THE COURT:   That was not asked that the clock be

9    tolled.   There are motions that are pending that arguably toll

10   the speedy trial clock.   I'm just dealing with the issues

11   before me today.   I've set a motions hearing date and a trial

12   date.   No one asked me to do anything else.

13             MR. McMAHON:   I appreciate that, Your Honor.

14   Finally, the Government's position has been made clear to us

15   in response to our motions that, "Look, you're going to have

16   to do your own discovery."   What I'd like the Government to

17   put on the record, Your Honor, is the name of the person who

18   they are coordinating with in terms of getting documents

19   because it's clear from the COFEPRIS regulations, Your Honor,

20   it's all -- I'm going to give you the English translation.

21   When you have a controlled product in Mexico, you have to

22   register with COFEPRIS.   I mean, it's all there, the entire

23   logbook issue.   So I want to get on the record who is the

24   individual that has been coordinating with our government in

25   terms of producing documents, because Mr. Laymon has basically

1    told me, "Go to it; get your own discovery."

2              THE COURT:  You may have to file a motion, unless

3    the Government wants to respond to that.  Is there a response

4    to it?  Is that information discoverable?

5              MS. DIXON:  This is the first time I've heard this

6    request, Your Honor.  I don't think that that's discoverable,

7    but I'd like to see whatever motion counsel filed.

8              THE COURT:  I'm not going to try and resolve it in a

9    vacuum.

10             MR. McMAHON:  No, Your Honor.

11             THE COURT:  Go ahead and file a motion.

12             MR. McMAHON:  We can just sue John Doe.

13             THE COURT:  Or just file a motion for that

14   information.  I don't know whether you're entitled to that or

15   not, Counsel.  I just don't know.

16             Anything further?  All right.  Thank you.  Have a

17   nice day.

18             (PROCEEDINGS END.)

19                           *-*-*-*-*

20                  **CERTIFICATE OF REPORTER**

21             I, Catalina Kerr, transcribing this proceeding from

22   the stenographic notes of JACKIE SULLIVAN, Official Court

23   Reporter, certify that the foregoing is a correct transcript

24   from the record of proceedings in the above-entitled matter.

25   _____    _____

     Catalina Kerr                     Date